# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR., | * * * * | |
| Plaintiffs; | * | **CIVIL CLASS ACTION** |
| v. | * | **No.: 2:20 cv 00980** |
| ST. TAMMANY PARISH GOVERNMENT, a/k/a/ ST. TAMMANY PARISH COUNCIL; ST. TAMMANY PARISH SHERIFF'S OFFICE; RANDY SMITH, in his official and individual capacity; RODNEY J. STRAIN, in his official and individual capacity; GREG LONGINO, in his official and individual capacity; and LACEY KELLY, in her official and individual capacity; Defendants. | * * * * * * * * * * | **DEMAND FOR JURY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT AT LAW

To the Honorable United States District Court for the Eastern District of Louisiana and the Judges thereof:

The Complaint of Plaintiffs, AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR., all majors, residing in St. Tammany Parish, individually and on behalf of a class of all others similarly situated, appearing through counsel, JACOB

1

LITIGATION, INC., ROMANUCCI & BLANDIN, LLC, and THE GLORIOSO LAW FIRM, and complaining of Defendants ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL (hereinafter "STPC"); ST. TAMMANY PARISH SHERIFF'S OFFICE; RANDY SMITH, in his official and individual capacity; RODNEY J. STRAIN, in his official and individual capacity; GREG LONGINO, in his official and individual capacity; and LACEY KELLY, in her official and individual capacity, respectfully represent:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which named Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek relief for Defendants' violation of their rights, privileges, and immunities secured by 42 U.S.C. §1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana.

2. The Defendants to this action forced pre-trial detainees to endure days to weeks of prolonged pretrial detainment in dirty, cramped holding cells, with as many as twenty-four (24) detainees confined within a ten-foot by twenty-foot space.  Detainees were forced to sleep on the concrete floor, and urinate and defecate in front of one another in an open toilet visible to all other detainees within the holding cell. Detainees were deprived of hygienic products and denied access to showers for days at a time. As such, Defendants subjected prisoners to deprivations of their constitutional rights and excessive, cruel punishment.

3. The named Plaintiffs seek to represent a certified class for the purpose of obtaining declaratory, injunctive and compensatory relief. The named Plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described herein violate the

Fourteenth Amendment and a class-wide injunction enjoining Defendants from continuing such policies, practices and/or customs. In addition, the named Plaintiffs seek an award of compensatory and punitive damages on behalf of the class. All Plaintiffs seek an award of attorneys' fees and costs and such other relief as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights under 42 U.S.C. § 1983.

5. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6. Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## THE PARTIES

**Plaintiffs herein are:**

7. Each of the named Plaintiffs are or were detained at the St. Tammany Parish Jail as pre-trial detainees in this judicial district and reside within the district.

8. The putative members of the plaintiff class all are or were detained at the St. Tammany Parish Jail as pre-trial detainees in this judicial district and most reside within the district.

9. At all relevant times, Plaintiff Ahmed Anwar Ali Taqi Baqer (hereinafter "Ahmed Baqer" or "Mr. Baqer") was a citizen and resident of the state of Louisiana.

3

10. At all relevant times, Plaintiff Klabert Joseph Guillot, Jr. (hereinafter "Mr. Guillot, Jr.") was a citizen and resident of the state of Louisiana.

11. At all relevant times, Plaintiff Klabert Joseph Guillot, Sr. (hereinafter "Mr. Guillot, Sr.") was a citizen and resident of the state of Louisiana.

**Made Defendants herein are:**

12. At all relevant times, the Defendant, STPC was a public entity responsible for the operation and maintenance of a law enforcement agency known as the ST. TAMMANY PARISH SHERIFF'S OFFICE.

13. The. STPC, by and through the ST. TAMMANY PARISH SHERIFF'S OFFICE, operated a detention facility known as the St. Tammany Parish Jail, located at 1200 Champagne Street, City of Covington, State of Louisiana.

14. The STPC is liable for the actions delegated to its final policymaker, the Office of Sheriff of St. Tammany Parish and its Sheriffs.

15. Beginning on July 1, 2016, and at all relevant times, the Defendant, RANDY SMITH, was the Sheriff of ST. TAMMANY PARISH and was empowered by the STPC to operate the detention facility known as the St. Tammany Parish Jail.

16. As Sheriff of St. Tammany Parish, Defendant SMITH is responsible for hiring, training, supervision, discipline, and control of deputies under his command. He is responsible for all services and programs at the St. Tammany Parish Jail. He is also responsible for the supervision, administration, policies, practices, customs, and operations of the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Jail.

4

17. Defendant SMITH is being sued in his official and individual capacities for the acts and omissions which occurred while he was Sheriff.

18. From 1996 to 2016, Defendant RODNEY J. "Jack" STRAIN was the Sheriff of ST. TAMMANY PARISH and was empowered by the State of Louisiana to operate the detention facility known as the St. Tammany Parish Jail.

19. As Sheriff of St. Tammany Parish, Defendant STRAIN was responsible for hiring, training, supervision, discipline, and control of deputies under his command.  He was responsible for all services and programs at the St. Tammany Parish Jail.  He was also responsible for the supervision, administration, policies, practices, customs, and operations of the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Jail.

20. At all relevant times and until October 11, 2019, Defendant GREG LONGINO was the Warden of the St. Tammany Parish Jail.

21. As Warden, Defendant LONGINO was responsible for the training, supervising, monitoring and discipline of St. Tammany Parish Sheriff's Office officers working at St. Tammany Parish Jail. He was also responsible for overseeing the security and well-being of persons held in holding cells.

22. At all relevant times, Defendant LACEY KELLEY was the Warden of the St. Tammany Parish Jail.

23. As Warden, Defendant KELLEY is responsible for the training, supervising, monitoring and discipline of St. Tammany Parish Sheriff's Office officers working at St. Tammany Parish Jail. She is also responsible for overseeing the security and well-being of persons held in holding cells.

## CLASS ALLEGATIONS

24. Plaintiffs Mr. Baqer, Mr. Guillot, Jr., and Mr. Guillot, Sr., bring this action on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(a), b(2), and b(3), on behalf of themselves and a Class of similarly situated individuals.  The Class the Plaintiff seeks to represent is defined as follows:

> All detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells. The class period commences when this practice began, including but not limited to the time period commencing on March 22, 2019, and extends to the date on which St. Tammany Parish is enjoined from, or otherwise ceases, enforcing its policy, practice and custom of refusing to abide by appropriate detention and housing standards to all pre-trial detainees admitted to the St. Tammany Parish Jail and held in the intake and/or holding cell area.  Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

25. The Plaintiff class members are identifiable through records maintained in the ordinary course of business by the St. Tammany Parish Sheriff's Office.

26. This action has been brought and may properly be maintained as a Class action under Federal law and satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

27. Upon information and belief, the class is so numerous that joinder of all members is impracticable.  Upon information and belief, St. Tammany Parish Jail has housed hundreds, if not thousands, of people in its holding cells during the relevant time period, with the majority being held for 48 hours or longer.

28. In creating and maintaining the conditions of confinement present in St Tammany Parish Jail, Defendants acted and refused to act on grounds applying generally to the class, so that

final injunctive and corresponding declaratory relief is appropriate respecting the class as a whole.

29. The questions of law or fact common to class members predominate over any questions affecting only individual members, such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Such questions include, but are not limited to:

   a. Whether the conditions of confinement at St. Tammany Parish Jail during the relevant period presented a substantial risk of serious harm to pretrial detainees;
   b. Whether the acts and omissions of Defendants constituted deliberate indifference to the resulting harm and risk of harm to Class members who are deprived of appropriate conditions of confinement; and
   c. What injunctive relief is appropriate to bring Defendants' conditions of confinement within holding cells into compliance with the Fourteenth Amendment.

30. Defendants are expected to raise common defenses to these claims, including denying that they are deliberately indifferent and denying that their actions violate the law.

31. The claims of the Plaintiffs are typical of those of the Plaintiff Class, as their claims arise from the same policies, practices, or courses of conduct, and their claims are based on the same theory of law as the class's claims. The named Plaintiffs are former pretrial detainees of the St. Tammany Parish Jail who endured the conditions within the Jail's holding cells. The named Plaintiffs and the proposed class they seek to represent have suffered direct injuries and will continue to be directly injured due to Defendants' unlawful and unconstitutional pattern and practice of providing inadequate conditions of confinement.

32. Plaintiffs are capable of fairly and adequately protecting the interests of the Plaintiff class because Plaintiffs do not have any interests antagonistic to the class. Plaintiffs, as well as the Plaintiff class members, seek to enjoin the unlawful acts and omissions of Defendants.

33. Plaintiffs are represented by counsel experienced in civil rights litigation, prisoners' rights litigation, and complex class action litigation. Plaintiff's counsel has the resources, expertise, and experience to successfully prosecute this action. Counsel for the Plaintiff knows of no conflicts among members of the Class or between counsel and members of the Class.

34. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons: the expense of litigation would make it difficult if not impossible for individual class members to seek individual claims;  joinder of all individual members of the Class is impracticable given the number of members and their location; the Class promotes judicial economy; conserves the resources of the Court system; and protects the rights of the Class members.

35. Upon information and belief, no other actions are currently pending to address the violation of civil rights for hundreds of pre-trial detainees passing through the St. Tammany Parish Jail.

**FACTUAL BACKGROUND**

**Minimum Standards for Louisiana Jails**

36. At all relevant times, the Defendants, ST. TAMMANY PARISH COUNCIL, RANDY SMITH, JACK STRAIN, GREG LONGINO, and LACEY KELLEY, were bound by the laws and regulations of the State of Louisiana set forth in Title 22, Part III, Subpart 2 of the Louisiana Administrative Code in the operation and management of the St. Tammany Parish Jail.

37. Title 22 of the Code sets forth:

> [T]he minimum requirements which comply with court orders and protect the guaranteed rights of inmates in custody. The criteria were derived from court decisions, Louisiana state statutes, codes and regulations, and standards developed by organizations in the criminal justice field[.]

22 La. Admin. Code § 2503. These minimum requirements apply to the administration of all parish jails in Louisiana. *Id.*

38. The minimum requirements of Title 22 apply to all individuals in the custody of Louisiana parish jails. Wherever Title 22 prescribes minimum requirements for "inmates", these standards apply to new inmates in holding cells and classified inmates in the appropriate housing facilities alike.

39. Louisiana prisons are also required to provide inmates with a complete set of clean linen and bedding upon admission and at least once a week thereafter. 22 La. Admin. Code § 2905(D).

40. Further, arrangements shall be made by the jail for disinfecting inmates' mattresses, pillows, and mattress covers. 22 La. Admin. Code § 2905(G).

41. Inmates shall have access to a shower on a daily basis and shall be required to bathe no less than twice a week. 22 La. Admin. Code § 2907(A).

42. Individuals housed at the Louisiana jails are entitled to receive medical and health care. 22 La. Admin. Code § 2909.

43. Arrestees will be asked at the time of booking about any medications being taken at the time of booking and health problems will be referred immediately to the licensed physician responsible for the health care program at Louisiana jails, or physician in charge. 22 La. Admin. Code § 2909(H).

44. Pharmaceuticals will be dispensed by orders of the physician in charge and shall be filled at institution expense as prescribed within 24 hours. 22 La. Admin. Code § 2909(M).

45. Inmates must further be provided access to active outdoor recreation at least one hour per day three days per week where possible. 22 La. Admin. Code § 3111(A).

46. Further, inmates must be provided with some form of indoor recreational activity on a daily basis. 22 La. Admin. Code § 3111(B).

47. Space and equipment and supplies for recreation shall be furnished by Louisiana jails. 22 La. Admin. Code § 3111(C).

48. Administrators of Louisiana jails are required to classify and transfer new inmates to an appropriate housing area no later than forty-eight (48) hours after placing them in individual intake holding cells. 22 La. Admin. Code § 3301(F)

49. Upon information and belief, individual intake holding cells are not adequate for the long term housing of new inmates.

50. Inmates shall not be deprived of food, clothing, or personal hygiene items as punishment. 22 La. Admin. Code § 3309(C).

51. All jail facilities shall conform to state and local codes and regulations. 22 La. Admin. Code § 3701(A).

**Conditions in the St. Tammany Parish Jail**

52. St. Tammany Parish Jail is designed to house more than 1200 pre-trial and sentenced individuals at four facilities.

53. St. Tammany Parish Jail serves as overflow for the Louisiana Department of Corrections and the federal prison system.

54. Nearly half of the jail population of the St. Tammany Parish Jail comes from the Louisiana Department of Corrections.

55. The St. Tammany Parish Jail collects revenue for housing Louisiana Department of Corrections inmates.

56. Notwithstanding the requirements of § 3301(F) of Title 22, at all relevant times, Defendants STPC, SMITH, STRAIN, LONGINO, and KELLEY, maintained a custom, practice, and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area.

57. Upon information and belief, this custom, practice, and *de facto* policy was put in place as early as April 2011 when Defendant STRAIN was ST. TAMMANY PARISH SHERIFF.

58. The United States Department of Justice conducted an investigation of the St. Tammany Parish Jail in 2012.

59. In the report resulting from the investigation, the United States Department of Justice notified ST. TAMMANY PARISH and Defendant STRAIN that "as many as 30 prisoners [were] held in holding cells that are designed for 20 prisoners."

60. In the report resulting from the investigation, the United States Department of Justice notified Defendant STRAIN of the following: "Even more concerning, we noted that prisoners were sleeping on floors and benches in holding cells with little or no bedding articles".

61. The United States Department of Justice found that "prisoners were required to remain in the holding cells for days if not weeks before they were assigned to housing units."

62. Currently, pre-trial detainees held in Holding Cells longer than the statutory 48 hours are the majority of the occupants, with a large portion held between 7 and 14 days:

| Holding Cell 1: # of Detainees Held by Length of Detention from booking * | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 1 Day | 2 Days | 3 Days | 4 Days | 5 Days | 6 Days | 7 Days | 8 Days | 9 Days | 11 Days | 12 Days | 13 Days | 14 Days |
| 1.8.20 | 7 | 4 | | 1 | | 1 | 1 | 1 | 2 | 1 | 1 | | |
| 1.22.20 | 5 | | 2 | | 3 | 1 | 1 | 1 | 1 | 2 | 2 | 1 | |
| 3.3.20 | 2 | | | 8 | | | 1 | 1 | 1 | | 1 | | |

| Holding Cell 2: # of Detainees Held by Length of Detention from booking | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 1 Day | 2 Days | 3 Days | 4 Days | 5 Days | 6 Days | 7 Days | 8 Days | 9 Days | 11 Days | 12 Days | 13 Days | 14 Days |
| 1.8.20 | 2 | 1 | 2 | 2 | 2 | 3 | 1 | | 1 | | 3 | | |
| 1.22.20 | 9 | 1 | | 2 | 1 | 3 | 1 | 1 | | 1 | 2 | 2 | |
| 3.3.20 | 9 | 2 | | 3 | 1 | | 1 | | 1 | 2 | 1 | | |

| Holding Cell 3: # of Detainees Held by Length of Detention from booking | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 1 Day | 2 Days | 3 Days | 4 Days | 5 Days | 6 Days | 7 Days | 8 Days | 9 Days | 11 Days | 12 Days | 13 Days | 15 days | 18 days |
| 1.8.20 | 2 | 5 | 1 | 2 | 1 | 4 | | | | 1 | | 1 | | |
| 1.22.20 | 4 | 1 | | 2 | | 1 | | | 2 | | 3 | 3 | 1 | 1 |
| 3.3.20 | 4 | | | 3 | | | 1 | 1 | | 3 | 2 | 1 | | |

| Holding Cell 4: # of Detainees Held by Length of Detention from booking | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 1 Day | 2 Days | 3 Days | 4 Days | 5 Days | 6 Days | 7 Days | 8 Days | 9 Days | 10 Days | 11 Days | 12 Days | 13 Days | 14 Days |
| 1.8.20 | 4 | 2 | | 1 | 1 | 4 | 2 | 1 | 2 | | | 1 | 1 | |
| 1.22.20 | 2 | 1 | 3 | 1 | 1 | 3 | 1 | 2 | | 1 | | 1 | 1 | 1 |
| 3.3.20 | 4 | 1 | 1 | | 2 | 1 | | 2 | | 1 | 1 | | 2 | |

*Based only on available data.

63. STPC and Defendant STRAIN indicated that pre-trial detainees were housed in this manner due to "overcrowding" in the jail, however, upon information and belief, beds were available for the pre-trial detainees.

64. As early as July 12, 2012, not only were Defendants on notice that such practices existed but that the Department of Justice had concerns regarding the constitutionality of such practices.

65. At all relevant times, Defendants, ST. TAMMANY PARISH COUNCIL, SMITH, STRAIN, LONGINO, and KELLEY maintained individual intake holding cells that measured approximately twenty (20) feet in length by ten (10) feet in width.

66. At all relevant times, Defendants ST. TAMMANY PARISH COUNCIL, SMITH, STRAIN, LONGINO, and KELLEY, maintained individual intake holding cells that had no showers, no beds, and a toilet without any privacy.

67. At all relevant times, Defendants housed as many as twenty-four (24) new arrival inmates in intake holding cells.

68. At all relevant times, Defendants maintained in the St. Tammany County Jail four (4) individual intake holding cells.

69. At all relevant times, Defendants housed new inmates in individual intake holding cells for as long as eighteen (18) days prior to being classified and transferred to the appropriate housing area.

70. At all relevant times, new arrivals were forced to sleep on concrete floors within the individual intake holding cells due to as many as twenty-four (24) pre-trial detainees who were held in the individual intake holding cells for as long as eighteen (18) days.

71. As late as March 3, 2020, the number of detainees held in each cell ranged from 17-21 in Holding Cells 1-4:

| Number of Detainees in Each Holding Cell by Date | | | | |
|---|---|---|---|---|
| Date | Holding Cell 1 | Holding Cell 2 | Holding Cell 3 | Holding Cell 4 |
| 1.8.2020 | 19 | 17 | 17 | 19 |
| 1.22.2020 | 22 | 24 | 20 | 18 |
| 3.3.2020 | 19 | 21 | 19 | 17 |

72. St. Tammany Parish Sheriff's Office spokesman LEE, when pressed on the custom, practice, and *de facto* policy of violating 22 La. Admin. Code § 3301(F), stated:

"I would say don't commit a crime in St. Tammany Parish and you won't have to go to holding at all."

and

"I would say you're splitting hairs. I would say you have someone who has been placed into custody, what is a probable cause arrest, either by a warrant or warrantless arrest. And we have -- the sheriff's office -- has the obligation to house that individual."

73. At all relevant times, when as many as twenty-four (24) inmates were being held in twenty (20) feet by ten (10) feet individual intake holding cells and being forced to sleep on concrete, ST. TAMMANY PARISH and ST. TAMMANY PARISH SHERIFF had numerous open beds.

74. In January 2020, the St. Tammany Parish Jail had as many as one hundred and thirty-seven (137) open beds.

75. In January 2020, the St. Tammany Parish Jail housed as many as sixty-three (63) federal inmates.

76. In January 2020, the St. Tammany Parish Jail housed as many as three-hundred eighty-seven (387) Louisiana Department of Corrections inmates.

77. In January 2020, the St. Tammany Parish Jail housed as many as ninety-eight (98) male inmates in its four (4) 10 feet by 20 feet holding cells.

78. At all relevant times, the Defendants, by and through the agents and employees of the ST. TAMMANY SHERIFF, allowed new inmates to shower only once every three days.

79. At all relevant times, the Defendants, by and through the agents and employees of the ST. TAMMANY SHERIFF, denied new inmates the ability to participate in any recreational activity.

80. At all relevant times, the Defendants, by and through the agents and employees of the ST. TAMMANY SHERIFF, placed violent and non-violent offenders in the same holding cells, placing non-violent offenders in unnecessary danger.

81. At all relevant times, the Defendants, by and through the agents and employees of the ST. TAMMANY SHERIFF, failed to intervene in altercations that would occur between detainees in the crowded cells, placing detainees in danger.

82. At all relevant times, the Defendants, by and through the agents and employees of the ST. TAMMANY SHERIFF, housed new inmate arrivals in unsanitary holding cells by allowing inmates to vomit on the floor of the holding cells and failing to promptly clean the holding cells.

83. At all relevant times, the Defendants, by and through the agents and employees of the ST. TAMMANY SHERIFF, withheld hygiene items, blankets, and medication from inmates as punishment.

**Plaintiff Ahmed Baqer**

84. Mr. Baqer failed to appear for a court date and a warrant was issued for his arrest.

85. Plaintiff Mr. Baqer was not arrested for or charged with any violent offenses or felonies.

86. After he was arrested, Plaintiff Mr. Baqer was processed at the St. Tammany Parish Jail as a pre-trial detainee.

87. From December 2, 2019, Mr. Baqer was held as a pre-trial detainee at the St. Tammany Parish Jail.

88. Defendants forced Mr. Baqer to reside in a holding cell with 19 other pre-trial detainees.

89. The holding cell was 10 feet by 20 feet, held four benches and no beds, and one exposed toilet.

90. Despite Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative code requiring that new inmates be kept in holding cells for no longer than 48 hours, Defendants held Mr. Baqer in the holding cell for 17 days.

91. During that time, Mr. Baqer slept on the bare concrete floor amidst 19 other prisoners for more than 16 days despite the availability of cell space and beds within the prison.

92. On or around December 19, 2019, Defendants finally moved Mr. Baqer out of the inadequate holding cell to general population.

93. On or around December 20, 2019, Defendants released Mr. Baqer.

**Plaintiff Klabert Guillot, Jr.**

94.  In November and December of 2019, Mr. Guillot, Jr. was charged with two minor drug offenses and unpaid child support.

95. None of the charges were violent in nature.

96. Mr. Guillot, Jr. failed to appear for a court date and a warrant was issued for his arrest

97. Mr. Guillot, Jr. was pulled over by police officers in Slidell, Louisiana as a result of the warrants.

98. At that time, Mr. Guillot, Jr. failed to pull over and was subsequently arrested for "aggravated flight from a police officer".

99.  After he was arrested, Defendants processed Mr. Guillot, Jr. at the St. Tammany Parish Jail as a pre-trial detainee.

100. From December 18, 2019 to present, Defendants have held Mr. Guillot, Jr. as a pre-trial detainee at the St. Tammany Parish Jail.

101. Mr. Guillot, Jr. could not afford to post bail.

102. Defendants forced Mr. Guillot, Jr. to reside in a holding cell with 19 other pre-trial detainees.

103. The holding cell was 10 feet by 20 feet, held four benches and no beds, and one exposed toilet.

104. Despite Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative code requiring that new inmates be kept in holding cells for no longer than 48 hours, Defendants held Mr. Guillot, Jr. in a holding cell for 18 days.

105. During that time, Mr. Guillot, Jr. slept on the bare concrete floor amidst 19 other prisoners for 18 days despite the availability of cell space and beds within the prison.

106. During the 18 days, guards stripped inmates and did cavity searches of pre-trial detainees within the holding cell.

107. On or around January 5, 2020, Defendants finally moved Mr. Guillot, Jr. to general population.

**Plaintiff Klabert Guillot, Sr**

108. Agents of the St. Tammany Parish Sheriff's Office arrested Mr. Guillot, Sr. on December 22, 2019.

109. From December 22, 2019 to present, St. Tammany Parish has held Mr. Guillot, Sr. has been held as a pre-trial detainee at the St. Tammany Parish Jail.

110. After being arrested, Defendants processed Mr. Guillot, Sr. at the St. Tammany Parish Jail as a pre-trial detainee.

111. Mr. Guillot, Sr. could not afford to post bail.

112. Defendants forced Mr. Guillot, Sr. in a holding cell with 19 other pre-trial detainees.

113. The holding cell was 10 feet by 20 feet, held four benches and no beds, and one exposed toilet.

114. Despite Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative code requiring that new inmates be kept in holding cells for no longer than 48 hours, Defendants held Mr. Guillot, Sr. in a holding cell for 13 days.

115.  During that time, Mr. Guillot, Sr. slept on the bare concrete floor amidst 19 other prisoners for 13 days despite the availability of cell space and beds within the prison.

116. On or around January 4, 2020, Defendants finally moved Mr. Guillot, Sr. to general population.

### COUNT I- 42 U.S.C. §1983- FOURTEENTH AMENDMENT
### *(Plaintiffs, individually and on behalf of the Class v. Defendants)*

117. Plaintiffs hereby incorporate by reference paragraphs 1-116 as though fully set forth herein.

118. The aforementioned conditions of the holding cells of St. Tammany Parish Jail presented a substantial risk of serious harm to pretrial detainees, including all named Plaintiffs and all members of the Class.

119. The aforementioned conditions of the holding cells of St. Tammany Parish Jail deprived pretrial detainees, including named Plaintiffs and members of the class, of the minimal civilized measure of life's necessities.

120. Particularly, the aforementioned conditions of the holding cells of St. Tammany Parish Jail deprived pretrial detainees of rights including reasonable safety, adequate hygiene, and adequate medical care.

121. These deprivations of rights were compounded and intensified by the length of detainees' confinement, which was typically well in excess of the 48-hour period established by Louisiana law.

122. The aforementioned conditions of the holding cells of St. Tammany Parish Jail were created and maintained pursuant to pervasive and longstanding policies, customs and practices created by Defendants as supervisory officials of the St. Tammany Parish and its jail. As such, they are directly liable for the damages of the Plaintiff and the members of the Class

123. Defendants were at all relevant times aware of all aforementioned conditions to the holding cells of St. Tammany Parish Jail.

124. Defendants were aware of a substantial risk of serious harm to pretrial detainees held in St. Tammany Parish Jail's holding cells, including named Plaintiffs and members of the Class.

125. In permitting these conditions, Defendants were acting pursuant to their own pervasive and longstanding policy, custom, and practice of failure to supervise their agents and employees to ensure their compliance with applicable constitutional and state standards, despite knowledge that such severely inadequate and harmful conditions existed.

126. In permitting these conditions, Defendants were acting pursuant to their own pervasive and longstanding policy, custom, and practice of failure to intervene to prevent their

agents and employees from tolerating and propagating severely inadequate and harmful conditions.

127. Defendants' conduct was deliberately indifferent to the rights of pretrial detainees held in St. Tammany Parish Jail's holding cells, including named Plaintiffs and members of the Class.

128. The effect of the totality of the circumstances present in the St. Tammany Parish Jail holding cells was the infliction of punishment on detainees violative of the Fourteenth Amendment.

129. As a proximate result of Defendants' conduct, Plaintiffs and those similarly situated suffered deprivations of the rights secured to them by the Fourteenth Amendment of the United States Constitution.

## COUNT II- VIOLATION OF LOUISIANA CONSTITUTION (Louisiana State Law)
### *(Plaintiffs, individually and on behalf of the Class v. Defendants)*

130. Plaintiffs hereby incorporate by reference paragraphs 1-129 as though fully set forth herein.

131. Article I, Section 20 of the Louisiana Constitution states that "[n]o law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment."

132. The aforementioned conditions of the holding cells of St. Tammany Jail presented a substantial risk of serious harm to pretrial detainees, including all named Plaintiffs and all members of the Class.

133. The aforementioned conditions of the holding cells of St. Tammany Parish Jail deprived pretrial detainees, including named Plaintiffs and members of the class, of the minimal civilized measure of life's necessities.

134. Particularly, the aforementioned conditions of the holding cells of St. Tammany Parish Jail deprived pretrial detainees of rights including reasonable safety, adequate hygiene, and adequate medical care.

135. These deprivations of rights were compounded and intensified by the length of detainees' confinement, which was typically well in excess of the 48-hour period established by Louisiana law.

136. The aforementioned conditions of the holding cells of St. Tammany Parish Jail were created and maintained pursuant to pervasive and longstanding policies, customs and practices created by Defendants as supervisory officials of the St. Tammany Parish and its jail. As such, they are directly liable for the damages of the Plaintiff and the members of the Class.

137. Defendants were at all relevant times aware of all aforementioned conditions to the holding cells of St. Tammany Jail.

138. Defendants were aware of a substantial risk of serious harm to pretrial detainees held in St. Tammany Jail's holding cells, including named Plaintiffs and members of the Class.

139. Defendants' conduct was deliberately indifferent to the rights of pretrial detainees held in St. Tammany Jail's holding cells, including named Plaintiffs and members of the Class.

140. The effect of the totality of the circumstances present in the St. Tammany Jail holding cells was the infliction of cruel, unusual, and excessive punishment upon pretrial detainees, including Plaintiffs and members of the Class, in violation of the Constitution of the State of Louisiana.

141. As a proximate result of Defendants' conduct, Plaintiffs and those similarly situated suffered injury and deprivation of the rights secured to them by Article I, Section 20 of the Constitution of the State of Louisiana.

### COUNT III- NEGLIGENCE (Louisiana State Law)
*(Plaintiffs, individually and on behalf of the Class v. Defendants SMITH, STRAIN LONGINO, and KELLY)*

142. Plaintiffs hereby incorporate by reference paragraphs 1-141 as though fully set forth herein.

143. Defendants have a duty to provide pretrial detainees safe, hygienic, and sanitary conditions.

144. Defendants have a duty to meet statutory guidelines for conditions of confinement.

145. When statutory guidelines are not met, and/or when pretrial detainees are not provided safe, hygienic, and sanitary conditions, it is foreseeable that detainees will suffer harm.

146. Any reasonable official or agent of St. Tammany Parish knew or should have known of the risks of deficient conditions.

147. Defendants breached their duties to Plaintiffs and members of the Class and were negligent in one or more of the following ways:

   a. Held pretrial detainees in overcrowded holding cells;
   b. Held pretrial detainees in holding cells for periods exceeding 48 hours;
   c. Held pretrial detainees in holding cells with unsanitary conditions;
   d. Held pretrial detainees in holding cells containing detainees accused of both violent and non-violent offenses;
   e. Required pretrial detainees to sleep on a concrete floor;
   f. Limited access to or failed to provide pretrial detainees blankets in cold holding cells;
   g. Allowed pretrial detainees in holding cells to engage in physical altercations;
   h. Withheld necessary sanitary or hygienic items from pretrial detainees;
   i. Withheld access to showers to pretrial detainees; and

j. Held pretrial detainees in these conditions despite the availability of suitable conditions.

**COUNT IV- *RESPONDEAT SUPERIOR* (Louisiana State Law)**
*(Plaintiffs v. Defendant STPC and St. Tammany Parish Sheriff's Office)*

148. Plaintiffs hereby incorporate by reference paragraphs 1-147 as though fully set forth herein.

149. Through the aforementioned acts and omissions, Defendants SMITH, STRAIN, LONGINO, and KELLY breached a duty of care owed to Plaintiffs and to members of the Class.

150. Defendants SMITH, STRAIN, LONGINO, and KELLY's acts and omissions were undertaken within the scope of their employment by the ST. TAMMANY COUNTY PARISH COUNCIL and the ST. TAMMANY PARISH SHERIFF'S OFFICE.

151. As a result of Defendants SMITH, STRAIN, LONGINO, and KELLY's acts and omissions, Plaintiffs and members of the Class suffered damages.

**COUNT V- DEMAND FOR PRELIMINARY AND PERMANENT INJUNCTION**
*(Plaintiffs v. Defendants)*

152. Plaintiffs hereby incorporate by reference paragraphs 1-151 as though fully set forth herein.

153. The policies, customs and practices of the Defendants are clearly unconstitutional and violate detainees' right to be free from cruel and unusual punishment. Specifically, refusing to provide adequate conditions of confinement is unconstitutional.

154. The continuing pattern of providing inadequate conditions of confinement will cause irreparable harm to the new and/or prospective members of the Class, an adequate remedy for which does not exist at law.

155. Wherefore, Plaintiff requests that unconstitutional conduct be prohibited in that Defendants should be immediately required to provide adequate conditions of confinement to detainees and seeks both a preliminary and permanent injunction from this Court ordering as much.

## DEMAND FOR PUNITIVE DAMAGES

156. The actions of Defendants described above are extreme, outrageous, and wantonly cruel. They also shock the conscience of a reasonable person. Therefore, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiff does not seek punitive damages against the St. Tammany Parish Council.

## JURY DEMAND

Plaintiffs, on behalf of themselves and other prisoners similarly situated to them, are entitled to and pray for a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR., individually and on behalf of a class of all others similarly situated, pray that defendants be served and made to appear and answer and that after due proceedings had, there be judgment herein in favor of plaintiffs and against defendants, and for legal interest from date of judicial demand until paid. Plaintiffs pray this Honorable Court:

   a. Declare that Defendants' acts and omissions constitute a pattern or practice of conduct that deprives St. Tammany Parish Jail prisoners of rights, privileges, or immunities secured or protected by the Constitution;
   b. Enjoin Defendants and Defendants' agents from continuing these acts and omissions and order Defendants to take such remedial actions as will ensure lawful conditions of confinement at St. Tammany Parish Jail;

c. Enter judgment against Defendants, awarding damages, costs, and reasonable attorney's fees;

d. Grant any other relief this Court deems will further the interests of justice.

Respectfully Submitted,

_/s/__Maria B. Glorioso____
Attorney for Plaintiffs
Maria B. Glorioso (#24435), T.A.
Vincent J. Glorioso, Jr. (#6064)
**THE GLORIOSO LAW FIRM**
2716 Athania Parkway
Metairie, LA 70002
Tel: (504) 569-9999
Fax: (504) 569-9022
maria@gtorts.com

Devon M. Jacob (*pro hac vice* to be filed)
**JACOB LITIGATION, INC.**
P.O. Box 837
Mechanicsburg, PA 17055-0837
Tel: (717) 796-7733
djacob@jacoblitigation.com

Antonio M. Romanucci (*pro hac vice* to be filed)
Bhavani K. Raveendran (*pro hac vice* to be filed)
Nicolette A. Ward (*pro hac vice* to be filed)
Ian P. Fallon (*pro hac vice* to be filed)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
b.raveendran@rblaw.net
nward@rblaw.net
ifallon@rblaw.net