# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AHMED BAQER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-980-WBV-JCW** |
| **ST. TAMMANY PARISH GOVERNMENT, ET AL.** | **SECTION: D (2)** |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion For Preliminary Injunction.[1] Defendants oppose the Motion.[2] After considering the evidence and testimony produced at the hearing on the matter, as well as careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A. The Complaint

This is an action for declaratory, injunctive and compensatory relief regarding the conditions of pre-trial detention in the four holding cells at St. Tammany Parish Jail.  On March 22, 2020, Ahmed Baqer, Klabert Joseph Guillot, Jr. and Klabert Joseph Guillot, Sr. (collectively, "Plaintiffs"), filed a Complaint in this Court seeking damages under 42 U.S.C. § 1983, asserting that they were forced to endure prolonged pre-trial detainment in dirty, cramped holding cells in St. Tammany Parish Jail in violation of their constitutional rights under the Fourteenth Amendment.[3]  Plaintiffs also allege that the conditions of the holding cells presented a substantial risk of

---

[1] R. Doc. 12.
[2] R. Doc. 37.
[3] R. Doc. 1 at ¶¶ 2, 118-129.

serious harm to pre-trial detainees, in violation of the Louisiana Constitution, and assert claims for negligence and *respondeat superior*.[4]  Specifically, Plaintiffs allege that pre-trial detainees were forced to endure detainment with as many as 24 detainees confined within a ten-foot by twenty-foot space for as long as 18 days.[5] Plaintiffs assert that, as late as March 3, 2020, the number of detainees held in each holding cell ranged from 17 to 21.[6]  Plaintiffs further allege that pre-trial detainees were forced to sleep on the concrete floor, forced to urinate and defecate in front of each other in a toilet visible to all other detainees within the holding cell, deprived of hygienic products and denied access to showers for days at a time.[7]

Plaintiffs further assert that the United States Department of Justice (the "DOJ"), conducted an investigation in 2012, which resulted in a report notifying St. Tammany Parish and defendant, former St. Tammany Parish Sheriff Rodney J. Strain, that as many as 30 prisoners were held in holding cells designed to hold 20 prisoners, and that prisoners were sleeping on floors and benches in holding cells with little or no bedding.[8]  Plaintiffs assert that the DOJ also found that prisoners were required to remain in the holding cells for days, if not weeks, before they were assigned to housing units.[9]

---

[4] *Id*. at ¶¶ 130-151.

[5] *Id*. at ¶¶ 2, 67, 69.  The Court notes that Guillot Jr.'s testimony regarding length of confinement differed from the allegations in the Complaint and that the length of pre-trial detention may have been a maximum of 16 days.  Further information regarding his testimony in this respect is on pp. 28-30 of this Order.

[6] *Id*. at ¶ 71.

[7] *Id*. at ¶ 2.

[8] *Id*. at ¶¶ 58-60.

[9] *Id*. at ¶ 61.

With respect to the three named plaintiffs, Plaintiffs assert that Ahmed Baqer was detained in a holding cell with 19 other pre-trial detainees at St. Tammany Parish Jail for 17 days in December 2019, before being moved to the general population and, shortly thereafter, released.[10] Plaintiffs assert that Klabert Guillot, Jr. was detained in a holding cell for 18 days between December 18, 2019, and January 5, 2020, along with 19 other pre-trial detainees, before being moved to the general population.[11] Plaintiffs claim that during those 18 days, the guards stripped inmates and performed cavity searches of the pre-trial detainees within the holding cell.[12] Plaintiffs also assert that Klabert Guillot, Sr. was detained in a holding cell for 13 days between December 22, 2019, and January 4, 2020, along with 19 other detainees, before being moved to the general population.[13]

Plaintiffs allege that they were all forced to sleep on the bare concrete floor of their respective holding cells for the duration of their detainment, despite the availability of "cell space" and beds within the prison.[14] Plaintiffs argue that Defendants failed to provide the minimum standards for the operation and management of Louisiana jails, set forth in Title 22, Part III, Subpart 2 of the Louisiana Administrative Code ("LAC").[15] Plaintiffs contend that Title 22 of the LAC requires prisons to provide inmates with clean linen and bedding upon admission and at least once a week thereafter, disinfection of inmates' mattresses, pillows and

---

[10] *Id.* at ¶¶ 87, 90, 92, 93.
[11] *Id.* at ¶¶ 100, 102, 104, 107. *See also* footnote 5, *supra*.
[12] *Id.* at ¶ 106.
[13] *Id.* at ¶¶ 109, 112, 114, 116.
[14] *Id.* at ¶¶ 91, 105, 115.
[15] *Id.*

mattress covers, daily access to showers, and to classify and transfer new inmates to an appropriate housing area no later than 48 hours after placing them in individual intake holding cells.[16]

Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and a putative class of similarly situated individuals, defined as follows:

> All detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells. The class period commences when this practice began, including but not limited to the time period commencing on March 22, 2019, and extends to the date on which St. Tammany Parish is enjoined from, or otherwise ceases, enforcing its policy, practice and custom of refusing to abide by appropriate detention and housing standards to all pre-trial detainees admitted to the St. Tammany Parish Jail and held in the intake and/or holding cell area. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.[17]

Named as defendants in the Complaint are: (1) the St. Tammany Parish Government a/k/a St. Tammany Parish Council; (2) the St. Tammany Parish Sheriff's Office; (3) Randy Smith, in his individual and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present; (4) Rodney J. Strain, in his individual and official capacity as Sheriff of St. Tammany Parish from 1996 until 2016; (5) Greg Longino, in his individual and official capacity as Warden of the St. Tammany Parish Jail from "all relevant times and until October 11, 2019;" and (6) Lacey Kelly, in her

---

[16] *Id.* at ¶¶ 36-51.
[17] *Id.* at ¶ 24.

individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times."[18]  Plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described above violate the Fourteenth Amendment to the United States Constitution, a class-wide injunction enjoining Defendants from continuing such policies, practices and/or customs, and an award of compensatory and punitive damages on behalf of the class, as well as attorney's fees and costs.[19]

### B. The Motion for Preliminary Injunction

Plaintiffs filed the instant Motion for Preliminary Injunction on April 3, 2020, and requested expedited consideration thereof in light of COVID-19 and "the deadly threat that worsens by the hour."[20]  Plaintiffs seek an Order granting the following emergency relief through a preliminary injunction, to be enforced through May 31, 2020:

1. Enjoining Defendants from housing pretrial detainees in a manner that violates Title 22 of the LAC and fails to maintain social distancing, as defined by interim guidelines published by the Center for Disease Control (the "CDC Guidelines"), including, but not limited to, enjoining Defendants from housing pretrial detainees in group holding cells;

2. Enjoining Defendants from holding any pretrial detainee in a group holding cell for more than 48 hours without classification and transfer to an appropriate housing area;

3. Enjoining Defendants from permitting any inmate demonstrating any symptom of COVID-19, including fatigue, fever, and persistent dry cough, to remain in any group holding cell with any pretrial detainee;

4. Requiring Defendants to provide pretrial detainees with soap and fresh water in accordance with the CDC Guidelines;

---

[18] *Id*. at ¶¶ 12-23.
[19] *Id*. at ¶¶ 3, 128-129, 153-156.
[20] R. Doc. 12 at p. 1.  The Court granted expedited consideration on April 3, 2020.  (R. Doc. 16).

5. Requiring Defendants to provide pretrial detainees with daily access to showers in accordance with Title 22 of the LAC and the CDC Guidelines;

6. Requiring Defendants to provide pretrial detainees with clean clothing in accordance with Title 22 of the LAC and the CDC Guidelines;

7. Requiring Defendants to implement and maintain a cleaning/sanitizing schedule for all cells housing pretrial detainees in accordance with the CDC Guidelines;

8. Requiring Defendants to provide detainees with sanitary bedding in accordance with Title 22 of the LAC and the CDC Guidelines;

9. Requiring Defendants to file a report, every 48 hours, indicating the number of persons or staff who have contracted or who are suspected of contracting COVID-19, the number of persons in quarantine, and the Defendants' compliance or non-compliance with the Court's Order; and

10. Any other relief the Court deems appropriate and necessary.[21]

Plaintiffs seek the foregoing relief based upon the allegations in their Complaint, including the 2012 DOJ investigation and alleged violations of Title 22 of the LAC.[22] Plaintiffs also rely upon two televised news stories by FOX8 News in New Orleans,[23] as well as evidence regarding the global health emergency caused by the recent outbreak of COVID-19, which the World Health Organization declared a global pandemic on March 11, 2020.[24] Plaintiffs note that, as of the date of the Motion, there were over a million confirmed cases of COVID-19 worldwide, and more than 51,000

---

[21] *Id.* at p. 2.
[22] R. Doc. 12-1 at pp. 2-5.
[23] R. Doc. 12-1 at p. 5 (*citing* https://www.fox8live.com/2020/02/27/zurik-st-tammany-jail-keeping-inmates-holding-cells-weeks-violating-states-minimum-jail-standards/; https://www.fox8live.com/2020/03/06/zurik-jail-numbers-show-crowded-holding-cells-are-isolated-st-tammany-jail/) (Plaintiffs' Exhibit Nos. 7 & 8, admitted at April 10, 2020 Hearing).
[24] R. Doc. 12-1 at p. 5 (*citing* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen ).

deaths worldwide.[25]  Plaintiffs assert that on March 11, 2020, the Governor of Louisiana declared a statewide public health emergency in response to the threat posed by COVID-19.[26]  On March 23, 2020, the Governor prohibited any gatherings of 10 people or more, and issued a general stay-at-home order, directing citizens to stay home unless performing an essential activity.[27]  Plaintiffs note that, as of the date of their Motion, Louisiana had reported over 9,000 confirmed cases of COVID-19, and a total of 309 deaths.[28]  Plaintiffs also cite a March 29, 2020 Washington Post article, which reported that another federal prison in Louisiana had been affected by the virus, with one inmate death, one guard in intensive care, 30 inmates testing positive, and 60 inmates placed in quarantine.[29]

Plaintiffs also cite extensively to the CDC Guidelines, which provide "recommended best practices specifically for correctional and detention facilities" for managing COVID-19 based upon information known as of March 23, 2019.[30]  Plaintiffs point out that the CDC Guidelines encourage facilities to begin implementing intensified cleaning and disinfecting procedures, reinforcing healthy hygiene practices, encouraging good hand hygiene, and providing

---

[25] R. Doc. 12-1 at p. 6 (*citing* https://coronavirus.jhu.edu/map.html) (Plaintiffs' Exhibit No. 9, admitted at April 10, 2020 Hearing).

[26] R. Doc. 12-1 at p. 6 (*citing* R. Doc. 12-4) (Plaintiffs' Exhibit No. 2, admitted at April 10, 2020 Hearing).

[27] R. Doc. 12-1 at p. 6 (*citing* R. Doc. 12-4) (Plaintiffs' Exhibit No. 9, admitted at April 10, 2020 Hearing).

[28] R. Doc. 12-1 at pp. 6-7 (*citing* http://ldh.la.gov/coronavirus/).

[29] R. Doc. 12-1 at p. 7 (*citing* https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html).  The Court notes that this article is referenced in Plaintiffs' Complaint, but was not offered into evidence at the April 10, 2020 Hearing on the Motion for Preliminary Injunction.

[30] R. Doc. 12-1 at pp. 7-9 (*citing* R. Doc. 12-7) (Plaintiffs' Exhibit No. 5, admitted at April 10, 2020 Hearing).

detained/incarcerated persons and staff no-cost access to soap, running water, and hand drying machines or disposable paper towels.[31]  The CDC Guidelines also recommend implementing social distancing strategies to increase the physical space between incarcerated/detained persons, and enforcing increased space between individuals in holding cells.[32]  Plaintiffs assert that, despite the media coverage, the CDC Guidelines, and the instant lawsuit, Defendants are continuing to practice the same unlawful and dangerous policies and practices that have existed since at least 2012, as set forth in their Complaint.  Plaintiffs claim that the St. Tammany Parish website and the St. Tammany Parish Sheriff's Office website offer no jail-specific information regarding COVID-19 and prison conditions at the St. Tammany Parish Jail.[33]

Turning to the legal basis for the preliminary injunction, Plaintiffs recognize that, in order to obtain injunctive relief, they bear the burden of proving: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest.[34]  Plaintiffs assert that all four requirements are met in this case, and that they are entitled to an Order

---

[31] R. Doc. 12-1 at pp. 8-9 (*citing* R. Doc. 12-7 at pp. 9-10) (Plaintiffs' Exhibit No. 9, admitted at April 10, 2020 Hearing).

[32] R. Doc. 12-1 at p. 9 (*citing* R. Doc. 12-7 at p. 11).

[33] R. Doc. 12-1 at p. 9 (*citing* http://www.stpgov.org/; https://www.stpso.com/) (Plaintiffs' Exhibit Nos. 13 & 14, admitted at April 10, 2020 Hearing).

[34] R. Doc. 12-1 at p. 10 (citing *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008)).

enjoining Defendants from maintaining prison conditions for pre-trial detainees that violate Title 22 of the LAC, the CDC Guidelines and the Fourteenth Amendment.[35]

Plaintiffs contend that they are likely to succeed on the merits of their Fourteenth Amendment claim regarding conditions of confinement because the prison conditions in question – overcrowding, infrequent showers, vomit on the floor, filth, dirty clothing, and unhygienic conditions – significantly increase the risk that detainees will contract, and then spread, a highly contagious, life-threatening virus.[36] Plaintiffs assert that the Supreme Court has recognized that government authorities may be deemed "deliberately indifferent" to an inmate's health problems where authorities ignore a condition of confinement that is very likely to cause serious illness in the future, including exposure to a serious, communicable disease, even when the inmate shows no serious, current symptoms.[37]

Regarding the second requirement, Plaintiffs assert that the threatened harm, contracting a highly contagious virus, is substantial because COVID-19 is often deadly.[38] Plaintiffs point out that several federal courts, including one court in the Fifth Circuit, have recognized the grave threat that COVID-19 poses to individuals held in jails and other detention facilities.[39] Plaintiffs maintain that the risk that

---

[35] R. Doc. 12-1 at p. 10.
[36] *Id.* at p. 11.
[37] *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993)) (quotation marks omitted).
[38] R. Doc. 12-1 at p.12.
[39] *Id.* at p. 12 (citing *United States v. Muniz*, Civ. A. No. 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (noting that "news reports of the virus's spread in detention centers within the United States . . . demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection [from COVID-19].") (citations omitted); *United States v. Stephens*, Civ. A. No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) ("[I]nmates may be at a heightened risk of contracting COVID-19 should an outbreak develop.") (citations omitted); *United*

they will face a severe and possibly fatal infection if they remain in the present prison conditions constitutes irreparable harm warranting the issuance of a preliminary injunction.[40] Plaintiffs assert that the third requirement is also met because the threatened injury, contracting a deadly virus, outweighs any harm that will result if the injunction is granted. Plaintiffs contend that no harm would result from the issuance of the injunction, and claim that Defendants and their families will actually be safer if the injunction is granted.[41] Finally, Plaintiffs argue that an injunction will not disserve the public interest and, instead, will further the public's interest in trying to slow the spread of COVID-19.[42] Plaintiffs point out that pre-trial detainees are housed for a relatively short period of time and are often released back into the community, and that the injunction will prevent unnecessary illness in a group of people who will soon return to live among the general population. Plaintiffs also claim that an injunction will protect jail staff from unnecessary exposure to the virus and potentially bringing it home to their families.[43] Arguing that all four factors are met in this case, Plaintiffs seek emergency injunctive relief.

Defendants oppose the Motion, emphasizing that Plaintiffs' Complaint does not challenge the sanitary conditions of the jail at large or the jail's response to COVID-19, and raises only conditions of confinement claims related to the conditions

---

*States v. Garlock*, 18-cr-418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) ("By now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided.")).

[40] R. Doc. 12-1 at p. 13 (citations omitted).

[41] *Id.* at pp. 13-14.

[42] *Id.* at p. 14.

[43] *Id.* at p. 14.

of temporary holding cells.[44] Defendants argue that Plaintiffs have not shown that they are entitled to a preliminary injunction because Plaintiffs have failed to show a substantial likelihood of success on the merits of the claims alleged in the Complaint, and have failed to show a substantial likelihood of irreparable harm.[45] Defendants rely upon the Affidavit of Warden Lacey Kelly, and attachments thereto, which outlines the extensive precautions implemented by the St. Tammany Parish Sheriff's Office since March 13, 2020, to reduce the risk of COVID-19 transmission within the jail.[46] Warden Kelly's Affidavit reflects that the jail has instituted several procedures, including prohibiting all visitors and screening all jail employees, inmates and arrestees for COVID-19 symptoms. Specifically, the Affidavit states that all arrestees are screened by jail medical staff and, as part of the screening efforts, their temperatures are taken and documented and the individuals are asked whether they have experienced symptoms in the prior 24 hours, including: (1) fever or chills; (2) cough, (3) sore throat; and (4) shortness of breath or difficulty breathing.[47] Individuals are also asked if they have had contact with someone known to be infected with COVID-19 within the last 14 days.[48]

The St. Tammany Parish Sheriff's Office has also created two sanitation crews to sanitize high-touch areas each day, is providing each housing unit with dedicated cleaning supplies twice daily to clean and disinfect surfaces, and provides each

---

[44] R. Doc. 37 at pp. 1, 14.
[45] *Id*. at p. 1.
[46] R. Doc. 37-1 (Defendants' Exhibit No. 1, admitted at April 10, 2020 Hearing).
[47] R. Doc. 37-1 at p. 5.
[48] R. Doc. 37 at pp. 4-5 (*citing* R. Doc. 37-1 at ¶ 30).

inmate with personal hygiene items, including one bar of soap, upon their admission to the general population.[49] All inmates, including those in holding cells, have access to hot and cold water for hand washing. Specifically regarding pre-trial detainees, the Affidavit reflects that pre-trial detainees are provided an initial allotment of toiletries upon their arrival, including a bar of soap, are able to shower every Monday, Wednesday and Friday, and are provided a blanket upon entry into the facility, which is collected each morning and laundered.[50] Finally, registered nurses check on the pre-trial detainees at least three times per day.[51] Defendants advise that as of April 8, 2020, there were 12 pre-trial detainees housed among the four temporary holding cells.[52]

Defendants assert that, in the event that an inmate or arrestee is suspected of COVID-19, the person is declared a "Person Under Investigation" (a "PUI"), and is provided a surgical mask to wear at all times during his medical isolation period.[53] A PUI is then placed in medical isolation and administered a flu test and, if negative, the jail medical staff will seek approval to administer a COVID-19 test. The PUI will remain in medical isolation until the test results are returned.[54] If the test returns positive, the PUI will remain in isolation and get transferred to one of two designated COVID-19 facilities established by the Louisiana Department of Corrections.[55] If any inmate is presumed positive for COVID-19, the jail has enacted quarantine

[49] R. Doc. 37 at p. 5 (*citing* R. Doc. 37-1 at ¶¶ 40, 43, 44, 46).
[50] R. Doc. 37 at p. 7 (*citing* R. Doc. 37-1 at ¶¶ 51, 53, 54, 55).
[51] R. Doc.37-1 at ¶ 54.
[52] R. Doc. 37 at p. 7.
[53] *Id.* at p. 9 (*citing* R. Doc. 37-1 at ¶ 33).
[54] R. Doc. 37 at p. 9 (*citing* R. Doc. 37-1 at ¶¶ 33, 34).
[55] R. Doc. 37 at p. 9 (*citing* R. Doc. 37-1 at ¶ 35).

precautions for his housing unit, which will be quarantined until the individual's test results are returned. The individuals quarantined in the housing unit will be checked at least twice daily by medical staff for any symptoms of COVID-19, including temperature reads.

If the COVID-19 test returns negative, the quarantine of the housing unit will be lifted.[56] If, however, the test returns positive, the entire housing unit will be quarantined for at least 14 days from the date of the result. Further, if any inmate within the quarantined housing unit begins to show symptoms, is declared a PUI, and receives a positive COVID-19 test result, the entire quarantine process must restart completely.[57] Defendants point out that inmate movement has been restricted to reduce traffic and promote social distancing, and the jail lobby is cleaned nearly every hour.[58] Defendants assert that the foregoing efforts have proven successful because there had been no confirmed or presumptive cases of COVID-19 in the jail as of the date of the Opposition brief.[59] Defendants also note that, in response to a letter issued by Chief Justice Bernette Johnson of the Louisiana Supreme Court, urging a risk-based assessment of all detainees, they have been working with the judges and the probation office of the Twenty-Second Judicial District Court, as well as the Louisiana Department of Corrections, to review the pre-trial population in an effort to reduce the jail population. Between March 13, 2020

---

[56] R. Doc. 37 at p. 10 (*citing* R. Doc. 37-1 at ¶¶ 38).
[57] R. Doc. 37 at p. 10 (*citing* R. Doc. 37-1 at ¶ 39).
[58] R. Doc. 37 at pp. 11-12 (*citing* R. Doc. 37-1 at ¶¶ 67, 68, 30(i)).
[59] R. Doc. 37 at p. 2.

and April 8, 2020, the total jail population at St. Tammany Parish Jail was reduced by 131.[60]

Turning to the merits of Plaintiffs' Motion, Defendants assert that Plaintiffs fail to allege any specific allegations pertaining to the three named plaintiffs or the jail's efforts to respond to the pandemic. Instead, Plaintiffs rely upon their prior allegations and their "belief" that the jail conditions allegedly dating back to 2012, as described in the July 2012 letter from the DOJ, continue to exist despite the global sea-change that has occurred as a result of COVID-19.[61] Although an applicant seeking a preliminary injunction must meet the four requirements set forth in Plaintiffs' Motion, Defendants contend that a mandatory injunction, such as the one requested by Plaintiffs, is held to an even higher standard and requires proof of clear entitlement to the relief sought.[62]

Addressing the four requirements which Plaintiffs must prove before the Court may issue a preliminary injunction, Defendants assert that Plaintiffs cannot show a likelihood of success on the merits of their case. Defendants contend that demonstrating a likelihood of success on the merits is a free-standing requirement, and failure to satisfy this initial prong is fatal to any application for injunctive relief.[63] Defendants assert that the Court need not conclude that Plaintiffs will definitely lose on the merits, only that Plaintiffs have not met the demanding burden of showing a clear entitlement to immediate, extraordinary relief. To overcome this burden,

---

[60] *Id.* at p. 12.
[61] *Id.* at pp. 13-14.
[62] *Id.* at p. 15 (citing cases).
[63] *Id.*

14

Defendants argue that Plaintiffs must show not merely that success is a possibility, but that it is likely.[64]

Defendants further assert that plaintiff, Klabert Joseph Guillot, Jr., remains incarcerated at St. Tammany Parish Jail and lacks standing to pursue these claims because Plaintiffs have not provided any evidence that he has exhausted his administrative remedies under the Administrative Remedy Procedure in place at the jail.[65] Defendants point out that the Prison Litigation Reform Act ("PLRA"), as amended, provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[66] Defendants point out that federal courts have strictly interpreted this exhaustion requirement, and that the Supreme Court has held that the exhaustion requirement is mandatory.[67] Defendants assert that the Fifth Circuit has held that the mandatory exhaustion requirement cannot be excused by a federal court, stating the following:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that *Underwood* [*v. Wilson*, 151 F.3d 292 (5th Cir. 1998),] has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. District courts have no discretion to excuse a prisoner's failure to properly exhaust

---

[64] *Id*. at pp. 15-16 (citing *Winter v. NRDC, Inc.*, 555 U.S 7, 20-22, 129 S.Ct. 365, 374-75, 172 L.Ed.2d 249 (2008)).

[65] R. Doc. 37 at p. 16.

[66] *Id*. (*quoting* 42 U.S.C. § 1997e(a)) (internal quotation marks omitted).

[67] R. Doc. 37 at p. 16 (citing *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002)).

the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.[68]

Defendants assert that Guillot, Jr. never initiated or completed the administrative remedy process before filing the instant action and, as such, he cannot show that he is likely to succeed on any claim related to the conditions of the St. Tammany Parish Jail.[69] Defendants note that the PLRA states that no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation.[70]

Defendants further assert that all three plaintiffs lack standing to seek injunctive relief because Baqer and Klabert Joseph Guillot, Sr. were not in custody at the time they filed the instant Motion, and Guillot, Jr. was no longer in a holding cell at that time.[71] As such, Defendants argue the injunctive relief requested would not redress any "injury" suffered by them. Defendants maintain that standing for each requested form of relief must exist at the time the action is filed.[72]

Additionally, Defendants assert that Plaintiffs' Fourteenth Amendment claims, as expressed in the Complaint, are not likely to succeed because this Court has previously dismissed similar allegations regarding the condition of the holding

---

[68] R. Doc. 37 at p. 17 (quoting *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir 2012)) (emphasis added by Defendants; footnote omitted).

[69] R. Doc. 37 at p. 17 (*citing* R. Doc. 37-1 at ¶¶ 22-23).

[70] R. Doc. 37 at p. 18 (*citing* 18 U.S.C. § 3626(a)).

[71] R. Doc. 37 at p. 23.

[72] *Id.* at p. 25 (citing *Nielsen v. Preap*, 139 S.Ct. 954, 976, 203 L.Ed.2d 333 (2019) (Kavanaugh, J., concurring)).

cells at St. Tammany Parish Jail, concluding that a violation of a state administrative code is not, by itself, a basis for federal relief.[73] Specifically, this Court held that an allegation by a pre-trial detainee that he was held with 28 other inmates for 15 days in various unsanitary holding cells at the St. Tammany Parish Jail did not rise to the level of a federal constitutional violation, and that the plaintiff in that matter had not alleged any punitive intent on the part of the jail. Defendants assert that the Plaintiffs in this case have, likewise, not alleged any facts to indicate the conditions of the holding cells stemmed from a punitive motive.[74] Defendants further assert that Title 22 of the LAC does not support the broad relief sought by Plaintiffs because the LAC provides that, "[n]ew arrivals may be housed in **individual** intake holding cells for a maximum of 48 hours before being classified and transferred to an appropriate housing area."[75] Defendants point out that the St. Tammany Parish Jail does not use individual holding cells and, instead, uses group holding cells, which are not subject to this 48-hour state code requirement.[76]

Defendants assert that Plaintiffs also cannot show that the Defendants' acts or omissions in implementing protocols to combat the risk of COVID-19 pose an unreasonable risk of harm to inmates. Such an examination "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to

[73] R. Doc. 37 at p. 19 (citing *Allen v. St. Tammany Parish*, Civ. A. No. 17-4091, 2018 WL 558503 (E.D. La. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 537495 (E.D. La. Jan. 24, 2018)).
[74] R. Doc. 37 at pp. 19-20 (quoting *Allen*, Civ. A. No. 17-4091, 2018 WL 558503, at *4) (internal quotation marks omitted).
[75] R. Doc. 37 at p. 20 (*quoting* La. Admin. Code Title 22, Chapter 33, § 3301(F)) (emphasis added by Defendants).
[76] R. Doc. 37 at p. 20.

such a risk."[77]  Defendants contend that the jail has implemented the same risk-reduction practices that are recommended for the community at-large – providing hand sanitizer, frequently disinfecting high-touch areas, quarantining PUIs, quarantining individuals for 14 days if they have left the secure perimeter of the jail, quarantining the housing units of PUIs, restricting larger gatherings, limiting inmates' exposure to members of the community, decreasing movements around the facilities, and screening all individuals who enter the facilities for COVID-19 symptoms.  Although complete social distancing and isolation is not possible for each inmate, Defendants argue that Plaintiffs have not shown that the risk posed by the jail's practices raises the Plaintiffs', or any jailed inmate's, risk of exposure to COVID-19 substantially over the risk experienced by the outside community.[78]

Defendants point out that, "[A] preliminary injunction will not be issued simply to prevent the **possibility** of some remote future injury."[79]  Defendants maintain that a party seeking a preliminary injunction must show that the threatened harm is "more than mere speculation."[80]  Defendants argue that, because there have been no presumptive or confirmed cases of COVID-19 at the St. Tammany Parish Jail, Plaintiffs are unable to satisfy the irreparable injury requirement for injunctive relief.  As to the third and fourth prongs that Plaintiffs' must satisfy to obtain a preliminary injunction, Defendants assert that the relief sought would impose a

---

[77] *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993)) (emphasis in the original)
[78] R. Doc. 37 at p. 22 (citation omitted).
[79] *Id.* at p. 26 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)) (internal quotation marks omitted; emphasis added by Defendants).
[80] R. Doc. 37 at p. 26 (quoting *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011)).

remarkable level of intrusion on the jail's day-to-day operations which is not warranted in light of the extensive precautions already in place at the jail to reduce the risk of COVID-19 transmission.[81] Finally, Defendants maintain that Plaintiffs' Motion is based only upon "unsworn allegations and a hunch," which is not enough to warrant the drastic remedy of mandatory injunctive relief.[82] As such, Defendants assert the Motion should be denied.

## II.  LEGAL STANDARD

### A. Preliminary Injunction

To obtain a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[83] "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."[84] "Additionally, in accordance with the Prison Litigation Reform Act ('PLRA'), preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the

---

[81] R. Doc. 37 at p. 28.
[82] *Id.* at pp. 29-30.
[83] *Janvey*, 647 F.3d at 595; *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).
[84] *Planned Parenthood of Houston & Se. Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (quoting *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara* 335 F.3d 357, 363 (5th Cir. 2003) (internal quotation marks omitted).

violation of the federal right, and be the least intrusive means necessary to correct the harm."[85]

## B. Due Process rights of pre-trial detainees

The Supreme Court has long-held that, "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'"[86] The Supreme Court has also recognized, however, that although a prisoner's rights may be diminished by the needs and exigencies of the institutional environment, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country."[87] The Supreme Court has further held that, "[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."[88]

In evaluating the constitutionality of conditions or restrictions of pre-trial detention, the proper inquiry is whether the conditions amount to punishment of the detainee.[89] The Supreme Court has held that a particular condition or restriction of pre-trial detention does not constitute "punishment" if it is reasonably related to a

---

[85] *Hood v. Vessel*, Civ. A. No. 13-303-JJB-SCR, 2013 WL 12121562, at *1 (M.D. La. May 14, 2013) (*citing* 18 U.S.C. § 3626(a)).

[86] *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)).

[87] *Wolff*, 418 U.S. at 555-56, 94 S.Ct. at 2974.

[88] *Id*, 418 U.S. at 556, 94 S.Ct. at 2975 (citations omitted).

[89] *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979).

legitimate governmental objective.[90]  "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if  it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."[91] Additionally, "Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."[92]  Further, "the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences."[93] "[S]uch judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimus* level of imposition on pretrial detainees."[94]  The Fifth Circuit has also recognized that, "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."[95]  The Fifth Circuit has instructed that, "The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that

---

[90] *Id.*, 441 U.S. at 539, 99 S.Ct. at 1874.  *See Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) ("courts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'") (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

[91] *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.

[92] *Id.* (citations omitted).

[93] *Allen v. St. Tammany Parish*, Civ. A. No. 17-4091, 2018 WL 558503, at *3 (E.D. La. Jan. 2, 2018).

[94] *Id.* (citations omitted).

[95] *Gates v. Cook*,  376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

mark the progress of a maturing society' and not the standards in effect during the time of the drafting of the Eighth Amendment."[96]

## III. ANALYSIS

### A. Plaintiffs have failed to meet their burden to obtain a preliminary injunction.

#### 1. *Baqer and Guillot, Sr. have standing to seek injunctive relief, but Guillot, Jr. does not.*

For a plaintiff to establish standing to sue, he must show that: (1) he has suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision.[97] The party invoking federal jurisdiction bears the burden of establishing these elements.[98]

Here, Defendants argue that Plaintiffs lack standing to seek injunctive relief. Specifically, they argue that Baqer and Guillot, Sr. lack standing to seek injunctive relief because they were not in custody at the time Plaintiffs filed the instant Motion for Preliminary Injunction on April 3, 2020.[99] The record reflects that Plaintiff Baqer was moved from the pre-trial holding cells to the general jail population on December

---

[96] *Gates*, 376 F.3d at 332-33 (quoting *Estelle v. Gamble*, 429 US. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

[97] *Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal quotations omitted).

[98] *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136 (citation omitted).

[99] R. Doc. 37 at pp. 23-26; *See* R. Doc. 12.

19, 2019 and released from jail on December 20, 2019.[100]  Guillot, Sr. was moved to the general jail population on January 4, 2020.[101]

Defendants argue that Plaintiffs have not pled facts sufficient to show that the third factor, redressability, is met.[102]  None of the three plaintiffs are currently housed in the St. Tammany Parish Jail's holding cells, and two of the plaintiffs have been released from custody altogether.[103]  Nonetheless, Plaintiffs filed this action on behalf of themselves and a purported class, and the Court has jurisdiction to certify a class action when there is no chance that the named plaintiff's expired claim will reoccur.[104]  According to the Supreme Court, "Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."[105] "When the claim on the merits is 'capable of repetition, yet evading review,' the

---

[100] R. Doc. 1, at ¶ 92, 93.
[101] R. Doc. 1, at ¶ 116.
[102] R. Doc. 37 at pp. 23-26.
[103] *Id.* at p. 24.
[104] *United States Parole Commission v. Geraghty*, 445 U.S. 388, 403-04, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980) (internal citations omitted).
[105] 445 U.S. at 399, 100 S.Ct. at 1210.  The Supreme Court cites its decision and commentary in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct 854, 43 L.Ed.2d 54 (1975), in which the named plaintiffs' pretrial detention had ended during the litigation.  *See Gerstein*, 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n.11  ("This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. . . .  The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class.  Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain.  The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.").

named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation."[106]

The Court finds that the facts of this case fall squarely within the "capable of repetition, yet evading review" doctrine, and that Defendants' argument to the contrary lacks merit. According to the Supreme Court:

> A dispute falls into that category, and a case based on that dispute remains live, if (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.[107]

Considering the testimony of Baqer and Guillot, Jr., presented during the April 10, 2020 hearing, the Court finds there is potential for reoccurrence of their expired claims. Both plaintiffs testified that they were arrested and placed in holding cells more than once in the past year, and Baqer testified that he had been arrested and placed in St. Tammany Parish jail twice within the last year. Further, the Court finds Plaintiffs' counsel can acquire other clients with a "continuing live interest in the case," and counsel has already expressed that he has potential class members.[108]

Defendants further assert, however, that Guillot, Jr. also lacks standing to pursue injunctive relief because he remains incarcerated at the St. Tammany Parish Jail and has failed to exhaust available administrative remedies, as required by the

---

[106] *Geraghty*, 445 U.S. at 398, 100 S.Ct. at 1209. Although this doctrine, "capable of repetition, yet evading review," was established outside of the class-action context, it has been applied in pretrial detention cases. *Id.*
[107] *Turner v. Rogers*, 564 U.S. 431, 439-440, 131 S.Ct. 2507, 2515, 180 L.Ed.2d 452 (2011) (citing *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)).
[108] *Geraghty*, 445 U.S. at 399, 100 S.Ct. at 1210 (quotation omitted).

PLRA.[109]  This requirement is "mandatory" and "applies to all prisoners seeking redress for prison circumstances or occurrences."[110]  The Fifth Circuit has held that:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. . . . District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.  It is irrelevant whether exhaustion is achieved during the federal proceeding.  Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.[111]

After careful review of the record, the Court finds that Plaintiffs have not provided any evidence whatsoever that Guillot, Jr. either began or exhausted his administrative remedies at St. Tammany Parish Jail prior to filing this suit.  During the April 10, 2020 hearing on the Motion for Preliminary Injunction, Guillot, Jr. testified, confirming that he remains incarcerated at St. Tammany Parish Jail, though no longer in a holding cell.  Guillot, Jr. was asked whether he filed a grievance with the jail regarding the conditions of the holding cell, or any other conditions of his confinement, and he responded that he had not.  Because Plaintiffs have not put forth any evidence showing that Guillot, Jr. complied with St. Tammany Parish Jail's grievance system prior to filing this suit, the Court finds that Guillot, Jr. lacks standing to request injunctive relief.  Accordingly, Plaintiffs' Motion for Preliminary Injunction is denied to the extent that Plaintiffs' seek injunctive relief on behalf of Guillot, Jr.  The Court now turns its analysis to the requirements for an issuance of a preliminary injunction.

---

[109] R. Doc. 37 at pp. 16-18 (*citing* 42 U.S.C. § 1997e(a)).
[110] *Porter v. Nussle*, 534 U.S. 516, 520, 524, 122 S.Ct. 983, 986, 988, 152 L.Ed.2d 12 (2002).
[111] *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

## 2. First prong for a preliminary injunction: substantial likelihood of success on the merits.

Turning to the first factor required to obtain a preliminary injunction, the Court must determine whether Plaintiffs have shown a substantial likelihood of success on the merits of their Fourteenth Amendment claim.[112] Plaintiffs argue that they are likely to succeed on the merits of their Fourteenth Amendment claim based upon the increased risk of contracting COVID-19,[113] an issue that was not raised in Plaintiffs' Complaint. Plaintiffs assert that the prison conditions in question – overcrowding, infrequent showers, vomit on the floor, filth, dirty clothing, and unhygienic conditions – significantly increase the risk that pre-trial detainees will contract, and then spread, a highly contagious, life-threatening virus.[114] In support of that argument, plaintiffs have offered several exhibits which provide information regarding the COVID-19 pandemic as well as the spread of the virus.[115] In their brief in support of their Motion for Preliminary Injunction, Plaintiffs appear to contend that the Defendants have been "deliberately indifferent" to overcrowding and unsanitary confinement issues, which are likely to lead to significant health issues in light of the COVID-19 pandemic.[116] Plaintiffs clarified their position during closing argument at the April 10, 2020 hearing, during which they argued that the evidence in the record substantiates that the Defendants acted punitively in this matter and

---

[112] The Court notes that Plaintiffs do not seek injunctive relief based upon their claims for alleged violations of the Louisiana Constitution, or their claims for negligence and *respondeat superior*. (R. Doc. 12-1 at pp. 10-11. *See* R. Doc. 1 at pp. 18-23).

[113] R. Doc. 12-1 at pp. 10-11.

[114] R. Doc. 12-1 at p. 11.

[115] Plaintiffs' Exhibit Nos. 5, 9 & 11, admitted at April 10, 2020 Hearing.

[116] R. Doc. 12-1 at p. 11.

that, while their Complaint does not mention COVID-19, coronavirus, or any other reference to risk of infection, their assertion of overcrowding naturally poses a risk of infection and disease.

This Court's initial inquiry is focused solely on whether Plaintiffs have borne their burden of providing evidence to show a substantial likelihood of success on the merits of the allegations in their March 22, 2020 Complaint. They have not done so. The evidence provided by Plaintiffs at the April 10, 2020 hearing confirmed the COVID-19 pandemic, both nationally and locally, and confirmed the requirements regarding inmate housing set forth in the Louisiana Administrative Code.[117] Neither of those matters were contested. As the Court noted at the outset of the hearing, it is well aware of the pandemic and the restrictions put in place by governments and other entities. Further, this Court does not find it necessary to make a determination regarding whether any violation of the Louisiana Administrative Code was proven because Plaintiffs' burden is to prove a federal law or constitutional violation. The issue to be addressed by the Court in analyzing the first prong of the requirements for the issuance of a preliminary injunction is whether Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the conditions of their confinement in the holding cells at St. Tammany Parish Prison violate their constitutional rights.

Prior to the hearing, Plaintiffs largely relied on the July 2012 letter by the DOJ, which showed overcrowded holding cells in the St. Tammany Parish Jail at that

---

[117] Plaintiffs' Exhibit Nos. 2, 3, 4, 5, 6, 9 , 10, 11, 12, 13, 14, 15, admitted at April 10, 2020 Hearing.

time.[118]  As an initial matter, and after a detailed review of that 2012 letter, the Court makes the following findings.  First, the letter clearly states that it was produced in response to a 2011 investigation and evaluation, which gives the Court pause as to its relevance regarding current conditions in the jail.  Second, the thrust of the DOJ's letter and investigation concerned the availability of mental health evaluations and treatment for inmates at that time.  In fact, the 22-page letter includes only five sentences (one paragraph) describing what is referred to as deplorable conditions in the holding cells.  Finally, regarding the 2012 DOJ letter, the Court notes that the Defendants have responded to that evidence with a follow-up letter from the DOJ dated January 31, 2017, in which the DOJ referenced the July 2012 letter and concluded that the St. Tammany Parish Jail had implemented significant reforms and that the investigation was now closed.[119]  The 2017 letter mentions that, "we [Department of Justice] have noted a change in culture and practice at the Jail that gives us confidence that St. Tammany will continue its efforts to improve care for prisoners."[120]  Thus, to the extent that Plaintiffs rely on the 2012 DOJ letter to support their burden of showing a substantial likelihood of success on the merits of their Complaint, the Court finds that evidence insufficient.  The Court notes the age of the letter and, more importantly, the 2017 follow-up letter, which clearly indicates that the St. Tammany Parish Jail had taken positive steps in both culture and practice.

---

[118] Plaintiffs' Exhibit No. 1, admitted at April 10, 2020 Hearing.
[119] R. Doc. 37-1 (Defendants' Exhibit No. 1, admitted at April 10, 2020 Hearing).
[120] *Id.*

At the April 10, 2020 hearing in this matter, Plaintiffs offered the testimony of Baqer and Guillot, Jr. Baqer testified that he remained in an overcrowded holding cell at St. Tammany Parish Jail for 16 days. He described the holding cell as "always dirty," with urine, food and food wrappers on the floor. He further testified that there was at least one individual who was detoxing and vomited on the floor, which was not cleaned up for several hours. Both Baqer and Guillot, Jr. testified that they were allowed showers at least twice per week and possibly three times per week. Guillot, Jr. recalled that showers were allowed on Mondays, Wednesdays and Fridays of each week. Baqer testified that he was allowed to shower twice a week during one week, and three times a week during the following week. Baqer testified that he was denied medical care because the jail did not provide him with anxiety and depression medication, but clarified under cross-examination that he did not have the medication with him at the time of his arrest. Baqer acknowledged that a nurse or medical assistant came to the holding cells three times per day to provide medical care but "they didn't do anything for anybody." Baqer testified that the detainees were provided a blanket in the evening, which was clean, but that it was torn, gray, and scratchy. No other bedding was provided and the detainees had to sleep on the floor with the blanket.

Guillot, Jr. also testified to overcrowded and unsanitary conditions while he was in the holding cells. He testified that there was food and trash on the floor, and that the floors smelled like urine. Guillot, Jr. testified that he was in the holding cells between 16 and 19 days. He acknowledged that he could not swear to the actual

day count because he did not have access to a calendar. His recollection was that there were about 30 detainees in the holding cells most of the time, and that there were 37 detainees in his holding cell on New Year's Day. The Court notes, but is unable to reconcile, the conflict between Guillot, Jr.'s testimony regarding the number of people detained with him and the facts as alleged in the Complaint, which states that he was housed with 19 other detainees.[121] Guillot, Jr. also testified that the detainees were provided a blanket in the evening, but that it was "usually damp, wet, or musty." He further testified that the detainees were provided with one clean set of jumpers after each shower, but were not provided socks or underwear. Guillot, Jr. testified that he was currently in quarantine, as required by jail policy, because he had been brought outside the jail for medical care. He testified that the policy was that any returning inmate must be quarantined for 10 or 14 days upon his return to prevent the spread of any disease. Guillot, Jr. was not aware of any cases of COVID-19 in the jail, and testified that he had no reason to dispute the policies which the jail has now put in place to combat the virus.

The testimony elicited during the hearing shows that the conditions, specifically those involving overcrowding, in the holding cells at the time Baqer and Guillot, Jr. were detained, if accurate, were troubling. The question before the Court, however, is not whether the conditions were troubling, but whether Plaintiffs have shown a substantial likelihood of success on the merits of their Complaint, which alleges constitutional violations based upon the conditions of their pre-trial

---

[121] R. Doc. 1 at ¶¶ 102, 105.

confinement. "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment." [122]    While Plaintiffs argued that the Court should look to the "cumulative record" to establish punitive intent and to show the likelihood of success on the merits of their claims, they were unable to point to any specific action by any of the Defendants or jail staff to support that argument, even when the Court specifically asked to be directed to such action. Plaintiffs have failed to establish conditions which are so egregious that would offend "contemporary standards of decency." [123]    Whether conditions of confinement rise to a level of constitutional violation turns to "the evolving standards of decency that mark the progress of a maturing society."[124]    The Court notes and distinguishes the facts in this case from those elicited in *Gates v. Cook*.[125]    In *Gates,* death row inmates presented evidence and expert testimony regarding extreme filth including fecal and urine covered walls, stench, malfunctioning plumbing, high temperatures, uncontrolled mosquito and insect infestations, lack of mental health care, and "ping-pong" toilets, which backed up excrements from one inmate's cell to another inmate's cell.  The Fifth Circuit in *Gates* found that such egregious facts violate society's standards of decency.  In this case, there was no evidence introduced at the hearing regarding society's standards of decency.  The Court does not find that the conditions testified to, while unsanitary,

---

[122] *Chavera v. Allison*, Civ. A. No. 1:08cv256-JMR, 2009 WL 1011157, at *5 (S.D. Miss. Apr. 15, 2009) (citing *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, Civ. A. No. 2:07cv167-MTP, 2008 WL 53269, at *2 (S.D. Miss. Jan. 2, 2008); *Robertson v. Coahoma County, Miss.*, Civ. A. Con. 2:07CV78-SA-SAA, 2008 WL 3334091, at *5 (N.D. Miss. Aug. 6, 2008)).
[123] *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 2482, 125 L.Ed.2d 22 (1993).
[124] *Rhodes v. Chapman,* 452 U.S. 337, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981).
[125] 376 F.3d 323 (5th Cir. 2004).

rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation.

Further, Plaintiffs were unable to distinguish the facts of this case from those in *Allen v. St. Tammany Parish,* where this Court found pre-trial detainment in an unsanitary holding cell at St. Tammany Parish Jail with 28 other inmates for 15 days was not unconstitutional.[126]  While the Court is not bound by another decision of this Court, the Court finds the case illuminating, and the Court offered Plaintiffs an opportunity to distinguish the facts in that case from the present case during the April 10, 2020 hearing.  In response, Plaintiffs argued that the "record as a whole" proves punitive intent on the part of the defendants in this matter, and that punitive intent distinguishes this case from the *Allen* case.  The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent.  Instead, the Court finds the facts and analysis of *Allen* are directly on point.  Further, Plaintiffs have failed to establish a constitutional violation.

Since Plaintiffs have failed to meet their burden in establishing a substantial likelihood of success on the merits of their Complaint, Plaintiffs have not carried their burden to show that they are entitled to injunctive relief.  While the Court need not analyze the remaining factors, such an analysis further demonstrates that Plaintiffs are not entitled to injunctive relief.

---

[126] *Allen v. St. Tammany Parish*, Civ. A. No. 17-4091, 2018 WL 558503 (E.D. La. Jan. 2, 2018).

### 3. Second prong: substantial threat of suffering an irreparable injury.

Plaintiffs contend that have shown a substantial threat of suffering an irreparable injury, namely, contracting COVID-19, if the Court does not grant injunctive relief. The requested injunctive relief, as argued during the hearing, is for status quo. Defendants argue that an injunction should not be granted on the possibility of a remote future injury. "As there have been no presumptive nor confirmed cases of COVID-19 at the St Tammany Parish Jail since the beginning of this pandemic, the Plaintiffs are unable to satisfy the irreparable injury requirement for injunctive relief." [127] Defendants have provided evidence in the form of an Affidavit, which shows the steps that the jail has and is currently taking to combat this virus and protect the health of its inmates and staff. Much of the substance of that Affidavit, and the policies and procedures which have been put in place at the jail, are detailed within this Order, including the fact that there have been no presumptive or confirmed cases of COVID-19 at the jail.[128] Plaintiffs did not provide any evidence to refute or challenge the Defendants' recitation of the steps it has taken which remain in place and, in fact, plaintiffs argued at the hearing for an injunction maintaining the status quo. The Court emphasizes the Plaintiffs' change in position from requesting specific injunctive relief[129] to their argument at the hearing for injunctive relief maintaining the status quo.

---

[127] R. Doc 37, p. 27.
[128] *See* pp. 11-14, *supra*.
[129] R. Doc. 12-1 at pp. 14-15.

The question before the Court is whether Plaintiffs have shown a substantial threat of suffering an irreparable injury. Plaintiffs have proven that, *at the time of their confinement at St. Tammany Parish Jail in December 2019,* they were housed in overcrowded conditions. The Court finds that Plaintiffs have provided evidence that the virus is spread though contact with an infected person, possibly an asymptomatic person. The Court in no way discounts the risks and seriousness of COVID-19 in confinement; in fact ,the Court gives great weight to plaintiffs' exhibits which note the heightened risk associated with jails and correctional centers. Defendants have proven through their evidence that the jail currently does not have any COVID-19 cases. Further, Defendants have established that they have implemented significant measures to comply with the CDC Guidelines and other guidance for correctional facilities in efforts to protect the health of its inmates and staff. Defendants have also proven that the general inmate population has been reduced, and that there are currently 12 pretrial detainees within the four holding cells. These facts have not been disputed, nor have any of the measures which the jail has voluntarily implemented to prevent the infiltration of the virus in the jail. The Court finds that there remains a possibility of irreparable injury, *i.e.,* contracting COVID-19 in the future, but that the Plaintiffs have failed to prove that there remains, *in light of the measures implemented by the jail on its own,* a *substantial* threat of suffering that injury at this time. The Court further notes that this finding rests on the many steps that the jail has taken on its own accord. This analysis and

finding may well be decided differently if the jail withdraws those voluntary actions during this COVID-19 pandemic.

### 4. *Third prong: the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted.*

Turning to the third prong of the analysis, whether the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted, the Court finds that Plaintiffs satisfy this requirement.  As an initial matter, the Court finds that both sides overstate their position, with Plaintiffs asserting that they are "hard-pressed to identify *any* harm that would result from the issuance of the injunction in question,"[130] and Defendants asserting that the injunctive relief sought "would impose a remarkable level of intrusion on the jail's day-to-day operations."[131] The Court agrees that the injunctive relief sought would impose some burdens, both financial and logistical, upon the Defendants.  However, the Court  finds that any such burdens, especially considering the safety precautions which the jail has voluntarily implemented,[132] are outweighed by the risk of contracting COVID-19 within the jail.  Although the undisputed evidence shows that there were no confirmed or presumptive cases of COVID-19 as of April 9, 2020,[133] the Court still finds that the threat of contracting the virus outweighs any burden that the requested injunctive relief may impose upon Defendants.  Accordingly, Plaintiffs may be able to satisfy their burden with respect to the third requirement for injunctive relief.

---

[130] R. Doc. 12-1 at pp. 13-14 (emphasis in original).
[131] R. Doc. 37 at p. 28.
[132] *See* R. Doc. 37-1 (Defendants' Exh. No. 1, admitted during April 10, 2020 Hearing).
[133] R. Doc. 37.

### *4. Fourth prong: the injunction will not disserve the public interest.*

Finally, the Court finds that Plaintiffs can also satisfy the fourth requirement for a preliminary injunction, as the requested injunctive relief will not disserve the public interest. Instead, the Court agrees with Plaintiffs that the requested injunctive relief will protect the safety of the public. The Court further notes and agrees that the measures undertaken by the jail comply with the CDC Guidelines and moot several of the requested items of injunctive relief.[134] Some of those measures, as evinced by the testimony of the Plaintiffs, were in effect during their detention; other measures were enacted following their release and, apparently, as a result of the COVID-19 crisis. As Plaintiffs point out, pre-trial detainees are housed for a relatively short period of time and often released back into the community.[135] Such was the case for both Baqer and Guillot, Jr., who each testified that they were released back into the community following their detention at the jail. Thus, the proposed injunctive relief will further the public's interest in trying to slow the spread of COVID-19 because it will prevent unnecessary illness in a group of people who will soon return to live among the general population. The requested relief will also protect the jail staff from unnecessarily being exposed to the virus and bringing the virus home to their families. The Court, therefore, finds that Plaintiffs can satisfy the fourth requirement for a preliminary injunction.

---

[134] Plaintiffs had requested injunctive relief in the form of enjoining Defendants from permitting any inmate demonstrating any symptom of COVID-19 to remain in any group holding cell; requiring the Defendants to provide pre-trial detainees with soap and fresh water; requiring the Defendants to provide pre-trial detainees with clean clothing; requiring the Defendants to implement and maintain a cleaning/sanitizing schedule for pre-trial detainees; and requiring Defendants to provide detainees with sanitary bedding. (R. Doc. 12-1 at p. 2).

[135] R. Doc. 12-1 at p. 14.

Although Plaintiffs can satisfy two of the four requirements that a party seeking injunctive relief must establish, the Fifth Circuit has made clear that, "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."[136] Because Plaintiffs have failed to carry their burden of proving all four requirements needed to entitle them to a preliminary injunction exist at this time, Plaintiffs' Motion is denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction[137] is **DENIED.**

New Orleans, Louisiana, April 11, 2020.

**WENDY B. VITTER**
**United States District Judge**

---

[136] *Planned Parenthood of Houston & Se. Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (quoting *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara* 335 F.3d 357, 363 (5th Cir. 2003)) (internal quotation marks omitted).
[137] R. Doc. 12.