### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH** | * | **NO. 2020-CV-980** |
| **GUILLOT, JR., and KLABERT JOSEPH** | * | |
| **GUILLOT, SR.** | * | |
| **Plaintiffs** | * | |
| **VERSUS** | * | **JUDGE VITTER** |
| | * | |
| **ST. TAMMANY PARISH GOVERNMENT,** | * | |
| **a/k/a ST. TAMMANY PARISH COUNCIL,** | * | |
| **ST. TAMMANY PARISH SHERIFF'S** | * | **MAGISTRATE CURRAULT** |
| **OFFICE, RANDY SMITH, in his official** | * | |
| **and individual capacity, RODNEY J.** | * | |
| **STRAIN, in his official and individual** | * | |
| **capacity, GREG LONGINO, in his official** | * | **JURY DEMAND** |
| **and individual capacity, and LACEY** | * | |
| **KELLY, in her official and individual** | * | |
| **capacity** | * | |
| **Defendants** | * | |

**********************************************************************************

### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

**MAY IT PLEASE THE COURT:**

    **NOW COMES** Defendants, Sheriff Randy Smith, Warden Lacey Kelly, Mr. Rodney J. Strain, and Mr. Greg Longino, each in their official and individual capacities, who respectfully submit the following Reply Memorandum in Support of their Motion for Protective Order.

### I.    DEFENDANTS HAVE ACTED IN GOOD FAITH

    Despite the Plaintiffs' failure to adhere to this Court's minute entry requiring them to file a contradictory motion regarding their motion for leave to conduct class discovery if disagreements remained, the Defendants have nonetheless filed written responses to the Plaintiffs' requests and have now produced more than 12,000 pages of information related to the holding cells at issue. Furthermore, Defendants have provided responses to interrogatories,

subject to various objections, regarding many of the issues presented in this litigation. Contrary to the Plaintiffs' suggestions, the Defendants are not attempting to thwart the Plaintiffs' ability to conduct discovery. Instead, the Defendants principal objection, among others, is that the Plaintiffs decision to propound these requests without court approval flies in the face of the minute entry whereby the Plaintiffs' original motion for leave to conduct this discovery was denied.

During the Parties' Rule 37 conference, Defendants directly asked the Plaintiffs whether they would be filing a motion for discovery as envisioned by this Court's original minute entry considering the parties' obvious disagreements, but the Plaintiffs refused to do so. The Plaintiffs were aware that a motion for protective order would be filed if they refused to re-file the motion for discovery. Because the Plaintiffs refused to re-file their motion to conduct discovery on class certification, the Plaintiffs left Defendants with no choice but to present these issues for review in the form of a motion for protective order. Furthermore, the Plaintiffs' opposition to bifurcating discovery is directly contradicted by their earlier motion for leave to conduct class certification discovery; in that motion, the Plaintiffs indicated that they were seeking "leave to conduct limited discovery **only on the issues relevant to class certification.**" R. Doc. 50-1, p. 3 ("emphasis added).

## II.     THE PLAINTIFFS REQUESTS EXCEED THE SCOPE OF ISSUES PRESENTED BY THEIR VERY OWN COMPLAINT

The scope of discovery in a civil action is not unlimited; instead, under FRCP 26, parties may seek discovery of any materials that are relevant to any party's claim or defense and proportional to the needs of the case. Here, the Plaintiffs' written requests exceed the scope of their allegations made within their complaint in several ways.

First, in an attempt to justify their overly broad requests for literally **<u>every</u>** grievance filed by inmates while in holding dating back two years prior to institution of this action, the Plaintiffs summarily conclude that the grievances "will reveal the number of individuals who identified the inhumane and unconstitutional conditions of confinement, that those complaints were common among inmates, and that treatment arose from the same event, practice, or course of conduct and is based on the same legal theory." However, the Plaintiffs have not asked the Defendants to produce grievances related to the specific conditions of confinement that have been alleged within their complaint; instead, the Plaintiffs have asked for **<u>all</u>** grievances and complaints without any regard to the underlying issues presented for each grievance or complaint. That is overly broad by design. Furthermore, the Plaintiffs justification for this request rests upon a faulty premise—that all grievances or complaints filed by inmates in holding relate to "unconstitutional conditions of confinement," but the grievance process is not restricted only to issues related to conditions of confinement.

The fact that an inmate files a grievance does not automatically mean that the grievance implicates a "condition of confinement"; instead, as this Court is well-aware, such grievances may also implicate episodic acts or omissions, which are not an issue presented by this matter, or any other concern the grieving inmate may wish to present to the appropriate jail personnel. If the Plaintiffs only desire the production of grievances related to the alleged conditions of confinement set out in their complaint, they should file a properly tailored request for production for those materials instead of the blanket request for production presented here.

In addition to their blanket request for all grievances filed by individuals while in holding, the Plaintiffs also seek the production of materials related to use of force incidents and medical treatment to individuals while in holding. These requests are likewise not relevant to any

party's claim or defense in this matter. Although the Plaintiffs may seek to represent a class of individuals in this matter, the fact remains that the claims of each putative representative must be typical of the claims of the class itself.

"Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Courts have held that "[t]he major concern under Rule 23(a)(3) is if **unique defenses** against a named plaintiff threaten to become the focus of the litigation," and that the key to the typicality inquiry is "whether a class representative would be required to devote considerable time to rebut the Defendants' claims." *In re Enron Corp. Secs. Litig.*, 529 F. Supp. 2d 644, 674 (S.D. Tex. 2006) (citation and quotation omitted).

None of the three named Plaintiffs have alleged they were subjected to the use of force by any STPSO deputies or otherwise involved in an altercation with another inmate while in holding. Merely alleging that some other unknown individuals may have been subjected to such conduct does not alter the conclusion that these class representatives seeking discovery have failed to allege any facts that would support a finding that they have individual claims related to either use of force or a failure to protect. Additionally, as this Court is well-aware, the analysis and defenses of use of force claims are not the same defenses available to a defendant in a condition of confinement claim. Use of force is a spectrum, and any finding that force is or is not excessive necessarily requires a detailed investigation of the circumstances leading up to the use of force, and use of force claims are likewise subject to the defense of qualified immunity. Of course, the Plaintiffs have failed to allege **any** unconstitutional use of force against them within

their complaint, so it is difficult to imagine how typicality would be satisfied by these Plaintiffs when they have not been subjected to any use of force and therefore individually lack any excessive force claims.

Furthermore, none of these Plaintiffs have alleged within their complaint that they were denied medical care. Again, the representative's claims must be typical of the class itself, and the Plaintiffs have made no effort to amend their complaint to allege any denial of medical care claims with particularity. To the extent the Plaintiffs rely upon Mr. Baqer's prior testimony that he was "deprived of . . . medications during his detention," such reliance is misplaced.

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a **substantial risk of serious harm exists**," and (2) the official actually drew that inference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (emphasis added). It is not sufficient for a plaintiff to show that he was deprived of medications during his detention; that is a not a violation of 42 U.S.C. 1983. Instead, the Plaintiff must allege that the jail official were deliberately indifferent to a substantial risk of serious harm. Mr. Baqer's failed to make any allegations to that effect, and his own sworn testimony dispels any notion that he was at substantial risk of serious harm due to the lack of medication at any point during his stay in holding. *See* 2020.4.10 Hearing Transcript, p. 46, ll. 10-11 ("It's not about the medicine. It's the, you know, it's mental health.")

### III.    THE PLAINTIFFS' REQUESTS FOR VIDEOS AND AUDIO RECORDINGS PRESENT AN UNDUE BURDEN

The Plaintiffs seek the production of all videos and audio recordings of the holding cells at issue with ten more occupants dating back to March 1, 2018, i.e., more than one year prior to the institution of this action. Defendants previously objected to these requests as the burdens associated with even identifying materials responsive to this request would not be proportionate to the needs of this case; the STPSO does not categorize and archive recordings according to the amount of individuals in holding at that time of recording. In response, the Plaintiffs summarily conclude that "this evidence is necessary to demonstrate firsthand the conditions of confinement to which all inmates in the St. Tammany Parish Jail holding cells were subjected." However, the Plaintiffs' requests are so broad that they would include every single telephone call recording made while an individual is in holding with nine other individuals, and the burden of even determining which calls were made from holding with more than ten individuals present creates an extreme burden on these Defendants. For example, each holding cell is subject to video monitoring 24 hours each day, and the four holding cells combined generate 96 hours of recorded video each day. Assuming the STPSO maintained all videos of holding cells dating back to March 1, 2018, that would require the Defendants to review 887 days worth of video, or 85,152 hours worth of footage for materials potentially responsive to this request. It is difficult to imagine a request that is more overly broad.

As noted above, the STPSO does not maintain any records that would indicate the amount of individuals in any particular holding cell at any particular time. Requiring the Defendants to retrieve every video and call made from holding and then cross-reference those materials with every single inmate's movement reports for the time periods at issue would

present a monumental burden that is not proportionate to the needs of this case. Further, the Plaintiffs requested all audio recordings made in the holding cells, but they have failed to explain how any telephone calls from individuals in holding would make any fact in dispute here any more or less likely. This is plainly an undue burden.

### IV.     THE PLAINTIFFS' DISCOVERY REQUESTS REGARDING PROTECTED HEALTH INFORMATION OF THIRD-PARTIES IS INAPPROPRIATE

The Plaintiffs have sought discovery regarding grievances, complaints or correspondence by STPSO inmates or detainees "relating to the medical treatment . . . within Holding Cells 1-4 . . . from March 1, 2018 to the present." (RPD No. 18). The Plaintiffs did **not** limit this request and request protected health information be withheld from production or redacted, and the Plaintiffs did not provide any assurance that they made reasonable efforts to ensure all individuals' whose protected health information may be disclosed have been given notice of this request and an opportunity to respond. *See* 45 C.F.R. 164.512(e). Now, having acknowledged that the discovery requests seeking the production of protected health information is inappropriate under these circumstances, the Plaintiffs now claim that they "do not seek protected information of any inmate, and these records should be redacted by Defendants prior to production such that no protected health information is disclosed." That is not a fair appreciation of the Plaintiffs' own requests for production.

Within the nearly twelve thousand pages of jail log books produced to the Plaintiffs, there was **one** instance identified where protected health information was mistakenly included on the log. The Defendants redacted that single instance of protected health information prior to production of the underlying log books, but that one instance of redaction does not alter the conclusion that the Plaintiffs' requests for production seeking protected health information in the form of grievances, complaints or correspondence by STPSO inmates or detainees "relating to

the medical treatment . . . within Holding Cells 1-4 . . . from March 1, 2018 to the present" (RPD No. 18) is improper. If the Plaintiffs do not seek the production of protected health information, they should have tailored their request for production appropriately. Unfortunately, they failed to do so, and their statements within their opposition memorandum do not change the objectionable nature of this request.

## V.     THE PLAINTIFFS' REQUESTS FOR DOCUMENTS DATING BACK TO 2010 IS OVERLY BROAD AND IRRELEVANT

This action was filed on March 22, 2020. As a result, any claims that may have accrued to individuals in 2010, 2012 or even on March 1, 2019 necessarily would have prescribed pursuant to La. C.C. 3492. As a result, the Plaintiffs' discovery requests seek materials that are beyond the scope of any potential class members' claims and the claims of the class representatives, and the Defendants request that an order be issued protecting them from responding to these facially irrelevant and overly broad requests. In response, the Plaintiffs argue that their requests for production of documents dating back to 2010 are relevant "to demonstrate the unconstitutional patterns and practices of confinement at the St. Tammany Parish Jail and the extent to which Defendants Strain and Longino were responsible for said policy and training that ultimately caused injury to all Plaintiffs."

First, neither Mr. Strain nor Mr. Longino occupied any position of authority at the time the three named Plaintiffs were in holding, and Mr. Strain and Mr. Longino have moved to dismiss all claims made against them for failure to state a claim on that basis (R. Doc. 45). Second, the Plaintiffs fail to note that the district court previously issued the following findings regarding the claims made within a 2012 letter to the SPTSO from the U.S. Department of Justice:

> First, the letter clearly states that it was produced in response to a 2011 investigation and evaluation, which gives the Court pause as to its relevance

regarding current conditions in the jail. Second, the thrust of the DOJ's letter and investigation concerned the availability of mental health evaluations and treatment for inmates at that time. In fact, the 22-page letter includes only five sentences (one paragraph) describing what is referred to as deplorable conditions in the holding cells. Finally, regarding the 2012 DOJ letter, the Court notes that the Defendants have responded to that evidence with a follow-up letter from the DOJ dated January 31, 2017, in which the DOJ referenced the July 2012 letter and concluded that the St. Tammany Parish Jail had implemented significant reforms and that the investigation was now closed. The 2017 letter mentions that, "we [Department of Justice] have noted a change in culture and practice at the Jail that gives us confidence that St. Tammany will continue its efforts to improve care for prisoners." . . . . **The Court notes the age of the letter and, more importantly, the 2017 follow-up letter, which clearly indicates that the St. Tammany Parish Jail had taken positive steps in both culture and practice.**

Rec. Doc. 40, p. 28 (emphasis added).

## VI.   CONCLUSION

When the Plaintiffs filed their original motion to conduct limited discovery on class certification issues, the Defendants expected the Plaintiffs to stay true to that goal. However, these requests make clear the Plaintiffs have no intention of conducting anything that remotely resembles "limited discovery." Instead, the Plaintiffs are attempting to use the discovery process to conduct an ongoing fishing expedition into the St. Tammany Parish Jail that exceeds the scope of the putative class representatives' claims. That is not appropriate, and the Defendants respectfully request that a protective order be issued protecting them from the obvious undue burdens presented by the Plaintiffs' requests as well as the plainly irrelevant and unauthorized nature of these requests.

Respectfully submitted,

MILLING BENSON WOODWARD L.L.P.

*s/ Chadwick W. Collings*
_____

| Chadwick W. Collings, T.A. | # 25373 |
| Cody J. Acosta | # 37005 |

68031 Capital Trace Row
Mandeville, Louisiana 70471
Telephone:    (985) 292-2000
Facsimile:    (985) 292-2001
E-mail:        cccollings@millinglaw.com
*Attorneys for Sheriff Jack Strain, Warden Lacey Kelly, Rodney J. Strain and Greg Longino*

Dated: August 4, 2020