UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * * * | **NO. 2020-CV-980** |
| **Plaintiffs** | * | |
| **VERSUS** | * | **JUDGE VITTER** |
| | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual capacity** | * * * * * * * * * * | **MAGISTRATE CURRAULT** **JURY DEMAND** |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN OPPOSITION TO MOTINO TO COMPEL**

**MAY IT PLEASE THE COURT:**

**NOW COME** Defendants, Sheriff Randy Smith, Warden Lacey Kelly, Mr. Rodney J. Strain, and Mr. Greg Longino, each in their official and individual capacities, who respectfully submit the following Reply Memorandum in Support of their Motion for Protective Order.

**I.   THE PLAINTIFFS HAVE FAILED TO COMPLY WITH FRCP 37(a)**

The Plaintiffs motion should be denied as they have failed to satisfy the requirements of Rule 37. FRCP 37(a)(1) requires parties to "in good faith confer[] or attempt[] to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without certification." The Plaintiffs are aware of these requirements; not only have they offered a "FEDERAL RULE 37(a)(1) CERTIFICATE OF CONFERENCE" alongside their motion, but they also previously indicated in writing that they understood they would need to make a good

faith effort to meet and confer regarding any potential objections after receipt of Defendants' initial written responses and objections. R. Doc. 71-2 ("[P]lease provide your specific written objections within 30 days of service. Then, we can confer as required before involving the Court.").

Despite their understanding of the requirements of Rule 37 and earlier statement that they would confer with Defendants after receipt of written responses and objections, the Plaintiffs have failed to comply with the requirements of Rule 37 before filing the instant motion. In particular, the Plaintiffs' Rule 37 certificate's references a discussion that took place on June 25, 2020, which is one day following the Plaintiffs' propounding of these requests. R. Doc. 71-6, p. 2. No other efforts were made by the Plaintiffs to meet and confer with the Defendants regarding these issues after the Defendants issued their written responses and objections.

The Plaintiffs' failure to schedule, or attempt to schedule, a proper Rule 37(a) conference prior to seeking the production of records and compelling responses to interrogatories is grounds for denial. Courts have held that discussions held prior to the challenged discovery being due is insufficient to satisfy the requirements of Rule 37(a). For example, in *Goins v. Ill. Nat'l Ins. Co.*, 2018 U.S. Dist. LEXIS 108214 (M.D. La. 2018), the court held that a Plaintiff had failed to satisfy the requirements of Rule 37 when her attempts to conduct a conference regarding the issues presented by the motion to compel were made prior to actual responses to the discovery requests being due. ("More importantly, it does not appear that any discovery responses would have been due during much of the timeframe defense counsel represents these contacts occurred or were attempted, depending on the date of the Rule 26(f) conference. Accordingly, the Court concludes that the requirements of Rule 37(a)(1) are not satisfied in this instance."). That is precisely what has happened here; the Plaintiffs' made no effort to contact the Defendants after

receipt of their original written responses and objections. Clearly this is inconsistent with the requirements of Rule 37, and the instant motion to compel should be denied.

## II.     DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants have previously filed a motion for protective order which is currently pending before this Honorable Court. Rec. Doc. 68. As this Court is no doubt aware, many of the issues raised in Plaintiffs' Motion to Compel are also addressed in Defendants' previously filed motion for protective order. Therefore to the extent necessary, Defendants hereby adopt *in extenso* their previously filed motion for protective order (Rec. Doc. 68), their memorandum in support (Rec. Doc. 68-1), and the exhibits in support thereto (Rec. Docs. 68-3 and 68-4), in opposition to the Plaintiffs' motion to compel.

## III.    DEFENDANTS' OBJECTIONS SHOULD BE SUSTAINED

The scope of discovery in a civil action is not unlimited; instead, under FRCP 26, parties may seek discovery of any materials that are relevant to any party's claim or defense and proportional to the needs of the case.

### a. The Plaintiffs failed to adhere to this Court's minute entry regarding the scope of anticipated class certification discovery

On June 8, 2020, the Plaintiffs filed their Motion for Leave to Conduct Discovery Related to Class Certification. R. Doc. 50. At the time, the Defendants indicated they had no objection to the Plaintiffs' request as they indicated their anticipated discovery was limited only to class certification issues. Furthermore, within their own memorandum in support of that motion, the Plaintiffs submitted that they were seeking "leave to conduct limited discovery only on the issues relevant to class certification." R. Doc. 50-1, p. 3 (emphasis added). The Plaintiffs did not attach any proposed written discovery to their motion for leave.

Thereafter, this Honorable Court scheduled a status conference to discuss the Plaintiffs' request to conduct class certification discovery. R. Doc. 53. On June 17, 2020, the parties participated in a status conference related to the Plaintiffs' motion for leave. R. Doc. 61. This Court denied the Plaintiffs' original motion for leave to conduct class discovery without prejudice. R. Doc. 61. At that conference, the parties discussed the status of this proceeding to date, and the Court directed the parties "to confer by telephone pursuant to Fed. R. Civ. P. 26(f) and form a discovery plan that addresses discovery parameters tailored to the class certification issue." R. Doc. 61. Following which, the Plaintiffs were directed to "refile a motion for discovery, either on an ex parte/consent basis if all parties agree to the plan or on a contradictory basis should the parties not agree, as necessary." R. Doc. 61. The Plaintiffs were aware on June 25, 2020 that the parties had not come to an agreement regarding the scope of class certification discovery, R. Doc. 71-6, ¶ 5, and they refused to file the anticipated contradictory motion for leave to conduct written discovery until after the Defendants filed their motion for protective order on these same issues. *See* R. Doc. 68-1, p. 4 ("The Defendants asked the Plaintiffs if they intended to file a contradictory motion to conduct class certification discovery; however, the Plaintiffs did not indicate they would do so.").

Despite the Plaintiffs' failure to adhere to this Court's minute entry requiring them to file a contradictory motion regarding their motion for leave to conduct class discovery if disagreements remained, the Defendants have nonetheless filed written responses to the Plaintiffs' requests and have now produced more than 12,000 pages of information related to the holding cells at issue.[1] Furthermore, Defendants have provided responses to interrogatories, subject to various objections, regarding many of the issues presented in this litigation.

---

[1] This voluminous production required over 45 hours of review by counsel for the defendants along untold number of hours by the Sheriff's staff in compiling these records.

### b. The Defendants do not maintain records regarding the amount of individuals kept in each holding cell

The Plaintiffs have asked the Defendants to list the number of detainees held in each holding cell on each day from March 1, 2019 through the present. The Defendants have objected to this interrogatory on the ground that it presents an undue burden, as there is no way to generate a report of what individuals were housed/assigned to any part of the facility on a given day or between given time frames. The only method by which the Defendants could prepare a response to this interrogatory would require them to compile the inmate movement reports for each pre-trial detainee from March 1, 2019. After review of the inmate movement reports, the Defendants would need to prepare and compile each inmates' movements, whether that be between holding cells or from holding into the general population, by date. After compiling that information for each pre-trial inmate for this time period (estimated to be in the hundreds), the Defendants would then be required to cross-reference the movement reports information with all other inmate movement reports to determine the amount of individuals in each holding cell on each particular day for the time periods at issue.

These burdens are not consistent with the needs of this case; the Defendants have produced the jail count spreadsheets, which shows the amount of individuals in holding for all time periods at issue. The Plaintiffs are aware that there are four holding cells, and they can generally extrapolate the number of individuals in each holding cell for the time periods at issue by reference to the overall holding counts. Requiring the Defendants to review every single pre-trial inmate's movement reports and create entirely new documents compiling the information requested is plainly an undue burden.[2]

---

[2] It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials. *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 U.S. Dist. LEXIS 17857, *See, e.g., Thompson v. Lantz*, 2009 U.S. Dist. LEXIS 90923, 2009 WL 3157561, *1 (D. Conn. 2009) ("[A] party cannot be

### c. The Plaintiffs' Requests for videos and audio recordings present an undue burden

The Plaintiffs seek the production of all videos and audio recordings of the holding cells at issue with ten or more occupants dating back to March 1, 2018, i.e., more than one year prior to the institution of this action. Defendants objected to these requests as the burdens associated with even identifying materials responsive to this request would not be proportionate to the needs of this case; the STPSO does not categorize and archive recordings according to the amount of individuals in holding at that time of recording. In response, the Plaintiffs summarily conclude that "[c]ompelling production of video or sound recording will aid the Court in determining numerosity, commonality, and typicality of the class, as video and audio evidence of the holding cells will reveal the conditions of the cells. Indeed, because Defendants claim to be unable to provide inmate counts for the individual holding cells for the requested period, production of the requested video and audio evidence should be compelled."

First, the Plaintiffs' requests are so broad that they would include every single telephone call recording made while an individual is in holding with nine other individuals, and the burden of even determining which calls were made from holding with more than ten individuals present creates an extreme burden on these Defendants. Of course, the fact that a call or audio recording is made from holding does not necessarily mean that the recording itself will include any information regarding the conditions of the holding cells, and that basic fact likewise augurs in favor of finding that this request is overly broad and unduly burdensome on its face.

Furthermore, each holding cell is subject to video monitoring 24 hours each day, and the four holding cells combined generate 96 hours of recorded video each day. Assuming the STPSO

---

compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence."); *Georgacarakos v. Wiley*, 2009 U.S. Dist. LEXIS 34379, 2009 WL 924434, *2 (D. Colo. 2009)

maintained all videos of holding cells dating back to March 1, 2018, that would require the Defendants to review 887 days worth of video, or 85,152 hours worth of footage for materials potentially responsive to this request. It is difficult to imagine a request that is more overly broad. These objections should be sustained.

The STPSO does not maintain any records that would indicate the amount of individuals in any particular holding cell at any particular time. Requiring the Defendants to retrieve every video and call made from holding and then cross-reference those materials with every single inmate's movement reports for the time periods at issue would present a monumental burden that is not proportionate to the needs of this case. The Plaintiffs' boilerplate assertion that these video and audio recordings will help the Court determine commonality, typicality and numerosity issues for class certification does not alter the basic conclusion that the requests are unambiguously overly broad and unduly burdensome. Merely invoking the burdens associated with certifying a class does not alter the scope of discovery under Rule 26.

> **d. The Plaintiffs' interrogatory and requests for production regarding every grievance filed by individuals in holding is irrelevant, not proportional to the needs of this case, and overly broad and unduly burdensome**

First, the Plaintiffs have issued an interrogatory regarding the gross number of grievances filed by individuals in holding from March 1, 2018 to the present, and the number of grievances that were sustained. The Plaintiffs made no effort to limit their interrogatory to grievances implicating the conditions of confinement alleged within their lawsuit; instead, they seek information on **all grievances** without limitation.

In an attempt to justify their overly broad requests for literally **every** grievance filed by inmates while in holding dating back two years prior to institution of this action, the Plaintiffs summarily conclude that the production of these grievances "will aid the Court in deciding

numerosity, commonality, and typicality of the class by identifying grievances that are both related **and unrelated** to the complaints of the individuals who were subjected to the conditions of confinement at issue in this litigation." (emphasis added). This begs the question, what benefit do the Plaintiffs gain by seeking the production of "unrelated" grievances? The answer is simple: none. On that basis alone, the Plaintiffs' motion to compel the production of all grievances filed by individuals in holding should be denied. The Plaintiffs are not entitled to receive "unrelated" grievances.

The fact that an inmate files a grievance does not automatically mean that the grievance implicates a "condition of confinement"; instead, as this Court is well-aware, such grievances may also implicate episodic acts or omissions, which are not an issue presented by this matter, or any other concern the grieving inmate may wish to present to the appropriate jail personnel. If the Plaintiffs only desire the production of grievances related to the alleged conditions of confinement set out in their complaint, they should file a properly tailored request for production for those materials instead of the blanket request for production presented here.

In addition to their blanket request for all grievances filed by individuals while in holding, the Plaintiffs also seek the production of materials related to use of force incidents and medical treatment to individuals while in holding. These requests are likewise not relevant to any party's claim or defense in this matter. Although the Plaintiffs may seek to represent a class of individuals in this matter, the fact remains that the claims of each putative representative must be typical of the claims of the class itself. Within their memorandum in support of their motion, the Plaintiffs argue that the question of "[w]hether inmates were subjected to force by officers and guards of the St. Tammany Parish jail is relevant to common issues of fact and law that will predominate over the action at the class certification stage, namely, whether conditions of

confinement were maintained with punitive intent." The Plaintiffs offer no explanation as to how, precisely, an episodic act involving the use of force by STPSO deputies would tend to make their assertion that individuals were kept in holding longer than 72 hours any more or less likely.

"Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Courts have held that "[t]he major concern under Rule 23(a)(3) is if **unique defenses** against a named plaintiff threaten to become the focus of the litigation," and that the key to the typicality inquiry is "whether a class representative would be required to devote considerable time to rebut the Defendants' claims." *In re Enron Corp. Secs. Litig.*, 529 F. Supp. 2d 644, 674 (S.D. Tex. 2006) (citation and quotation omitted).

None of the three named Plaintiffs have alleged that they were subjected to the use of force by any STPSO deputies or otherwise involved in an altercation with another inmate while in holding. Merely alleging that some other unknown individuals may have been subjected to such conduct does not alter the conclusion that these class representatives seeking discovery have failed to allege any facts that would support a finding that they have individual claims related to either use of force or a failure to protect. Additionally, as this Court is well-aware, the analysis and defenses of use of force claims are not the same defenses available to a defendant in a condition of confinement claim. Use of force is a spectrum, and any finding that force is or is not excessive necessarily requires a detailed investigation of the circumstances leading up to the use of force, and use of force claims are likewise subject to the defense of qualified immunity.

Of course, the Plaintiffs have failed to allege **any** unconstitutional use of force against them within their complaint, so it is difficult to imagine how typicality would be satisfied by these Plaintiffs when they have not been subjected to any use of force and therefore individually lack any excessive force claims. As to the request for grievances regarding altercations in holding, none of these Plaintiffs have alleged within their complaint they were involved in such an altercation.

As to the request for grievances regarding medical care, none of these Plaintiffs have alleged within their complaint that they were denied medical care. Again, the representative's claims must be typical of the class itself, and the Plaintiffs have made no effort to amend their complaint to allege any denial of medical care claims with particularity. To the extent the Plaintiffs rely upon Mr. Baqer's prior testimony that he was "deprived of . . . medications during his detention," such reliance is misplaced.

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a **substantial risk of serious harm exists**," and (2) the official actually drew that inference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (emphasis added). It is not sufficient for a plaintiff to show that he was deprived of medications during his detention; that is a not a violation of 42 U.S.C. 1983. Instead, the Plaintiff must allege that the jail officials were deliberately indifferent to a substantial risk of serious harm. Mr.

Baqer's has failed to offer any allegations within his complaint that he was denied medical care, and his own sworn testimony dispels any notion that he was at substantial risk of serious harm due to the lack of medication at any point during his stay in holding. *See* 2020.4.10 Hearing Transcript, p. 46, ll. 10-11 ("It's not about the medicine. It's the, you know, it's mental health.")

### e. The Plaintiffs' Requests for documents dating back to 2018 and beyond are overly broad

The Plaintiffs seek production of records of complaints of "previous misconduct, including civil, criminal or internal investigations related to conditions of confinement in the holding cells from March 1, 2018." Defendants properly objected on several grounds, not the least of which is the vaguenss of the terms "misconduct" and "conditions of confinement." Additionally, to the extent Plaintiffs are seeking production of materials which involve other "civil" or "criminal" litigation, in addition to the only somewhat less vague request for "past lawsuits against or involving St. Tammany Parish, its Jail, government, Parish Council, employees, agents, or officers regarding conditions of confinement or alleging unconstitutional conditions of confinement at the St. Tammany Parish Jail, including holding cells from 2010 to present," these would be public records, and as such, they are equally accessible to the Plaintiffs as well as to the Defendants, which thus requires the motion to be denied as to these requests.[3]

Plaintiffs also request videos, diagrams, etc. of the holding cells. As discussed above, the burden of attempting to produce all video of the holding cells for the past two and half years clearly outweighs the needs of this case. Defendants would, however, point out to the Court that Defendants have already produced several videos of the holding cells in which the Plaintiffs

---

[3]Discovery need not be required of documents of public record which are equally accessible to all parties. *See Landrum v. Banana Wheels, Inc.,* 1990 U.S. Dist. LEXIS 14248, *4*; See also Securities & Exchange Com. v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 994

were in fact present.  Accordingly, to the extent videos of the holding cells are relevant to the issues in this case, Plaintiffs have already been provided with such evidence.

Plaintiffs further seek information regarding a U.S. Department of Justice ("DOJ") investigation from 2012.  As the District Court noted, the 2012 letter from the DOJ concerned an investigation of the conditions in the St. Tammany Parish Jail in 2011, and the concerns of the DOJ were sufficiently addressed by 2017 and that the matter was closed.[4]  It is therefore inconceivable how an investigation from 2011, that was closed as of 2017, can have any relevance regarding plaintiffs conditions of confinement in 2019, and thus this request should also be denied.

### f. Plaintiffs' Requests for documents related to medical records, training and policy documents

Defendants have produced a complete copy of the STPSO's Policies and Procedures along with a copy of the STPSO's Basic Jail Guidelines.  To the extent Plaintiffs also requested medical information concerning other inmates, Defendants properly objected, as this information is both confidential and irrelevant to the needs of these particular plaintiffs' claims.

### g. Plaintiffs Request to inspect the St. Tammany Parish Jail's "holding cells and surrounding areas of the jail."

Plaintiffs ostensibly seek to conduct an inspection the St. Tammany Parish Jail's "holding cells and surrounding areas of the jail."  Defendants objected.  First, this request to inspect the "surrounding areas of the jail" is vague and as this lawsuit involves only allegations concerning the holding cells, any inspection of the "surrounding areas of the jail" is irrelevant.  Further, due to Covid-19, the St. Tammany Parish Jail restricts access to the jail to inmates and jail staff only, and as Plaintiffs are already in possession of several videos of the holding cells, it is difficult to

---

[4] See Record Doc. 40, p. 28, ll. 8-12

imagine what new information Plaintiffs hope to gain by conducting an inspection of the holding cells. The cells are just as they appear in the videos.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion to Compel and that Defendants be awarded their costs and attorney fees.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*
**Chadwick W. Collings, T.A.           # 25373**
**Cody J. Acosta                       # 37005**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone:   (985) 292-2000**
**Facsimile:   (985) 292-2001**
**E-mail:      cccollings@millinglaw.com**
*Attorneys for Sheriff Jack Strain, Warden Lacey Kelly, Rodney J. Strain and Greg Longino*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on August 11, 2020, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Chadwick W. Collings*
**Chadwick W. Collings**