# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR., | |
| Plaintiffs; | **CIVIL ACTION NO.: 20-00980-WBV-JCW** |
| v. | |
| | JUDGE VITTER |
| ST. TAMMANY PARISH GOVERNMENT, a/k/a/ ST. TAMMANY PARISH COUNCIL; ST. TAMMANY PARISH SHERIFF'S OFFICE; RANDY SMITH, in his official and individual capacity; RODNEY J. STRAIN, in his official and individual capacity; GREG LONGINO, in his official and individual capacity; and LACEY KELLY, in her official and individual capacity; | MAGISTRATE JUDGE PHILLIPS CURRAULT |
| | JURY TRIAL |
| Defendants. | |

***

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

NOW COME the Plaintiffs, AHMED BAQER; KLABERT JOSEPH GUILLOT, JR.; and KLABERT JOSEPH GUILLOT, SR., by and through their counsel of record, and pursuant to FRCP 23(a) and 23(b)(3), respectfully submit this reply memorandum of law in further support of their Motion for Class Certification, and state:

## ARGUMENT

### I.   Plaintiffs Have Satisfied All the Requirements of Rule 23(a).

### A. Plaintiffs Meet the Numerosity Requirement of Rule 23(a)(1).

Defendants argue that Plaintiffs have not met the numerosity requirement of Fed. R. Civ. P. 23(a)(1) because Plaintiffs have not stated an exact number of class members. (R. Doc. 124, p. 3-4). Rule 23(a)(1) requires a class to be so numerous that joinder of all members is

1

impracticable. Yet Plaintiffs are not required to allege an exact number of proposed class members. *Nelson v. Constant*, No. 17-14581, 2020 U.S. Dist. LEXIS 160726, *12 (E.D. La. Sep. 2, 2020) (citing 1 Newberg on Class Actions 3:13 (5th ed.)). Plaintiffs must, rather, establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." *Slocum v. Int'l Paper Co.*, No 16-12563, 2019 WL 2192099, *10 (E.D. La. May 21, 2019) (internal quotations omitted)). "It should be noted that the general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Nelson*, 2020 U.S. Dist. LEXIS 160726 at *13.

Plaintiffs estimate that 5,000 prisoners were held in allegedly unconstitutional conditions in Holding Cells 1-4 of St. Tammany Parish Jail from March 22, 2019 to the present, based on data provided by St. Tammany Parish Sheriff's Office during discovery See Exhibit A, St. Tammany Parish Jail Movement Reports. The class period remains open and detainees housed in Holding Cells 1-4 continue to join the class; joinder of these detainees would be impracticable. The estimated putative class members are far above the threshold necessary to meet Rule 23(a)(1)'s numerosity requirement.

**B. Plaintiffs Meet the Commonality Requirement of Rule 23(a)(2).**

Defendants argue that Plaintiffs' fail the Rule 23(a)(2) commonality prerequisite. Class members satisfy the legal requirement that class members have all sustained the "same injury" by showing an instance of the defendant's injurious conduct, "even when the resulting injurious effects–the damages–are diverse." *Id.* at 810-11. The core of the instant litigation is Plaintiffs' contention that they, and the members of the putative class, experienced unconstitutional conditions while confined in St. Tammany Parish Jail's Holding Cells 1-4. Defendants allege

2

that "these are not…violations under federal law and therefore present no question of fact or law at all." (R. Doc. 124, p. 6). This is incorrect.

On November 2, 2020, the Supreme Court summarily granted certiorari in *Taylor v. Riojas* and reversed the Fifth Circuit on a question of qualified immunity in a prison conditions case. 592 U.S. __; 208 L.Ed.2d 164 (U.S. 2020). Taylor alleged that correctional officers violated his Eighth Amendment rights by housing him in unconstitutional conditions for six days in two different jail cells. *Id.* at 164. The first cell was filthy, covered in "massive amounts of feces" spread over the floor, walls, window, and ceiling and even packed into the water faucet. *Id.* The second cell was "frigidly cold" and "equipped with only a clogged drain in the floor to dispose of bodily wastes." *Id.* The cell lacked a bunk and the correctional staff housed Taylor without clothing, causing Taylor to have to sleep on the floor "naked in sewage." *Id.*

The Fifth Circuit found that under its case law, Taylor succeeded in showing that his constitutional rights were violated by the conditions of the cells. *Taylor v. Stevens*, 946 F.3d 211, 220 (5th Cir. 2019). In support of its reasoning, the Fifth Circuit examined two cases: *McCord v. Maggio*, 927 F.2d 844 (5th Cir. 1991)(finding a clear constitutional violation when a prisoner was forced to sleep on a wet mattress in water contaminated with human waste for an extended period of time, creating unhygienic conditions that were a health hazard); and *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004)(holding that officials who forced prisoners to live in cells covered in "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles" violated the Eighth Amendment). *Id.* at 219-22. The Circuit Court found that the similarity in Taylor's cell conditions to those in *McCord* and *Gates* made the risk to Taylor "especially obvious" to the officers who had placed him in those cells. *Id.* at 222. The Fifth Circuit then held that because Taylor had been housed in these unconstitutional conditions "for

only six days," the officers were nevertheless entitled to qualified immunity as the Court had not "previously held that a time period so short violated the Constitution." *Id.*

In a terse, *per curiam* reversal, the Supreme Court wrote, "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time." *Taylor*, 208 L.Ed.2d at 165. *See*, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)("a general constitutional rule already identified in the decisional law may apply with such obvious clarity to the specific conduct in question.")(internal quotes omitted)). The question of law or fact common to each class member's claims in the instant case is whether the conditions in Holding Cells 1-4 violated their constitutional rights under the Fourteenth Amendment. Similar to the conditions in *Taylor*, Plaintiffs have alleged that Holding Cells 1-4 "routinely had old food, blood, urine, feces, dirty toilet paper, vomit, used bandages, trash, and water on the floor;" were missing bunks and mattresses so detainees were forced to sleep on that filthy floor; and were often cold because the floors were bare concrete. (R. Doc. 101-1, p. 4-6). Here, in addition to the conditions at issue in *Taylor*, the cells were also overcrowded, detainees were denied blankets by guards as punishment, and some detainees were denied necessary medical care. (R. Doc. 101-1, p. 4-6). A determination of whether these conditions violate the Constitution can resolve class-wide claims on the issue of Defendants' liability. Each of the approximately 5,000 putative class members passed through Holding Cells 1-4 during the class period and were therefore exposed to the same deplorable conditions. Despite Defendants' assertions to the contrary, Plaintiffs have sufficiently met, and exceed, Rule 23(a)(2)'s requirements for commonality.

**C. Plaintiffs Meet the Typicality Requirement of Rule 23(a)(3).**

4

Defendants argue that the claims and defenses of the class representatives are not typical of the claims and defenses of the class because a "variety of injuries" are alleged. (R. Doc. 124, p.8). The typicality requirement of Rule 23(a)(3) focuses "on the similarity of the legal and remedial theories" behind the class representatives' claims. *Jenkins v. Raymark Indus.*, 782 F.2d 468 (5th Cir. 1986). Differences in the extent of injury between named class representatives and unnamed class members does not defeat class certification, as long as the theories of liability are shared among the class members, even if some theories about damages differ among the class members. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 (5th Cir. 2001). In this case, the theories of liability against Defendants are the same across class members regardless of the extent of each class member's injuries. Plaintiffs have, therefore, met the typicality requirement of Rule 23(a)(3).

### D.  Plaintiffs Meet the Adequacy Requirement of Rule 23(a)(4).

Defendants argue that Plaintiffs fail the adequacy requirement of Rule 23(a)(4) because "Plaintiffs have not shown the necessary commonality of injury throughout the putative class to show that they have suffered from the same injuries." (R. Doc. 124, p. 9). The adequacy requirement, however, "demands that the named class representatives fairly and adequately represent the claims of the other class members." *Slocum*, 2019 WL 2192099 at *8. Differences between named class representatives and unnamed class members "render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen v. Treasure Chest Casinos*, 186 F.3d 620, 625-26 (5th Cir. 1999). Defendants themselves note that there are "no apparent conflicts of interest." (R. Doc. 124, p. 9). Because the class representatives' interests are "aligned, not antagonistic, to the unnamed class members," and because this is a 23(b)(3) class

5

where "dissatisfied class members have the right to opt out of the class," Plaintiffs have met the adequacy requirement of Rule 23(a)(4). *Bertulli*, 242 F.3d at 298.

## II.     Plaintiffs Also Satisfy the Requirements of Rule 23(b)(3).

### A. Plaintiffs' Common Questions of Liability Predominate Over Questions of Individual Damages.

Defendants argue that Plaintiffs do not satisfy the predominance requirement of Rule 23(b)(3) because the calculation of individual damages in this case will predominate over the class-wide questions of law and fact. (R. Doc. 124, p. 12-13). Before a class may be certified under Rule 23(b)(3), the district court "must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members'" to test "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting Fed. R. Civ. P. 23(b)(3). Nevertheless, "when 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citing 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-24 (3d ed. 2005)(footnotes omitted in original)). Additionally, "[a] large group of plaintiffs, each with small damages, seeking injunctive relief that benefits the group as a whole, is the prototypical class." *Bertulli*, 242 F.3d at 298. Plaintiffs seek damages, as well as injunctive relief against Defendants.

In making their argument that Plaintiffs fail under Rule 23(b)(3), Defendants rely heavily on *Steering Committee v. Exxon Mobil Corp.*, in which the Fifth Circuit affirmed the denial of class certification on grounds that the plaintiffs had failed to demonstrate predominance and superiority. 461 F.3d 598, 601 (5th Cir. 2006). *Steering Comm.*, a class action suit which

6

stemmed from a chemical plant fire, is clearly distinguishable from the instant litigation. During class certification proceedings in *Steering Comm.*, the district court heard that not only would it need to resolve personal injury claims that "would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals" but it would also need to analyze separate types of proof "necessary for the property damage, devaluation, and business loss claims" of other members of the class. *Id.* at 602. The Fifth Circuit rightly affirmed that these individual damage claims–both personal injury medical claims, as well as property damage and business loss claims–did not meet the standard set forth in a predominance inquiry, even if each injury was caused by the same event.

In the instant litigation, the class itself is concise and cohesive. It includes "all detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells." (R. Doc. 1, p. 6). As discussed in Section I(B), *supra*, the question of whether the conditions in St. Tammany Jail's Holding Cells 1-4 were unconstitutional is the class-wide, predominant question in this litigation. Resolution of this single issue of fact and law would determine whether class members would even get to the damages inquiry. This is so whether the claims against Defendants are brought as a class or individually. But in the instant litigation, the class mechanism allows the court to preserve judicial resources in a way that is convenient and desirable. *See Amchem*, 521 U.S. at 614-15.

**B. Damages Calculations Need Not Be Determined by a Mathematical Calculation.**

Defendants also argue that, under Rule 23(b)(3), damages calculations should be susceptible to a mathematical or formulaic calculation and lack of such a calculation cuts against Plaintiffs' showing of predominance of class-wide questions of law or fact. (R. Doc. 124, p. 11). This is similar to an argument made by BP and Objectors in *In re Deepwater Horizon*. 739 F.3d

7

at 815 ("According to BP and the Objectors, the Supreme Court's recent decision in *Comcast Corp. v. Behrend* [569 U.S. 27 (2013)]…precludes certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for class-wide measurement."). The Fifth Circuit noted that this, however, was a misreading of *Comcast* and an argument "which has already been rejected by three other circuits." *Id.* Writing that the problem in *Comcast* was whether the class-wide damages formula approved by the district court was "incompatible with the class action's theory of liability," the Fifth Circuit stated that *Comcast* "has no impact" in cases in which "predominance was based not on common issues of damages but on the numerous common issues of liability." *Id.* "As we stated in *Bell Atlantic Corp. v. AT&T Corp.*, 'even wide disparity among class members as to the amount of damages' does not preclude class certification 'and courts, therefore, have certified classes even in light of the need for individualized calculations of damages.'" *Id.* (internal citations omitted). In the instant case, in which the damages are compatible with the class action's theories of liability, and where the predominance of the class's claims are based on issues of common liability, the Fifth Circuit has already held that arguments like those being made by Defendants simply do not apply. Here, "[a]lthough calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue." *Bertulli*, 242 F.3d at 298.

**C. The Class Action Mechanism is the Superior Method for Resolving This Case.**
Finally, Defendants argue that class certification is inappropriate because "joinder of all the plaintiffs…is impractical," and "bifurcation is not manageable." (R. Doc. 124, p. 13). In support of this argument, Defendants cite *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, where the Fifth Circuit affirmed a district court's denial of class certification on behalf of a supermarket chain in an antitrust case alleging fraudulent concealment as a means of extending the statute of limitations on their claims against a snack foods producer. 100 Fed. Appx. 296, 297

8

(5th Cir. 2004) (unpublished). The Fifth Circuit noted that the district court had denied class certification because individual damages calculations would have to consider the "numerous independent factors" of "potentially thousands of [individual] transactions" into account along with issues of class members' knowledge and due diligence versus reliance on the fraudulent concealment component of the class claims. *Id.* at 299, 301.

      The instant case is distinguishable from an anti-trust case in a number of ways. Most importantly, Plaintiffs here allege civil rights violations that will not require the type of minute and specific inquiry into various transactions and mental states of each of the class members as was the case in *Piggly Wiggly*. Instead, the type of individual damages inquiry in the case at hand will chiefly be related to how long each class member was in Holding Cells 1-4 and whether they were denied necessary medical care while being held therein. The class action mechanism is superior in this case because it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal citations omitted). Factors that the Fifth Circuit has deemed significant in determining the superiority of the class action mechanism–manageability problems stemming from extremely large class membership, complex choice-of-law issues, novel causes of action, extensive subclassing requirements, and potential jury confusion–are not present in the current case. *See Mullen*, 186 F.3d at 628; *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1023 (5th Cir. 1992). Defendants have offered no alternative methods that would be superior to the class action mechanism in the resolution of this case and instead have merely asserted that joinder would be a better option. This assertion is not supported by Fifth Circuit case law. Plaintiffs meet every requirement of Fed. R. Civ. P. 23(a) and 23(b)(3) for class certification.

9

Should the Court determine that it is appropriate to bifurcate trial between liability issues and damages issues, Plaintiffs request liability certification pursuant to the Rule 23(c)(4). "A class action limited to determining liability on a class-wide basis…will often be the sensible way to proceed." *Slocum*, 2019 WL 2192099 at *9. Should this Court decline to certify Plaintiffs' putative class pursuant to Rule 23(b)(3), it should certify the particular class issues as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' Motion and certify this a class action pursuant to FRCP 23(a) and (b)(3) or 23(c)(4).

Respectfully Submitted,

By:     */s/ Nicolette A. Ward*  .
       Attorneys for Plaintiffs

**Dated: December 1, 2020**

Maria B. Glorioso (#24435), T.A.
**THE GLORIOSO LAW FIRM**
2716 Athania Parkway
Metairie, LA 70002
Tel: (504) 569-9999
maria@gtorts.com

Devon M. Jacob (*pro hac vice*)
**JACOB LITIGATION, INC.**
P.O. Box 837
Mechanicsburg, PA 17055-0837
Tel: (717) 796-7733
djacob@jacoblitigation.com

Antonio M. Romanucci (*pro hac vice*)
Bhavani K. Raveendran (*pro hac vice*)
Nicolette A. Ward (*pro hac vice*)
Ian P. Fallon (*pro hac vice*)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
aromanucci@rblaw.net,