## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AHMED BAQER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-980-WBV-JCW** |
| **ST. TAMMANY PARISH GOVERNMENT, ET AL.** | **SECTION: D (2)** |

## ORDER AND REASONS

Before the Court is Defendants Greg Longino and Rodney Strain's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiffs oppose the Motion and Defendants have filed a Reply.[2]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

This is an action for declaratory, injunctive and compensatory relief regarding the conditions of pre-trial detention in the four holding cells at St. Tammany Parish Jail.  On March 22, 2020, Ahmed Baqer, Klabert Joseph Guillot, Jr. and Klabert Joseph Guillot, Sr. (collectively, "Plaintiffs"), filed a Complaint seeking damages under 42 U.S.C. § 1983, asserting that they were forced to endure prolonged pre-trial detainment in dirty, cramped holding cells in St. Tammany Parish Jail (the "jail") in violation of their constitutional rights under the Fourteenth Amendment of the United States Constitution.[4]  Named as defendants in the Complaint are: (1) St.

---

[1] R. Doc. 45.
[2] R. Docs. 51 and 60.
[3] Much of the Factual Background is repeated from the Order and Reasons denying the Motion for Preliminary Injunction (R. Doc. 40).
[4] R. Doc. 1 at ¶¶ 2, 118-129.

Tammany Parish Government a/k/a St. Tammany Parish Council; (2) St. Tammany Parish Sheriff's Office (the "Sheriff's Office"); (3) Randy Smith, in his individual and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present ("Sheriff Smith"); (4) Rodney J. Strain, in his individual and official capacity as Sheriff of St. Tammany Parish from 1996 until 2016 ("Strain"); (5) Greg Longino, in his individual and official capacity as Warden of the St. Tammany Parish Jail from "all relevant times and until October 11, 2019" ("Longino"); and (6) Lacey Kelly, in her individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times" ("Warden Kelly").[5]

Plaintiffs allege that the conditions of the holding cells presented a substantial risk of serious harm to pre-trial detainees, in violation of the Louisiana Constitution, and assert state law claims for negligence and *respondeat superior*.[6]  Specifically, Plaintiffs allege that pre-trial detainees were forced to endure detainment with as many as 24 detainees confined within a ten-foot by twenty-foot space for as long as 18 days.[7]  Plaintiffs assert that, as late as March 3, 2020, the number of detainees held in each holding cell ranged from 17 to 21.[8]  Plaintiffs further allege that pre-trial detainees were forced to sleep on the concrete floor, forced to urinate and defecate in front of each other in a toilet visible to all other detainees within the holding cell,

---

[5] *Id*. at ¶¶ 12-23.
[6] *Id*. at ¶¶ 130-151.
[7] *Id*. at ¶¶ 2, 67, 69.  The Court notes that Klabert Guillot, Jr.'s testimony at a hearing in this matter held on April 10, 2020 regarding length of confinement differed from the allegations in the Complaint and that the length of pre-trial detention may have been a maximum of 16 days.  The testimony does not affect the analysis of this Motion to Dismiss.
[8] *Id*. at ¶ 71.

deprived of hygienic products and denied access to showers for days at a time.[9]
Plaintiffs assert that the named defendants maintained a custom, practice, and *de
facto* policy of housing new inmates in individual intake holding cells in excess of 48
hours without classifying and transferring new arrivals to the appropriate housing
area.[10]  Plaintiffs allege that, upon information and belief, this custom, practice, and
*de facto* policy was put in place as early as April 2011 when Strain was St. Tammany
Parish Sheriff.[11]   Plaintiffs further assert that the United States Department of
Justice (the "DOJ"), conducted an investigation in 2012, which resulted in a report
notifying defendants, St. Tammany Parish and former Sheriff Strain, that as many
as 30 prisoners were held in holding cells designed to hold 20 prisoners, and that
prisoners were sleeping on floors and benches in holding cells with little or no
bedding.[12]  Plaintiffs assert that the DOJ also found that prisoners were required to
remain in the holding cells for days, if not weeks, before they were assigned to housing
units.[13]

With respect to the three named plaintiffs, Plaintiffs assert that Ahmed Baqer
was detained in a holding cell with 19 other pre-trial detainees at St. Tammany
Parish Jail for 17 days in December 2019, before being moved to the general
population and, shortly thereafter, released.[14]  Plaintiffs assert that Klabert Guillot,
Jr. was detained in a holding cell for 18 days between December 18, 2019 and January

---

[9] *Id.* at ¶ 2.
[10] *Id.* at ¶ 56.
[11] *Id.* at ¶ 57.
[12] *Id.* at ¶¶ 58-60.
[13] *Id.* at ¶ 61.
[14] *Id.* at ¶¶ 87, 90, 92, 93.

5, 2020, along with 19 other pre-trial detainees, before being moved to the general population.[15]  Plaintiffs claim that during those 18 days, the guards stripped inmates and performed cavity searches of the pre-trial detainees within the holding cell.[16]  Plaintiffs also assert that Klabert Guillot, Sr. was detained in a holding cell for 13 days between December 22, 2019 and January 4, 2020, along with 19 other detainees, before being moved to the general population.[17]

Plaintiffs allege that they were all forced to sleep on the bare concrete floor of their respective holding cells for the duration of their detainment, despite the availability of "cell space" and beds within the prison.[18]  Plaintiffs argue that the defendants failed to provide the minimum standards for the operation and management of Louisiana jails, set forth in Title 22, Part III, Subpart 2 of the Louisiana Administrative Code ("LAC").[19]  Plaintiffs contend that Title 22 of the LAC requires prisons to provide inmates with clean linen and bedding upon admission and at least once a week thereafter, disinfection of inmates' mattresses, pillows and mattress covers, daily access to showers, and to classify and transfer new inmates to an appropriate housing area no later than 48 hours after placing them in individual intake holding cells.[20]

---

[15] *Id*. at ¶¶ 100, 102, 104, 107.  *See*, *supra*, note 7.
[16] R. Doc. 1 at ¶ 106.
[17] *Id*. at ¶¶ 109, 112, 114, 116.
[18] *Id*. at ¶¶ 91, 105, 115.
[19] *Id*.
[20] *Id*. at ¶¶ 36-51.

Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and a putative class of similarly situated individuals, defined as follows:

> All detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells. The class period commences when this practice began, including but not limited to the time period commencing on March 22, 2019, and extends to the date on which St. Tammany Parish is enjoined from, or otherwise ceases, enforcing its policy, practice and custom of refusing to abide by appropriate detention and housing standards to all pre-trial detainees admitted to the St. Tammany Parish Jail and held in the intake and/or holding cell area. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.[21]

Plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described above violate the Fourteenth Amendment to the United States Constitution, a class-wide injunction enjoining the defendants from continuing such policies, practices and/or customs, and an award of compensatory and punitive damages on behalf of the class, as well as attorney's fees and costs.[22]

Plaintiffs filed a Motion for Preliminary Injunction on April 3, 2020, and requested expedited consideration thereof in light of COVID-19 and "the deadly threat that worsens by the hour."[23] On April 11, 2020, after an evidentiary hearing by the Court, the Court denied Plaintiffs' Motion for Preliminary Injunction.[24]

---

[21] *Id.* at ¶ 24.
[22] *Id.* at ¶¶ 3, 128-129, 153-156.
[23] R. Doc. 12 at p. 1. The Court granted expedited consideration on April 3, 2020. (R. Doc. 16).
[24] R. Doc. 40.

On May 26, 2020, Longino and Strain, each in their official and individual capacities (collectively, "Defendants"), filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).[25] Defendants assert that individual capacity claims against a supervisor under 42 U.S.C. § 1983 require Plaintiffs to allege either that Defendants affirmatively participated in the acts that caused the constitutional deprivation or that the defendant implemented an unconstitutional policy that causally resulted in the constitutional injury.[26] Defendants argue that there are no such allegations in the Complaint. With respect to their affirmative participation in the acts that caused the constitutional deprivation, Defendants assert that Strain served as Sheriff of St. Tammany Parish from 1996 through June 30, 2016, and that Randy Smith has been the Sheriff of St. Tammany Parish since June 30, 2016.[27] Defendants claim that Strain ceased exercising any authority over the St. Tammany Parish Sheriff's operations, including the jail, on June 30, 2016 when Sheriff Strain took office. Defendants also point out that Plaintiffs have alleged that Longino was the warden of the jail "at all relevant times and until October 11, 2019."[28] Defendants highlight that, by Plaintiffs' own admission, Longino lacked authority over any aspect of the jail following October 11, 2019. Defendants note that Plaintiffs assert that they were held as pre-trial detainees in the jail beginning December 2, 2019, December 18, 2019, and December 22, 2019, respectively.[29] Accordingly, Defendants assert that

---

[25] R. Doc. 45.

[26] R. Doc. 45-1 at p. 4 (citing *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019)).

[27] R. Doc. 45-1 at p. 2 (*citing* R. Doc. 1 at ¶¶ 15, 18).

[28] R. Doc. 45-1 at p. 2 (*citing* R. Doc. 1 at ¶ 20).

[29] R. Doc. 145-1 at p. 2 (*citing* R. Doc. 1 at ¶¶ 87-92, 100 & 109).

neither Strain nor Longino had any responsibility for, or direct involvement with, Plaintiffs' detention and the acts that caused the alleged constitutional deprivations.

Defendants further assert that Plaintiffs have failed to allege that Strain or Longino enacted or created an unconstitutional policy that resulted in the constitutional deprivations. Defendants claim that Plaintiffs have alleged only that Strain maintained the policy of keeping individuals in holding cells for longer than 48 hours, that the policy was put in place as early as April 2011 when Strain was the Sheriff, and that Strain was the Sheriff in 2012 when the DOJ wrote a report regarding the conditions of the jail.[30] Defendants argue that these allegations are insufficient to state a plausible claim for relief against Strain, as Plaintiffs have not alleged that Strain created the policy at issue. Defendants likewise assert that Plaintiffs have failed to allege any facts that would support an inference that Longino was in a position of authority at the jail when the policy was allegedly enacted, that Longino himself created the policy, or that Longino was personally involved with any of the alleged constitutional violations claims by Plaintiffs.[31] Although Plaintiffs also allege that Longino "maintained a custom, practice and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area," Defendants assert that these allegations are insufficient to state a claim against

---

[30] R. Doc. 145-1 at pp. 4 & 5 (*citing* R. Doc. 1 at ¶¶ 56-60).
[31] R. Doc. 145-1 at p. 4 (*quoting* R. Doc. 1 at ¶ 56) (internal quotation marks omitted).

Longino in his individual capacity because Plaintiffs failed to allege that Longino implemented an unconstitutional policy.[32]

Since Plaintiffs have failed to allege that Defendants created or implemented an unconstitutional policy or were otherwise personally involved in Plaintiffs' pre-trial detentions, Defendants argue that Plaintiffs have failed to state a claim against them in their individual capacities.[33]  Even assuming that Plaintiffs had sufficiently alleged that either Strain or Longino personally enacted the challenged policy, Defendants contend that the individual capacity claims must be dismissed because the challenged policy is not "so deficient that the policy **<u>itself</u>** is a repudiation of constitutional rights."[34]  Defendants argue that the policy that the jail would house new arrivals in individual intake holding cells in excess of 48 hours without classifying and transferring new arrivals to the appropriate area fails to satisfy this test because there is no constitutional right to be held in a jail holding cell for 48 hours or less when that detention is otherwise lawful.[35]  Defendants point to jurisprudence indicating that the judiciary is ill-equipped to micro-manage a jail's day-to-day operations and that judicial restraint is appropriate "because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees."[36]  Defendants assert that other Sections of this Court have repeatedly

---

[32] R. Doc. 145-1 at p. 5.

[33] *Id.* at p. 6 (quoting *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002)) (internal quotation marks omitted and emphasis added by Defendants).

[34] R. Doc. 45-1 (citing *Cozzo*, 279 F.3d at 289) (emphasis added by Defendants).

[35] R. Doc. 45-1 at p. 6.

[36] R. Doc. 45-1 at p. 6 (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed.Appx. 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, Civ. A. No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015)).

held that keeping individuals in holding cells at the St. Tammany Parish Jail for periods as long as 15 to 18 days is insufficient to rise to the level of a constitutional violation.[37]   Because the challenged policy constitutes nothing more than a *de minimis* level of imposition on pre-trial detainees, Defendants argue that Plaintiffs have failed to assert a plausible claim against them in their individual capacities.

Defendants further contend that the individual capacity claims must be dismissed because Plaintiffs have failed to allege that the challenged policy caused the constitutional violations.[38]   Defendants contend that the Fifth Circuit requires not only that the supervisory defendant (1) implement a policy (2) that is itself a repudiation of constitutional rights, "but also (3) that this policy be the **moving force** of the constitutional violation."[39]   Reiterating that neither Strain nor Longino were in office or employed by the Sheriff's Office at the time of Plaintiffs' pre-trial detention, Defendants contend that Plaintiffs have failed to allege any facts to show that Defendants' actions were the moving force of the alleged constitutional violations.  Defendants further argue that because Strain's last day in office was June 30, 2016, any claims against Strain are prescribed under Louisiana law, which governs Plaintiff's § 1983 claims.[40]

Defendants further argue that they are entitled to qualified immunity and that Plaintiffs have failed to defeat the defense of qualified immunity by showing that

---

[37] R. Doc. 45-1 at pp. 6-7 (citing *Hill v. Smith*, Civ. A. No. 20-1042, 2020 WL 2226316, at *2 (E.D. La. April 1, 2020), *report and recomm. adopted by* 2020 WL 2219366 (E.D. La. May 7, 2020) (Lemmon, J.); *Allen v. St. Tammany Parish*, Civ. A. No. 17-4091, 2018 WL 558503, at *3-5 (E.D. La. Jan. 2, 2018), *report and recomm. adopted by* 2018 WL 537495 (Africk, J.)).
[38] R. Doc. 45-1 at p. 7 (citing *Cozzo*, 279 F.3d at 289).
[39] R. Doc. 45-1 at p. 7 (citing *Cozzo*, 279 F.3d at 289) (emphasis added by Defendants).
[40] R. Doc. 45-1 at p. 8 (citing authority).

Defendants violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct.[41]  Defendants aver that Plaintiffs cannot cite to any existing authority to show that the policy at issue is itself unconstitutional, nor can they cite any authority that places the constitutional question related to keeping individuals in holding cells longer than 48 hours "beyond debate."[42]

Finally, Defendants assert that the official capacity claims asserted against them must be dismissed because courts treat suits against state officers in their official capacity like suits against the State.[43]  Relying on Fifth Circuit precedent, Defendants assert that courts have held that when the government entity itself is a defendant, claims against entity members/officers in their official capacities are redundant and appropriate for dismissal.[44]  Defendants assert that because Plaintiffs have sued Sheriff Smith in his official capacity, the claims against them in their official capacities are redundant and should be dismissed.[45]  Additionally, because Plaintiffs have failed to state a plausible federal law claim against Defendants, Defendants assert that the Court should decline to exercise supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367.[46]

---

[41] R. Doc. 45-1 at pp. 8-10.

[42] Doc. 45-1 at p. 10 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

[43] R. Doc. 45-1 at pp. 10-11 (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

[44] R. Doc. 45-1 at p. 11 (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

[45] R. Doc. 45-1 at p. 11.

[46] *Id*. at pp. 11-12.

Plaintiffs oppose the Motion, asserting that, "Defendants engage in an exercise in semantics in arguing that 'Plaintiffs' allegations only provide that this policy was "maintained" by Mr. Strain,'" which Defendants contend is not enough to allege that Strain enacted or created the challenged policies.[47]  Although Defendants claim that the individual capacity claims must be dismissed because the challenged policy is not "so deficient that it is a repudiation of constitutional rights," Plaintiffs assert that this standard  from *Cozzo v. Tangipahoa Parish Council* is substantially more narrow than *Romero*, which allows for recovery against those who implement unconstitutional policies.[48]  Plaintiffs then dispute Defendants' assertion that the pre-trial conditions complained-of are "trivial inconveniences" or "*de minimis* level[s] of imposition on pretrial detainees."[49]   Plaintiffs assert that Defendants are responsible for the culture and policies of depriving inmates of bedding, adequate bathroom facilities, and other policies and practices, as alleged in the Complaint.[50] As such, Plaintiffs maintain that they have stated a claim for which relief can be granted under the Fourteenth Amendment.

Regarding Defendants' assertion that Plaintiffs have failed to allege that Defendants were the moving force behind the constitutional violations, Plaintiffs assert that, "It is difficult to imagine a scenario more fittingly described as 'moving force' than these two defendants who implemented and maintained policies so deeply ingrained in the St. Tammany Parish Jail that they remain in the present time after

---

[47] R. Doc. 51-1 at p. 5 (*citing* R. Doc. 45-1 at p. 5).
[48] R. Doc. 51-1 at p. 5 (citing *Cozzo*, 279 F.3d 273, 289 (5th Cir. 2002)).
[49] R. Doc. 51-1 at p. 6 (*quoting* R. Doc. 45-1 at p. 6) (internal quotation marks omitted).
[50] R. Doc. 51-1 at p. 6 (*citing* R. Doc. 1 at ¶¶ 66, 78-83).

their respective tenures have expired."[51]   Plaintiffs further assert that Defendants fundamentally misunderstand statutes of limitation, and that a cause of action accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action."[52]   Although Defendants believe that Plaintiffs' claims should have expired years before they were detained, Plaintiffs assert that, "it is not the date the tortious act was committed that triggers the running of the statute of limitations; it is the date the plaintiff became aware of the injury."[53]   As such, Plaintiffs argue that the Motion should be denied to the extent it is based upon a statute of limitations defense.

Plaintiffs further assert that Defendants have failed to prove that they are entitled to qualified immunity.[54]   Though it is not entirely clear, Plaintiffs appear to argue that their allegations put Defendants on notice that "implementing *de facto* policies and customs of overcrowding for extensive periods of time, forcing inmates to sleep on concrete floors with little or no bedding, depriving inmates of adequate toilet facilities, and withholding hygiene items, blankets, and medications as punishment amount to a conditions of confinement Fourteenth Amendment violation."[55]   As such, Plaintiffs assert Defendants are not entitled to qualified immunity.   Plaintiffs do not address Defendants' contention that the claims against them in their official capacities must be dismissed as redundant.

---

[51] R. Doc. 51-1 at pp. 6-7.
[52] R. Doc. 51-1 at p. 7 (quoting *Adepegba v. State of La.,* 41 F.3d 663 (5th Cir. 1994); *Franklin v. Pursley*, 51 F.3d 1042 (5th Cir. 1995); *Metcalf v. Robertson*, 62 F.3d 394 (5th Cir. 1995)) (internal quotation marks omitted).
[53] R. Doc. 51-1 at p. 7.
[54] *Id*. at pp. 7-9.
[55] *Id*. at pp. 8-9 (citing *Oladipupo v. Austin*, 104 F. Supp. 2d 626, 637 (W.D. La. 2000)).

In response, Defendants assert that Plaintiffs argue in their Opposition brief that Defendants are responsible not only for the policy of keeping pretrial detainees in holding for more than 48 hours, but also for "other alleged conditions of confinement, including the physical design of the holding cells (that they lack showers, beds and toilets with privacy) and failing to promptly clean the holding cells after individuals vomit on the floors.[56] Defendants point out that Plaintiffs have not alleged any claims against Defendants related to the layout of the holding cells and that Plaintiffs have failed to sufficiently allege any policy-making acts against Defendants related to these other alleged conditions of confinement.[57] Defendants further assert that Plaintiffs' allegations regarding these other alleged conditions of confinement are framed as  conditions that resulted from the acts or omissions of the Sheriff's Office employees, not pursuant to some policy implemented by Strain or Longino.[58] Defendants argue that because Plaintiffs have failed to allege that Defendants were either personally involved in their pretrial detentions or implemented policies related to these other conditions of confinement, Plaintiffs have failed to state a claim for relief against Defendants.[59]

Despite Plaintiffs' assertion that Defendants' reliance on *Cozzo* is misplaced in light of the Fifth Circuit's subsequent opinion in *Romero,* Defendants argue that the Fifth Circuit's rule of orderliness compels adherence to *Cozzo*, which remains valid

---

[56] R. Doc. 60 at pp. 2-3.
[57] *Id.* at p. 3.
[58] *Id.* at pp. 3-4 (citing *Romero v.* Brown, 937 F.3d 514, 523 (5th Cir. 2019)).
[59] R. Doc. 60 at p. 4.

law.[60]  Defendants maintain that none of the policies allegedly attributable to them satisfy the *Cozzo* test for policy-making liability for supervisors because there is no independent constitutional right of pretrial detainees to be released from holding cells following 48 hours.   Defendants further assert that Plaintiffs failed to cite any authority to support their position that former elected officials or government employees may be personally liable for constitutional injuries that occur after their exit from office.[61]  Defendants contend that any decisions or policies promulgated by Strain during his term of office became the decisions or policies of Sheriff Smith once he entered office, assuming he decided to continue to enforce those alleged policies, which Defendants claim is the case here.[62]  Defendants assert that the same rationale applies to the claims against Longino.   Defendants maintain that Plaintiffs have failed to state a plausible claim against them in their individual capacities because Plaintiffs have failed to allege any facts to support an inference that Defendants committed any act that was the moving force behind their constitutional injuries.[63]  Defendants argue that Plaintiffs' allegations that Sheriff Smith and Warden Kelly continued the challenged policies "operate as a circuit breaker against any potential liability for Mr. Strain and Mr. Longino; those alleged decisions to *continue* the alleged policies are the moving force behind these claims violations, not decisions made eight to nine years ago."[64]

---

[60] *Id*. at pp. 4-5 (citing *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002); *Romero*, 937 F.3d 514).
[61] R. Doc. 60 at p. 7.
[62] *Id*. at p. 8.
[63] *Id*.
[64] *Id*.

Finally, Defendants maintain that they are entitled to qualified immunity and that Plaintiffs, who bear the burden of demonstrating the inapplicability of the defense, have failed to carry their burden. Defendants assert that Plaintiffs have failed to cite any controlling authority that would clearly establish that any of the policies at issue were unconstitutional *per se*.[65] Further, Defendants' assert that the sole decision relied on by Plaintiffs to overcome the "clearly-established" hurdle, is an out-of-district opinion that several Sections of this Court have examined and have found unconvincing for the proposition for which it is cited by Plaintiffs.[66] As such, Defendants assert that Plaintiffs' federal claims against them in their official and individual capacities should be dismissed with prejudice and that the Court should decline to exercise supplemental jurisdiction over any remaining state law claims asserted against them.

## II.   LEGAL STANDARD

### A. Motion to Dismiss

To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[67] A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[68]

---

[65] *Id*. at p. 9.

[66] *Id*. (citing *Oladipupo v. Austin*, 104 F. Supp. 2d 626, 637 (W.D. La. 2000)); *See*, *Pearson v. Strain*, Civ. A. No. 06-3845, 2006 WL 3858737 (E.D. La. Oct. 30, 2006), report and recomm. adopted in part, rejected in part by *Pearson v. Strain*, 2006 WL 3691570 (E.D. La. Dec. 8, 2006); *Hines v. Cain*, Civ. A. No. 06-3771, 2007 WL 891880 (E.D. La. Mar. 20, 2007); *Desroche v. Strain*, 507 F. Supp. 2d 571 (E.D. La. 2007); *Magee v. Crowe*, Civ. A. No. 09-3142, 2010 WL 630011 (E.D. La. Feb. 19, 2010); *Davis v. Gusman*, Civ. A. No. 09-7195, 2010 WL 1727825 (E.D. La. Apr. 13, 2010).

[67] *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

[68] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

No matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[69]   In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[70]   However, the factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[71]   "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[72]   In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[73]   The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[74]

### B. Individual Capacity Claims Under 42 U.S.C. § 1983.

The instant Motion to Dismiss was brought by former Sheriff Strain and former Warden Longino, who were sued in their individual and official capacities under 42 U.S.C. § 1983 for maintaining the jail policies that Plaintiffs claim deprived them of their rights secured by the Fourteenth Amendment of the United States

---

[69] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (per curiam).
[70] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[71] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[72] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).
[73] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[74] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

Constitution.[75]  "Plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation.[76]  According to the Fifth Circuit, "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation."[77]  A supervisor is liable under 42 U.S.C. § 1983 if: (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.[78]  Supervisory liability may also exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[79]

The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law.[80]  Where, as here, a § 1983 defendant pleads qualified immunity, the plaintiff then has the burden to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.[81]  In a qualified immunity analysis, the Court must determine (1) whether the plaintiff has alleged a violation of a clearly

---

[75] R. Doc. 1 at ¶¶ 117-129.

[76] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

[77] *Oliver*, 276 F.3d at 741 (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).

[78] *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (quoting *Gates v. Tex. Dev't of Protective & Regulatory Servs.*, 537 F.3d 404, 435) (5th Cir. 2008)) (internal quotation marks omitted).

[79] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)).

[80] *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001).

[81] *Id.* (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)) (internal quotation marks omitted).

established constitutional right; and, if so, (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[82] A constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[83]   Further, a defendant's actions "are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."[84]

### C. Official Capacity Claims Under 42 U.S.C. § 1983

According to the Fifth Circuit, "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[85] As this Court previously explained, "any official-capacity claims against the defendants would in reality be claims against the local governmental body itself."[86] In order to hold a municipality or a local government unit liable under 42 U.S.C. § 1983 for the misconduct of one of its employees, a plaintiff must allege that an official

---

[82] *Thompson*, 245 F.3d at 457 (citing *Hare v. City of Corinth*, 135 F.3d 320, 325-26 (5th Cir. 1998); *Pierce*, 117 F.3d at 872).

[83] *Thompson*, 245 F.3d at 456 (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987)) (internal quotation marks omitted).

[84] *Thompson*, 245 F.3d at 457 (citing *Anderson*, 483 U.S. 635, 107 S.Ct. at 3040; *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Pierce*, 117 F.3d at 871).

[85] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[86] *Bean v. Pittman*, Civ. A. No. 14-2210, 2015 WL 350284, at *2 (E.D. La. Jan. 26, 2015) (citing *Picard v. Gusman*, Civ. A. No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), *adopted*, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); *Alexander v. City of Gretna*, Civ. A. No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); *Weatherspoon v. Normand*, Civ. A. No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010)).

policy or custom was a cause in fact of the deprivation of rights inflicted.[87]  To satisfy the "cause in fact" requirement, a plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue, or that her injuries resulted from the execution of the official policy or custom.[88]  According to the Fifth Circuit, "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."[89]

### III.   ANALYSIS

### A. The § 1983 Claims Against Defendants in their Individual Capacities Must be Dismissed.

The question before the Court is straightforward—reviewing the facts alleged in the Complaint in the light most favorable to Plaintiffs, have Plaintiffs alleged sufficient facts for the Court to reasonably infer that Defendants are liable as supervisors under 42 U.S.C. § 1983 for the constitutional deprivations allegedly caused by the policies concerning the holding cells at the St. Tammany Parish Jail? The Court concludes that Plaintiffs have not.  The Fifth Circuit has consistently held that a supervisor is liable under § 1983 if: (1) she affirmatively participates in the acts that cause the constitutional deprivation; or (2) she implements unconstitutional

---

[87] *Spiller v. City of Texas City, Police Dept.,* 130 F.3d 162, 167 (5th Cir.1997) (quotation and internal quotation marks omitted).
[88] *Id.* (internal quotation and quotation marks omitted; citation omitted).
[89] *Id.* (citing *Fraire v.* Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992)).

policies that causally result in the constitutional injury.[90]  The Court finds that there are no such allegations in the Complaint.

As an initial matter, and as recognized in the Complaint, neither Strain nor Longino were employed at the jail at the time of the Plaintiffs' pretrial detention in December 2019.[91]  Thus, there are no allegations in the Complaint that Strain or Longino "affirmatively participat[ed] in the acts that caused the constitutional deprivation" or that they enacted the policy or were actually involved in Plaintiffs' pretrial detainment.[92]  While Plaintiffs allege that the challenged policy was "put in place as early as April 2011" when Strain was the sheriff,[93] there is no allegation that Strain created or enacted the policy.  By Plaintiffs' own admission, Sheriff Smith, who has been the sheriff of St. Tammany Parish since 2016, is responsible for the "supervision, administration, policies, practices, customs, and operations of the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Jail."[94]  This allegation accurately reflects Louisiana law, which provides that sheriffs are final policy makers with respect to the management of jails and that the administration of jails is the province of the sheriff.[95]  Because neither Longino nor Strain were employed by the jail at the time of Plaintiffs' pretrial detention, the Complaint is devoid of any allegation that Longino or Strain were personally involved in Plaintiffs' pretrial

---

[90] *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (quoting *Gates v. Tex. Dept. of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)) (internal quotation marks omitted).

[91] *See*, R. Doc. 1 at ¶¶ 18, 20, 87, 100, 109.

[92] *Romero*, 937 F.3d at 523-24.

[93] R. Doc. 1 at ¶ 57.

[94] *Id.* at ¶¶ 15, 87, 100, 109.

[95] *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998) (*citing* La. Const. Art. 5, § 27); *O'Quinn v. Manuel,* 773 F.2d 605 (5th Cir. 1985) (*citing* La. R.S. 15:702).

detainment.  The Court declines to attach supervisory liability for misconduct which occurred months (in Longino's case) and years (in Strain's case) after they each left office.

With respect to the second prong of *Romero*, Plaintiffs have alleged that Strain and Longino, along with the other named defendants, "maintained a custom, practice, and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area," and that this challenged policy "was put in place as early as April 2011" when Strain was the sheriff.[96]  The Court finds such conclusory statements do not allege that Defendants implemented the challenged policy.[97] Additionally, Plaintiffs have not alleged facts to indicate that the challenged policy is "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[98]  Plaintiffs failed to address the legal authority from this Court, cited in Defendants' Motion, indicating that this Court has repeatedly held that pretrial detainment in the St. Tammany Parish Jail for periods as long as 15 to 18 days is insufficient to rise to the level of a constitutional violation.[99] Additionally, the Court is not persuaded that Plaintiffs have asserted sufficient facts to plausibly allege that Strain or Longino implemented unconstitutional policies that were the moving force behind the alleged constitutional violation.[100]  Even assuming

---

[96] R. Doc. 1 at ¶¶ 56-57.
[97] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
[98] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)).
[99] *See*, R. Doc. 45-1 at pp. 6-7 (citing authority); *See*, *supra*, note 37.
[100] *Cozzo*, 279 F.3d at 289.

that such policies existed during Strain's or Longino's tenure, Plaintiffs have correctly asserted that current Sheriff Smith is responsible for the administration of the jail, including the implementation or continuation of any policies.[101]   Indeed, there is a new Sheriff in town, and that Sheriff implements jail policies.  Accordingly, the Court finds that Plaintiffs have failed to state a plausible claim against Defendants in their individual capacities under 42 U.S.C. § 1983, and that such claims must be dismissed.

As the Court has determined that Plaintiffs have failed to allege a plausible supervisory liability claim against Defendants, the Court need not address Defendants' other claims, including their claim of qualified immunity.

### B. Section 1983 Claims Against Defendants in their Official Capacities.

In the Complaint, Plaintiffs sued Defendants, the former sheriff and warden of the jail, as well as Smith and Kelly, the current sheriff and warden of the jail, all in their individual and official capacities.[102]   Plaintiffs also sued the Sheriff's Office and the St. Tammany Parish Government.[103]   The claims against the St. Tammany Parish Government, Smith and Kelly remain pending.[104]   Thus, Plaintiffs have filed claims against former Sheriff Strain, former Warden Longino, current Sheriff Smith, and current Warden Kelly, each in their official capacities.  Under Fifth Circuit precedent, official capacity suits are generally another way of pleading an action

---

[101] R. Doc. 1 at ¶¶ 15-16.

[102] *Id*. at ¶¶ 15-23.

[103] *Id*. at ¶¶ 12-14.

[104] *See,* R. Docs. 42 & 43 (joint stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) dismissing with prejudice the Sheriff's Office).  The St. Tammany Parish has filed a motion to dismiss, which remains pending at this time.  (R. Doc. 69).

against an entity of which an officer is an agent.[105]  Thus, when the government entity itself is a defendant, claims against the entity members/officer in their official capacities are redundant and appropriate for dismissal.[106]  Based on the foregoing authority, the Court finds that Plaintiffs' suit against former Sheriff Strain and former Warden Longino in their official capacities are the same as a suit against the local government entity, St. Tammany Parish Government.  Similarly, a suit against current Sheriff Smith and current Warden Kelly in their official capacities is also suit against St. Tammany Parish Government.  Due to the pending claims against the St. Tammany Parish Government, the Court finds that Plaintiffs' official capacity claims against Strain and Longino are redundant and must be dismissed.[107]

### C. Leave to Amend is Denied.

The Court notes that Plaintiffs have not requested leave to amend their Complaint, either by formal motion or in their Opposition brief.[108]  Nonetheless, while the Court will "freely give leave [to amend] when justice so requires,"[109] leave to amend "is by no means automatic."[110]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and

---

[105] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).
[106] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).
[107] *Id.*
[108] *See, generally*, R. Doc. 51-1.
[109] Fed. R. Civ. P. 15(a).
[110] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

futility of the amendment."[111]   However, "i[t] is within the district court's discretion to deny a motion to amend if it is futile."[112]   The Fifth Circuit has stated that while it has not specifically defined "futility" in this context, "we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted."[113]

Applying those factors here, the Court finds that any amendment would be futile for several reasons.  Initially, the Court notes that Plaintiffs have been on notice of the basis for Defendants' Motion to Dismiss since May 2020 (when the Motion was filed) and have failed to move to amend their Complaint.  Indeed, Plaintiffs do not even request leave to amend the Complaint in their Opposition brief.  Therefore, the Court has no information regarding any proposed amendment.  Nevertheless, the Court has determined that Plaintiffs' official capacity claims against Defendants are redundant in light of the pending claims against the St. Tammany Parish Government.  Amending the Complaint could not overcome that obstacle.  Regarding Plaintiffs' individual capacity claims against Defendants, the Court has already recognized that under Louisiana law, "Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders."[114]   The Court has further acknowledged that sheriffs are responsible for the administration of jails and for their

---

[111] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[112] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[113] *Id.*
[114] La. R.S. 15:704.

employees under Louisiana law.[115]   Plaintiffs contend that Defendants either promulgated or maintained policies which Plaintiffs claim are unconstitutional.  The Court finds that any amendment regarding these former employees would likely be futile, as the law is clear that the current sheriff, Sheriff Smith, is responsible for the administration of the jail.

Further, such an exercise of this Court's discretion would ultimately cause undue delay in this matter, which has been pending since March 2020.  The Court finds that the facts of this case do not warrant such relief.  Exercising the discretion afforded under Fed. R. Civ. P. 15 and the pertinent jurisprudence, the Court finds that leave to amend would be futile in this case and, therefore, does not grant Plaintiffs leave to amend their Complaint to cure the deficiencies raised by Defendants' Motion to Dismiss.

However, the Court notes that Plaintiffs have also alleged state law claims against Defendants, which were not addressed in the instant Motion and, therefore, remain pending before the Court.[116]   Although Defendants assert that the Court should not exercise supplemental jurisdiction over these state law claims because Plaintiffs have failed to state a plausible federal claim against them,[117] Defendants misinterpret 28 U.S.C. § 1367.  Although the Court has determined that Plaintiffs' federal claims against Defendants must be dismissed under Fed. R. Civ. P. 12(b)(6), Plaintiffs have asserted federal claims against other defendants in this case,

---

[115] *See, Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998) (*citing* La. Const. Art. 5, § 27); *O'Quinn v. Manuel,* 773 F.2d 605 (5th Cir. 1985) (*citing* La. R.S. 15:702).
[116] R. Doc. 1 at ¶¶ 130-147.
[117] R. Doc. 45-1 at pp. 11-12.

including Sheriff Smith, Warden Kelly, and the St. Tammany Parish Government, all of which remain pending before the Court at this time.  As such, and because the state law claims against Defendants "are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III," the Court will exercise its supplemental jurisdiction over Plaintiffs' state law claims against Defendants.

### D. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss Pursuant to Rule 12(b)(6), filed by defendants, Gregory Longino and Rodney J. Strain[118] is **GRANTED**, and Plaintiffs' 42 U.S.C. § 1983 claims against Longino and Strain in their individual and official capacities, are **DISMISSED with prejudice.**

New Orleans, Louisiana, March 22, 2021.

*Wendy B Vitter*

**WENDY B. VITTER**
**United States District Judge**

---

[118] R. Doc. 45.