UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AHMED BAQER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-980-WBV-JCW** |
| **ST. TAMMANY PARISH GOVERNMENT, ET AL.** | **SECTION: D (2)** |

### ORDER AND REASONS

Before the Court is a Motion For Summary Judgment, filed by defendants, Randy Smith, Lacey Kelly, Rodney J. Strain and Greg Longino.[1] The Motion is opposed,[2] and Defendants have filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED** and Klabert Guillot, Jr.'s claims against Defendants are **DISMISSED WITH PREJUDICE.**

### I.   FACTUAL AND PROCEDURAL BACKGROUND[4]

This is an action for declaratory, injunctive and compensatory relief regarding the conditions of pre-trial detention in the four holding cells at St. Tammany Parish Jail.  On March 22, 2020, Ahmed Baqer, Klabert Joseph Guillot, Jr. and Klabert Joseph Guillot, Sr. (collectively, "Plaintiffs"), filed a Complaint seeking damages under 42 U.S.C. § 1983, asserting that they were forced to endure prolonged pre-trial detainment in dirty, cramped holding cells in St. Tammany Parish Jail (sometimes referred to as "the jail") in violation of their constitutional rights under the

---

[1] R. Doc. 111.
[2] R. Doc. 117.
[3] R. Doc. 122.
[4] The Court has set forth the factual and procedural background of this matter in great detail in several prior Orders and, for the sake of brevity, it will not be repeated here.  *See*, R. Docs. 40, 149, 150.

Fourteenth Amendment of the United States Constitution.[5] Although Plaintiffs named several entities and individuals as defendants in the Complaint,[6] the only remaining defendants are: (1) Randy Smith, in his individual and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present ("Sheriff Smith"); and (2) Lacey Kelly, in her individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times" ("Warden Kelly").[7]

On October 7, 2020, Sheriff Smith, Warden Kelly, Strain and Longino (collectively, "Defendants"), filed the instant Motion for Summary Judgement, asserting that there is no genuine issue of material fact that plaintiff, Klabert Joseph Guillot, Jr. ("Guillot, Jr."), failed to exhaust his administrative remedies before filing this suit.[8] Defendants claim that during the April 10, 2020 hearing on Plaintiffs' Motion for Preliminary Injunction, Guillot, Jr. testified that he had not exhausted his administrative remedies at St. Tammany Parish Jail prior to filing this suit.[9] Defendants point out that Warden Kelly has confirmed that Guillot, Jr. never initiated any administrative remedies regarding any conditions of confinement prior to filing this litigation.[10] Defendants assert that, "No action shall be brought with respect to prison conditions . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

---

[5] R. Doc. 1 at ¶¶ 2, 118-129.
[6] *Id.* at Introductory Paragraph and ¶¶ 12-23.
[7] *Id.* at ¶¶ 15-23.  On March 22, 2021, the Court dismissed the claims asserted against defendants, Rodney J. Strain and Greg Longino, in their individual and official capacities.  *See,* R. Doc. 149.
[8] R. Doc. 111.
[9] R. Doc. 111-2 (*citing* R. Doc. 38; R. Doc. 40 at p. 25; R. Doc. 44 at pp. 83-84).
[10] R. Doc. 111-2 at p. 2 (*citing* R. Doc. 37-1 at p. 4).

are available are exhausted."[11] Defendants claim that the requirement that a prisoner exhaust all administrative remedies prior to suit is both mandatory and non-discretionary.[12] Defendants contend that this limitation is an attempt to eliminate federal court interference in the running of the administration of prisons and to allow the prisons an opportunity to deal with complaints before they proceed to court.[13] Relying upon Guillot, Jr.'s testimony and the Affidavit previously submitted by Warden Kelly, Defendants argue that no trier of fact could find a genuine dispute as to any material facts regarding Guillot, Jr.'s failure to exhaust his administrative remedies.[14] As such, Defendants assert that Guillot, Jr.'s claims must be dismissed.

Plaintiffs oppose the Motion, asserting that it should be denied because Defendants have failed to show that the administrative procedure was available to Guillot, Jr.[15] According to Plaintiffs, Defendants claim that the Administrative Remedy Procedure ("ARP") for the jail is included in an Inmate Handbook and made available to inmates through each dormitory's computer.[16] Relying exclusively upon a sworn declaration from Guillot, Jr., Plaintiffs assert that Guillot, Jr. was housed in the holding cells at St. Tammany Parish Jail from December 18, 2019 through January 3, 2020, during which time he was never advised that a computer existed or that he had access to a computer.[17] Plaintiffs point out that the grievance procedure

---

[11] R. Doc. 111-2 at p. 4 (*quoting* 42 U.S.C. § 1997e(a)) (internal quotation marks omitted).
[12] R. Doc. 111-2 at p. 4 (citing *Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012)).
[13] R. Doc. 111-2 at p. 4 (citing *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)).
[14] R. Doc. 111-2 at p. 4.
[15] R. Doc. 117.
[16] *Id.* at p. 1 (*citing* 117-2 at ¶ 9); *See*, R. Doc. 37-1 at ¶ 14.
[17] R. Doc. 117 at pp. 1-2 (*citing* R. Doc. 117-2 at ¶ 10).

is only available to an inmate for up to 90 days after an incident occurs and that Guillot, Jr. testified during an April 2020 preliminary injunction hearing that he did not know what a grievance was or that the jail had a grievance procedure.[18]

Plaintiffs assert that, "A short time after the preliminary injunction hearing, Guillot, Jr. discovered a new orientation video that had been placed on the dormitory computer (in his new housing unit) for inmates to review."[19] Plaintiffs claim that the video discussed highlights from the Inmate Handbook, which first put Guillot, Jr. on notice that the ARP existed.[20] Plaintiffs further assert that Guillot, Jr. does not recall anyone ever providing him with a copy of, or informing him of the existence of, an Inmate Handbook and/or the existence of an ARP.[21] Plaintiffs claim that while Guillot, Jr. was housed in the holding cells, inmates were told to raise any complaints about their living conditions to a supervisor, but that supervisors simply ignored their complaints.[22] Plaintiffs claim that no deputy or supervisor ever told Guillot, Jr. that he needed to follow an administrative procedure to raise a complaint about the condition of the holding cells.

Plaintiffs contend that by the time Guillot, Jr. learned of the existence of the grievance procedure, over 90 days had passed since he had last been housed in the holding cells.[23] Plaintiffs assert that, as explained in the orientation video, a grievance must be filed within 90 days, otherwise it will be rejected as untimely.[24]

---

[18] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶¶ 12-14).
[19] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶ 15).
[20] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶ 16).
[21] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶ 17).
[22] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶¶ 18-19).
[23] R. Doc. 117 at p. 3 (*citing* R. Doc. 117-2 at ¶ 21).
[24] R. Doc. 117 at p. 3 (*citing* R. Doc. 117-2 at ¶ 22).

Plaintiffs claim that Guillot, Jr. never filed a grievance regarding the conditions of the holding cells because it would have been untimely. Plaintiffs assert that if Defendants had informed Guillot, Jr. of the grievance procedure before the 90 days had passed, Guillot, Jr. would have filed a timely grievance.

Plaintiffs argue that although Defendants bear the burden of proof on their summary judgment motion, Defendants have failed to provide any evidence that Guillot, Jr.: (1) was informed that the ARP existed; (2) was provided with a copy of the ARP; (3) was informed that the dormitory where he was housed had a kiosk/tablet computer; (4) knew that the ARP could be located on the dormitory kiosk/tablet computer; (5) knew that he had access to the dormitory kiosk/tablet computer; (6) actually had access to the dormitory's kiosk/tablet computer; or (7) notified of the ARP and what it required through any other means.[25] Plaintiffs contend that no such evidence exists. Plaintiffs argue the Motion for Summary Judgment should be denied because Defendants have failed to produce any evidence that the administrative procedure was available to Guillot, Jr., and Plaintiffs have produced evidence that the procedure was not available to him. Plaintiffs contend that by failing to inform Guillot, Jr. of the administrative procedure until after the 90-day deadline had expired, there was no way for Guillot, Jr. to properly exhaust his administrative remedies.[26]

---

[25] R. Doc. 117 at pp. 5-6.
[26] R. Doc. 117 at p. 6.

In response, Defendants argue that summary judgment is warranted because the administrative procedure was available to Guillot, Jr.[27] Relying upon several Fifth Circuit opinions, Defendants argue that a grievance procedure is not unavailable merely because the prisoner did not know about it if the prisoner has a "fair, reasonable" opportunity to learn about its existence, and that ignorance of the law does not excuse a prisoner of his obligation to exhaust his administrative remedies.[28] Defendants argue that the grievance procedures of the St. Tammany Parish Jail were available to Guillot, Jr. because they are contained in the Inmate Handbook, which is available to all inmates through kiosks or tablet computers.[29] Defendants contend that Plaintiffs have failed to put forth any evidence that the kiosks and/or tablet computers either did not contain the Inmate Handbook or that the kiosks and/or tablet computers were not functioning property. Defendants point out that Guillot, Jr. readily admits that he had access to a working computer during his incarceration and that he knew how to use it.[30] Defendants claim that Guillot, Jr. had full access to all of the information he needed to learn about the grievance process and, therefore, the grievance process was available to him. Defendants assert that the statements in Guillot, Jr.'s declaration regarding his lack of knowledge about

---

[27] R. Doc. 122.
[28] *Id.* at pp. 1-2 (quoting *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015)) (internal quotation marks omitted). *See, Thomas v. Fed. Bureau of Prisons*, Civ. A. No. CV05-1222, 2006 WL 3861962 (W.D. La. Dec. 13, 2006); *Castro v. Crawfoot*, 102 Fed.Appx. 852 (5th Cir. 2004); *Gonzalez v. Crawford*, 419 Fed.Appx. 522 (5th Cir. 2011); *Huff v. Neal*, 555 Fed.Appx. 289 (5th Cir. 2014).
[29] R. Doc. 122 at p. 2 (*citing* R.Doc. 37-1 at ¶ 14).
[30] R. Doc. 122 at p. 2 (*citing* R. Doc. 117-2 at ¶ 12).

the grievance procedure amount to an unsupported denial and should not be relied upon to defeat summary judgment.[31]

Defendants further point out that Guillot, Jr. was booked into the St. Tammany Parish Jail on December 18, 2019, and filed the Complaint in this case on March 22, 2020, just 95 days later.[32] Defendants contend that the holding cell conditions complained about in the Complaint – overcrowding, denial of recreational activity, denial of proper hygiene, being held in intake in excess of 48 hours – would not have been apparent until at least a few days into Plaintiff's time at the jail. Thus, Defendants argue that unless Guillot, Jr. retained counsel only two or three days prior to filing the Complaint, he would have had the further benefit of counsel within the 90-day time period within which to file his grievance to advise him of any such administrative procedures.[33] Defendants note that plaintiff, Klabert Joseph Guillot, Sr. (Guillot, Jr.'s father), initiated and completed the grievance process during his pretrial detainment at the jail.[34] Finally, Defendants point out that the Fifth Circuit has consistently held that district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint, and that a case must be dismissed if available administrative remedies were not exhausted.[35] Defendants argue that because Guillot, Jr. never attempted to initiate the grievance process, his suit is barred and summary judgment is warranted.

---

[31] R. Doc. 122 at p. 4.
[32] R. Doc. 122 at p. 2 (*citing* R. Doc. 1 at ¶ 100).
[33] R. Doc. 122 at p. 3.
[34] *Id*.
[35] *Id*. at p. 4 (quoting *Ates v. St. Tammany Parish*, Civ. A. No. 13-5732, 2014 WL 1457777 (E.D. La. April 15, 2014) (internal quotation marks omitted).

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[36] A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[37]

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[38] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[39] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[40] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most

---

[36] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[37] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[38] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[39] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[41]

### III. ANALYSIS

### A. Defendants are entitled to summary judgment on Guillot, Jr.'s claims because he failed to exhaust available administrative remedies.

The parties in this case do not dispute the existence of an administrative grievance process at St. Tammany Parish Jail, or that Guillot, Jr. never initiated a grievance regarding the conditions of his confinement in the holding cells of the jail prior to filing this suit. In fact, Plaintiffs readily acknowledge that Guillot, Jr. did not exhaust his administrative remedies with respect to the conditions of his pretrial confinement in the holding cells at St. Tammany Parish Jail. Plaintiffs, however, argue that Guillot, Jr.'s suit should proceed because the jail's administrative remedies were not available to him.

The Prison Litigation Reform Act of 1995 (the "PLRA"), provides that, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[42] The Fifth Circuit has clarified that, "Inmates need not exhaust all administrative remedies, however, but only those that are 'available' to them."[43]

---

[41] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[42] 42 U.S.C. § 1997e(a).
[43] *Davis v. Fernandez*, 798 F.3d 290, 294 (5th Cir. 2015) (citing *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010); *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)).

Further, "Whenever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him."[44] According to the Fifth Circuit, whether administrative remedies are "available" is a question of law, but the resolution of that question sometimes turns on questions of fact.[45]

The Fifth Circuit has developed "an extensive body of law addressing the various circumstances that render grievance procedures unavailable within the meaning of the [PLRA]."[46] For instance, the Fifth Circuit has held that grievance procedures were not "available" to a prisoner when prison authorities refused to provide the prisoner with the grievance forms needed to exhaust administrative remedies,[47] and where an inmate did not discover his injuries until after he left the jail.[48] The Fifth Circuit has also held that an administrative remedy may be unavailable if: (1) despite what regulations or materials may promise, prison officials are unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme is so opaque that it becomes, practically speaking, incapable of use by an ordinary prisoner; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.[49]

---

[44] *Davis*, 798 F.3d at 294-95 (citing *Cantwell v. Sterling*, 788 F.3d 507, 507 (5th Cir. 2015); *Dillon*, 596 F.3d at 266).
[45] *Leggett v. Lafayette*, 608 Fed.Appx. 187, 190 (5th Cir. 2015) (citing *Dillon*, 596 F.3d at 266).
[46] *Davis*, 798 F.3d at 295.
[47] *Aceves v. Swanson*, 75 Fed.Appx. 295, 295 (5th Cir. 2003).
[48] *Allard v. Anderson*, 260 Fed.Appx. 711, 714 (5th Cir. 2007).
[49] *Brantner v. Freestone County Sheriffs Office*, 776 Fed.Appx. 829, 833 (5th Cir. 2019) (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1859-60, 195 L.Ed.2d 117 (2016)) (internal quotation marks omitted).

"The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance."[50] In *Leggett v. Lafayette,* the Fifth Circuit affirmed the trial court's grant of summary judgment, finding, "The summary-judgment evidence establishes that Leggett had 'avenues for discovering the procedural rules governing [his] grievances.' Thus, even if Leggett was subjectively unaware of the procedures, the record sets out the substance of those procedures and indicates that the information was available to Leggett."[51] Subsequently, in *Davis v. Fernandez*, the Fifth Circuit held that there are "two oft-applied and well-established rules of unavailability" that were applicable to the facts of that case.[52] "First, courts may *not* deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures."[53] The *Davis* court held that the undisputed evidence showed that the jail's grievance procedures were published in an inmate handbook, which was in the record, and explained on jail television, and that the inmate did not contend that any circumstances precluded him from accessing either source.[54] The court concluded that, "[H]is ignorance of the grievance

---

[50] *Pratt v. Deville*, Civ. A. No. 2016 WL 1602948, at *3 (W.D. La. Feb. 23, 2016) (citing *Aguirre v. Dyer*, 233 Fed.Appx. 365 (5th Cir. 2007); *Simkins v. Bridges*, 350 Fed.Appx. 952, 953-54 (5th Cir. 2009); *Plaisance v. Cain*, 374 Fed.Appx. 560, 561 (5th Cir. 2010)). *See, Davis*, 798 F.3d 290; *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("First, ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not exclude prompt filing.") (citation omitted).
[51] 608 Fed.Appx. 187, 191 (5th Cir. 2015) (citing *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)) (internal citation omitted).
[52] 798 F.3d at 295.
[53] *Id.* (citing *Leggett v. Lafayette*, 608 Fed.Appx. 187, 191 (5th Cir. 2015).*Plaisance*, 374 Fed.Appx. at 561 ("Plaisance's ignorance of the law does not relieve him of his obligation to comply with procedural requirements.")) (emphasis in original).
[54] *Davis*, 798 F.3d at 295.

procedures, without more, is no basis to deem them unavailable."[55] The *Davis* court further found the second relevant rule applicable, which is that, "Grievance procedures *are* unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process."[56] Based on the record before it, which included testimony from the inmate that the jail staff told him the grievance process includes only a single step and that he did not file an appeal based on that misrepresentation, the Fifth Circuit held that, "we see no reason that Davis should not be entitled to rely on the representations of his jailers."[57] As such, the Fifth Circuit held that the second step of the jail's grievance process was unavailable to the inmate, that he was not required to exhaust the unavailable second step, and that the defendants were not entitled to summary judgment on their exhaustion defense.[58]

Applying the foregoing authority to the facts of this case, the Court finds that Defendants have put forth evidence showing that the St. Tammany Parish Jail's grievance procedure was available to Guillot, Jr. through kiosks/tablet computers. In an Affidavit previously filed into the record, Warden Kelly states that the jail's grievance process was available to Guillot, Jr. because it was included in the Inmate Handbook, which "is made available to all inmates through each dormitory's kiosk/tablet computer."[59] Warden Kelly further stated in her Affidavit that Guillot,

---

[55] *Id.*
[56] *Id.* at 295-95 (citing authority) (emphasis in original).
[57] *Id.* at 296.
[58] *Id.*
[59] R. Doc. 122 at p. 2 (*citing* R. Doc. 37-1 at ¶ 14).

Jr. was removed from the jail's holding cells on January 3, 2020, and has been assigned to the C800 housing unit since January 10, 2020.[60] Thus, Warden Kelly's Affidavit indicates that Guillot, Jr. has had access to a dormitory kiosk/tablet computer since at least January 20, 2020. Plaintiffs do not dispute this evidence, other than to assert that when Guillot, Jr. was housed in the *holding cells*, he was never advised that a computer existed or that he had access to a computer.[61] Plaintiffs, however, fail to direct the Court to any evidence or Fifth Circuit authority indicating that Guillot, Jr.'s ignorance of the grievance procedure establishes that the procedure was unavailable to him.

As in *Davis*, the undisputed evidence before the Court shows that the St. Tammany Parish Jail's grievance procedure is included in an Inmate Handbook, a copy of which is in the record, and is made available to all inmates through each dormitory's kiosk/tablet computer.[62] Plaintiffs have not argued that the kiosks/computers were not available to Guillot, Jr. or that they were not functioning properly. In fact, the Court finds that the evidence relied upon by Plaintiffs – Guillot, Jr.'s sworn declaration – shows just the opposite, as Guillot, Jr. confirms that he not only had access to a dormitory computer during his incarceration, he also knew how to use it and was able to review an orientation video that discussed highlights from the Inmate Handbook.[63] Further, there is no suggestion that anyone ever misled Guillot, Jr. about the grievance process or attempted to dissuade him from making

---

[60] R. Doc. 37-1 at ¶ 11.
[61] R. Doc. 117 at pp. 1-2 (*citing* R. Doc. 117-2 at ¶ 10) (emphasis added).
[62] R. Doc. 37-1 at ¶ 14 & at pp. 17-22.
[63] R. Doc. 117-2 at ¶ 12.

use of it. Plaintiffs allege, generally, that "if inmates had a complaint about the inhumane living conditions in the holding cells, they were told to take it to 'rank;' meaning a supervisor," and that, "when the complaints were communicated to the supervisors, the complaints were simply ignored."[64] These allegations, however, do not suggest that Guillot, Jr. was ever misled by jail officials regarding the existence or rules of the grievance process or that jail officials "thwarted" his efforts to take advantage of the grievance process. The Court therefore finds that Guillot, Jr. had a "fair, reasonable opportunity to apprise himself" of the jail's grievance process.[65]

The Court further finds that several unpublished Fifth Circuit opinions indicate that even if Guillot, Jr. did not receive a hard copy of the Inmate Handbook, that fact, alone, does not render the St. Tammany Parish Jail's administrative grievance procedures unavailable to him.[66] In *Manemann v. Garrett*, the Fifth Circuit concluded that the plaintiff-prisoner was unaware of the jail's grievance policy, but affirmed the district court's dismissal for failure to exhaust administrative remedies because the record indicated that the jail had a grievance policy and there was no evidence in the record that the plaintiff "ever asked for information about filing a grievance and was refused such information or was given incorrect

---

[64] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶¶ 18-19).
[65] *Davis*, 798 F.3d at 295.
[66] *Leggett v. Lafayette*, 608 Fed.Appx. 187, 191 (5th Cir. 2015) (citing *Manemann v. Garrett*, 484 Fed.Appx. 857, 858 (5th Cir. 2012); *Huff v. Neal*, 555 Fed.Appx. 289, 296 n.5 (5th Cir. 2014) (concluding that grievance procedures were available where inmate "could have discovered" deadline for filing a formal complaint); *Gonzalez v. Crawford*, 419 Fed.Appx. 522, 523 (5th Cir. 2011) ("[P]laintiff prisoner's] alleged ignorance of the exhaustion requirement, or the fact that he might have misconstrued the language in the handbook, does not excuse his failure to exhaust."); *Palermo v. Miller*, 196 Fed.Appx. 234, 235 (5th Cir. 2006) (upholding dismissal of prisoner's § 1983 claim for failure to exhaust where prisoner mistakenly believed it was unnecessary to file a Step 2 grievance).

information."⁶⁷ As such, the *Manemann* court held that the defendants had met their burden of showing that a grievance policy existed and that it was accessible to the plaintiff-prisoner.⁶⁸ The Fifth Circuit concluded that, "By failing to even inquire about filing a grievance regarding the denial of his special footwear, Manemann failed to exhaust his remedies with respect to any claims related to that denial, and those claims were subject to dismissal."⁶⁹ District courts in this Circuit have likewise held that a prisoner plaintiff must, at the very least, inquire about filing a grievance and be denied to properly assert that administrative remedies are unavailable.⁷⁰ Here, there is no evidence before the Court indicating that Guillot, Jr. ever inquired about a grievance policy at St. Tammany Parish Jail, or that he was ever refused such information or given incorrect information by jail staff.

Finally, the Court would be remiss if it did not address Guillot, Jr.'s assertion that he did not learn about the existence of St. Tammany Parish Jail's grievance procedure until *after* the April 10, 2020 preliminary injunction hearing. In their Opposition brief, Plaintiffs assert that, "A short time after the preliminary injunction hearing, Guillot, Jr. discovered a new orientation video that had been placed on the dormitory computer (in his new housing unit) for inmates to review. The orientation

---

⁶⁷ *Id.* (citing *Manemann*, 484 Fed.Appx. 857, 858 (5th Cir. 2012)).
⁶⁸ 484 Fed.Appx. at 858.
⁶⁹ *Id.* (*citing* 72 U.S.C. § 1997e(a)). *See also, Garcia v. Spotts*, Civ. A. No. 1:17cv26-LG-RHW, 2019 WL 4454508, at *5 (S.D. Miss. July 30, 2019) (citing *Manemann* and finding that lack of a copy of the inmate handbook does not render the ARP process unavailable to an inmate).
⁷⁰ *Davis v. Butler*, Civ. A. No. 2:12cv210-MTP, 2014 WL 5502421, at *3 (S.D. Miss. Oct. 30, 2014) (citing *Manemann*, 484 Fed. Appx. at 858); *See also, Bailey v. Anderson*, Civ. A. No. 4:13-CV-663-O, 2014 WL 4327917 (N.D. Tex. Sept. 2, 2014) (concluding that administrative remedies were available where plaintiff offered no explanation as to why he could not pursue the remedies while in the prison hospital).

video discusses highlights from the Inmate Handbook, and *for the first time*, put Guillot, Jr. on notice that the Administrative Remedy Procedure existed."[71] Plaintiffs further assert that, "Prior to discovering the aforementioned orientation video on the computer, Guillot, Jr. does not recall anyone ever providing him with a copy of, or informing him of the existence of an Inmate Handbook and/or the existence of an Administrative Remedy Procedure."[72]

The Court finds these assertions suspect in light of the fact that Guillot, Jr. retained counsel prior to filing the Complaint in this case on March 22, 2021, a mere 95 days after he entered the holding cells at St. Tammany Parish Jail on December 18, 2019.[73] However, several of the holding cell conditions complained of in the Complaint would not have been apparent to Guillot, Jr. for several days. In fact, Plaintiffs have specifically alleged in the Complaint that, "The Defendants to this action forced pre-trial detainees to endure *days to weeks* of prolonged pretrial detainment in dirty, cramped holding cells, with as many as twenty-four (24) detainees confined within a ten-foot by twenty-foot space."[74] Thus, unless Guillot, Jr. did not retain counsel until just a few days before the Complaint was filed, he likely had the benefit of counsel within the 90-day period for filing a grievance and his counsel could have advised him of the jail's grievance procedure. Plaintiffs' counsel was no doubt aware of the PLRA's requirement that a prisoner must exhaust

---

[71] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶¶ 15-16) (emphasis added). *See*, R. Doc. 117-2 at ¶ 12-13.
[72] R. Doc. 117 at p. 2 (*citing* R. Doc. 117-2 at ¶ 17); *See*, R. Doc. 117-2 at ¶ 14.
[73] R. Doc. 1 at ¶¶ 100, 104, 107.
[74] *Id.* at ¶ 2 (emphasis added).

administrative remedies prior to filing suit in federal court when counsel filed the Complaint in this case. Presumably, counsel would have consulted with Guillot, Jr. before filing this lawsuit. Further, Guillot, Jr. was expressly asked about St. Tammany Parish Jail's grievance procedure during the April 10, 2020 preliminary injunction hearing. Although Guillot, Jr. testified that he did not know what a grievance was or that the jail had a grievance process, when Plaintiffs' counsel objected to defense counsel's line of questioning regarding the grievance procedure, defense counsel explained, "Mr. Guillot, there is testimony in the record already from the warden that there is an administrative review process for dealing with grievances filed by inmates."[75] Plaintiffs offer no explanation as to why this line of questioning did not suffice to make Guillot, Jr. aware of the existence of St. Tammany Parish Jail's grievance procedure. As such, the Court questions the veracity of Guillot, Jr.'s assertion in his Declaration that he first learned about the jail's grievance procedure "A short time after the preliminary injunction hearing," when he accessed a new orientation video on a dormitory computer.[76]

Based on the foregoing analysis, the Court finds that Defendants are entitled to summary judgment as to Guillot, Jr.'s claims, which must be dismissed for his failure to exhaust available administrative remedies.

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion For Summary Judgment filed by defendants, Randy Smith, Lacey Kelly, Rodney J. Strain and Greg

---

[75] R. Doc. 44 at pp. 83-84.
[76] R. Doc. 117-2 at ¶ 12.

Longino,[77] is **GRANTED** and Klabert Joseph Guillot, Jr.'s claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, April 23, 2021.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[77] R. Doc. 111.