**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * * * | **NO. 2020-CV-980-WBV-DPC** |
| **Plaintiffs** | * | **JUDGE VITTER** |
| **VERSUS** | * * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual capacity** | * * * * * * * * * * | **MAGISTRATE CURRAULT**<br><br>**JURY DEMAND**<br><br>**COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC*** |
| **Defendants** | * | **ALL CASES** |

****************************************************************************

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

**NOW INTO COURT**, through undersigned counsel, come Defendants, Sheriff Randy Smith, Warden Lacey Kelly, Rodney J. Strain, and Greg Longino, each in their official and individual capacities, and herewith provide the following opposition to the Plaintiffs' Motion for Class Certification (R. Doc. 158):

## <u>BACKGROUND</u>

Plaintiffs filed the instant action on March 22, 2020, in which Plaintiffs allege violations of their civil rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana. Plaintiffs' complaint challenges the conditions of their pre-trial detainment at the St. Tammany Parish Jail, and in particular, Plaintiffs have alleged that there is an established policy or practice at the St. Tammany Jail to

keep pre-trial detainees in holding longer than 48 hours, and that this policy or practice has resulted in overcrowded and unsanitary conditions within the holding cells. Plaintiffs have named as defendants not only the current Sheriff of St. Tammany Parish, Sheriff Randy Smith, and the warden of the St. Tammany Parish Jail at all times relevant to their detentions, Lacey Kelly, but also Sheriff Smith's predecessor-in-office, Rodney Strain, as well as Major Kelly's predecessor, Mr. Greg Longino. On April 26, 2021, this matter was consolidated with *Louviere v. St. Tammany Parish Government, et al.*, No. 2:20-cv-1840-WBV-DPC, and Plaintiffs' original motions to certify class, which were filed in both the instant matter and in *Louviere*, were denied without prejudice (R. Doc. 152). Plaintiffs again seek to certify a class in this matter, which Defendants again oppose.

## LAW AND ARGUMENT

### I. Legal Standard

A court must conduct a "rigorous analysis" of the prerequisites laid out in Rule 23[1] before certifying a class, and the decision to certify a class is within the "broad discretion of the Court," provided the court follows the requirements set out in Rule 23.[2] The party seeking certification bears the burden of proof for certification of a class and must provide more than assurances to carry that burden.[3] A court's certification order "often bestows upon plaintiffs extraordinary leverage, and its bite should dictate the process that precedes it," therefore, because of the important due process concerns inherent in class certification, the court must "find, not merely assume the facts favoring class certification."[4] In fact, these due process considerations are so strong that a court must "give full and independent weight to each Rule 23 requirement,

---

[1] Fed. R. Civ. P. 23.
[2] *Castano v. American Tobacco Co.*, 84 F. 3d 734, 740-742 (5th Cir. 1996).
[3] *Id.*
[4] *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 267 (5th Cir. 2007) (quotations omitted).

regardless of whether that requirement overlaps with the merits."[5] This means when a court certifies a class, it must "detail with sufficient specificity how the plaintiff has met the requirements."[6] This analysis is necessary to protect "any unknown or unnamed potential class members [who],… by definition… do not and cannot participate …"[7]

## II. Plaintiffs do not satisfy any of the Rule 23(a) requirements

In order to certify a class, Federal Rule of Civil Procedure 23 requires that every one of the requirements listed in 23(a) are met. The Rule states that

> One or members of a class may sue or be sued as representative parties on behalf of all members **only** if:
>
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; **and** (4) the representative parties will fairly and adequately protect the interest of the class. (Emphasis added).

### A. Plaintiffs fail to support a claim of numerosity

To demonstrate numerosity, Plaintiffs must "demonstrate some evidence or reasonable estimate of the number of purported class members."[8] The number of members in a class is not by itself determinative of whether joinder is impracticable, and the Court may look to other factors as well, such as the nature of the action, the ease with which class members may be identified and the geographical dispersion of the purported class.[9]

As stated above, the burden of proof for class certification rests on Plaintiffs, and Plaintiffs have failed to carry their burden regarding numerosity. Plaintiffs claim a potential class of over 5,000 men, however the only proof for this assertion that they bring is one paragraph that

---

[5] *Id.* at 268.
[6] *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004).
[7] *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002).
[8] *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016).
[9] *Id.*

references a 735-page Movement Report. (R. Doc. 158-1, p. 11). Plaintiffs present no explanation or analysis of this document, nor are there references to any pages in it. The document itself does not contain a line count or even its own analysis, so it would be necessary for undersigned counsel and the Court to conduct their own counts to determine how many individual names are on the list before even trying to decide how many of those people would qualify for the purported class. The Movement Report is simply raw data complied by the St. Tammany Parish Sheriff's Office, and it is incumbent upon Plaintiffs to offer analysis and present an argument connecting the raw data to the requirement of Rule 23(a)(1). Plaintiffs fail to do this and therefore they fail to show the required numerosity element for certification.

**B. Plaintiffs' claims do not contain common questions of law or fact**

In order to certify a class, Plaintiffs must show that there is a common question of law and fact to the class. Plaintiffs cite older cases that state that the commonality "threshold [was] not high"[10] or that the commonality requirement "is easily met."[11] (R. Doc. 158-1, p. 10). However, the Supreme Court's 2011 "*Wal-Mart* decision has heightened the standards for establishing commonality under Rule 23(a)(2)," rendering older analysis "insufficient."[12] The Supreme Court in the *Wal-Mart* ruling "expounded on the meaning of its precedent providing that '[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'"[13]

"'Rule 23 does not set forth a mere pleading standard.' Instead, a plaintiff 'must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove

---

[10] *Jenkins v. Raymark*, 782 F.2d 468, 472 (5th Cir. 1986).
[11] *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 311 (6th Cir. 1975).
[12] *M.D. v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012).
[13] *Id.* at 840 *citing Wal-Mart*, 131 S. Ct. at 2551 (citation omitted).

that there are *in fact* … common questions of law or fact[.]'"[14] This requirement states that the "putative class members' claims 'must depend upon a common contention' that 'must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"[15] The crux of this requirement is therefore "'not the raising of common questions – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'"[16] Furthermore, a plaintiff must do more than show that the members of the putative class have all "suffered a violation of the same provision of law" because it is possible to violate the same provision of law in different ways.[17] "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."[18]

In order to show a common question of law or fact, Plaintiffs allege that "they and the members of the putative class experienced common, unconstitutional punitive conditions while housed at the St. Tammany Jail men's holding cells[,]" and that the "'common questions' derived from Plaintiffs' claims, such that resolution of these questions would resolve the putative class's claims in 'one fell swoop,' are the conditions of the cells… and whether those conditions were unconstitutionally punitive…" (R. Doc. 158-1, p. 11). Plaintiffs, however, then argue that all members of the putative class were housed in the same holding cells at the St. Tammany Parish Jail, attended to by the same staff and overseen by the same supervisory personnel. These facts are not common questions of any wrongdoing, merely basic observations of how the jail is run that do not prove Plaintiffs' assertions.

---

[14] *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017) *citing Wal-Mart*, 564 U.S. 338, 350 (2011).
[15] *Id.*
[16] *Id.* at 361.
[17] *Id.*
[18] *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted).

Plaintiffs then further allege that "as many as" 37 other inmates had to sleep on a concrete floor, were not rendered aid, were not given mattresses and were deprived of shower access, in violation of St. Tammany policy (R. Doc. 158-1, pp. 11).[19] Under Rule 23(a), it is not enough to show that ""as many as" 37 individuals have suffered some harm. Plaintiffs must show that the class is so numerous that it is impractical to join all of the individuals who are claiming those alleged harms, and that those allegations present a common question of law or fact.[20] If Plaintiffs were able to show that one of the comparatively few inmates who filed grievances were not given mattresses, how would this resolve anything for the rest of the class? What central issue for the whole class would be resolved by this "stroke?" These allegations by Plaintiffs fail to rise to the level of a common question of law or fact for the class, and Plaintiffs therefore fail to meet their burden on this issue.

Plaintiffs then allege an array of varied violations. Plaintiffs specifically allege that they were kept in a holding cell that was approximately "20 feet by 10 feet" that was at times filed with over 30 men, that they were denied medical care, that they had irregular access to showers and that they suffered from other alleged violations. These are not, however, violations under federal law and therefore present no question of fact or law at all. This District Court has previously found that confinement in a holding cell for a period of fifteen days before being transferred into the general population is "brief" and "insufficient to rise to the level of a constitutional violation."[21] Furthermore, twelve days spent confined in "overcrowded, unpleasant, and unsanitary conditions was too brief a period to support a constitutional claim."[22]

---

[19] Defendants note that Plaintiffs only allege violations of St. Tammany policy here, and not the Constitution.
[20] Fed. R. Civ. P. 23(a).
[21] *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 at *10 (E.D. La. 2018)
[22] *Id. citing Kelly v. Gusman*, 2007 U.S. Dist. LEXIS 99098 (E.D. La. 2007).

Plaintiffs also further allege that the cell floor had "old food, blood, urine, feces, dirty toilet paper, vomit, used bandages, trash, and water" on it (R. Doc. 158-1, p. 5). Plaintiffs make other allegations as well such as being mocked by the jail staff, but just these allegations present such a wide variety of facts that on their face preclude the possibly of common questions of law or fact. In fact, Plaintiffs only make accusations that they, and a handful of others have directly observed. Plaintiffs bring no evidence that these conditions affected anyone else beyond their own statements. Furthermore, unless every member of the putative class suffered from all of these alleged violations, the Court would have to conduct a series of mini-trials to determine what alleged violations a specific member of the putative class suffered from and to what degree. Accordingly, this dissimilarity of alleged facts defeats any claims of commonality of law or fact and therefore, class certification.

**C. The claims and defenses of the representative parties are not typical of the claims and defenses of the class**

"The typicality inquiry rests 'less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims.'"[23] In fact, the "commonality and typicality requirements of rule 23(a) tend to merge" because if there is no "common issue uniting the putative class," a representative's claims or defenses cannot be typical of this class.[24] A plaintiff must "prove much more than the validity of his own claim" in order to meet the requirements of typicality.[25] "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class."[26]

---

[23] *Ibe,* 836 F.3d at 528-529 *citing Jenkins v. Compaq Comput. Corp.*, 782 F.3d 468, 472 (5th Cir. 1986),
[24] *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020).
[25] *Gen. Tel. Co. of the Southwest v. Falcon*, 102 S. Ct. 2364, 2371 (1982).
[26] *Stirman*, 280 F.3d at 562. (citation omitted).

To show typicality, Plaintiffs must show that they, as proposed class representatives, are asserting claims that are "the common class claims."[27]

Plaintiffs argue based on *Bertulli* that "differences in the extent of injury between class representatives and unnamed class members does not defeat class certification in this case."[28] (R. Doc. 158-1, p. 14). However, in *Bertulli*, the issue was a change in the calculation of seniority rankings among airline pilots, which led to a loss of seniority for some pilots, affecting routes and pay. In that case, one change, how the seniority rankings were determined, lead to damages to an entire class, and the pilots in *Bertulli* all suffered the same injury *i.e.*, a loss of seniority. In that case, small differences in the exact pay, routes or other benefits lost by the pilots were not enough to defeat a class certification. The instant matter is distinguishable from *Bertulli*, as Plaintiffs in this case claim a variety of injuries that did not affect every member of the putative class and not one particular act that caused injury. Plaintiffs claim no single injury or group of injuries that every member of the putative class suffered. In fact, Plaintiffs' total argument on the facts of this case is less than one paragraph in length and merely assumes that since Plaintiffs allegedly were subjected to a series of abuses while inmates, then the rest of the putative class was subjected to these alleged abuses as well. (R. Doc. 158-1, p. 14). Plaintiffs do not connect the violations that they allegedly suffered to violations against the rest of the putative class and therefore fail to show typicality.

### D. The representative parties will not fairly and adequately protect the interest of the class

Rule 23(a) requires that the representative parties fairly and adequately protect the interest of the class. The adequacy requirement looks to both the class representatives and their

---

[27] *Dockery v. Fischer*, 253 F. Supp. 3d 832, 2015 U.S. Dist. LEXIS 135853.
[28] *Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 297 (5th Cir. 2001).

counsel.[29] "Because absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times."[30] Adequacy requires an inquiry into "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees."[31] The class representatives must "possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation."[32] This requirement includes counsel as well, as "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."[33] Additionally, the Rule 23(a)(4) adequacy prong requires a court to uncover any conflicts of interest between named parties and the putative class, which means that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."[34]

Here, the class representatives do not adequately represent the putative class' interests. Plaintiff Klabert Joseph Guillot, Jr. failed to adequately prosecute his case by neglecting to go through the proper administrative procedure prior to filing suit (R. Doc. 37-1, p. 4; R. Doc. 40, p. 25; R. Doc. 44, pp. 83-84). A prisoner must exhaust all administrative remedies prior to suit,[35] and this Court has already found that Guillot, Jr. lacked standing at a prior stage in this suit based on that failure to exhaust (R. Doc. 40, p. 25), and this Court dismissed his claims with prejudice for that reason (R. Doc. 151). Guillot, Jr.'s failure to properly exhaust the necessary administrative remedies prior to filing and his ultimate dismissal from this action shows a lack of

---

[29] *Jenkins*, 782 F.2d at 472.
[30] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).
[31] *Id.* at 482 (quotation omitted).
[32] *Id.* at 482-483 (quotation omitted).
[33] *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).
[34] *Amchem Prods. V. Windsor*, 521 U.S. 591, 625-626 (1997). (quotation and citation omitted).
[35] 42 U.S.C.S. § 1997(e)(a) (LexisNexis 2020).

sufficient knowledge and willingness to control and prosecute the litigation both on his part and on the part of counsel. This lack has already shown real-world negative consequences for one plaintiff so far and reveals a disconnect between Guillot, Jr. and his counsel regarding basic, gateway facts to this litigation, and the ability of the class representatives and counsel to adequately manage this case on behalf of the absentees.

The remaining named plaintiffs also fail to show that they would serve as adequate class representatives. As stated above, the burden of proof rests on Plaintiffs to show each element of Rule 23(a), and Plaintiffs fail to do this. Plaintiffs have not shown the necessary commonality of injury throughout the putative class to show that they have suffered from the same injuries. Additionally, Plaintiffs argue that since they have shown a willingness to attend court on one occasion and have no apparent conflicts of interest that they are therefore adequate class representatives. This sets a low bar, and this low bar coupled with the lack of any cohesive class shown by Plaintiffs and the poor coordination up to this point do not support a showing that Plaintiffs will fairly and adequately represent the class.

## III. Plaintiffs fail to meet the Rule 23(b)(3) requirement

Federal Rule of Civil Procedure 23 permits certification if, in addition to the Rule 23(a) requirements, at least one of the requirements in 23(b) is met. Plaintiffs in this matter allege that they meet Rule 23(b)(3), which states in pertinent part that the

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of sperate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

"[T]he district court must "give careful scrutiny to the relationship between common and individual questions in a case."[36] The Court in *Mitchell* defined the difference between common and individual questions, stating "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."[37] This requires the trial court to "weigh common issues against individual ones and determine which category is likely to be the focus of a trial."[38] While this test is similar to the requirement of a common question of law or fact found in Rule 23(a), this requirement is "far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[39]

This requirement also extends to damages where the "key question is whether the calculation of damages for each class member is susceptible to a mathematical or formulaic calculation, or whether instead the formula by which the parties propose to calculate individual damages is clearly inadequate."[40] In fact, "where individual damages cannot be determined by reference to a mathematical formula or formulaic calculation, the damages issue may predominate over any common issues shared by the class."[41] In such cases where the facts of

[36] *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 710 (5th Cir. 2020) *citing Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016).
[37] *Id.* (quotation omitted).
[38] *Id. citing Crutchfield v. Sewerage & Water Bd. Of New Orleans,* 829 F. 3d 370, 376 (5th Cir. 2016).
[39] *Steering Comm. v. Exxon Mobil Corp.,* 461 F.3d 598, 601 (5th Cir. 2006).
[40] *Mitchell,* 954 F.3d. at 711.
[41] *Steering Comm.,* 461 F.3d at 602.

each individual's alleged damages become the focus rather than the class as a whole, class "certification is inappropriate."[42]

Plaintiffs cite to a district court case from the Western District of Louisiana in order to show a constitutional standard of confinement. (R. Doc. 158-1, p. 23). However, that case contains facts that wildly diverge from the alleged facts in the instant matter. The facts of *Oladipupo*[43] contain allegations of frequent flooding, confiscation of vitamins, denial of underwear, housing with HIV-infected detainees and exposure to secondhand smoke among other allegations. These conditions have not been alleged by Plaintiffs in the instant matter, and Defendants aver that the conditions in *Oladipupo* are so different in quality from the allegations in the instant matter as to make any reliance on it misguided.

In *Steering Comm.*, a Fifth Circuit case, the court denied class certification because it found that there was no predominance of the common questions of the class members over the individual questions, and that the class action was not superior to the other available methods.[44] The damages in *Steering Comm.* resulted from a fire at a chemical plant that caused injuries to hundreds who filed suit alleging a wide variety of damages. The court noted that "each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result… Moreover, many plaintiffs alleged as part of their claim for compensatory damages emotional and other intangible injuries."[45] The Court further noted that the "very nature of these damages, compensating plaintiffs for emotional and other

[42] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744-745 (5th Cir. 2003).
[43] *Oladipupo v. Austin*, 104 F. Supp. 2d 626 (W.D. La. 2000).
[44] *Steering Comm.*, 461 F.3d at 604.
[45] *Id.* at 602.

intangible injuries, necessarily implicates subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy."[46]

The court's analysis in *Steering Comm.* is controlling and directly on point to this case, as individual questions of damages predominate over any issues common to the class and do not lend themselves to a mathematical formulation. Plaintiffs allege claims as varied as overcrowding, irregular access to showers, the low temperature of the holding cells, foul odors, no access to recreational activity and failure to render aid among other allegations. (R. Doc. 158-1, p. 11). Some of these allegations are clearly minor and others less minor, and who was damaged and to what extent will necessarily affect the calculation of damages in a way not easily reduceable to a simple mathematical formula. Plaintiffs' allegations in this case track with the facts in *Steering Comm.* in that one main cause, here the alleged condition of the jail, led to a wide variety of alleged damages for many people. In order to fully resolve this case, this Court would have the same problems as the court in *Steering Comm.*, in that if this court certifies the class, it will have to sift through a multitude of highly differentiated cases with fact-specific damage determinations. These mini-trials on individual damages would predominate over any general inquiry into whatever common questions exist, if any. Accordingly, questions of law or fact to the class members do not predominate over the questions affecting individual members.

In deciding to certify a class under Rule 23(b)(3), a court must also consider the "likely difficulties in managing a class action."[47] Bifurcation between liability and damages would not eliminate individualized determinations because of the lack of common questions of law or fact. A damages phase for any certified class based on these facts would turn on the facts of which alleged violations that each member of the class suffered and to what degree. A second liability

[46] *Id.*
[47] Fed. R. Civ. P. 23(b)(3)(D).

phase would be equally problematic. When the number of individual determinations is small, required by only a few members of the class, then bifurcation might be manageable, however in a case such as the instant case in which Plaintiffs allege a class of thousands, bifurcation is not manageable.[48] The impossibility of managing such a class certification renders a class action in this matter an inferior remedy.

Plaintiffs further note that the only other pending matter that concerns these claims has been consolidated with this matter (R. Doc. 152). Plaintiffs offer this as evidence that no class member interested in individually controlling his own action would be harmed. However, Defendants aver that this is compelling evidence that joinder of all the plaintiffs from both matters is practical and that the number of people affected by Plaintiffs' alleged claims is small. Plaintiffs can point to no large and expanding body of cases presently litigating these issues that would require certification. Accordingly, the class action is not the superior method of adjudicating these claims.

**IV. It is inappropriate to certify any particular issue under Rule 23(c)(4)**

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues."[49] "Rule (c)(4) is not a stand-alone clause. It does not permit plaintiffs to ignore the requirements of 23(a) or (b). Plaintiffs cannot sever issues in an attempt to circumvent Rule 23(b) requirements."[50] "A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between

---

[48] *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.,* 100 Fed. Appx. 296, 301, 2004 U.S. App. LEXIS 11160 (5th Cir. 2004).
[49] Fed. R. Civ. P. 23(c)(4).
[50] *Paternostro v. Choice Hotel Int'l Servs. Corp.,* 309 F.R.D. 397, 2015 U.S. Dist. At *27 (E.D. La. 2015).

subdivisions (b)(3) and (c)(4) is that a cause of action, **as a whole**, must satisfy the predominance requirement of (b)(3)."[51]

A district court will not abuse its discretion if it declines to certify a class when plaintiffs seek to "excise from the class the very issue that defeats prominence under Rule 23(b)(3)."[52] In *Corley*, the district court declined to certify a class on liability alone because it found that the varied and individualized damages calculations caused the class as a whole to fail under Rule 23(b)(3). Accordingly, as Plaintiffs fail to support a finding of predominance under Rule 23(b)(3), certification under Rule 23(c)(4) would also be inappropriate.

## CONCLUSION

Plaintiffs have failed to show any of the requirements under Rule 23(a). Plaintiffs submit raw data without any analysis as proof of numerosity, they allege no common questions of law or fact, they fail to show that their claims are typical of the class, and they will not fairly and adequately protect the interests of the class. Furthermore, the individual questions of law or fact of the individual members of the putative class predominate over the common questions, rendering the class action inferior to other methods of adjudicating this matter, such as consolidation, which has already been accomplished. Accordingly, Defendants respectfully request that this Honorable Court deny Plaintiffs' motion in its entirety.

---

[51] *Castano*, 84 F. 3d at 745 (emphasis added).

[52] *Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. Appx. 350 2005 U.S. App. LEXIS 22139 at *355 (5th Cir. 2005).

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*

**CHADWICK W. COLLINGS, T.A. # 25373**
**HENRY M. WEBER # 35374**
**LAUREN A. WILLIAMS # 37917**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on May 27, 2021, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Chadwick W. Collings*
**Chadwick W. Collings**