# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AHMED BAQER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-980-WBV-DPC** |
| **ST. TAMMANY PARISH GOVERNMENT, ET AL.** | **SECTION: D (2)** |

*Consolidated with*

| | |
|---|---|
| **KEVIN LOUVIERE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1840-WBV-DPC** |
| **ST. TAMMANY PARISH GOVERNMENT, ET AL.** | **SECTION: D (2)** |

## <u>ORDER AND REASONS</u>

Before the Court is Plaintiffs' Motion For Class Certification.[1]  Defendants oppose the Motion.[2] The Motion is before the Court on the briefs without oral argument.

After careful consideration of the parties' memoranda, exhibits, and the applicable law, the Motion for Class Certification is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

This is an action for declaratory, injunctive, and compensatory relief regarding the conditions of pretrial detention in the four holding cells at St. Tammany Parish

---

[1] R. Doc. 158.  Unless otherwise indicated, all of the citations to the record in this Order refer to documents filed in the master file of this consolidated matter, 20-cv-980 (the "*Baqer* matter").

[2] R. Doc. 164.

[3] In the interest of judicial economy, and because the Court has set forth the factual and procedural background of this matter in great detail in several prior Orders (R. Docs. 40, 149, 150, & 151), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

Jail. On March 22, 2020, Ahmed Baqer, Klabert Joseph Guillot, Jr. and Klabert Joseph Guillot, Sr. filed a Complaint seeking damages under 42 U.S.C. § 1983, asserting that they were forced to endure prolonged pretrial detainment in dirty, cramped holding cells in St. Tammany Parish Jail (sometimes referred to as "the jail") in violation of their constitutional rights under the Fourteenth Amendment of the United States Constitution (hereafter, "the *Baqer* matter"). [4] Although several entities and individuals were named as defendants in the Complaint, [5] the only remaining defendants are: (1) Randy Smith, in his individual and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present ("Sheriff Smith"); and (2) Lacey Kelly, in her individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times" ("Warden Kelly"). [6] Additionally, on April 23, 2021, the Court dismissed with prejudice Klabert Joseph Guillot, Jr.'s claims against the remaining defendants. [7] Thus, the only claims remaining in that matter are those asserted by Baqer and Guillot, Sr. against Sheriff Smith and Warden Kelly.

On June 29, 2020, Kevin Louviere, Terry Matthew Hall, Jr., and Floyd Williams filed an identical Complaint in this Court against the same defendants, seeking damages under 42 U.S.C. § 1983 and asserting that they were forced to endure prolonged pretrial detainment in dirty, cramped holding cells in St. Tammany

---

[4] R. Doc. 1 at ¶¶ 1-2, 118-129.

[5] R. Doc. 1 at Introductory Paragraph and ¶¶ 12-23.

[6] *Id*. at ¶¶ 15-23. On March 22, 2021, the Court dismissed with prejudice the claims asserted against defendants, Rodney J. Strain and Greg Longino, in their individual and official capacities (R. Doc. 149), and dismissed with prejudice the claims asserted against St. Tammany Parish Government (R. Doc. 150).

[7] R. Doc. 151.

Parish Jail in violation of their constitutional rights under the Fourteenth Amendment of the United States Constitution (hereafter, "the *Louviere* matter").[8] As in the *Baqer* matter, several entities and individuals were named as defendants in the *Louviere* matter,[9] but the only remaining defendants are: (1) Randy Smith, in his individual and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present ("Sheriff Smith");  and (2) Lacey Kelly, in her individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times" ("Warden Kelly").[10]

Thereafter, on September 17, 2020, the plaintiffs in the *Baqer* matter filed a Motion to Sever and Consolidate, seeking to sever the individual claims of Guillot, Jr. and to consolidate the claims of Baqer and Guillot, Sr. with the claims asserted in the *Louviere* matter.[11] Because the Court had dismissed with prejudice the claims of Guillot, Jr. on April 23, 2021, the Court thereafter denied as moot the request to sever Guillot, Jr.'s claims and granted the request to consolidate the two cases.[12] The Court also denied without prejudice the motions for class certification previously filed in each case and gave the consolidated plaintiffs ten days to file a motion for class certification in the consolidated matter.[13]

---

[8] R. Doc. 1 at ¶¶ 1-22 & 118-129 in Civ. A. No. 20-1840-WBV-DPC, *Louviere, et al. v. St. Tammany Parish Government, et al.* (E.D. La.) (the "*Louviere* matter").
[9] *Id*. at Introductory Paragraph and ¶¶ 12-23.
[10] *Id*. at ¶¶ 15-23.  On April 22, 2021, the Court dismissed with prejudice the claims asserted against defendants, Rodney J. Strain and Greg Longino, in their individual and official capacities.  *Id*. at R. Doc. 60.  On April 23, 2021, the Court dismissed with prejudice the claims asserted against St. Tammany Parish Government.  *Id*. at R. Doc. 61.
[11] R. Doc. 94.
[12] R. Doc. 152.
[13] *Id*.  *See*, R. Doc. 101; R. Doc. 37 in the *Louviere* matter.

## II.    CLASS CERTIFICATION

On May 6, 2021, a Motion for Class Certification was filed by "the Plaintiffs, AHMED BAQER, *et al.*" in this consolidated matter.[14] The Court notes that the term "Plaintiffs" is not defined anywhere in the Motion or the Supporting Memorandum.[15] Based upon allegations elsewhere in the Supporting Memorandum, however, it appears that the term "Plaintiffs" refers to Baqer, Guillot, Sr., Louviere, Hall, and Williams.[16] Plaintiffs seek class certification of their claims that their confinement in the holding cells of St. Tammany Parish Jail violated their rights under the Fourteenth Amendment and 42 U.S.C. § 1983.[17] Plaintiffs define the proposed class as follows:

> All detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells. The class period commences when this practice began, including but not limited to the time period commencing on March 22, 2019, and extends to the date on which St. Tammany Parish is enjoined from, or otherwise ceases, enforcing its policy, practice and custom of refusing to abide by appropriate detention and housing standards to all pre-trial detainees admitted to the St. Tammany Parish Jail and held in the intake and/or holding cell area. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.[18]

Plaintiffs allege that from March 22, 2019 "to the present," men detained in the holding cells at St. Tammany Parish Jail were subjected to deplorable conditions,

---

[14] R. Docs. 153, 157, & 158.
[15] *See, generally*, R. Docs. 158 & 158-1. The Court further notes that the Supporting Memorandum references the testimony of Guillot, Jr., who has been dismissed from this litigation. R. Doc. 158-1 at p. 5.
[16] R. Doc. 158-1 at pp. 12-13.
[17] R. Doc. 158 at p. 2.
[18] *Id*.

including overcrowding and unsanitary conditions which, when taken together, subject the inmates to unconstitutional confinement prohibited by the Fourteenth Amendment.[19] Plaintiffs assert that class certification is appropriate because the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3). Plaintiffs contend that the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are met and that under Rule 23(b)(3), questions of law or fact common to the class members predominate over any questions affecting only individual members and a class action is the superior method for fairly and efficiently adjudicating the controversy.[20]

Warden Kelly and Sheriff Smith (collectively, "Defendants") oppose the Motion, asserting that class certification is not appropriate in this case because Plaintiffs cannot satisfy any of the Rule 23(a) requirements and cannot satisfy the Rule 23(b)(3) requirement.[21]

### A. Legal Standard

The Fifth Circuit has made clear that while a district court has broad discretion in determining whether to certify a class, it must "rigorously analyze Rule 23's prerequisites" before doing so.[22]  Under Fed. R. Civ. P. 23(a), the party seeking class certification bears the burden of establishing four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are

---

[19] *Id*. at p. 1; R. Doc. 158-1 at p. 3.
[20] R. Doc. 158-1 at pp. 8-29.
[21] R. Doc. 164 at pp. 3-14.
[22] *Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021) (quoting *Spence v. Glock, G.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000)).

questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.[23] In addition to satisfying the four prerequisites of Rule 23(a), a party seeking class certification must be able to show that one of the following requirements of Rule 23(b) is met: (1) inconsistent adjudications would result in incompatible standards of conduct for the party opposing the class or would be dispositive of the interests of nonparty class members or would substantially impair or impede the ability of nonparty class members to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the case.[24] Plaintiffs in this matter argue that they have met the requirements of Rule 23(b)(3).

### B. Analysis

As explained in greater detail below, the Court finds that Plaintiffs cannot satisfy the numerosity requirement of Rule 23(a) or the predominance requirement of Rule 23(b)(3).

---

[23] *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)).
[24] Fed. R. Civ. P. 23(b).

### 1. The Rule 23(a) Numerosity Requirement.

To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[25] This Court has recognized that, "There is no magic number when this cut off is reached."[26] In considering a request to certify a class consisting of 33 members, the Fifth Circuit emphasized that, "The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[27] One of our sister courts has held that, "Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than 40 members 'should raise a presumption that joinder is impracticable.'"[28] The Fifth Circuit has also held that, "although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case – 100 to 150 members – is within the range that generally satisfies the numerosity requirement."[29]

Plaintiffs assert that the numerosity requirement is met because "documents produced by the [St. Tammany Parish Sheriff's Office]" show that "in excess of 5,000 men were incarcerated in Holding Cells 1-4 of St. Tammany Parish Jail from March

---

[25] *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)) (internal quotation marks omitted).
[26] *Kreger v. Gen. Steel Corp.*, Civ. A. No. 07-575, 2010 WL 2902773, at *4 (E.D. La. July 19, 2010).
[27] *Phillips v. Joint Legislative Comm. on Performance and Expenditure of the State of Mississippi*, 637 F.2d 1014, 1022 (5th Cir. 1981).
[28] *Everson v. Bunch*, Civ. A. No. 14-583-SDD-EWD, 2016 WL 3255023, at *2 (M.D. La. June 13, 2016) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).
[29] *Mullen*, 186 F.3d at 624 (citations omitted).

22, 2019 to the present."[30] Plaintiffs assert joinder would be impracticable with such a numerous class of individuals.[31] Plaintiffs also assert that a class action would preserve judicial resources in adjudicating the rights of these individuals in a way that joinder could not.[32] Defendants argue that Plaintiffs have failed to carry their burden regarding numerosity because their only proof to support a potential class of over 5,000 men is "one paragraph that references a 735-page Movement Report" from the St. Tammany Parish Jail.[33] Defendants assert that Plaintiffs failed to provide any explanation or analysis of the document, and do not reference any pages in the document. Defendants claim that the document does not contain a line count or its own analysis, so it would be up to the Court and counsel to determine how many individual names are on the list before trying to decide how many of those people would qualify for the purported class.[34] Finally, Defendants assert that the document contains raw data compiled by the jail and that Plaintiffs have failed to offer analysis or present argument connecting the raw data to the numerosity requirement of Rule 23(a)(1).

After considering the class defined in the Motion as a whole, the Court finds that Plaintiffs have failed to satisfy the numerosity requirement. The Court recognizes that Plaintiffs need only establish "some evidence or reasonable estimate of the number of purported class members."[35] Plaintiffs, however, have failed to carry

---

[30] R. Doc. 158-1 at p. 9 (*citing* R. Doc. 158-28).

[31] R. Doc. 158-1 at p. 9.

[32] R. Doc. 158-1 at p. 9.

[33] R. Doc. 164 at pp. 3-4.

[34] *Id.* at p. 4.

[35] *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quotation omitted).

that burden.  As Defendants point out, the 735-page "Inmate Cell Movement Report," provided by Plaintiffs, the only evidence provided by Plaintiffs to address the numerosity requirement, contains raw data comprised by the St. Tammany Parish Jail regarding not only individuals who were assigned to one of the four holding cells between March 22, 2019 through May 7, 2021, the date Plaintiffs filed the instant Motion, but also individuals held in dormitories or the general population.[36]  Further, the document is not limited to that time period, and lists individuals who were assigned to the holding cells both before March 22, 2019 and after May 7, 2021. Indeed, booking dates on the Inmate Cell Movement Report begin as early as 2017 and appears to include 2018, 2019, and 2020, with no explanations of "Booking Dates" and "Assign. Dates," or whether the two are related.  The "Assign. Dates" on the Inmate Cell Movement Report also begin before the March 22, 2019 date proposed by Plaintiffs for the purported class.  It is also unclear from the Inmate Cell Movement Report whether the individuals listed therein were detained in a holding cell for "at least two consecutive days," to fall within the definition of the proposed class.[37] In fact, it is not evident from the Report the number of days that each individual was assigned to a holding cell, and Plaintiffs offer no explanation, by way of analysis, expert report, or any other evidence, of how to determine that information from the document.

Nevertheless, in an attempt to decipher the document, the Court looked up the named plaintiffs on the Inmate Cell Movement Report.  This exercise failed to bring

---

[36] R. Doc. 158-28.
[37] R. Doc. 158 at p. 2.

any clarity to the document. By way of example, Plaintiff Floyd Williams' booking date on the Inmate Cell Movement Report is listed as October 10, 2019,[38] but the Complaint reflects an arrest and booking date into St. Tammany Parish Jail of September 28, 2019.[39] The Inmate Cell Movement Report likewise reflects a booking and assignment date of December 27, 2019 for Plaintiff Klabert Guillot, Sr., additional assignments in the following days into holding cells, 1, 2, and 3, and an assignment on January 10, 2020 into a dorm.[40] In the Complaint, however, Plaintiffs allege that Mr. Guillot, Sr. was arrested on December 22, 2019, and seem to imply that he was detained in only one holding cell for the entirety of his pretrial detention until he was moved into the general on January 4, 2020.[41] Further, the Inmate Cell Movement Report shows a booking and assignment date of October 18, 2019 for Plaintiff Terry Matthew Hall, which is consistent with the date in the Complaint, but the Report includes no additional information whatsoever as to the duration of his pretrial detention.[42]

Plaintiffs offer no explanation for the factual disparities between the allegations in the Complaints and the information gleaned from the Inmate Cell Movement Report upon which they rely. Finally, the Inmate Cell Movement Report appears to include numerous female detainees,[43] even though the Complaints

---

[38] R.Doc. 158-28 at p. 707.

[39] R. Doc. 1 at ¶¶ 130-133 in the *Louviere* matter.

[40] R. Doc. 158-28 at p. 269.

[41] R. Doc. 1 at ¶¶ 108-116.

[42] R. Doc. 158-28 at p. 273.

[43] The Court concludes that female detainees are included in the Inmate Cell Movement Report based on the names of individuals as well as assignments to "Female holding." See, for one example, R. Doc. 158-28 at p. 1, which references "FEMALE HOLD 1" and "FEMALE HOLD 2" with respect to three different inmates.

reference only male pretrial detainees and the Motion for Class Certification clearly limits the proposed class to male detainees.[44] Thus, while the proposed class is limited to males who were detained in the holding cells at St. Tammany Parish Jail for at least two consecutive days between March 22, 2019 and May 7, 2021, it is not evident from the Inmate Cell Movement Report how many of the individuals listed therein meet the class definition. Further, as detailed herein, the accuracy of the Inmate Cell Movement Report is at issue. While Plaintiffs contend that, "According to documents produced by the STPO, in excess of 5,000 men were incarcerated in Holding Cells 1-4 of St. Tammany Parish Jail from March 22, 2019 to the present" (which notedly leaves out any indication of a time period of at least two consecutive days), the sole document provided by Plaintiffs in support, the Inmate Cell Movement Report, fails to back up that contention. The Court therefore finds that Plaintiffs have failed to provide sufficient evidence to establish that the proposed class satisfies the numerosity requirement of Rule 23(a).

### 2. The Rule 23(b)(3) Predominance Requirement.

Even if the Court had found that the putative class satisfies the numerosity requirement of Rule 23(a), as well as the remaining Rule 23(a) requirements—which the Court pretermits at this time—the Court finds that the class does not satisfy the predominance requirement of Rule 23(b)(3), as alleged by Plaintiffs.[45] Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members,

---

[44] R. Doc. 1 at ¶ 77; R. Doc. 1 at ¶ 80 in the *Louviere* matter; R. Doc. 158 at p. 1.
[45] R. Doc. 158-1 at pp. 21-29.

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." [46] Rule 23(b)(3) contains two requirements – predominance and superiority. [47] "In order to 'predominate,' common issues must constitute a significant part of the individual cases." [48] The purpose of this requirement is to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by representation. [49] To determine whether common issues predominate, "the Court must identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class." [50] Such an inquiry further requires the court to consider "how a trial on the alleged causes of action would be tried." [51] The predominance requirement under Rule 23(b)(3) is more demanding than the commonality requirement. [52]

### a. The parties' arguments.

Plaintiffs seek class certification of their claims that the Defendants' policy, practice, and/or custom of detaining inmates for an extended period of time in four holding cells of the St. Tammany Parish Jail amounts to unconstitutional detainment under 42 U.S.C. § 1983 and the Fourteenth Amendment. [53]  In the *Baqer* and *Louviere*

---

[46] Fed. R. Civ. P. 23(b)(3).

[47] *In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369, at *9 (E.D. La. Oct. 17, 2008).

[48] *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

[49] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 17 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997).

[50] *Everson v. Bunch*, Civ. A. No. 14-583-SDD-EWD, 2016 WL 3255023, at *3 (M.D. La. June 13, 2016) (quoting *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 353 (N.D. Miss. 2013)) (internal quotation marks omitted).

[51] *Castano v. American Tobacco Co.*, 84 F. 3d 734, 752 (5th Cir. 1996).

[52] *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, Civ. A. No. 12-2043, 2014 WL 7330602, at *11 (E.D. La. Dec. 18, 2014) (citing *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)).

[53] R. Docs. 1 & 158; *See*, R. Doc. 1 in the *Louviere* matter.

Complaints, Plaintiffs allege that Defendants forced pretrial detainees to endure days to weeks of prolonged pretrial detainment in dirty, cramped holding cells with as many as 24 detainees confined within a 10-foot by 20-foot space.[54] Plaintiffs allege that detainees were forced to sleep on the concrete floor, to urinate and defecate in front of each other within the holding cell, and that detainees were deprived of hygienic products and denied access to showers for days at a time. Plaintiffs assert that Defendants subjected detainees to deprivations of their constitutional rights, as well as excessive and cruel punishment.[55] Plaintiffs allege that they seek to represent a certified class to obtain declaratory, injunctive, and compensatory relief, including a class-wide judgment declaring that the policies, practices, and/or customs described in the Complaints violate the Fourteenth Amendment, and a class-wide injunction enjoining Defendants from continuing such policies, practices, and/or customs.[56]

In the Motion for Class Certification, Plaintiffs assert that predominance can be based on the question of liability because if the liability issue is common to the class, common questions are held to predominate over individual questions.[57] Plaintiffs assert that, to establish a prima facie case of Fourteenth Amendment violations under 42 U.S.C. § 1983, a plaintiff must prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission.[58] Plaintiffs assert that

---

[54] R. Doc. 1 at ¶ 2; R. Doc. 1 at ¶ 2 in the *Louviere* matter.
[55] R. Doc. 1 at ¶ 2; R. Doc. 1 at ¶ 2 in the *Louviere* matter.
[56] R. Doc. 1 at ¶ 3; R. Doc. 1 at ¶ 3 in the *Louviere* matter.
[57] R. Doc. 158-1 at p. 22 (citing *Melo v. Gardere Wynne Sewell, LLP*, Civ. A. No. 3-04-CV-2238-BD, 2007 WL 92388, at *2 (N.D. Tex. Jan. 12, 2007)).
[58] R. Doc. 158-1 at p. 22 (citing *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020)).

for a conditions of confinement claim, the proper inquiry is whether those conditions amount to punishment of the detainee.[59] Plaintiffs allege that the elements of an unconstitutional conditions of confinement claim are: (1) a rule or restriction or an identifiable intended condition or practice; (2) which was not reasonably related to a legitimate governmental objective; and (3) causation.[60] Plaintiffs then assert that all of the elements of a Fourteenth Amendment claim can be established as common questions in this case, and that they can be demonstrated though collective proof for all class members.[61]

Plaintiffs contend that the conditions of the holding cells can be established with common proof through the testimony of witnesses present "in the one-year class period and agents of the Defendants responsible for the creation and execution of policy relating to holding cell conditions."[62] Plaintiffs claim that the relationship of these conditions, or lack thereof, to a reasonable government objective, may also be established through the same testimony of policymakers, correctional officers, former inmates, and witnesses with expertise in nationwide standards of prison conditions.[63] Finally, Plaintiffs contend that causation can be established from the same testimony because Plaintiffs, as inmates subject to the state's custody, are uniquely situated to demonstrate the causation of their constitutional deprivations.[64] Plaintiffs assert that individualized proof regarding the length of time each class member experienced

---

[59] R. Doc. 158-1 at p. 22 (quoting *Cadena*, 946 F.3d at 727) (internal quotation marks omitted).
[60] R. Doc. 158-1 at p. 22 (citing *Cadena*, 946 F.3d at 727).
[61] R. Doc. 158-1 at p. 24.
[62] *Id.*
[63] *Id.* at pp. 24-25.
[64] *Id.* at p. 25.

the conditions of confinement, and the extent of their damages, does not preclude class certification under Rule 23(b)(3) where, as here, liability issues are common to the class.[65]  Nonetheless, to the extent there is concern regarding the narrow issue of individualized damages, Plaintiffs assert that bifurcating a class action into two phases avoids the possibility that individualized questions will predominate common questions. [66]  While Plaintiffs suggest bifurcation of liability and damages into separate trials for effective management, they then suggest gathering "particularized damages" "through questionnaires, affidavits, expert testimony, or even during testimony given during the liability portion of the trial."[67]

After distinguishing a case relied upon by Plaintiffs,[68] Defendants assert that the Fifth Circuit's decision in *Steering Comm. v. Exxon Mobil Corp.* is directly on point and indicates that individual questions of damages predominate over any issues common to the class in this case and do not lend themselves to a mathematical formulation. [69]  Defendants assert that Plaintiffs' claims are as varied as overcrowding, irregular access to showers, the low temperature of the holding cells, foul odors, no access to recreational activity, and failure to render aid, and that determining who was damaged and to what extent will require mini-trials that will predominate over any common questions.[70] Thus, Defendants argue that questions of law or fact do not predominate over the questions affecting individual members of the

---

[65] *Id*. (citing authority).
[66] *Id*. at pp. 25-26 (citing authority).
[67] *Id*. at p. 28.
[68] R. Doc. 164 at p. 12 (citing *Oladipupo v. Austin*, 104 F. Supp. 2d 626 (W.D. La. 2000)).
[69] R. Doc. 164 at p. 12 (citing *Steering Comm.*, 461 F.3d 598, 604 (5th Cir. 2006)).
[70] R. Doc. 164 at p. 13.

class. Defendants further assert that bifurcation between liability and damages would not eliminate individualized determinations due to the lack of common questions of law or fact.[71] Further, Defendants contend that when the proposed class involves thousands of individuals, as alleged in this case, bifurcation is not manageable.[72]

### b. The Court's analysis.

According to the Fifth Circuit, and as noted by both the Plaintiffs and Defendants, a pretrial detainee may prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission.[73] The Court next turns to "identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class."[74] Here, Plaintiffs allege that they and the proposed class members were forced to endure prolonged pretrial detainment in dirty, cramped holding cells in St. Tammany Parish Jail, through which they were subjected to unconstitutional conditions of confinement. "For a conditions of confinement claim, the proper inquiry is whether those conditions amount to punishment of the detainee."[75] Further, "If the condition of confinement is not reasonably related to a legitimate, non-punitive governmental

---

[71] *Id.*

[72] *Id.* at p. 14 (citation omitted).

[73] *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)).

[74] *Everson v. Bunch*, Civ. A. No. 14-583-SDD-EWD, 2016 WL 3255023, at *3 (M.D. La. June 13, 2016) (quoting *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 353 (N.D. Miss. 2013)) (internal quotation marks omitted).

[75] *Cadena*, 946 F.3d at 727 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)) (internal quotation marks omitted).

objection, it is assumed that by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation."[76]  To prevail on a claim asserting unconstitutional conditions of confinement, a plaintiff must show: (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the inmate's constitutional rights.[77]

Although Plaintiffs contend that the question of liability predominates over any individual questions, the Court disagrees.  As explained in *Oladipupo v. Austin,* a case cited by Plaintiffs, "the Supreme Court [has] recognized that subjecting a pretrial detainee to overcrowded conditions can, in some circumstances, violate the constitution."[78]  Further, "Factors the Supreme Court considered in assessing whether 'overcrowding' amounts to a constitutional violation are the length of time an individual detainee must spend in a confined area both ultimately and on a daily basis, and the adequacy of the given sleeping space."[79]  In another case involving allegations of unconstitutional pretrial detainment in the holding cells at St. Tammany Parish Jail, this Court recognized that, "the United States Supreme Court has noted 'that the length of confinement cannot be ignored in deciding whether the

---

[76] *Cadena*, 946 F.4d at 727 (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)) (internal quotation marks omitted).
[77] *Duvall v. Dallas Cty.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645).
[78] 104 F. Supp. 2d 626, 637 (W.D. La. 2000) (citing *Bell*, 41 U.S. at 542, 99 S.Ct. at 1875).
[79] *Oladipupo*, 104 S. Supp. 2d at 637 (citing *Bell*, 41 U.S. at 543, 99 S.Ct. at 1876).

confinement meets constitutional standards.  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."[80]

In the instant Motion, Plaintiffs allege that their unconstitutional conditions of confinement "were not only present for all, but were also present throughout the proposed class period."[81]  Plaintiffs, however, do not allege that the proposed class members spent the same amount of time in the holding cells at St. Tammany Parish Jail.  Instead, Plaintiffs seek to certify a class defined as, "All detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells."[82]  As such, the trier of fact will have to determine whether different lengths of pretrial detainment, coupled with the "other conditions" of pretrial confinement complained of, rise to the level of a constitutional violation for each class member.  Plaintiffs have failed to show that class-wide questions predominate over these individual determinations, especially when the proposed class is estimated to include "more than 5,000 men who were detainees held in the holding cells at St. Tammany Jail from March 22, 2019 until the present."[83]

To that end, Plaintiffs acknowledge that, "Individualized proof may include the length of time the class members experienced the conditions of confinement, and the resultant extent of damages."[84]  While the Court agrees with Plaintiffs that the

---

[80] *Allen v. St. Tammany Parish*, Civ. A. No. 17-4091, 2018 WL 558503, at *5 (E.D. La. Jan. 2, 2018) (quoting *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).
[81] R. Doc. 158-1 at p. 13.
[82] R. Doc. 158 at p. 2; R. Doc. 1 at p. 6; R. Doc. 1 at p. 6 in the *Louviere* matter.
[83] R. Doc. 158 at p. 1.  The Court notes that the instant Motion was filed on May 7, 2021.
[84] R. Doc. 158-1 at p. 25.

individualized question of damages does not automatically preclude class certification, the Court finds that determining the length of each class member's pretrial detainment in the holding cells of St. Tammany Parish Jail, coupled with the conditions of confinement that each class member experienced, each a substantive issue in determining the constitutionality of pretrial detainment, predominate over questions that are common to the class, such as whether the conditions of pretrial detainment were reasonably related to a legitimate government interest.  The Court finds that such determinations will require mini-trials and individualized proof regarding the specific length of pretrial detainment of each proposed class member, as well as the number of other inmates housed in the same holding cell during their detainment.  It will also require individual determinations regarding the "other conditions" of detainment allegedly experienced by the putative class members, including the unsanitary conditions of the holding cells and indifference to medical needs.[85]  The Court finds that, with a proposed class that exceeds 5,000 members, Plaintiffs will not be able to make that showing with class-wide proof.  Defendants will then be entitled to challenge the veracity of such evidence to rebut each class member's assertion regarding the conditions of their pretrial detainment.  The Court finds that these individual issues will predominate over any class-wide issues pertaining to Plaintiffs' claims under 42 U.S.C. § 1983 and the Fourteenth Amendment.  These individualized issues constitute an additional trial consideration that militates against granting class certification in this case.

---

[85] R. Doc. 158-1 at pp. 3-6.

Plaintiffs' proposal of trial bifurcation fails for those same reasons. While not addressed by either party, Plaintiffs' suggestion that evidence of the particularized damages can be gathered during the liability portion of the trial raises Seventh Amendment issues. "The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues."[86] The Fifth Circuit has cautioned that "separation of issues is not the usual course that should be followed, and that the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice."[87] The Fifth Circuit further explained that, "This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact."[88] In this case, Plaintiffs are proposing just the opposite—both to bifurcate the trial and then also to allow introduction of damages into the bifurcated liability portion of the trial. While the Seventh Amendment does not prohibit bifurcation of trials, courts have determined that the same issues must not be reexamined by a different jury, which is what Plaintiffs have proposed.[89]

The Court recognizes that other courts in this Circuit have granted class certification in cases involving claims concerning conditions of confinement including,

---

[86] *Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) (*citing* U.S. CONST. amend. VII).

[87] *Castano*, 84 F.3d at 750 (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978)) (internal quotation marks omitted).

[88] *Castano*, 84 F.3d at 750 (quoting *Blue Bird Body Co.*, 573 F.2d at 318) (internal quotation marks omitted).

[89] *See, Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

most recently, in the case of *Tellis v. LeBlanc*.[90]  In *Tellis*, several inmates at David Wade Correctional Center ("DWCC"), located in Claiborne Parish, Louisiana, filed suit challenging the conditions of confinement for inmates on extended lockdown at DWCC and challenging the mental health care provided to inmates on extended lockdown.[91]  The plaintiffs sought certification of a class consisting of "all prisoners who are or will be subjected to extended lockdown at David Wade Correctional Center," and a subclass consisting of "all individuals on extended lockdown at David Wade Correctional Center who have or are perceived as having a qualifying disability related to mental health, as defined within the Americans with Disabilities Act."[92]  Unlike the case before the Court, however, the plaintiffs in *Tellis* made a stronger showing on the issue of numerosity, and sought class certification under Rule 23(b)(2), which allows litigants to proceed as a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[93]  Plaintiffs in this matter are proceeding under Rule 23(b)(3). Moreover, the conclusions reached by other courts in other cases do not alleviate this Court from its responsibility to conduct its own rigorous analysis of the Rule 23 prerequisites, based upon the record before this Court, in determining whether to certify a class.[94]

---

[90] Civ. A. No. 18-541, 2021 WL 4267513 (W.D. La. Sept. 20, 2021) (Foote, J.).  *See also*, *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017); *J.D. v. Nagin*, 255 F.R.D. 406 (E.D. La. 2009) (Lemelle, J.).
[91] Civ. A. No. 18-541, 2021 WL 4267513 at *1.
[92] *Id*.
[93] *Id*. at *2 (*quoting* Fed. R. Civ. P. 23(b)(2)) (internal quotation marks omitted).
[94] *Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021) (quoting *Spence v. Glock, G.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000)).

The Court is cognizant of the fact that, "the necessity of calculating damages on an individual basis will not necessarily preclude class certification," especially where damages may "be determined by reference to a mathematical or formulaic calculation."[95] The Court is also aware that another Section of this Court has recognized that, "Courts have repeatedly rejected the argument that different damages calculations for each class member defeats class certification."[96] This Court reasoned that, "Were the law otherwise, 'the point of the Rule 23(b)(3) provision for class treatment would be blunted beyond utility, as every plaintiff must show specific entitlement to recovery, and still Rule 23 has to be read to authorize class actions in some set of cases where *seriatim* litigation would promise such modest recoveries as to be economically impracticable.'"[97]  In their Motion, Plaintiffs state that, "individualized proof may include the length of time the class members experienced the conditions of confinement, and the resultant extend of damages."[98] The very next sentence, though, ignores the length of time consideration and states, "this individualized damage question does not preclude a (b)(3) class action where liability issues are common to the class."[99] While "the necessity of calculating damages on an individual basis will not necessarily preclude class certification,"[100] the Court does

---

[95] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 925 (E.D. La. 2012) (citing authority).
[96] *In re Oil Spill*, 910 F. Supp. 2d at 925 (citing authority).
[97] *Id*. at 926 (quoting *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66-67 (1st Cir. 2010)).
[98] R. Doc. 158-1 at p. 25.
[99] *Id*. (citing *Mitchell v. State Farm Fire & Cas. Co.,* 954 F. 3d 700, 710-711 (5th  Cir. 2020)).
[100] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 925 (E.D. La. 2012) (citing authority).

not find that the facts of this case, as reflected in the record before it, place it in a category where only damages may be individualized.

Nonetheless, the Fifth Circuit has held that, "Where the plaintiffs' damage claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,' the potential exists that the class action may 'degenerate in practice into multiple lawsuits separately tried.'"[101] Such is the case here. According to Plaintiffs, calculating each proposed class member's alleged damages suffered as a result of their pretrial detainment at St. Tammany Parish Jail will be based almost entirely on facts specific to the individual class members.[102] Those facts include, among other things, the length of each class member's pretrial detainment in the holding cells, the number of other inmates detained in the same holding cell during that time, and the sanitary conditions of the holding cell. This calculation will require each proposed class member to submit individualized evidence regarding these facts, which will invariably differ amongst the class members. As Defendants point out, "some of these allegations are clearly minor and others less minor, and who was damaged and to what extent will necessarily affect the calculation of damages in a way not easily reduceable to a simple mathematical formula."[103]

Based on the foregoing analysis, the Court finds that Plaintiffs' claims of unconstitutional conditions of confinement in violation of 42 U.S.C. § 1983 and the

---

[101] *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744-45 (internal quotations omitted).
[102] R. Doc. 158-1 at p. 25.
[103] R. Doc. 164 at p. 13.

Fourteenth Amendment do not meet the requirements of Rule 23(b)(3), and are therefore not appropriate for class certification.

### c. Superiority

Because the Court has determined that Plaintiffs' claims under 42 U.S.C. § 1983 and the Fourteenth Amendment, regarding their unconstitutional conditions of confinement, do not satisfy the predominance requirement, the Court need not determine whether the claims satisfy the superiority requirement of Rule 23(b)(3).

### 3. Plaintiffs' Alternative Request for Certification Pursuant to Fed. R. Civ. P. 23(c)(4).

Plaintiffs further request, in the alternative and in the event the Court declines certification under Rule 23(b)(3), that the Court certify the issue of liability for certification under Rule 23(c)(4). [104] As Defendants point out, [105] however, "Rule 23(c)(4) is not a stand-alone clause. It does not permit plaintiffs to ignore the requirements of 23(a) or (b). Plaintiffs cannot sever issues in an attempt to circumvent Rule 23(b) requirements."[106] The Court notes that Plaintiffs seek issue certification under Rule 23(c)(4) on liability – the same basis upon which Plaintiffs argued the requested class satisfied the predominance requirement of Rule 23(b)(3). [107] Because the Court has determined that Plaintiffs cannot meet the predominance requirement of Rule 23(b)(3) based upon the issue of liability, the Court likewise finds that issue certification under Rule 23(c)(4) on the same issue is

---

[104] R. Doc. 158-1 at pp. 29-30.
[105] R. Doc. 164 at pp. 14-15.
[106] *Paternostro v. Choice Hotel Intern. Services Corp.*, 309 F.R.D. 397, 405 (E.D. La. 2015) (Fallon, J.) (citing authority).
[107] R. Doc. 158-1 at pp. 22-27 & 29.

inappropriate. Moreover, for the reasons previously stated, the issue certification proposed by Plaintiffs – liability on their claims for unconstitutional pretrial detention – would not promote efficiency, "which is the purpose of issue certification."[108] The Court, therefore, denies Plaintiffs' alternative request to certify the issue of liability under Rule 23(c)(4).

## III.  CONCLUSION

Although the Court remains deeply troubled by the allegations in the Complaints filed in the *Baqer* and *Louviere* matters, as well as in the instant Motion, namely that Plaintiffs and the putative class were forced to endure prolonged pretrial detainment in dirty, cramped holding cells in St. Tammany Parish Jail in violation of their constitutional rights under the Fourteenth Amendment, the Court finds that Plaintiffs have failed to meet their burden to show that their claims under 42 U.S.C. § 1983 and the Fourteenth Amendment are appropriate for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion For Class Certification[109] is **DENIED.**

**IT IS FURTHER ORDERED** that this matter is set for a telephone status conference at **11:00 a.m. (CST) on January 31, 2022** to discuss new trial and

---

[108] *Paternostro*, 309 F.R.D. at 405.
[109] R. Doc. 158.

pretrial conference dates, as well as the issuance of an amended scheduling order in

this case.  Dial-in information will be emailed to counsel of record.

New Orleans, Louisiana, January 25, 2022.


**WENDY B. VITTER**
**United States District Judge**