**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual capacity** | * | **MAGISTRATE CURRAULT**<br>**JURY DEMAND**<br>**COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC***<br>**ALL CASES** |
| **Defendants** | * | |

***********************************************************************

**STATEMENT OF UNDISPUTED FACTS**

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment as to the claims of Klabert Joseph Guillot, Sr., and aver as follows:

**A. Klabert Joseph Guillot, Sr.**

1. Klabert Joseph Guillot, Sr., was arrested on December 26, 2019, at 23:55 hours, by the Slidell Police Department.[1]

[1] *See* pgs. 2 – 3 & pgs. 12 – 13, of the Jail Records of Klabert Joseph Guillot, Sr., attached to Defendants' Motion for

2. Klabert Joseph Guillot Sr. was charged with Possession of Schedule I (Heroin), Possession of Schedule II (Crystal Methamphetamine), Possession of Schedule II (Methamphetamine Syringe), Possession of Schedule II (Hydrocodone) and Possession of Drug Paraphernalia.[2]
3. Klabert Joseph Guillot, Sr., was booked by the St. Tammany Parish Sheriff's Office into the St. Tammany Parish Jail ("STPJ") on December 27, 2019, at 15:44 hours.[3]
4. On December 27, 2019, Klabert Joseph Guillot, Sr., was placed into Male Holding Cell 1.[4]
5. On December 29, 2019, Klabert Joseph Guillot, Sr., was moved into Male Holding Cell 3.[5]
6. On January 2, 2020, Klabert Joseph Guillot, Sr., was moved into Male Holding Cell 1.[6]
7. On January 3, 2020, Klabert Joseph Guillot, Sr., was moved into Male Holding Cell 2.[7]
8. On January 10, 2020, Klabert Joseph Guillot, Sr., was transferred to the C-Building Dorm.[8]
9. Klabert Joseph Guillot, Sr., was held in the holding cells at the STPJ for a total of fifteen (15) days, from December 27, 2019, until January 10, 2020.[9]
10. Klabert Joseph Guillot, Sr., was ultimately released from the STPJ on March 27, 2020.[10]

---

Summary Judgment as Exhibit "1."
[2] *See* Exhibit 1, pgs. 2 – 3 & pgs. 12 – 13.
[3] *Id.*
[4] *See* Inmate Cell Movement Report, attached to Defendants' Motion for Summary Judgment as Exhibit "2."
[5] *See* Exhibit "2."
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *See* Exhibit 1, pgs. 33 – 37.

11. Mr. Guillot testified that the holding cells were mopped and swept once or twice a day after a meal.[11]
12. Mr. Guillot testified that when the holding cells were cleaned, the urine around the toilet was mopped up.[12]
13. Mr. Guillot testified that there was no presence of feces or vomit on top of or around the outside of the toilet in the holding cells.[13]
14. Mr. Guillot testified that he never saw anyone vomit or throw up on the floor of the holding cell.[14]
15. Mr. Guillot testified that he was provided a blanket for use at night, and that he believed that the blankets that were provided to him were clean.[15]
16. Mr. Guillot has testified that during his stay in the holding cell, that he was permitted to take a shower at least twice a week and that he received a clean change of clothes after taking the shower.[16]
17. Mr. Guillot and the inmates in the holding cell were provided toilet paper daily.[17]
18. Mr. Guillot testified that he was provided three meals a day and that there were no issues with the food.[18]
19. Mr. Guillot testified that he was not involved in any fights inside of the holding cell.[19]
20. Mr. Guillot testified that he does not remember seeing anyone injured in the holding

[11] *See* pg. 42, lines 23 – 25; pg. 49, lines 15 – 16; pgs. 50 – 51, lines 22 – 4, of the Deposition Testimony of Klabert Joseph Guillot, Sr., attached to Defendants' Motion for Summary Judgment as Exhibit "8."
[12] *See* Exhibit 8, pg. 50, lines 22 – 25.
[13] *Id.* at pg. 50, lines 1 – 9.
[14] *Id.* at pg. 60, lines 8 – 11.
[15] *Id.* at pg. 57, lines 21 – 23.
[16] *Id.* at pg. 57, lines 2-5.
[17] R. Doc. 101-14, ¶ 16.
[18] *See* Exhibit 8, pg. 44, lines 15 – 24.
[19] *Id.* at pg. 59, lines 11 – 15.

cell.[20]

21. Mr. Guillot testified that he never sought any treatment from any mental health professionals regarding the time that he spent in the holding cell.[21]
22. Mr. Guillot testified "I'm not a mental health patient, no…"[22]
23. Mr. Guillot testified that he has not seen a psychiatrist in the last three years.[23]
24. Mr. Guillot received a pre-intake screening by STPJ medical personnel on December 27, 2019.[24]
25. During his pre-intake screening, it was noted that Mr. Guillot suffered from hypothyroidism and type 2 diabetes.[25]
26. During his pre-intake screening, it was noted that Mr. Guillot admitted to daily heroin and "meth, cocaine" use, with the last date of use for each being "yesterday."[26]
27. During his pre-intake screening, Mr. Guillot received a medical referral for his diabetes and thyroid issues and a mental health referral for his polysubstance abuse and detox.[27]
28. During his pre-intake screening, it was ordered that Mr. Guillot have his blood sugar level taken twice a day, three times a week, for thirteen (13) weeks.[28]
29. During his pre-intake screening, Mr. Guillot was prescribed metformin to treat his diabetes.[29]
30. Mr. Guillot was prescribed multiple medications to treat his detox symptoms, including

---

[20] *Id*. at pg. 59, lines 16-17.
[21] *Id*. at pg. 62, lines 1 – 15.
[22] *Id*. at pg. 62, lines 16 – 19.
[23] *Id*. at pg. 62, lines 22 – 23.
[24] *See* STPJ Medical Records of Klabert Joseph Guillot, Sr., attached to Defendants' Motion for Summary Judgment as Exhibit "9."
[25] *See* Exhibit 9, pg. 24.
[26] *Id*. at pgs. 29 – 30.
[27] *Id*. at pg. 32.
[28] *Id*. at pg. 41.
[29] *Id*. at pg. 68.

acetaminophen, loperamide and meclizine.[30]

31. It was noted that Mr. Guillot refused his Cows Assessment for detox.[31]

32. On December 30, 2019, it was noted that Mr. Guillot refused his Cows Assessment for detox two separate times.[32]

33. On December 31, 2019, Mr. Guillot's vitals were taken by STPJ medical personnel, and he was hydrated with four (4) cups of electrolyte replacement fluid.[33]

34. During his time in the holding cell, Mr. Guillot's blood sugar levels were taken by STPJ medical personnel on December 27 and 28 of 2019, and January 1, 4, 6 and 8 of 2020.[34]

35. During his time in the holding cell, Mr. Guillot's vitals were taken on December 27, 28, 30 and 31 of 2019, and January 1, 2020.[35]

36. On January 9, 2020, Mr. Guillot had lab work done by STPJ medical personnel.[36]

37. Mr. Guillot never initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") during his time in the STPJ.[37]

38. Mr. Guillot has not alleged that he suffered any physical injuries as a result of his time in the holding cells.

39. Mr. Guillot is not in possession of any medical records evidencing any injuries he allegedly sustained during his time in the STPJ holding cells.[38]

**B. 30(b)(6) Testimony**

40. Defendant, Sgt. Lacey Kelly-Robertson testified that the temperature of the holding

---

[30] *Id*. at pgs. 45, 68.
[31] *Id*. at pg. 71.
[32] *Id*.
[33] *Id*. at pg. 68.
[34] *Id*. at pgs. 7 – 8.
[35] *Id*. at pg. 8.
[36] *Id*. at pgs. 34 – 36.
[37] *See* R. Doc. 37-1, ¶ 25.
[38] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

cells was kept at 68 to 69 degrees.[39]

41. Sgt. Kelly-Robertson testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[40]

42. Sgt. Lacey Kelly-Robertson testified that the STPJ houses inmates from St. Tammany Parish, Department of Corrections ("DOC") and U.S. Marshal prisoners and serves as a hub for reentry for rehabilitative services for seven parishes.[41]

43. Sgt. Lacey Kelly-Robertson testified that the STPJ is under contract to take these DOC and federal inmates, and they are housed in a DOC general population housing unit.[42] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[43] Beds within the STPJ are specifically reserved for inmates by those categories.[44]

44. Sgt. Lacey Kelly-Robertson testified that because of these federal contracts, if there is an open bed in the DOC housing unit, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[45] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed.[46]

45. There was no punitive action or malice involved in Mr. Guillot being kept in the holding

---

[39] *See* pg. 25, lines 8-12, of the 30(b)(6) Deposition Testimony of STSPO, attached to Defendants' Motion for Summary Judgment as Exhibit "4".
[40] *See* Exhibit 4, pgs. 25-26, lines 11-5.
[41] *See* Exhibit 4, pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[42] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
[43] *Id*. at pg. 50, lines 5 – 9.
[44] *Id*. at pg. 80, lines 5 – 12.
[45] *Id*. at pg. 80, lines 13 – 17.
[46] *Id*. at pg. 165, lines 3 – 7.

cell for the amount of time that he was.[47]

46. Sgt. Lacey Kelly-Robertson testified that detainees have access to medical care 24 hours a day.[48]

47. Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of toilet paper in the cell and replace them as needed.[49]

48. Sgt. Lacey Kelly-Robertson testified that it became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[50]

49. Sgt. Lacey Kelly-Robertson testified that there was no directive that detainees were entitled to only three rolls of toilet paper per cell.[51]

**C. Sheriff Randy Smith**

50. As the elected Sheriff of St. Tammany Parish, Sheriff Smith is in charge of a department of almost 800 employees, and Sheriff Smith is also responsible for the operation of the St. Tammany Parish Jail which has a capacity of approximately 1,200 inmates.[52]

51. Sheriff Smith has no day-to-day role with respect to any individual's confinement in the jail, as he has delegated those day-to-day responsibilities to his subordinates.[53]

52. Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in the above-captioned matter.[54]

---

[47] *Id.* at pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.
[48] *Id.* at pg. 88, lines 5 – 12; pg. 103, lines 8 – 15.
[49] *Id.* at pgs. 119 – 120, lines 17 – 4.
[50] *Id.*
[51] *Id.*
[52] *See* ¶ 5 of the Affidavit of Sheriff Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "6."
[53] *See* Exhibit 6, ¶ 6.
[54] *Id.* at ¶ 7.

53. Sheriff Smith has no first-hand knowledge about the incarceration and the conditions of confinement of any of the individual Plaintiffs in the St. Tammany Parish Jail.[55]

54. Sheriff Smith has never met nor spoken with any of the individual Plaintiffs in this matter with regard to their confinement in the St. Tammany Parish Jail.[56]

55. Sheriff Smith did not become aware that any of these individual Plaintiffs were ever incarcerated at the St. Tammany Parish Jail until after this suit was filed.[57]

56. Since Sheriff Smith became Sheriff in 2016, it has always been the policy of the St. Tammany Parish Sheriff's Office to hold individuals in the holding cells only until such time as a bed opens up in one of the jail housing units.[58]

57. The jail housing units are segregated by inmate classification, specifically, these units are designated for St. Tammany Parish pre-trial detainees, Louisiana Department of Corrections ("DOC") inmates, and Federal detainees. St. Tammany Parish pre-trial detainees are not eligible for housing in either of the DOC or the Federal housing units.[59]

58. Since Sheriff Smith became Sheriff in 2016, it has never been the policy or custom of the St. Tammany Parish Sheriff's Office to hold any individual in the holding cells for any punitive reason.[60]

59. Sheriff Smith testified that due to the contract with DOC, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[61]

---

[55] *Id*. at ¶ 8.
[56] *Id*. at ¶ 9.
[57] *Id*. at ¶ 10.
[58] *Id*. at ¶ 11.
[59] *Id*. at ¶ 12.
[60] *Id*. at ¶ 13.
[61] *See* pg. 91, lines 13 – 20 of the Deposition Testimony of Sheriff Randy Smith, attached to Defendants' Motion for

60. Sheriff Smith testified that there was no policy requiring individuals to be held in the holding cells longer than 48 hours.[62]

**D. Deputy Chief Brett Ibert**

61. STPJ houses pre-trial detainees for St. Tammany Parish, the Louisiana Department of Corrections ("DOC"), Federal inmates for the U.S. Marshal's Office and also serves as a hub for reentry for rehabilitative services for seven parishes.[63]

62. The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[64]

63. Beds within the STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[65]

64. Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ. Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[66]

65. The STPJ works daily to facilitate movement throughout the facility to decrease the

---

Summary Judgment as Exhibit "7."

[62] *See* Exhibit 7, pg. 117, lines 22 – 25.

[63] *See* ¶ 7 of the Affidavit of Deputy Chief Brett Ibert, attached to Defendants' Motion for Summary Judgment as Exhibit "5."

[64] *See* Exhibit 5, ¶ 8.

[65] *Id*. at ¶ 9.

[66] *Id*. at ¶ 10.

occupancy of the holding cells.[67]

66. Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed. Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[68]

67. No pre-trial detainees are held in the holding cells inside the STPJ for any punitive reason. Further, none of the five plaintiffs in this matter were held in the holding cells within the STPJ for any punitive reason.[69]

**E. Previous Findings of the Court**

68. On April 11, 2020, in the matter titled *Baqer* and prior to consolidation, Judge Vitter issued her Order and Reasons for denying Plaintiffs' Motion for Preliminary Injunction, following the April 10, 2020 hearing in which testimony was provided regarding the conditions of confinement that have been alleged by Plaintiffs to be unconstitutional during their time in the STPJ holding cells

69. In denying Plaintiffs' Motion for Preliminary Injunction, Judge Vitter held that Plaintiffs did not meet their burden of providing evidence to show a substantial likelihood of success on the merits of the allegations in their March 22, 2020 Complaint regarding the conditions of their confinement in the holding cells at the STPJ violating their constitutional rights.[70]

70. Judge Vitter held that, "It has been repeatedly held that, absent some indication of

[67] *Id*. at ¶ 11.
[68] *Id*. at ¶ 12.
[69] *Id*. at ¶ 13.
[70] *See* R. Doc. 40, pg. 27.

punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[71]

71. Judge Vitter held that "While Plaintiffs argued that the Court should look to the 'cumulative record' to establish punitive intent and to show the likelihood of success on the merits of their claims, they were unable to point to any specific action by any of the Defendants or jail staff to support that argument, even when the Court specifically asked to be directed to such action."[72]

72. Judge Vitter held that "Plaintiffs have failed to establish conditions which are so egregious that would offend "contemporary standards of decency."[73]

73. Judge Vitter held that, "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[74]

74. Judge Vitter held that, "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent. Instead, the Court finds the facts and analysis of *Allen* are directly on point. Further, Plaintiffs have failed to establish a constitutional violation."[75]

---

[71] *Id.* at pg. 31.
[72] *Id.*
[73] *Id.*
[74] *Id.* at pgs. 31 – 32.
[75] *Id.* at pg. 32.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

s/ Chadwick W. Collings

**CHADWICK W. COLLINGS, T.A. # 25373**
**KENNETH R. WHITTLE # 38640**
**SARAH A. FISHER # 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Monday, August 07, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Chadwick W. Collings
**Chadwick W. Collings**