**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual capacity** | * | **MAGISTRATE CURRAULT**<br>**JURY DEMAND**<br>**COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC***<br>**ALL CASES** |
| **Defendants** | * | |

**************************************************************************

---

## STATEMENT OF UNDISPUTED FACTS

---

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment as to the claims of Terry Matthew Hall, Jr., and aver as follows:

### A. Terry Matthew Hall, Jr.

1. In October of 2015, Terry Matthew Hall, Jr., was placed on probation for five (5) years, from October 22, 2015, until October 22, 2020, stemming from charges relating to

Possession of Schedule I and Aggravated Second Degree Battery.[1]

2. On October 18, 2019, Terry Matthew Hall, Jr., was arrested by the STPSO for violating the terms of his probation by testing positive for an illegal substance.[2]
3. Upon his arrest, Mr. Hall was booked by the STPSO and placed into male holding cell 1 at the STPJ.[3]
4. Mr. Hall was held in the holding cells at the STPJ for a total of fifteen (15) days, from October 18, 2019, until his release on November 1, 2019.[4]
5. Mr. Hall testified that the holding cells were cleaned about every two (2) days,[5] or twice a week.[6]
6. Mr. Hall testified the holding cells were cleaned by mopping the floor with bleach.[7]
7. Mr. Hall testified that when the holding cells were cleaned, that any urine present around the toilet was also cleaned.[8]
8. Mr. Hall testified that there was no presence of feces on the floor of the holding cell.[9]
9. Mr. Hall testified that there was no presence of vomit or blood on the floor of the holding cell.[10]
10. Mr. Hall testified that during his stay in the holding cells, that he was provided a blanket

[1] *See* pgs. 25-26 of the Jail Records of Terry Matthew Hall, Jr., attached to Defendants' Motion for Summary Judgment as Exhibit "1."
[2] *See* Exhibit 1, pg. 3; *See also* pgs. 18 – 19, lines 23 – 2 of the Deposition Testimony of Terry Matthew Hall, Jr., attached to Defendants' Motion for Summary Judgment as Exhibit "2."
[3] *See* Inmate Cell Movement Report, attached to Defendants' Motion for Summary Judgment as Exhibit "3."
[4] *See* Exhibit 1, pgs. 4, 31.
[5] *See* Exhibit 2, pg. 26, lines 5 – 15.
[6] *Id*. at pg. 35, lines 14 – 16.
[7] *Id*. at. pg. 35, lines 17 – 22.
[8] *Id*. at pg. 31, lines 19 – 23.
[9] *Id*. at pg. 32, lines 3 – 16.
[10] *Id*. at pgs. 32-33, lines 17 – 1.

every night except for "one or two nights."[11]

11. Mr. Hall testified that the blankets they were provided were clean, never wet and that they were warm "like they came out the dryer."[12]

12. Mr. Hall testified that during his fifteen (15) days in the holding cell, that he was permitted to take a shower on three separate occasions.[13]

13. Mr. Hall testified that after he showered he was provided a set of clean clothes.[14]

14. Mr. Hall testified that he was provided three meals a day and that there was nothing wrong with the food.[15]

15. Mr. Hall testified that he was able to sleep while in the holding cell.[16]

16. Mr. Hall testified that he was never assaulted or battered by any inmates during his time in the holding cell.[17]

17. Mr. Hall testified that he did not file any grievances with the sheriff's office during his time in the holding cell.[18]

18. Mr. Hall testified that he was able to use a working toilet in the holding cell when needed.[19]

19. Mr. Hall testified that when inmates in the holding cell were involved in fights, that the guards came in quick and broke the fights up within 10 seconds.[20]

20. Mr. Hall testified that the guards would pull those inmates involved in fights out of the

---

[11] *Id.* at pg. 23, lines 14-20; pg. 36, lines 2-11.
[12] *Id.* at pgs. 37-38, lines 23-4.
[13] *Id.* at pg. 21, lines 8-15.
[14] *Id.* at pg. 23, lines 11 – 13.
[15] *Id.* at pg. 21, lines 16 – 22.
[16] *Id.* at pg. 21, lines 23 – 24.
[17] *Id.* at pg. 22, lines 15 – 18.
[18] *Id.* at pg. 22, lines 19 – 22.
[19] *Id.* at pgs. 22-23, lines 23 – 6.
[20] *Id.* at pg. 43, lines 13 – 24.

holding cell.[21]

21. Mr. Hall testified that he had no issues with the correction officers during his time in the holding cell.[22]
22. Mr. Hall testified that he was provided toilet paper and toothpaste during his time in the holding cell.[23]
23. On November 1, 2019, Mr. Hall was moved out of the holding cell.[24]
24. Mr. Hall testified that he has not seen any doctors for his alleged back pain.[25]
25. Mr. Hall testified that he never saw a psychiatrist, psychologist or other mental health professional for any of his issues with regard to sleep after his fifteen (15) day stay in the holding cell.[26]
26. Mr. Hall not in possession of any medical records evidencing any of his alleged injuries.[27]

**B. 30(b)(6) Testimony**

27. Defendant, Sgt. Lacey Kelly-Robertson testified that the temperature of the holding cells was kept at 68 to 69 degrees.[28]
28. Sgt. Kelly-Robertson testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog

[21] *Id*. at pg. 43, lines 13 – 24.
[22] *Id*. at pg. 24, lines 3 – 7.
[23] *Id*. at pgs. 24-25, lines 24 – 1.
[24] *See* Exhibit 3.
[25] *See* Exhibit 2 pg. 29, lines 9 – 11.
[26] *Id*. at pgs. 29-30, lines 24 – 3.
[27] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.
[28] *See* pg. 25, lines 8-12, of the 30(b)(6) Deposition Testimony of STSPO, attached to Defendants' Motion for Summary Judgment as Exhibit "5".

and the floors to get slick, creating a safety issue for everyone at the facility.[29]

29. Sgt. Lacey Kelly-Robertson testified that the STPJ houses inmates from St. Tammany Parish, Department of Corrections ("DOC") and U.S. Marshal prisoners and serves as a hub for reentry for rehabilitative services for seven parishes.[30]

30. Sgt. Lacey Kelly-Robertson testified that the STPJ is under contract to take these DOC and federal inmates, and they are housed in a DOC general population housing unit.[31] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[32] Beds within the STPJ are specifically reserved for inmates by those categories.[33]

31. Sgt. Lacey Kelly-Robertson testified that because of these federal contracts, if there is an open bed in the DOC housing unit, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[34] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed.[35]

32. There was no punitive action or malice involved in Mr. Hall being kept in the holding cell for the amount of time that he was.[36]

33. Sgt. Lacey Kelly-Robertson testified that detainees have access to medical care 24 hours a day.[37]

34. Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of

---

[29] *See* Exhibit 5, pgs. 25-26, lines 11-5.
[30] *Id*. at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[31] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
[32] *Id*. at pg. 50, lines 5 – 9.
[33] *Id*. at pg. 80, lines 5 – 12.
[34] *Id*. at pg. 80, lines 13 – 17.
[35] *Id*. at pg. 165, lines 3 – 7.
[36] *Id*. at pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.
[37] *Id*. at pg. 88, lines 5 – 12; pg. 103, lines 8 – 15.

toilet paper in the cell and replace them as needed.[38]

35. Sgt. Lacey Kelly-Robertson testified that it became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[39]

36. Sgt. Lacey Kelly-Robertson testified that there was no directive that detainees were entitled to only three rolls of toilet paper per cell.[40]

**C. Sheriff Randy Smith**

37. As the elected Sheriff of St. Tammany Parish, Sheriff Smith is in charge of a department of almost 800 employees, and Sheriff Smith is also responsible for the operation of the St. Tammany Parish Jail which has a capacity of approximately 1,200 inmates.[41]

38. Sheriff Smith has no day-to-day role with respect to any individual's confinement in the jail, as he has delegated those day-to-day responsibilities to his subordinates.[42]

39. Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in the above-captioned matter.[43]

40. Sheriff Smith has no first-hand knowledge about the incarceration and the conditions of confinement of any of the individual Plaintiffs in the St. Tammany Parish Jail.[44]

41. Sheriff Smith has never met nor spoken with any of the individual Plaintiffs in this matter with regard to their confinement in the St. Tammany Parish Jail.[45]

---

[38] *Id.* at pgs. 119 – 120, lines 17 – 4.
[39] *Id.*
[40] *Id.*
[41] *See* ¶ 5 of the Affidavit of Sheriff Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "7."
[42] *See* Exhibit 7, ¶ 6.
[43] *Id.* at ¶ 7.
[44] *Id.* at ¶ 8.
[45] *Id.* at ¶ 9.

42. Sheriff Smith did not become aware that any of these individual Plaintiffs were ever incarcerated at the St. Tammany Parish Jail until after this suit was filed.[46]

43. Since Sheriff Smith became Sheriff in 2016, it has always been the policy of the St. Tammany Parish Sheriff's Office to hold individuals in the holding cells only until such time as a bed opens up in one of the jail housing units.[47]

44. The jail housing units are segregated by inmate classification, specifically, these units are designated for St. Tammany Parish pre-trial detainees, Louisiana Department of Corrections ("DOC") inmates, and Federal detainees. St. Tammany Parish pre-trial detainees are not eligible for housing in either of the DOC or the Federal housing units.[48]

45. Since Sheriff Smith became Sheriff in 2016, it has never been the policy or custom of the St. Tammany Parish Sheriff's Office to hold any individual in the holding cells for any punitive reason.[49]

46. Sheriff Smith testified that due to the contract with DOC, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[50]

47. Sheriff Smith testified that there was no policy requiring individuals to be held in the holding cells longer than 48 hours.[51]

**D. Deputy Chief Brett Ibert**

48. STPJ houses pre-trial detainees for St. Tammany Parish, the Louisiana Department of

---

[46] *Id*. at ¶ 10.
[47] *Id*. at ¶ 11.
[48] *Id*. at ¶ 12.
[49] *Id*. at ¶ 13.
[50] *See* pg. 91, lines 13 – 20 of the Deposition Testimony of Sheriff Randy Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "8."
[51] *See* Exhibit 8, pg. 117, lines 22 – 25.

Corrections ("DOC"), Federal inmates for the U.S. Marshal's Office and also serves as a hub for reentry for rehabilitative services for seven parishes.[52]

49. The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[53]

50. Beds within the STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[54]

51. Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ. Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[55]

52. The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[56]

53. Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed. Rather, pre-trial detainees are only eligible to be moved to open beds as they become available

---

[52] *See* ¶ 7 of the Affidavit of Deputy Chief Brett Ibert, attached to Defendants' Motion for Summary Judgment as Exhibit "6."
[53] *See* Exhibit 6, ¶ 8.
[54] *Id*. at ¶ 9.
[55] *Id*. at ¶ 10.
[56] *Id*. at ¶ 11.

in the pre-trial detainee housing units within the STPJ.[57]

54. No pre-trial detainees are held in the holding cells inside the STPJ for any punitive reason. Further, none of the five plaintiffs in this matter were held in the holding cells within the STPJ for any punitive reason.[58]

**E. Previous Findings of the Court**

55. On April 11, 2020, in the matter titled *Baqer* and prior to consolidation, Judge Vitter issued her Order and Reasons for denying Plaintiffs' Motion for Preliminary Injunction, following the April 10, 2020 hearing in which testimony was provided by Mr. Baqer regarding the conditions of confinement that have been alleged by Plaintiffs to be unconstitutional during their time in the STPJ holding cells.[59]

56. In denying Plaintiffs' Motion for Preliminary Injunction, Judge Vitter held that Plaintiffs did not meet their burden of providing evidence to show a substantial likelihood of success on the merits of the allegations in their March 22, 2020 Complaint regarding the conditions of their confinement in the holding cells at the STPJ violating their constitutional rights.[60]

57. Judge Vitter held that, "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[61]

58. Judge Vitter held that "While Plaintiffs argued that the Court should look to the 'cumulative record' to establish punitive intent and to show the likelihood of success

---

[57] *Id*. at ¶ 12.
[58] *Id*. at ¶ 13.
[59] *See* Order and Reasons (R. Doc. 40, pg. 31).
[60] *See* R. Doc. 40, pg. 27.
[61] *Id.* at pg. 31.

on the merits of their claims, they were unable to point to any specific action by any of the Defendants or jail staff to support that argument, even when the Court specifically asked to be directed to such action."[62]

59. Judge Vitter held that "Plaintiffs have failed to establish conditions which are so egregious that would offend "contemporary standards of decency."[63]

60. Judge Vitter held that, "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[64]

61. Judge Vitter held that, "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent. Instead, the Court finds the facts and analysis of *Allen* are directly on point. Further, Plaintiffs have failed to establish a constitutional violation."[65]

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

s/ Chadwick W. Collings
**CHADWICK W. COLLINGS, T.A. # 25373**
**KENNETH R. WHITTLE # 38640**
**SARAH A. FISHER # 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

[62] *Id.*
[63] *Id.*
[64] *Id.* at pgs. 31 – 32.
[65] *Id.* at pg. 32.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Monday, August 07, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Chadwick W. Collings
**Chadwick W. Collings**