**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual capacity** | * | **MAGISTRATE CURRAULT**<br><br>**JURY DEMAND**<br><br>**COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC***<br><br>**ALL CASES** |
| **Defendants** | * | |

*************************************************************************

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF TERRY MATTHEW HALL, JR.**

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56:

## I. ALLEGATIONS OF FACT

### A. Procedural Background

Plaintiff, Terry Matthew Hall, Jr., filed the instant action on March 22, 2020, in which he has alleged violations of his civil rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment

to the United States Constitution, and the laws of the State of Louisiana.[1] Plaintiff's complaint challenges the conditions of his pre-trial detainment, and in particular, alleges the following theories of recovery stemming from the time in which he was detained in the holding cells at the St. Tammany Parish Jail ("STPJ"):

1. Violations of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana;
2. Violations of Article I, Section 20 of the Louisiana Constitution;
3. Negligence; and
4. Liability against Defendants Smith, Strain, Longino and Kelly pursuant to *Respondeat Superior*.[2]

Plaintiff originally named as Defendants not only the current Sheriff of St. Tammany Parish, Randy Smith, and the warden of the St. Tammany Parish Jail at all times relevant to their detentions, Lacey Kelly, but also Sheriff Smith's predecessor-in-office, Rodney Strain, as well as Major Kelly's predecessor, Mr. Greg Longino.[3] The Court subsequently dismissed Plaintiff's claims against Rodney Strain and Greg Longino with prejudice on March 22, 2021.[4] On April 26, 2021, this matter was consolidated with *Baqer et. al. v. St. Tammany Parish Government, et. al.*, No. 2:20-cv-00980-DJP-DPC, and Plaintiffs' original motions to certify class, which were filed in both the instant matter and in *Louviere*, were denied without prejudice.[5]

**B. Factual Background**

In October of 2015, Terry Matthew Hall, Jr., was placed on probation for five (5) years, from October 22, 2015, until October 22, 2020, stemming from charges relating to Possession of

---

[1] *See* Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1.
[2] All claims against Defendants, Strain and Longino, have been dismissed (*See* R. Doc. 149; *See also* 2:20-cv-01840-WBV-DPC, R. Doc. 60).
[3] *Id*. (Lacey Kelly was the warden of the STPJ during the time in which Plaintiffs were held in the holding cells, from 2019 through 2020).
[4] *See* R. Doc. 149.
[5] *See* R. Doc. 152.

Schedule I and Aggravated Second Degree Battery.[6] On October 18, 2019, Terry Matthew Hall, Jr., was arrested by the STPSO for violating the terms of his probation by testing positive for an illegal substance.[7] Upon his arrest, Mr. Hall was booked into the STPJ and placed into male holding cell 1.[8] Mr. Hall remained in the holding cells at the STPJ for a total of fifteen (15) days, from October 18, 2019, until his release on November 1, 2019.[9]

Mr. Hall has alleged that during his time in the STPJ holding cell, that he was subjected to the following conditions of confinement, which he claims violated his constitutional rights:

(1) The length of time he was kept in the holding cell;
(2) Overcrowding of the holding cell;
(3) Unsanitary conditions within the holding cell;
(4) Being forced to sleep on the concrete floor of the holding cell;
(5) Limited and/or no access to blankets at night;
(6) Limited access to showers;
(7) Denial of the ability to participate in recreational activities and/or exercise;
(8) Cold temperature within the holding cell; and
(9) That the conditions of the holding cell resulted in Mr. Hall contracting gangrene in his foot and lower back pain.

As will be discussed in further detail below, Plaintiff's claims are not actionable as they consist of allegations and complaints that are not *per se* unconstitutional. Plaintiff has failed to present any evidence establishing that any of the alleged treatment and/or deprivations were done with punitive intent on behalf of the Defendants. Additionally, Plaintiff's claims, by his own admissions, are not actionable, as Plaintiff's testimony establishes that during his time at the STPJ,[10] he was **never** denied and/or deprived of life's necessities but was instead continually provided with them. Accordingly, this Honorable Court should dismiss Plaintiff, Terry Matthew

---

[6] *See* pgs. 25-26 of the Jail Records of Terry Matthew Hall, Jr., attached herein as Exhibit "1."
[7] *See* Exhibit 1, pg. 3; *See also* pgs. 18 – 19, lines 23 – 2 of the Deposition Testimony of Terry Matthew Hall, Jr., attached herein as Exhibit "2."
[8] *See* Inmate Cell Movement Report, attached herein as Exhibit "3."
[9] *See* Exhibit 1, pgs. 4, 31.
[10] A detailed overview of the STPJ, as well as Plaintiffs' complaints, can be reviewed in the Expert Report of Lenard Vare, attached herein as Exhibit "4."

Hall, Jr.'s claims against Defendants, Sheriff Randy Smith and Lacey Kelly, with prejudice.

## II. LAW AND ARGUMENT

### A. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56 governs the motion for summary judgment in federal court. The rule mandates that a granting of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11]

As a general rule, the moving party has the initial burden to establish that there are no issues of material fact and that the mover is entitled to judgment in its favor as a matter of law.[12] Only disputed facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.[13] If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists.[14] A fact is material only when it might affect the outcome of the suit under the governing law.[15] In other words, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion.

In practice, the Fifth Circuit requires the nonmoving party to tender what it has called "significant" and "probative" evidence to rebut a properly supported summary judgment motion.[16] This burden placed on the non-mover to offer countervailing evidence is a heavy one. In fact, one court has expressed, in rather blunt terms, that summary judgment is the stage of the proceedings

---

[11] Fed. R. Civ. P. 56(a); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[12] *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District*, 349 F.3d 244, 246-47 (5th Cir. 2003).

[13] *Condiff v. R.D. Werner Company, Inc.*, 2003 WL 21977167, *1 (E.D. La. 2003).

[14] *New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776, 780 (E.D. La 2003).

[15] *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006); *see also Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir. 1999) "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

[16] *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).

for parties "to put up or shut up."[17] "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[18] Additionally, while all reasonable inferences are drawn in favor of the nonmoving party, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[19]

### B. Summary Judgment Standard for Qualified Immunity

The general rules regarding summary judgment are even further manifest when dealing with claims asserted under § 1983 where the defendant raises qualified immunity as a defense, as Defendants have done here. As summarized by one court:

> The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, **it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised**. An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.[20]

"[T]he qualified-immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[21] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" in situations in which "existing

---

[17] *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2nd Cir. 2000); *see also*, *Ankum v. White Consolidated Industries*, 1992 WL 236961, *5 (E.D. La. 1992) (Sear, J.) ("The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask the other party to 'put up for shut up.' The opposing party then must go beyond the pleadings and offer proof of his claim.") (emphasis added).
[18] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[20] *Tolan v. Cotton*, 854 F.Supp.2d 444, 463 (S.D. Tex. 2012)(emphasis added)(internal citations omitted), affirmed 713 F.3d 299 (5th Cir. 2013), reversed on other grounds, 134 S. Ct. 1861, 188 L.Ed.2d 895 (2014) (emphasis added).
[21] *Dolan v. Parish of St. Tammany*, 2014 U.S. Dist. LEXIS 26200 *citing Behrens v. Pelletier*, 516 U.S. 299, 305 (1996).

precedent…placed the statutory or constitutional question beyond debate."[22] To defeat the defense of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[23] "The movant, on the other hand, can support its motion by relying solely on the pleadings."[24]

Qualified immunity exists to ensure that "fear of liability will not unduly inhibit officials in the discharge of their duties."[25] As noted by the United States Supreme Court, while qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[26] This "clearly established law should not be defined 'at a high level of generality.'"[27] Instead, it must be "particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."[28] The "statutory or constitutional question" must be "beyond debate"[29] and so clearly established that a "reasonably official would have understood that what he is doing violates that right."[30]

This high burden requires Plaintiff to identify a "case where an officer acting under similar circumstances as [each of the defendants] was held to have violated [a person's constitutional rights]."[31] "If prior case law has not clearly settled the right, and so given officials fair notice of

[22] *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).
[23] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[24] *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007).
[25] *Camreta v. Greene*, 563 U.S. 692, 705 (2011) *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[26] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[27] *See White*, 137 S. Ct. at 552.
[28] *Id*.
[29] *Rivas-Villegas v. Cortesluna,* 2021 U.S. LEXIS 5311 at *6 (Oct. 18, 2021) *citing White v. Pauly,* 137 S. Ct. 548, 551 (2017).
[30] *Id citing Mullenix v. Luna* 577 U.S. 7, 11 (2015).
[31] *Id*.

it, the court can simply dismiss the claim for money damages."[32] This notice is paramount, and the Supreme Court has in the past questioned a party for not submitting any Supreme Court cases that address the facts at bar and has even openly mused about the value of Circuit precedent in clearly establishing law.[33] It is for this reason that the Supreme Court has stated that "[m]any Courts of Appeals therefore decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity," as such decisions do not "settle constitutional standards or prevent repeated claims of qualified immunity."[34] This follows from the general practice of *stare decisis* whereby district court decisions are not binding authority "in either a different judicial district, the same judicial district, or even upon the same judge in a different case."[35] As will be shown below, Plaintiff fails to identify a violation of any clearly established, protected right, and therefore, Defendants are entitled to qualified immunity and summary judgment.

### C. Qualified Immunity Should be Determined on Summary Judgment

The issue of qualified immunity is uniquely ripe for disposition via summary judgment. This is why a district court denial of summary judgment to a defendant on the issue of qualified immunity is immediately appealable when the "issue appealed concerned…whether or not certain given facts show a violation of a clearly established law."[36]

### D. Plaintiff has Failed to State any Actionable Claims with regard to the Alleged 'Conditions of Confinement'

The appropriate standard to apply in analyzing constitutional challenges by pretrial

---

[32] *Camreta* 563 U.S. at 705.
[33] *Rivas-Villegas,* U.S. LEXIS 5211 at *7.
[34] *Camreta* 563 U.S. at 709; *see also Crane v. Utah Dep't of corr.* 2021 U.S. App. LEXIS 31681 at *7 (10th Cir. 10/21/21); *Matusick v. Erie Cty. Water Auth.,* 757 F.3d 31, 61 (2d Cir. 2014); *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 545 (4th Cir. 2017).
[35] *Camreta* 563 U.S. at 709; *see also* 18 Moore's Federal Practice - Civil § 134.02[1][d] (2021).
[36] *Johnson v. Jones,* 515 U.S. 304, 304 (1995) (citation omitted).

detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement" or "episodic act or omission."[37] An "action is characterized properly as an 'episodic act or omission' case" when "the complained-of harm is a particular act or omission of one or more officials."[38] If a case falls under the "episodic act or omission" category, Courts apply the deliberate indifference standard.[39]

The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment."[40] "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless"[41] "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose.[42] "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules."[43]

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment," as opposed to simple detention while awaiting trial.[44] Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences.[45] Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.[46] The Fifth Circuit has also recognized that, "[t]he Constitution does not

---

[37] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)(en banc)
[38] *Tamez v. Manthey*, 589 F.3d 764 (5th Cir. 2009).
[39] *Id*. at 769.
[40] *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir.1996).
[41] *Bell*, 441 U.S. at 539.
[42] *Id.* at 561.
[43] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646 (5th Cir.1996).
[44] *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).
[45] *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.
[46] *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, Civ. Action No. 14-2435, 2015 U.S. Dist. LEXIS

mandate comfortable prisons, but neither does it permit inhumane ones."[47] When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights.[48] When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate.[49] Deliberate indifference is established by showing that the defendant officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.[50]

### 1. Time in the Holding Cells and alleged Violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code

Plaintiff, Terry Matthew Hall, Jr., asserts that the length of time that he was held in the holding cell was unconstitutional.[51] Plaintiff asserts that because he was held in the holding cell for longer than 48 hours, that Defendants violated Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code.[52] Plaintiff's claim under the Louisiana Administrative Code, however, does not provide relief under 42 U.S.C. § 1983, which requires that Plaintiff show that there is a violation of federal law. As this Circuit has previously held, a violation of a state administrative code is not, in and of itself, a basis for federal relief.[53]

Additionally, this Court has previously ruled that a Plaintiff being held in a holding cell

34318, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015).
[47] *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).
[48] *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).
[49] *Scott*, 114 F.3d at 53-54.
[50] *See Harrell v. Gusman*, 2016 U.S. Dist. LEXIS 39549 (E.D. La. March 25, 2016), quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998); *See also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).
[51] Terry Matthew Hall, Jr. was detained in the holding cell for 15 days.
[52] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1.
[53] *See, e.g., Tweedy v. Boggs*, 1993 U.S. App. LEXIS 40937 (5th Cir. Jan. 5, 1993); *See Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018); *See also Mathews v. Bowie Cty.*, 2013 U.S. Dist. LEXIS 130978, (E.D. Tex. Sept. 13, 2013).

for 18 days was such a short period of time that it was insufficient to rise to the level of a constitutional violation.[54] Here, the length of time that Mr. Hall was held in the holding cell was for 15 days. As previously noted by this Court, the short period of time in which Mr. Hall was held in the holding cell is insufficient to rise to the level of a constitutional violation. Accordingly, Plaintiff's allegation regarding the length of time that he was held in the holding cell amounts to nothing more than a *de minimis* inconvenience which does not constitute "punishment" or otherwise rise to the level of a constitutional violation.[55] There was no punitive intent or malice involved in Mr. Hall being kept in the holding cell.[56] There was also no policy requiring individuals to be held in the holding cells longer than 48 hours.[57] Additionally, as of April 11, 2020, prior to the consolidation of this matter with the *Baqer* matter, this Honorable Court issued a ruling finding that there was no evidence of punitive intent with regard to all of the plaintiffs' claims as to the conditions of confinement.[58] Accordingly, this Honorable Court should dismiss Plaintiff's claim regarding the length of time that he was held in the holding cells, including any alleged violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code with prejudice for failing to state a claim on which relief may be granted.[59]

---

[54] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (finding that detainee's eighteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *See also Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. July 31, 2020)(finding that detainee's seventeen day confinement in the holding cell to be insufficient to rise to the level of a constitutional violation), adopted, *Terry v. Smith*, 2021 U.S. Dist. LEXIS 12680 (E.D. La., Jan. 2021); *See Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018) (finding that detainee's fifteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018).

[55] *Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351, at *3-4 (E.D. La. July 31, 2020); adopted, *Terry v. Smith*, 2021 U.S. Dist. LEXIS 12680 (E.D. La., Jan. 2021).

[56] *See* pg. 161, lines 10 – 14; pg. 166, lines 1 – 6, of the 30(b)(6) testimony of the STPSO, attached herein as Exhibit "5"; *See* ¶ 13 of the Affidavit of Deputy Chief Brett Ibert, attached herein as Exhibit "6"; *See also* ¶ 13 of the Affidavit of Sheriff Randy Smith, attached herein as Exhibit "7."

[57] *See* pg. 117, lines 22 – 25 of the Deposition Testimony of Sheriff Randy Smith, attached herein as Exhibit "8."

[58] *See* R. Doc. 40, pg. 32, providing that: "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent…Further, Plaintiffs have failed to establish a constitutional violation."

[59] *Smith*, 2020 U.S. Dist. LEXIS 248351, at *5. (Plaintiff's complaint regarding being held in the holding cell for 17 days was dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted).

**2. Overcrowding in the Holding Cells**

Mr. Hall further complains that the alleged overcrowding of the holding cells during the time that he was detained at the STPJ constituted cruel and unusual conditions of confinement. Such conditions of confinement, however, are not unconstitutional, and the Courts have consistently provided that overcrowding of holding cells does not present a legally cognizable claim.[60] This was previously noted by the District Court, prior to consolidation of the *Louviere* and *Baqer* matters, in its denial of Plaintiffs' Motion for Preliminary Injunction, wherein Judge Vitter held that: "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[61] Judge Vitter further provided that after reviewing the record as a whole, no evidence of any such punitive intent could be found.[62]

Here, as previously noted by Judge Vitter, Plaintiff has failed to provide any evidence whatsoever, that the alleged overcrowding of the holding cells was done with punitive intent. Accordingly, because Plaintiff has failed to establish that the alleged overcrowding of the holding cells was done with punitive intent on behalf of the Defendants, this Honorable Court must dismiss Plaintiff's claim as to the alleged overcrowding of the holding cells with prejudice for failing to state a claim on which relief may be granted.

**3. Unsanitary Conditions**

Mr. Hall has alleged that during his fifteen (15) day stay in the holding cell, that he was faced with the following unsanitary conditions constituting a violation of his constitutional

[60] *See Rhodes v. Chapman*, 452 U.S. 337, 347-50, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981); *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Chavera v. Allison*, 2009 U.S. Dist. LEXIS 32177 (S.D. Miss. 4/15/09); *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 U.S. Dist. LEXIS 122 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 U.S. Dist. LEXIS 61160 (N.D. Miss. 2008).
[61] *See* Order and Reasons (R. Doc. 40, pg. 31).
[62] *See* R. Doc. 40, pg. 32, providing that: "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent…Further, Plaintiffs have failed to establish a constitutional violation."

rights: (1) toilet paper thrown on the ceiling by other detainees;[63] (2) the presence of urine on the ground around the toilet in the cell;[64] (3) the presence of toilet paper on the ground around the toilet;[65] (4) the presence of water on the ground around the toilet from detainees washing their hands;[66] (5) spilled food on the ground[67]; and (6) that the holding cell smelled from "humans not taking a shower."[68]

This Court, as well as Fifth Circuit, has held that such short-term sanitation problems as described by Mr. Hall above, although admittedly unpleasant, do not amount to constitutional violations.[69] Additionally, as the Eastern District has previously noted, the Constitution does not "require that prisons be completely sanitized or even as clean or free from potential hazards as one's own home might be."[70] Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation.[71]

---

[63] *See* Exhibit 2, pg. 30, lines 4 – 10.
[64] *Id*. at pg. 31, lines 12 – 25.
[65] *Id*. at pg. 32, lines 3 – 9.
[66] *Id*. at pg. 32, lines 10 – 16.
[67] *Id*. at pg. 32, lines 17 – 20.
[68] *Id*. at pg. 35, lines 1 – 6.
[69] *Williamson v. Larpenter*, 2019 U.S. Dist. LEXIS 133628 (E.D. La. July 2019), adopted, 2019 U.S. Dist. LEXIS 132383 (E.D. La., Aug. 2019); *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); accord *Benshoof v. Layton*, 351 Fed. Appx. 274 (10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004); *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell)(citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)(no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."); *Magee v. Crowe*, 2010 U.S. Dist. LEXIS 14813 (E.D. La. Feb. 2010) (stating that a "short-term sanitation…problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).
[70] *Allen v. St. Tammany Parish,* 2018 U.S. Dist. LEXIS 12254 at *9 (E.D. La. Jan. 2, 2018) *citing McAllister v. Strain,* U.S. Dist. LEXIS 120101 at *3 (E.D. La. Dec. 2009).
[71] *Harold v. Tangipahoa Parish Sheriff Office*, 2021 U.S. Dist. LEXIS 129887 (E.D. La. June 2021), adopted, 2021 U.S. Dist. LEXIS 128973, (E.D. La. July 2021).

In this case, no such 'extreme circumstances' were present during Mr. Hall's stay in the holding cell. Mr. Hall's complaint of unsanitary conditions consisting of urine, toilet paper and water on the ground near the toilet in the holding cell, as well as food on the ground and the smell of body odor do not constitute extreme circumstances arising to the level of a constitutional violation. This is especially true, considering that Mr. Hall testified that the cells were cleaned about every two (2) days,[72] or twice a week.[73] Mr. Hall testified that during this time, the cells were cleaned by mopping the floor with bleach.[74] Mr. Hall testified that when the cells were cleaned, that any urine present around the toilet was also cleaned.[75] Mr. Hall additionally testified that there was no feces,[76] vomit or blood on the floor of the holding cell.[77]

Additionally, with regard to Mr. Hall's claim that they were not provided enough toilet paper, Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of toilet paper in the cell and replace them as needed.[78] It became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[79] Additionally, there was no directive that detainees were entitled to only three rolls of toilet paper per cell all the time.[80]

Furthermore, prior to consolidation of the *Louviere* and *Baqer* matters, this Court heard testimony and allegations as to the very same unsanitary conditions within the holding cell, and issued a ruling providing that:

---

[72] *See* Exhibit 2, pg. 26, 5 – 15.
[73] *Id*. at pg. 35, lines 14 – 16.
[74] *Id*. at. pg. 35, lines 17 – 22.
[75] *Id*. at pg. 31, lines 19 – 23.
[76] *Id*. at pg. 32, lines 3 – 16. Defendants note that Plaintiff's own testimony contradicts his sworn declaration wherein he provided, under penalty of perjury, that there was feces on the ground in the holding cell. (*See* R. Doc. 101-13, ¶ 21).
[77] *See* Exhibit 2, pgs. 32-33, lines 17 – 1.
[78] *See* Exhibit 5, pgs. 119 – 120, lines 17 – 4.
[79] *Id*.
[80] *Id*.

> "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[81]

Accordingly, Mr. Hall's complaint regarding the unsanitary conditions within the holding cell is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**4. Forced to Sleep on Concrete Floor**

Mr. Hall has further asserted that during his time in the holding cell, that he was forced to sleep on the bare concrete floor or the bench space in the cell, despite the availability of cell space and open beds elsewhere within the STPJ.[82] Mr. Hall asserts that he and the other detainees should have been provided with a mat or pillow to sleep on.[83]

This Court, however, has continually held that the provision of bedding is within those matters committed to prison administrators' sound discretion, and that the deprivation of bedding for a limited period of time is not *per se* unconstitutional.[84] Similar deprivations have repeatedly been found to be constitutional.[85] Additionally, numerous Circuits have held that the deprivation of a mattress for a limited period of time is not *per se* unconstitutional.[86] The Fifth Circuit has

---

[81] *See* R. Doc. 40, pgs. 31 – 32.
[82] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 119; *See* Exhibit 2, pg. 22, lines 10 – 14.
[83] *Id*. at pg. 25, lines 2 – 14.
[84] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020), citing *Walton v. Topps*, 2012 U.S. Dist. LEXIS 127999, (E.D. La. July 23, 2012) (citation omitted), adopted, 2012 U.S. Dist. LEXIS 128415 (E.D. La. Sept. 10, 2012).
[85] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (eighteen days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (fifteen days without a mattress), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018); *McClay v. Gusman*, Civ., 2012 U.S. Dist. LEXIS 114131 (E.D. La. July 2012) (seventeen days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. Aug. 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. June 29, 2011) (sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. Aug. 4, 2011).
[86] *See*, *Fischer v. Ellegood*, 238 Fed. Appx. 428 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); *Stephens v. Cottey*, 145 Fed. Appx. 179 (7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); *Grissom v. Davis*, 55 Fed. Appx. 756 (6th Cir. 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); *Schroeder v.*

also held that the Constitution contains no authority requiring that detainees be provided elevated beds.[87]

In this case, Mr. Hall was kept in the holding cell for only fifteen (15) days, during which time he alleges that he was not provided with a bed. As previously noted above, however, the deprivation of bedding for a limited period of time, including periods of time longer than Mr. Hall's stay in the holding cell, is not *per se* unconstitutional.[88]

Mr. Hall has further complained that he was forced to remain in the holding cell and sleep on the bare concrete floor or the bench space in the cell, despite the STPJ having numerous open beds.[89] However, as noted during the 30(b)(6) deposition testimony of the STPSO, there was no punitive or malicious reason for Mr. Hall not being provided one of the empty beds located in other parts of the STPJ that were reserved for Department of Corrections ("DOC") and/or federal detainees.[90] As Sgt. Kelly-Robertson explained, the STPJ houses inmates from St. Tammany Parish, DOC and U.S. Marshal prisoners and also serves as a hub for reentry for rehabilitative services for seven parishes.[91] The STPJ is under contract to take these DOC and federal inmates, and they are housed in DOC and federal housing units within the STPJ.[92] Different parts of the

---

*Kaplan*, 1995 U.S. App. LEXIS 18915 (9th Cir. July 1995) (sleeping on floor without mattress for four weeks was not found to be a Constitutional violation).

[87] *See Gaines v. McDonald*, 577 Fed. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); accord *Sanders v. Kingston*, 53 Fed. App'x 781, 783 (7th Cir. 2002); *Finfrock v. Jordan*, 1996 U.S. App. LEXIS 32817 (7th Cir. Dec. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Williams v. Gusman*, 2015 U.S. Dist. LEXIS 139805 (E.D. La. Oct. 2015); *Walcott v. Terrebonne Par. Consol. Gov't*, 2017 U.S. Dist. LEXIS 204062 (E.D. La. Sept. 2017), adopted, 2017 U.S. Dist. LEXIS 203742 (E.D. La., Dec. 12, 2017).

[88] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (eighteen days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. July 2012) (seventeen days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. Aug. 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442, (N.D. Miss. June 2011)(sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357, (N.D. Miss. Aug. 2011).

[89] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 119.

[90] *See* Exhibit 5, pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.

[91] *Id*. at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.

[92] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.

STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[93] Beds within the STPJ are specifically reserved for inmates by those categories.[94] Because of these contracts, if there is an open bed in DOC, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[95] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed in that federal housing unit.[96] Therefore, even if there are open beds throughout other parts of the STPJ that are dedicated under contract to DOC and/or federal inmates, those parish detainees who are in the holding cell would not be able to access those open beds as they are reserved under contract to DOC and/or federal inmates.

The 30(b)(6) deposition testimony of the STPSO is further supported by Sheriff Randy Smith who attested that as the Sheriff, it has always been his policy to hold individuals in the holding cells only until a space opened up in the jail dormitories, and no individual was kept in the holding cell for any punitive reason.[97] Sheriff Smith further testified that due to the contracts for DOC and Federal inmates, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[98]

Additionally Brett Ibert, Deputy Chief over Corrections, further attested that no pre-trial detainees, including the five Plaintiffs in the instant matter, are held in the holding cells inside the STPJ for any punitive reason.[99] The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial

---

[93] *Id*. at pg. 50, lines 5 – 9.
[94] *Id*. at pg. 80, lines 5 – 12.
[95] *Id*. at pg. 80, lines 13 – 17.
[96] *Id*. at pg. 165, lines 3 – 7.
[97] *See* Exhibit 7, ¶¶ 11, 13.
[98] *See* Exhibit 8, pg. 91, lines 13 – 20.
[99] *See* Exhibit 6, ¶ 13.

detainees.[100] Beds within STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[101] The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[102] Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ.[103] Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[104] Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed.[105] Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[106]

Furthermore, prior to consolidation of the *Louviere* and *Baqer* matters, this Honorable Court heard allegations and testimony regarding Mr. Baqer being forced to sleep on the concrete floor of the holding cell despite the availability of cell space and beds within the prison and has already issued a ruling finding there to be no evidence of punitive intent.[107]

Accordingly, for the reasons provided above, Mr. Hall's complaint that he was not provided a bedding or mattress during his time in the holding cell is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on

[100] *Id.* at ¶ 8.
[101] *Id.* at ¶ 9.
[102] *Id.* at ¶ 11.
[103] *Id.* at ¶ 10.
[104] *Id.*
[105] *Id.* at ¶ 12.
[106] *Id.*
[107] *See* R. Doc. 40, pg. 3, 32.

which relief may be granted.

**5. Limited and/or No Access to Blankets**

Regarding complaints concerning blankets being withheld or provided for only a short period of time, the Fifth Circuit has previously held that the denial of a blanket for 2 ½ days to an inmate with a cold who was confined indoors in Northern Mississippi in November did not constitute a deprivation of the minimal civilized measures of life's necessities.[108] Additionally, the Eastern District has continually held that a temporary, non-punitive denial of a blanket is not sufficiently egregious to violate the Constitution.[109]

Here, Mr. Hall has alleged that he was not provided a blanket for seven (7) days.[110] Mr. Hall's allegation, however, is contradicted by his own deposition testimony wherein he testified that during the fifteen (15) days he was at the STPJ, that he was provided a blanket every night except for "one or two nights."[111] Mr. Hall further testified that the blankets he was provided with were clean, never wet and that they were warm "like they came out the dryer."[112]

Regarding whether or not the denial of the blankets for two (2) out of the fifteen (15) nights that he was in the holding cell was for any punitive reason, Mr. Hall testified that "Right. You could say that, yes."[113] Aside from Mr. Hall's own self-serving testimony regarding his subjective belief that 'you could say' that the denial of the blankets on two occasions was for punitive reasons, he has failed to offer any evidence whatsoever that he was ever denied a blanket, or that the alleged denial of blankets on two separate occasions was for any punitive reasons. Accordingly, Mr. Hall's

[108] *See Phillips v. East*, 81 Fed. Appx. 483, 485 (5th Cir. 2003).
[109] *See Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318, at *10 (E.D. La. Feb. 27, 2015), citing *Carter v. Strain*, Civ. Action No. 09-15, 2009 U.S. Dist. LEXIS 91301, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); *McAllister v. Strain*, 2009 U.S. Dist. LEXIS 15248 (E.D. La. Feb. 25, 2009).
[110] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 122.
[111] *See* Exhibit 2, pg. 23, lines 14-20; pg. 36, lines 2-11.
[112] *Id.* at pgs. 37-38, lines 23-4.
[113] *Id.* at pg. 37, lines 1-3.

complaint regarding allegedly being denied a blanket on two separate occasions is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

### 6. Access to Showers

The Constitution does not require inmates have daily or even weekly showers.[114] Additionally, the Eastern District has held that the denial of shower access for 8 days does not rise to the level of a constitutional violation.[115]

In this case, Mr. Hall has testified that during his fifteen (15) days in the holding cell, that he was permitted to take a shower on three separate occasions.[116]

> Q In your 15 days, how many times did you get to take a shower?
>
> A First week, twice; the second week, once. That's because they had like a commotion, and they didn't do showers.
>
> Q So in 15 days, you took three showers?
>
> A Yeah.

[117]

As provided above, Mr. Hall was, by his own admission, permitted to take a shower on three separate occasions during his fifteen (15) days in the holding cell, despite there being no Constitutional requirement that inmates have daily or even weekly showers. While Mr. Hall may be unsatisfied with the number of times he was permitted to take a shower during his time in the

---

[114] *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. January 15, 2021), citing *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); See also *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment."); *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him).

[115] *See Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. January 15, 2021).

[116] *See* Exhibit 2, pg. 21, lines 8-15.

[117] *Id.*

holding cell, such unsatisfaction does not create a cause of action for which legal redress is available. Instead, the temporary conditions experienced by Mr. Hall during his time in the holding cell do not rise to the level of a constitutional violation and are instead similar to those "…§1983 claims of temporary conditions regularly rejected by courts in this district."[118] Accordingly, Mr. Hall's complaint as to the number of times he was allowed to shower during his time in the holding cell is nothing more than another complaint with no legal basis.

**7. Denial of Recreation/Exercise**

The Fifth Circuit has held that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation."[119] Accordingly, in order to succeed on a claim of denial of exercise, Plaintiff must show that the denial adversely affected his health.[120]

In this case, Mr. Hall has alleged that during his time in the holding cell, that he was not provided an opportunity to engage in any recreational activity and/or exercise.[121] As previously noted, the deprivation of exercise is not a *per se* constitutional violation, and the only way for a Plaintiff to succeed on such a claim is to show that the denial adversely affected his health. Mr. Hall, however, has failed to allege in his Complaint, or testify during his deposition, that the alleged denial of the opportunity for him to participate in recreational exercise adversely affected his health in any way. Mr. Hall has further failed to produce any complaints and/or grievances filed during his time at the STPJ that would have alerted any STPJ personnel that the lack of opportunity for

---

[118] *See Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 at *54.

[119] *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir. 2001) (citing *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977) (per curiam) (designated unpublished); *Stewart v. Winter*, 669 F.2d 328, 336 n. 19 (5th Cir. 1982)); see also *Martin v. Scott*, 156 F.3d 578, 580 (affirming limits on recreation times).

[120] *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); see also *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008) (granting summary judgment for defendants on claim based on denial of outdoor and out of cell exercise for 13 months where there was no showing of "substantial risk of serious harm" as plaintiff did not "clearly evince" a serious medical need).

[121] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 126; *See also* Exhibit 2, pg. 37, lines 4-7.

recreational activities and/or exercise was adversely impacting his health in any way.

Accordingly, Mr. Hall's complaint as to the denial of the opportunity for recreational exercise is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**8. Temperature within the Holding Cell**

The Fifth Circuit has held that as a general rule, complaints about inadequacy of the ventilation system, without more, do not establish a constitutional violation.[122] Additionally, District Courts within this Circuit have held that a plaintiff's brief confinement in an overly air-conditioned holding cell does not constitute a cause of action for an unconstitutional condition of confinement.[123] The Fifth Circuit has also held that while the temperature may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment.[124]

In this case, Mr. Hall has alleged that the temperature within the holding cell was 'freezing,' and that he estimated it to be about 60 degrees.[125] As previously noted above, such a complaint is insufficient to establish a constitutional violation. Additionally, Mr. Hall has failed to allege, or present any evidence establishing that the temperature in the holding cells was kept low for any punitive reason. To the contrary, Sgt. Lacey Kelly-Robertson provided that the temperature of the holding cells was kept at 68 to 69 degrees.[126] Sgt. Kelly-Robertson testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher

---

[122] *Johnson v. Tex. Bd. of Crim. Justice*, 2006 U.S. Dist. LEXIS 101578 (S.D. Tx. December 13, 2006), citing *Parker v. Smith*, 22 F.3d 1094 (5th Cir. 1994) (unpublished) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *See also Johnson v. Thaler*, slip op. no. 99-20222, 1999 U.S. App. LEXIS 39125 (5th Cir. Nov. 12, 1999).
[123] *See Guerra v. City of Alamo*, 2022 U.S. Dist. LEXIS 66870 (S.D. Tx. March 8, 2022); *See also Porter v. Werner*, 2017 U.S. Dist. LEXIS 20660 (S.D. Ms. Feb. 14, 2017).
[124] *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).
[125] *See* Exhibit 2, pg. 35, lines 7-13.
[126] *See* Exhibit 5, pg. 25, lines 8-12.

than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[127] Accordingly, Mr. Hall's complaint as to the temperature in the holding cells is not an actionable claim and should therefore be dismissed with prejudice.

**9. Medical Treatment/Injury**

**a. Alleged Gangrene**

Mr. Hall has additionally alleged that as a result of his stay in the holding cell at the STPJ, that he contracted gangrene in his foot as a result of the 'freezing' temperature and the moisture.[128] Mr. Hall testified that he believed the gangrene was caused by the "…moisture, it being dirty, bacteria, not being able to shower, get between my toes, you know. That's exactly what that was coming from."[129] Mr. Hall testified that the alleged condition was resolved within a week or two after his release from the STPJ.[130]

Defendants note that, aside from his own self-serving testimony, Plaintiff has produced no medical records and/or evidence establishing that he: (1) contracted gangrene; or (2) that the gangrene was the result of any condition at the STPJ. Plaintiff has additionally submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries.[131]

Mr. Hall has further presented no evidence suggesting that he even reported the alleged gangrene to any STPJ official, nor has he presented any evidence that he requested medical attention for his alleged gangrene and was denied. Additionally, even if Mr. Hall allegedly contracted gangrene in his foot, this Circuit has held that "…isolated examples of illness, injury,

---

[127] *Id.* at pgs. 25-26, lines 11-5,
[128] *See* Exhibit 2, pg. 25, lines 18-21.
[129] *Id.* at pg. 27, lines 13-18.
[130] *Id.* at pg. 28, lines 9 – 14.
[131] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."[132] Accordingly, even if Mr. Hall allegedly contracted gangrene, it is nothing more than an isolated incident, as there has been no other similar allegations by any other plaintiff, nor has Plaintiff presented any evidence that such incidents occurred. This Honorable Court must reject any claims by Mr. Hall alleging that he contracted gangrene in his foot as a result of the alleged conditions in the STPJ, as Plaintiff has failed to provide any medical records and/or evidence that such an injury occurred, has submitted to this Court that he is in possession of no such medical records[133] and due to the fact that such an injury, even if it occurred, is considered to be *de minimis* at worst, and therefore fails to rise to the level of a constitutional violation.

**b. Alleged Back Injury**

Mr. Hall has additionally alleged that he suffered back pain as a result of being forced to sleep on concrete during his fifteen (15) day stay in the holding cells at the STPJ.[134] When questioned about whether he had seen any doctor for his alleged back pain, Mr. Hall testified that he had not seen any doctors for his alleged back pain.[135] Defendants again note that, as in the case with Plaintiff's alleged contraction of gangrene, aside from his own self-serving testimony, Plaintiff has produced no medical records and/or evidence establishing that he: (1) suffered back pain and/or a back injury; or (2) that the back pain and/or injury was the result of any condition at the STPJ. Plaintiff has additionally submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries.[136] Mr. Hall has also presented no evidence suggesting that he reported any back pain to any STPJ official, nor has he presented any evidence

---

[132] *Cadena v. El Paso Cty.*, 946 F.3d 717 (5th Cir. 2020), citing *Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009)
[133] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.
[134] *See* Exhibit 2, pg. 29, lines 3 – 8.
[135] *Id.* at pg. 29, lines 9 – 11.
[136] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

that he requested medical attention for his alleged back pain and was denied.

Additionally, with regard to Plaintiff's alleged back pain, the Western District of Louisiana, citing the Fifth Circuit, has provided that:

> "…cramps, back pain, loss of sleep and a crook in his neck..." — were *de minimis* at worst. To rise to the level of a constitutional violation, the conditions must be" 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities...'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Thus, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D.Tex.1997)."[137]

Accordingly, Plaintiff's alleged lower back injuries, even if true, are nothing more than *de minimis* at worst, as Plaintiff has alleged nothing more than discomfort and inconvenience, which in respect to his conditions of confinement claim, are insufficient to state a claim for which relief may be granted.

This Honorable Court must therefore reject Mr. Hall's claims alleging that he suffered back pain as a result of the alleged conditions in the STPJ should therefore be dismissed as Plaintiff has failed to provide any medical records and/or evidence that such an injury occurred, and due to the fact that such an injury, even if it occurred, is considered to be *de minimis* at worst, and therefore fails to rise to the level of a constitutional violation.

**10. Mr. Hall's Overall Treatment at the STPJ**

While Mr. Hall has alleged numerous unactionable claims in support of his claim asserting unconstitutional conditions of confinement, Defendants believe it is important to further demonstrate that Mr. Hall's testimony clearly provides that during his time in the holding cell at

[137] *See Cummings v. Nail*, 2013 U.S. Dist. LEXIS 24098 (W.D. La. Jan. 29, 2013).

the STPJ he was never denied life's necessities. For example, Mr. Hall testified that during his time in the holding cell at the STPJ, that he was able to shower on multiple occasions, that he was provided three meals a day and that he was able to sleep.[138]

Q So in 15 days, you took three showers?
A Yeah.
Q Were you fed?
A Yeah, they brought food.
Q How many meals did you get a day?
A You got three.
Q Any issues with the food?
A Not with the food, no. I mean, it's jail. No.
Q Were you allowed to sleep?
A Yeah. Yes, you could sleep, yes. [139]

Mr. Hall further testified that during his time in the holding cell, that he was never assaulted or battered by any inmates, that he did not file any grievances with the sheriff's office and that he was able to use a working toilet in the holding cell when needed.[140]

---

[138] *See* Exhibit 2, pg. 21, lines 13 – 24.
[139] *Id.* at pg. 21, lines 13 – 24
[140] *Id.* at pgs. 22-23, lines 15 – 3.

Q Did any inmates assault you or batter you while you were in the holding cell for 15 days?
A Not me, no.
Q Did you file any grievances with the sheriff's office while you were in there for 15 days?
A While I was in there, no.
Q Were you able to use the restroom while you were in the holding cell?
A Yes. They had a toilet in the holding cell.
Q Did it work?
A Yeah, it worked.
Q And you were able to use it when you needed to?
A Yeah. Not so clean, but yes.

[141]

Mr. Hall testified that when inmates were involved in fights and/or physical altercations, that they were swiftly broken up within 10 seconds by the guards, and that those involved were removed from the holding cell.[142] Mr. Hall further testified that during his time in the STPJ, that he was provided clean clothes, a blanket to sleep with,[143] had no trouble or issues with the STPJ correction officers[144] and that he was provided with a toilet paper, a toothbrush and toothpaste.[145]

---

[141] *Id.*
[142] *Id.* at pg. 43, lines 13 – 24. (Defendants note that Mr. Hall's sworn testimony directly contradicts the allegations in his Complaint, wherein he alleges that the "Defendants breached their duties to Plaintiffs and members of the Class and were negligent in one or more of the following ways: …(g) Allowed detainees in holding cells to engage in physical altercations…" (*See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 183(g)).
[143] *See* Exhibit 2 pg. 23, lines 11 – 20.
[144] *Id.* at pg. 24, lines 3 – 12.
[145] *Id.* at pgs. 24-25, lines 24-1.

As detailed above, Mr. Hall's own testimony clearly provides that during his time at the STPJ he was never denied life's necessities.

**E. Defendants are Entitled to Qualified Immunity**

As detailed above, to defeat the defense of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[146] While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[147]

In this case, Mr. Hall has failed to provide any evidence in support of his claim that the conditions of confinement were unconstitutional. As previously noted by Judge Vitter at the conclusion of the April 10, 2020, hearing:

> "In this case, there was no evidence introduced at the hearing regarding society's standards of decency. The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[148]

Mr. Hall has presented no evidence, nor can he cite to any existing authority that would support a conclusion that any alleged policy of the STPSO/STPJ is itself unconstitutional, nor can Plaintiff cite to any authority that places the constitutional question 'beyond debate.' Further, Mr. Hall has failed to produce any evidence or authority establishing any constitutional violations on behalf of the Defendants. Defendants are therefore entitled to qualified immunity as to Plaintiff's claims, as the facts and case law clearly establish that Defendants' conduct was reasonable and violated no particularized and/or clearly established case law.

[146] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[147] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[148] *See* R. Doc. 40, pgs. 31 – 32.

### F. Claims against Sheriff Randy Smith and Lacey Kelly

#### 1. All claims Against Sheriff Randy Smith and Lacey Kelly in their Official Capacities should be Dismissed

In this case, Plaintiffs have sued Sheriff Randy Smith and Lacey Kelly in their official capacities.[149] A suit against a government officer in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[150] "It is *not* a suit against the official personally, for the real party in interest is the entity."[151] "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[152]

"[E]very sheriff in Louisiana is a political subdivision unto himself, and there is no such thing as a 'Parish Sheriff's Department' or 'Parish Sheriff's Office.'"[153] Sheriff Smith is, for all intents and purposes, the "political subdivision" when he appears in his official capacity. Thus, "official capacity claims" against Sheriff Smith are really claims against the St. Tammany Parish Sheriff itself – a political subdivision of the State of Louisiana.[154]

However, "[l]iability under 42 U.S.C. § 1983 may not be imposed on a government entity on a theory of *respondeat superior* for the actions of government employees."[155] To the contrary, the United States Supreme Court has said that "official policy must be 'the moving force of the

---

[149] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, pgs. 1 – 2.
[150] *Ky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).
[151] *Id.* at 166 (emphasis original).
[152] *Id.*
[153] *Powe v. May*, 2003 U.S. App. LEXAS 28628, pp. 2-3 (5th Cir. 2003) (citations omitted); *see also Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 283 (5th Cir. 2002) (same proposition).
[154] *See* La. Const. art V, § 27; La. R.S. 13:5102.B.
[155] *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-694 (1978)).

constitutional violation in order to establish the liability of a government body under § 1983."[156] In other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[157]

The Fifth Circuit has defined official policy or custom as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[158]

To state a valid § 1983 claim against Sheriff Smith, Plaintiffs must "allege the existence of (1) an ***official*** policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[159]

In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'"[160] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[161] Deliberate indifference generally requires that a plaintiff demonstrate "at least a

---

[156] *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).
[157] *Monell*, 436 U.S. at 694.
[158] *Johnson*, 958 F. 2d at 94 (citation omitted). *See also Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a *Monell* custom requires long and frequent course of conduct).
[159] *Cain v. City of New Orleans*, 2015 U.S. Dist. LEXIS 162221, 2016 U.S. Dist. LEXIS 63527, at *20-21 (E.D. La. May 13, 2016) (emphasis original), (citing *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)).
[160] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting Roberts, 397 F.3d at 293).
[161] *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (quotation and citation omitted).

pattern of similar incidents" arising from clearly inadequate training such that it is "likely to result in the violation of constitutional rights."[162] "An injury is 'highly predictable' where the municipality 'fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'"[163]

In the present action, Plaintiff has merely made conclusory allegations that the St. Tammany Parish Sheriff's Office ("STPSO"), through Sheriff Smith and through Lacey Kelly, were permitting unconstitutional conditions of confinement pursuant to their own pervasive and longstanding policy, custom and practice of failing to supervise their agents and employees and failing to intervene to prevent their agents and employees from tolerating and propagating severely inadequate and harmful conditions.[164] Plaintiff asserts that this includes maintaining a custom practice and "*de facto* policy of new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area."[165]

In making these allegations, however, Plaintiff has simply reiterated the elements of his cause of action. Plaintiff has provided no factual allegations or evidence of any other analogous incidents involving other similarly situated persons, how those situations relate to this plaintiff in this action, the content of the Sheriff and/or Lacey Kelly's alleged policy or custom, or how the Sheriff and/or Lacey Kelly acted with deliberate indifference in this or other scenarios.[166] In fact, Plaintiff has made no specific allegations as to any actions taken by Lacey Kelly against Plaintiff, nor has Plaintiff made any allegations as to any specific 'unconstitutional' policies instituted by

---

[162] *Snyder v. Trepagnier*, 142 F. 3d 791, 798–799 (5th Cir. 1998).
[163] *Hankins v. Wheeler*, 2022 U.S. Dist. LEXIS 109198 (E.D. La. 2022)(quoting *Hutcheson*, 994 F.3d at 482−83).
[164] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶¶ 158 – 162.
[165] *Id*. at ¶ 59.
[166] *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a Monell custom requires long and frequent course of conduct).

Lacey Kelly.[167] Instead, Plaintiff's only allegations as to Lacey Kelly are that she was the warden of the STPJ during the time in which Plaintiff was held in the holding cell.

Furthermore, as discussed more fully above, Plaintiff has failed to establish any constitutional violation resulting from any alleged policy or custom of the Defendants. Therefore, because Plaintiff has failed to establish any facts constituting a *Monell* cause of action against both Sheriff Randy Smith and Lacey Kelly, all official capacity claims should be dismissed with prejudice, as no viable grounds for liability under *Monell* are stated.

**2. All claims Against Sheriff Randy Smith in his Individual Capacity should be Dismissed**

Plaintiff has asserted that he is suing Sheriff Randy Smith "in his official and individual capacities for the acts and omissions which occurred while he was Sheriff."[168] However, there are no factual allegations sufficient to support individual capacity liability as to Sheriff Smith.

To establish personal liability, a §1983 claimant must show that the defendant was personally involved in the deprivation or that the defendant's wrongful actions were causally connected to the deprivation.[169] There can be no individual capacity liability of Sheriff Smith in this case because there is no evidence that he was personally involved, present or even consulted with regard to the confinement of any of the Plaintiffs in the STPJ. Further, Plaintiff has failed to present any evidence supporting supervisory liability,[170] which requires a showing that "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train

[167] Plaintiff's Complaint contains no allegations as to any specific 'unconstitutional' actions taken by Lacey Kelly against any of the named Plaintiffs. (*See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1).
[168] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 17.
[169] *See Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012).
[170] Movers note that supervisory officials cannot be liable under § 1983 on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis v. City of N. Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005).

or supervise amounts to deliberate indifference."[171]

Here, Sheriff Randy Smith has no day-to-day role with respect to any individual's confinement in the STPJ, as he has delegated those day-to-day responsibilities to his subordinates.[172] Accordingly, Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in this matter.[173] Sheriff Smith has never met or spoken with any of the individual Plaintiffs with regard to their confinement in the STPJ.[174] Additionally, Sheriff Smith was never personally aware of the incarceration or the conditions of confinement of the individual Plaintiffs in the STPJ holding cells.[175] In fact, Sheriff Smith did not become aware that any of the individual Plaintiffs were ever incarcerated at the STPJ until after this suit was filed.[176]

Accordingly, because there is no evidence supporting liability as against Sheriff Smith in his individual capacity, all such claims should be dismissed with prejudice. Nonetheless, to the extent any such factual allegations are made, which is denied, Sheriff Smith further asserts the defense of qualified immunity.

Defendants further assert that Mr. Hall is unable to point to any clearly established law particularized to the facts of this case which would establish that Sheriff Smith is not entitled to qualified immunity for any claims made against him in his individual capacity. Thus, again, all such claims against him should be dismissed with prejudice.

**G. Punitive Damages**

Punitive damages are available only against officers sued in their individual capacities under §1983 if it is shown that a defendant's conduct was motivated by evil motive or intent or

[171] *See Davidson v. City of Stafford*, 2017 U.S. App. LEXIS 5665, p. 23 (5th Cir. 2017) (citation omitted).
[172] *See* Exhibit 7, ¶ 6.
[173] *See* Exhibit 7, ¶ 7.
[174] *Id.* at ¶ 9.
[175] *Id.* at ¶ 8; *See also* Exhibit 8, pg. 75, lines 7 – 11; pgs. 78 – 79, lines 13 – 20; pg. 80, lines 9 – 21; pg. 83, lines 8 – 14; pg. 115, lines 11 – 15.
[176] *See* Exhibit 7, ¶ 10.

involves reckless or callous indifference of the federally protected rights of others.[177] It is also well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided by statute, and in the absence of such a specific statutory provision only compensatory damages may be recovered.[178] Where the pleadings filed by plaintiff fail to identify a statutory provision which allows the recovery of punitive damages for state law claims asserted against the defendant, it is appropriate to dismiss those claims.[179]

In this case, Plaintiff, Mr. Hall, has alleged that he is entitled to punitive damages as a result of the "extreme, outrageous, and wantonly cruel" actions of Defendants, that "shock the conscience of a reasonable person."[180] As provided above in great detail, despite Plaintiff's assertions to the contrary, Plaintiff has failed to allege any conduct on behalf of Defendants that amounts to a Constitutional violation. Additionally, Plaintiff has failed to provide any evidence supporting that any of the alleged conduct was done for any punitive reason, that it was motivated by an evil intent, or involved reckless or callous indifference to Plaintiff's federally protected rights. Accordingly, Plaintiff's punitive damages claims against the Defendants must be dismissed in their entirety.

**H. Plaintiff's State Law Claims**

As previously noted above, in conjunction with his federal claim under 42 U.S.C. § 1983, Plaintiff has alleged various claims under Louisiana state law, including violations of Article I, Section 20 of the Louisiana Constitution, Negligence and *Respondeat Superior*. The Court currently maintains supplemental jurisdiction over these state-law claims because Plaintiff

---

[177] *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed. 632 (1983); *Kolstad v. ADA*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *Simmons v. City of Mamou*, 2009 WL 3294977 (W.D.La. 2009).
[178] *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La. 1988); *Savoy v. St. Landry Parish Counsel*, 2008 WL 2796887 (W.D. La. 2008).
[179] *Savoy*, supra.
[180] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 192.

presented a federal question. But the Court may decline to exercise its supplemental jurisdiction over state-law claims if it dismisses the federal claim that gives the Court original jurisdiction.[181] "When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims."[182] Accordingly, Defendants respectfully request that upon dismissal of Plaintiff's federal claims, that this Honorable Court issue an Order dismissing Plaintiff's remaining state law claims without prejudice.

### I. Defendants are Entitled to an Award of Attorney's Fees Under 42 U.S.C. § 1988

The award of attorney's fees and costs are appropriate in favor of the prevailing party upon the dismissal of Plaintiff's federal claims pursuant to 42 U.S.C. § 1988. A prevailing defendant is entitled to an award of attorney's fees upon a finding that the plaintiff's suit is frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so, regardless of whether the suit was brought in good faith."[183] There need not be a finding of bad faith to award a prevailing defendant attorneys' fees under § 1988(b).[184] As noted by the United States Supreme Court, in enacting § 1988, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis."[185] "When a civil rights suit is lacking in any legal or factual basis..., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation."[186] "In determining whether a suit is

---

[181] *See* 28 U.S.C. § 1367.
[182] *Cooper v. Dart Area Rapid Transit, No.*, 2015 U.S. Dist. LEXIS 174754 (N.D. Tex. Dec. 18, 2015) (Ramirez, M.J.), adopted by *Cooper v. Dart Area Rapid Transit*, 2016 U.S. Dist. LEXIS 4615 (N.D. Tex. Jan. 14, 2016).
[183] *See Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 424–425 (5th Cir. 2011) (internal citation and quotations omitted).
[184] *McCully v. Stephenville Indep. Sch. Dist.*, 2013 U.S. Dist. LEXIS 179989 (N.D. Tx. 2013).
[185] *Fox v. Vice*, 563 U.S. 826, 833 (U.S. 2011)(citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (U.S. 1978).
[186] *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (quoting *Coates v. Bechtel*,

frivolous, 'a district court should look to factors such as whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial.'"[187]

As demonstrated above, Plaintiff's civil rights action lacks adequate factual bases, and relies and relies on indisputably meritless legal theories, is frivolous, unreasonable, and without foundation, thereby warranting an award of attorneys' fees to Defendants as the prevailing party. Additionally, it is clear that Plaintiff's own testimony directly contradicts numerous allegations contained both within his complaint as well as his discovery responses. Accordingly, Defendants move this Honorable Court to award Defendants attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully suggest that the instant motion for summary judgment should be granted, finding that Defendants, Sheriff Randy Smith and Lacey Kelly, are entitled to qualified immunity and dismissing the claims of Plaintiff, Terry Matthew Hall, Jr., with prejudice.

---

811 F.2d 1045, 1050 (7th Cir. 1987)).

[187] *Lewis v. Smith*, No. 18-4776, 2019 LEXIS 159429 (E.D. La. 2019) (Ashe, J.) (quoting *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000)).

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

s/ Chadwick W. Collings
**CHADWICK W. COLLINGS, T.A. # 25373**
**KENNETH R. WHITTLE # 38640**
**SARAH A. FISHER # 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Monday, August 07, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Chadwick W. Collings
**Chadwick W. Collings**