**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual capacity** | * | **MAGISTRATE CURRAULT**<br>**JURY DEMAND**<br>**COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC***<br>**ALL CASES** |
| **Defendants** | * | |

*************************************************************************

**STATEMENT OF UNDISPUTED FACTS**

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment as to the claims of Floyd Williams, and aver as follows:

**A. Floyd Williams**

1. Floyd Williams, was arrested on September 28, 2019 by the St. Tammany Sheriff Parish Office ("STPSO").[1]

[1] *See* pgs. 1 – 3 of the Jail Records of Floyd Williams, attached to Defendants' Motion for Summary Judgment as

2. Mr. Williams was charged with Entry on or Remaining after forbidden (La. R.S. 14:63.3) and Threatening/Harassing Phone Calls (La. R.S. 14:285).[2]
3. During his arrest, it was noted that Mr. Williams complained that he could not breath, to which medical services were called to render medical aid.[3]
4. Mr. Williams was then evaluated and it was determined that his medical status was stable.[4]
5. Mr. Williams later admitted that he only said that he was having trouble breathing in order to avoid going to jail.[5]
6. Mr. Williams was booked into the holding cells at the STPJ for a total of four (4) days, from September 28, 2019 until October 1, 2019.[6]
7. Mr. Williams testified that the cell was cleaned on the fourth day of his stay.[7]
8. Mr. Williams testified that when the cells were cleaned, the cells were sprayed with disinfectant and mopped.[8]
9. Mr. Williams testified that the holding cell had a toilet in it.[9]
10. Mr. Williams testified that the toilet in the holding cell worked sometimes and did not work sometimes because it would get clogged up and overflow.[10]
11. Mr. Williams testified that on occasions when the toilet in the cell would clog, that inmates were provided a plunger to unclog it, and a mop to clean up any water that

Exhibit "1."
[2] *See* Exhibit 1, pgs. 1 – 13.
[3] *Id*. at pg. 5, Complaint Arrest Affidavit, attached herein as Exhibit "2."
[4] *See* Exhibit 2, pg. 5.
[5] *Id*.
[6] *See* Exhibit 1, pg. 39.
[7] *See* pg. 42, lines 9 – 14 of the Deposition testimony of Floyd Williams attached to Defendants' Motion for Summary Judgment as Exhibit "8."
[8] *See* Exhibit 8, pg. 42, lines 9 – 20; *See also* pg. 70, lines 11 – 15.
[9] *Id*. at pg. 41, lines 2 – 3.
[10] *Id*. at pg. 41, lines 4 – 7.

may have overflowed from the toilet.[11]

12. Mr. Williams testified that whenever there was vomit or blood on the floor of the holding cell, that the inmates would be provided with "something to disinfect it, a wet rag, and then go over it, and they'd clean it up themselves."[12]
13. Mr. Williams testified that rubber gloves were provided to the inmate who cleaned up the bodily fluids in the cell.[13]
14. Mr. Williams testified that inmates were provided a plastic bag in which to place their trash into.[14]
15. Mr. Williams was provided with toilet paper while in the holding cell.[15]
16. Mr. Williams testified that he was fed twice a day.[16]
17. Mr. Williams was able to sleep while in the holding cell.[17]
18. Mr. Williams was provided soap while in the holding cell.[18]
19. Mr. Williams was provided a toothbrush while in the holding cell.[19]
20. Mr. Williams was allowed to take a shower while in the holding cell.[20]
21. Mr. Williams testified that he was provided clean clothing after taking a shower.[21]
22. Mr. Williams testified that he was provided a blanket to sleep with every night.[22]
23. Mr. Williams testified that he was never threatened by jail personnel.[23]

---

[11] *Id*. at pg. 41, lines 2 – 11.
[12] *Id*. at pgs. 70-71, lines 24 – 5.
[13] *Id*. at pg. 71, lines 17 – 21.
[14] *Id*. at pg. 75, lines 1 – 15.
[15] *See* R. Doc. 101-10, ¶ 15.
[16] *See* Exhibit 8, pg. 40, lines 18 – 22.
[17] *See* R. Doc. 101-10, ¶ 28.
[18] *See* R. Doc. 101-10, ¶ 21.
[19] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 143; *See also* R. Doc. 101-10, ¶ 34.
[20] *See* R. Doc. 101-10, ¶ 32; *See* Exhibit 8, pg. 42, lines 12-14; pgs. 44-45, lines 24-5.
[21] *Id*. at pg. 45, lines 8 – 13.
[22] *See* Exhibit 8, pg. 44, lines 1-3.
[23] *Id*. at pg. 77, lines 21 – 25.

24. Mr. Williams testified that he could not give the name of any specific employee who worked at the STPJ who stated in response to his request for medical assistance and sanitation "This is St. Slamity. If you don't like it, don't commit crimes in the parish."[24]

25. Mr. Williams testified that he could not provide the name of any of the jail staff who admitted to him that the conditions of confinement were in place to teach inmates a lesson.[25]

26. Mr. Williams testified that he could not describe any of the jail staff who admitted to him that the conditions of confinement were in place to teach inmates a lesson.[26]

27. When asked which jail staff admitted to him that the conditions of confinement were in place to teach inmates a lesson, Mr. Williams testified "It was white, black individuals, male and female that told me this, employees of St. Tammany Parish Jail."[27]

28. Mr. Williams saw STPJ medical personnel the day that he was booked into the STPJ for a medical and behavioral pre-intake screening on September 28, 2019, at 9:55 a.m.[28]

29. During his pre-intake screening, it was noted that Mr. Williams did not report any shortness of breath and/or dyspnea.[29]

30. During his pre-intake screening, it was noted that Mr. Williams denied that he had any chest pain and/or discomfort.[30]

31. During his pre-intake screening, Mr. Williams' breathing pattern was noted to be

[24] *Id*. at pgs. 45-46, lines 14 – 7.
[25] *Id*. at pg. 47, lines 2 – 5.
[26] *Id*. at pg. 47, lines 6 – 9.
[27] *Id*. at pgs. 46-47, lines 18 – 23.
[28] *See* pg. 20 of the STPJ Medical Records of Floyd Williams, attached to Defendants' Motion for Summary Judgment as Exhibit "9."
[29] *See* Exhibit 9, pg. 20.
[30] *Id*.

"unremarkable."[31]

32. During his pre-intake screening, STPJ medical personnel prescribed Mr. Williams lisinopril for his heart and blood pressure, along with two different inhalers.[32]
33. Mr. Williams' receiving screening notes that he has an allergy to the medication Norvasc.[33]
34. Mr. Williams' receiving screening notes that he does not have any other life-threatening allergies.[34]
35. On September 28, 2019, at 3:03 p.m., Mr. Williams signed the receiving screening document acknowledging that: "I have answered all questions fully. I have been instructed on and received information on how to obtain/access medical services. I have been instructed on and received information on sexual assault awareness. I hereby give my consent for the facility medical provider to provide health care services and share information with health information exchanges which allows medical records, including certain alcohol and substance abuse treatment information; child abuse and neglect reports and records; sexual assault evidence and information; veterans' homes resident records; and any other health information that requires individual consent in order to be disclosed under Federal or State law."[35]
36. Mr. Williams testified on October 12, 2022, that since his release from the STPJ, that he has not been told by any medical person, doctor or nurse that as a result of not receiving his medication or breathing treatment for five days, that has health has been

[31] *Id*. at pg. 5.
[32] *Id*. at pgs. 16 – 19, 22
[33] *Id*. at pg. 8.
[34] *Id*.
[35] *Id*. at pg. 12.

compromised.[36]

37. Mr. Williams testified that he did not seek any medical care after he was released from the STPJ with respect to any complaints of his nontreatment at the jail.[37]

38. Mr. Williams testified that with regard to his sickness and fever, that other than seeing the medical person at the STPJ during his incarceration, that he did not see any other doctors as a result of that sickness.[38]

39. Mr. Williams testified that his sickness and fever is not documented anywhere.[39]

40. Mr. Williams testified that he has not seen any mental health professionals, psychiatrists, psychologists or other counselors for the mental issue that he has with law enforcement.[40]

41. Mr. Williams medical records dated November 7, 2019, from Edward Madison III, LLC, provides that "The patient complained of back pain (LOW BACK PAIN WITH 3-4 MONTHS SCIATIC DOWN LEFT LEG) but denied stiffness, swelling, muscle weakness and myalgias."[41]

42. Mr. Williams medical record provides that "The patient denied food allergy."[42]

**B. 30(b)(6) Testimony**

43. Defendant, Sgt. Lacey Kelly-Robertson testified that the temperature of the holding cells was kept at 68 to 69 degrees.[43]

---

[36] *See* Exhibit 8, pgs. 37-38, lines 22 – 6.
[37] *Id.* at pg. 38, lines 9 – 17.
[38] *Id.* at pg. 39, lines 7 – 17.
[39] *Id.* at pg. 39, lines 18 – 20.
[40] *Id.* at pg. 40, lines 11 – 17.
[41] *See* pg. 1 of the Plaintiffs' Medical Records from Edward Madison, III, LLC, dated November 7, 2019, attached to Defendants' Motion for Summary Judgment as Exhibit "10."
[42] *See* Exhibit 10, pg. 2.
[43] *See* pg. 25, lines 8-12, of the 30(b)(6) Deposition Testimony of STSPO, attached to Defendants' Motion for Summary Judgment as Exhibit "4".

44. Sgt. Kelly-Robertson testified that this was done for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[44]

45. Sgt. Lacey Kelly-Robertson testified that the STPJ houses inmates from St. Tammany Parish, Department of Corrections ("DOC") and U.S. Marshal prisoners and serves as a hub for reentry for rehabilitative services for seven parishes.[45]

46. Sgt. Lacey Kelly-Robertson testified that the STPJ is under contract to take these DOC and federal inmates, and they are housed in a DOC general population housing unit.[46] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[47] Beds within the STPJ are specifically reserved for inmates by those categories.[48]

47. Sgt. Lacey Kelly-Robertson testified that because of these federal contracts, if there is an open bed in the DOC housing unit, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[49] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed.[50]

48. There was no punitive action or malice involved in Mr. Hall being kept in the holding cell for the amount of time that he was.[51]

---

[44] *See* Exhibit 4, pgs. 25-26, lines 11-5.
[45] *Id*. at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[46] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
[47] *Id*. at pg. 50, lines 5 – 9.
[48] *Id*. at pg. 80, lines 5 – 12.
[49] *Id*. at pg. 80, lines 13 – 17.
[50] *Id*. at pg. 165, lines 3 – 7.
[51] *Id*. at pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.

49. Sgt. Lacey Kelly-Robertson testified that detainees have access to medical care 24 hours a day.[52]

50. Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of toilet paper in the cell and replace them as needed.[53]

51. Sgt. Lacey Kelly-Robertson testified that it became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[54]

52. Sgt. Lacey Kelly-Robertson testified that there was no directive that detainees were entitled to only three rolls of toilet paper per cell.[55]

**C. Sheriff Randy Smith**

53. As the elected Sheriff of St. Tammany Parish, Sheriff Smith is in charge of a department of almost 800 employees, and Sheriff Smith is also responsible for the operation of the St. Tammany Parish Jail which has a capacity of approximately 1,200 inmates.[56]

54. Sheriff Smith has no day-to-day role with respect to any individual's confinement in the jail, as he has delegated those day-to-day responsibilities to his subordinates.[57]

55. Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in the above-captioned matter.[58]

56. Sheriff Smith has no first-hand knowledge about the incarceration and the conditions

---

[52] *Id*. at pg. 88, lines 5 – 12; pg. 103, lines 8 – 15.
[53] *Id*. at pgs. 119 – 120, lines 17 – 4.
[54] *Id*.
[55] *Id*.
[56] *See* ¶ 5 of the Affidavit of Sheriff Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "6."
[57] *See* Exhibit 6, ¶ 6.
[58] *Id*. at ¶ 7.

of confinement of any of the individual Plaintiffs in the St. Tammany Parish Jail.[59]

57. Sheriff Smith has never met nor spoken with any of the individual Plaintiffs in this matter with regard to their confinement in the St. Tammany Parish Jail.[60]

58. Sheriff Smith did not become aware that any of these individual Plaintiffs were ever incarcerated at the St. Tammany Parish Jail until after this suit was filed.[61]

59. Since Sheriff Smith became Sheriff in 2016, it has always been the policy of the St. Tammany Parish Sheriff's Office to hold individuals in the holding cells only until such time as a bed opens up in one of the jail housing units.[62]

60. The jail housing units are segregated by inmate classification, specifically, these units are designated for St. Tammany Parish pre-trial detainees, Louisiana Department of Corrections ("DOC") inmates, and Federal detainees. St. Tammany Parish pre-trial detainees are not eligible for housing in either of the DOC or the Federal housing units.[63]

61. Since Sheriff Smith became Sheriff in 2016, it has never been the policy or custom of the St. Tammany Parish Sheriff's Office to hold any individual in the holding cells for any punitive reason.[64]

62. Sheriff Smith testified that due to the contract with DOC, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[65]

---

59 *Id*. at ¶ 8.
60 *Id*. at ¶ 9.
61 *Id*. at ¶ 10.
62 *Id*. at ¶ 11.
63 *Id*. at ¶ 12.
64 *Id*. at ¶ 13.
65 *See* pg. 91, lines 13 – 20 of the Deposition Testimony of Sheriff Randy Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "7."

63. Sheriff Smith testified that there was no policy requiring individuals to be held in the holding cells longer than 48 hours.[66]

**D. Deputy Chief Brett Ibert**

64. STPJ houses pre-trial detainees for St. Tammany Parish, the Louisiana Department of Corrections ("DOC"), Federal inmates for the U.S. Marshal's Office and also serves as a hub for reentry for rehabilitative services for seven parishes.[67]

65. The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[68]

66. Beds within the STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[69]

67. Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ. Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[70]

68. The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[71]

---

[66] *See* Exhibit 7, pg. 117, lines 22 – 25.
[67] *See* ¶ 7 of the Affidavit of Deputy Chief Brett Ibert, attached to Defendants' Motion for Summary Judgment as Exhibit "5."
[68] *See* Exhibit 5, ¶ 8.
[69] *Id*. at ¶ 9.
[70] *Id*. at ¶ 10.
[71] *Id*. at ¶ 11.

69. Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed. Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[72]

70. No pre-trial detainees are held in the holding cells inside the STPJ for any punitive reason. Further, none of the five plaintiffs in this matter were held in the holding cells within the STPJ for any punitive reason.[73]

**E. Previous Findings of the Court**

71. On April 11, 2020, in the matter titled *Baqer* and prior to consolidation, Judge Vitter issued her Order and Reasons for denying Plaintiffs' Motion for Preliminary Injunction, following the April 10, 2020 hearing in which testimony was provided by Mr. Baqer regarding the conditions of confinement that have been alleged by Plaintiffs to be unconstitutional during their time in the STPJ holding cells.[74]

72. In denying Plaintiffs' Motion for Preliminary Injunction, Judge Vitter held that Plaintiffs did not meet their burden of providing evidence to show a substantial likelihood of success on the merits of the allegations in their March 22, 2020 Complaint regarding the conditions of their confinement in the holding cells at the STPJ violating their constitutional rights.[75]

73. Judge Vitter held that, "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth

[72] *Id*. at ¶ 12.
[73] *Id*. at ¶ 13.
[74] *See* Order and Reasons (R. Doc. 40, pg. 31).
[75] *See* R. Doc. 40, pg. 27.

Amendment."[76]

74. Judge Vitter held that "While Plaintiffs argued that the Court should look to the 'cumulative record' to establish punitive intent and to show the likelihood of success on the merits of their claims, they were unable to point to any specific action by any of the Defendants or jail staff to support that argument, even when the Court specifically asked to be directed to such action."[77]

75. Judge Vitter held that "Plaintiffs have failed to establish conditions which are so egregious that would offend "contemporary standards of decency."[78]

76. Judge Vitter held that, "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[79]

77. Judge Vitter held that, "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent. Instead, the Court finds the facts and analysis of *Allen* are directly on point. Further, Plaintiffs have failed to establish a constitutional violation."[80]

---

[76] *Id.* at pg. 31.
[77] *Id.*
[78] *Id.*
[79] *Id.* at pgs. 31 – 32.
[80] *Id.* at pg. 32.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*

**CHADWICK W. COLLINGS, T.A. # 25373**
**KENNETH R. WHITTLE # 38640**
**SARAH A. FISHER # 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Tuesday, August 08, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Chadwick W. Collings*
**Chadwick W. Collings**