**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * * * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S** | * * * | **MAGISTRATE CURRAULT** |
| **OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual** | * * * | **JURY DEMAND** |
| **capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual** | * * * * * | **COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC*** |
| **capacity** | * | **ALL CASES** |
| **Defendants** | * | |

**************************************************************************

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF FLOYD WILLIAMS**

---

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56:

## I. <u>ALLEGATIONS OF FACT</u>

### A. Procedural Background

Plaintiffs filed the instant action on March 22, 2020, in which Plaintiffs allege violations of their civil rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States

Constitution, and the laws of the State of Louisiana.[1] Plaintiff's complaint challenges the conditions of their pre-trial detainment, and in particular, alleges the following theories of recovery stemming from the time in which he was detained in the holding cells at the St. Tammany Parish Jail ("STPJ"):

1. Violations of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana;

2. Violations of Article I, Section 20 of the Louisiana Constitution;

3. Negligence; and

4. Liability against Defendants Smith, Strain, Longino and Kelly pursuant to *Respondeat Superior*.[2]

Plaintiffs originally named as Defendants not only the current Sheriff of St. Tammany Parish, Randy Smith, and the warden of the St. Tammany Parish Jail at all times relevant to their detentions, Lacey Kelly, but also Sheriff Smith's predecessor-in-office, Rodney Strain, as well as Major Kelly's predecessor, Mr. Greg Longino.[3] The Court subsequently dismissed Plaintiffs' claims against Rodney Strain and Greg Longino with prejudice on March 22, 2021.[4] On April 26, 2021, this matter was consolidated with *Baqer et. al. v. St. Tammany Parish Government, et. al.*, No. 2:20-cv-00980-DJP-DPC, and Plaintiffs' original motions to certify class, which were filed in both the instant matter and in *Louviere*, were denied without prejudice.[5]

**B. Factual Background**

On September 28, 2019, Floyd Williams was arrested by the STPSO.[6] Upon his arrest,

---

[1] *See* R. Doc. 1.
[2] All claims against Defendants, Strain and Longino, have been dismissed (*See* R. Doc. 149; *See also* 2:20-cv-01840-WBV-DPC, R. Doc. 60).
[3] *Id*. (Lacey Kelly was the warden of the STPJ during the time in which Plaintiffs were held in the holding cells, from 2019 through 2020).
[4] *See* R. Doc. 149.
[5] *See* R. Doc. 152.
[6] *See* pgs. 1 – 3 of the Jail Records of Floyd Williams, attached herein as Exhibit "1."

Mr. Williams was charged with Entry on or Remaining after forbidden (La. R.S. 14:63.3) and Threatening/Harassing Phone Calls (La. R.S. 14:285).[7] During his arrest, it was noted that Mr. Williams complained that he could not breath, to which medical services were called to render medical aid.[8] Mr. Williams was then evaluated and it was determined that his medical status was stable.[9] Mr. Williams later admitted that he only said that he was having trouble breathing in order to avoid going to jail.[10] Mr. Williams was booked into the holding cells at the STPJ for a total of four (4) days, from September 28, 2019 until October 1, 2019.[11]

Mr. Williams, has alleged that during the four (4) days he spent in the STPJ holding cell, that he was subjected to the following conditions of confinement, which he claims violated his constitutional rights:

(1) The length of time he was kept in the holding cell;
(2) Overcrowding of the holding cell;
(3) Unsanitary conditions within the holding cell;
(4) Being forced to sleep on the concrete floor of the holding cell;
(5) Deprivation/Denial of Medical Care;
(6) Lack of personal hygiene products;
(7) Limited access to showers and clean clothing;
(8) Cold temperature within the holding cell;
(9) Limited and/or no access to blankets at night;
(10) Denial of the ability to participate in recreational activities and/or exercise; and
(11) The conditions in the holding cell led him to sustain injuries.

As will be discussed in further detail below, Plaintiff's claims are not actionable as they consist of allegations and complaints that are not *per se* unconstitutional. Plaintiff has failed to present any evidence establishing that any of the alleged treatment and/or deprivations were done with punitive intent on behalf of the Defendants. Additionally, Plaintiff's claims, by his own

---

[7] *See* Exhibit 1, pgs. 1 – 13.
[8] *Id*. at pg. 5, Complaint Arrest Affidavit, attached herein as Exhibit "2."
[9] *See* Exhibit 2, pg. 5.
[10] *Id*. at pg. 5.
[11] *See* Exhibit 1, pg. 39; Mr. Williams' incorrectly alleges he was held in the holding cells for five (5) days. (*See* 2:20-cv-01840-WBV-DPC, R. Doc. 1, ¶ 136).

admissions, are not actionable, as Plaintiff's testimony, as well as the record, clearly establish that during his time at the STPJ,[12] he was **never** denied or deprived of life's necessities but was instead continually provided with them. Accordingly, this Honorable Court should dismiss Plaintiff's claims against Sheriff Randy Smith and Lacey Kelly with prejudice.

## II. LAW AND ARGUMENT

### A. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56 governs the motion for summary judgment in federal court. The rule mandates that a granting of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]

As a general rule, the moving party has the initial burden to establish that there are no issues of material fact and that the mover is entitled to judgment in its favor as a matter of law.[14] Only disputed facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.[15] If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists.[16] A fact is material only when it might affect the outcome of the suit under the governing law.[17] In other words, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion.

---

[12] A detailed overview of the STPJ, as well as Plaintiffs' complaints, can be reviewed in the Expert Report of Lenard Vare, attached herein as Exhibit "3."

[13] Fed. R. Civ. P. 56(a); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[14] *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District*, 349 F.3d 244, 246-47 (5th Cir. 2003).

[15] *Condiff v. R.D. Werner Company, Inc.*, 2003 WL 21977167, *1 (E.D. La. 2003).

[16] *New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776, 780 (E.D. La 2003).

[17] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see also Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

In practice, the Fifth Circuit requires the nonmoving party to tender what it has called "significant" and "probative" evidence to rebut a properly supported summary judgment motion.[18] This burden placed on the non-mover to offer countervailing evidence is a heavy one. In fact, one court has expressed, in rather blunt terms, that summary judgment is the stage of the proceedings for parties "to put up or shut up."[19] "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[20] Additionally, while all reasonable inferences are drawn in favor of the nonmoving party, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[21]

**B. Summary Judgment Standard for Qualified Immunity**

The general rules regarding summary judgment are even further manifest when dealing with claims asserted under § 1983 where the defendant raises qualified immunity as a defense, as Defendants have done here. As summarized by one court:

> The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, **<u>it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised</u>**. An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.[22]

---

[18] *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).

[19] *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2nd Cir. 2000); *see also*, *Ankum v. White Consolidated Industries*, 1992 WL 236961, *5 (E.D. La. 1992) (Sear, J.) ("The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask the other party to 'put up for shut up.' The opposing party then must go beyond the pleadings and offer proof of his claim.") (emphasis added).

[20] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[22] *Tolan v. Cotton*, 854 F.Supp.2d 444, 463 (S.D. Tex. 2012)(emphasis added)(internal citations omitted), affirmed 713 F.3d 299 (5th Cir. 2013), reversed on other grounds, 134 S. Ct. 1861, 188 L.Ed.2d 895 (2014) (emphasis added).

"[T]he qualified-immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[23] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" in situations in which "existing precedent…placed the statutory or constitutional question beyond debate."[24] To defeat the defense of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[25] "The movant, on the other hand, can support its motion by relying solely on the pleadings."[26]

Qualified immunity exists to ensure that "fear of liability will not unduly inhibit officials in the discharge of their duties."[27] As noted by the United States Supreme Court, while qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[28] This "clearly established law should not be defined 'at a high level of generality.'"[29] Instead, it must be "particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."[30] The "statutory or constitutional question" must be "beyond debate"[31] and so clearly established that a "reasonably official would have understood that what he is doing

---

[23] *Dolan v. Parish of St. Tammany*, 2014 U.S. Dist. LEXIS 26200 *citing Behrens v. Pelletier*, 516 U.S. 299, 305 (1996).
[24] *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).
[25] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[26] *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007).
[27] *Camreta v. Greene*, 563 U.S. 692, 705 (2011) *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[28] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[29] *See White*, 137 S. Ct. at 552.
[30] *Id.*
[31] *Rivas-Villegas v. Cortesluna,* 2021 U.S. LEXIS 5311 at *6 (Oct. 18, 2021) *citing White v. Pauly,* 137 S. Ct. 548, 551 (2017).

violates that right."[32]

This high burden requires Plaintiff to identify a "case where an officer acting under similar circumstances as [each of the defendants] was held to have violated [a person's constitutional rights]."[33] "If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages."[34] This notice is paramount, and the Supreme Court has in the past questioned a party for not submitting any Supreme Court cases that address the facts at bar and has even openly mused about the value of Circuit precedent in clearly establishing law.[35] It is for this reason that the Supreme Court has stated that "[m]any Courts of Appeals therefore decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity," as such decisions do not "settle constitutional standards or prevent repeated claims of qualified immunity."[36] This follows from the general practice of *stare decisis* whereby district court decisions are not binding authority "in either a different judicial district, the same judicial district, or even upon the same judge in a different case."[37] As will be shown below, Plaintiff fails to identify a violation of any clearly established, protected right, and therefore, Defendants are entitled to qualified immunity and summary judgment.

**C. Qualified Immunity Should be Determined on Summary Judgment**

The issue of qualified immunity is uniquely ripe for disposition via summary judgment. This is why a district court denial of summary judgment to a defendant on the issue of qualified

---

[32] *Id citing Mullenix v. Luna* 577 U.S. 7, 11 (2015).
[33] *Id.*
[34] *Camreta* 563 U.S. at 705.
[35] *Rivas-Villegas,* U.S. LEXIS 5211 at *7.
[36] *Camreta* 563 U.S. at 709; *see also Crane v. Utah Dep't of corr.* 2021 U.S. App. LEXIS 31681 at *7 (10th Cir. 10/21/21); *Matusick v. Erie Cty. Water Auth.,* 757 F.3d 31, 61 (2d Cir. 2014); *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 545 (4th Cir. 2017).
[37] *Camreta* 563 U.S. at 709; *see also* 18 Moore's Federal Practice - Civil § 134.02[1][d] (2021).

immunity is immediately appealable when the "issue appealed concerned…whether or not certain given facts show a violation of a clearly established law."[38]

### D. Plaintiff has Failed to State any Actionable Claims with regard to the Alleged 'Conditions of Confinement'

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[39] or "episodic act or omission."[40] The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment."[41] "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless"[42] "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose.[43] "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules."[44]

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment," as opposed to simple detention while awaiting trial.[45] Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene

---

[38] *Johnson v. Jones,* 515 U.S. 304, 304 (1995) (citation omitted).
[39] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker*, 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan*, 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught*, 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry*, 288 U.S. App. D.C. 311, 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell*, 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins*, 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson*, 651 F.2d 96 (2d Cir.1981) (overcrowding).
[40] *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (en banc).
[41] *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir.1996).
[42] *Bell*, 441 U.S. at 539.
[43] *Id.* at 561.
[44] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646 (5th Cir.1996).
[45] *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).

when detainees complain of trivial inconveniences.[46] Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.[47] The Fifth Circuit has also recognized that, "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."[48] When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights.[49] When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate.[50] Deliberate indifference is established by showing that the defendant officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.[51]

**1. Time in the Holding Cells and alleged Violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code**

Plaintiff, Floyd Williams, asserts that the length of time that he was held in the holding cell was unconstitutional.[52] Mr. Williams asserts that because he was held in the holding cell for longer than 48 hours, that Defendants violated Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code.[53] Plaintiff's claim under the Louisiana Administrative Code, however, does not provide relief under 42 U.S.C. § 1983, which requires that Plaintiff show that

[46] *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.
[47] *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318 (E.D. La. Mar. 19, 2015).
[48] *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).
[49] *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).
[50] *Scott*, 114 F.3d at 53-54.
[51] *See Harrell v. Gusman*, 2016 U.S. Dist. LEXIS 39549 (E.D. La. March 25, 2016), quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998); *See also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).
[52] Floyd Williams was detained in the holding cell for 4 days.
[53] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 136.

there is a violation of federal law. As this Circuit has previously held, a violation of a state administrative code is not, in and of itself, a basis for federal relief.[54]

Additionally, this Court has previously ruled that a Plaintiff being held in a holding cell for 18 days was such a short period of time that it was insufficient to rise to the level of a constitutional violation.[55] Here, the length of time that Mr. Williams was held in the holding cell was for 4 days.[56] As previously noted by this Court, the short period of time in which Mr. Williams was held in the holding cell is insufficient to rise to the level of a constitutional violation. Accordingly, Plaintiff's allegation regarding the length of time that he was held in the holding cell amounts to nothing more than a *de minimis* inconvenience which does not constitute "punishment" or otherwise rise to the level of a constitutional violation.[57] There was no punitive intent or malice involved in Mr. Williams being kept in the holding cell.[58] There was also no policy requiring individuals to be held in the holding cells longer than 48 hours.[59] Additionally, as of April 11, 2020, prior to the consolidation of this matter with the *Baqer* matter, this Honorable Court issued a ruling finding that there was no evidence of punitive intent with regard to all of the plaintiffs' claims as to the conditions of confinement.[60] Accordingly, this Honorable Court should dismiss

---

[54] *See, e.g., Tweedy v. Boggs*, 1993 U.S. App. LEXIS 40937 (5th Cir. Jan. 5, 1993); *See Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018); *See also Mathews v. Bowie Cty.*, 2013 U.S. Dist. LEXIS 130978 (E.D. Tex. Sept. 13, 2013).

[55] *Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (finding that detainee's eighteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *See also Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. July 31, 2020)(finding that detainee's seventeen day confinement in the holding cell to be insufficient to rise to the level of a constitutional violation), adopted, *Terry v. Smith*, 2021 U.S. Dist. LEXIS 12680 (E.D. La., Jan. 2021); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018) (finding that detainee's fifteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018).

[56] *See* Exhibit 1, pg. 39.

[57] *Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. July 31, 2020), adopted, *Terry v. Smith*, 2021 U.S. Dist. LEXIS 12680 (E.D. La., Jan. 2021).

[58] *See* pg. 161, lines 10 – 14; pg. 166, lines 1 – 6, of the 30(b)(6) testimony of the STPSO, attached herein as Exhibit "4"; *See* ¶ 13 of the Affidavit of Deputy Chief Brett Ibert, attached herein as Exhibit "5"; *See also* ¶ 13 of the Affidavit of Sheriff Randy Smith, attached herein as Exhibit "6."

[59] *See* pg. 117, lines 22 – 25 of the Deposition Testimony of Sheriff Randy Smith, attached herein as Exhibit "7."

[60] *See* R. Doc. 40, pg. 32, providing that: "The Court has reviewed the exhibits and testimony and does not find

Plaintiff's claim regarding the length of time that he was held in the holding cells, including any alleged violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code with prejudice for failing to state a claim on which relief may be granted.[61]

**2. Overcrowding in the Holding Cells**

Mr. Williams further complains that the alleged overcrowding of the holding cells during the time that he was detained at the STPJ constituted cruel and unusual conditions of confinement.[62] Such conditions of confinement, however, are not unconstitutional, and the Courts have consistently provided that overcrowding of holding cells does not present a legally cognizable claim.[63] This was previously noted by the District Court, prior to consolidation of the *Louviere* and *Baqer* matters, in its denial of Plaintiffs' Motion for Preliminary Injunction, wherein Judge Vitter held that: "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[64] Judge Vitter further provided that after reviewing the record as a whole, no evidence of any such punitive intent could be found.[65]

Here, as previously noted by Judge Vitter, Plaintiff has failed to provide any evidence whatsoever, that the alleged overcrowding of the holding cells was done with punitive intent. Accordingly, because Plaintiff has failed to establish that the alleged overcrowding of the holding cells was done with punitive intent on behalf of the Defendants, this Honorable Court must dismiss

---

evidence of punitive intent…Further, Plaintiffs have failed to establish a constitutional violation."

[61] *Smith*, 2020 U.S. Dist. LEXIS 248351, at *5. (Plaintiff's complaint regarding being held in the holding cell for 17 days was dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted).

[62] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 134.

[63] *See Rhodes v. Chapman*, 452 U.S. 337, 347-50, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981); *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Chavera v. Allison*, 2009 U.S. Dist. LEXIS 32177 (S.D. Miss. 4/15/09); *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 U.S. Dist. LEXIS 122 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 U.S. Dist. LEXIS 61160 (N.D. Miss. 2008).

[64] *See* Order and Reasons (R. Doc. 40, pg. 31).

[65] *See* R. Doc. 40, pg. 32.

Plaintiff's claim as to the alleged overcrowding of the holding cells with prejudice for failing to state a claim on which relief may be granted.

**3. Unsanitary Conditions**

Mr. Williams has alleged that during his four (4) day stay in the holding cell, that he was faced with the following unsanitary conditions constituting a violation of his constitutional rights: (1) being forced to share the same dirty sink and toilet with inmates;[66] (2) unable to wash hands after using bathroom until day four;[67] (3) the presence of toilet paper hanging from the ceiling and air conditioning vents;[68] (4) the presence of food, urine, feces, dirty toilet paper, blood, old band-aids, trash and water on the ground;[69] (5) the cell was not cleaned until day four;[70] (6) throw-up on the ground;[71] (6) no trash can in the cell;[72] (7) dried "loogies" on the wall;[73] and (8) not being provided enough toilet paper.[74]

This Court, as well as Fifth Circuit, has held that such short-term sanitation problems as described by Mr. Williams above, although admittedly unpleasant, do not amount to constitutional violations.[75] Additionally, as the Eastern District has previously noted, the Constitution does not

---

[66] *See* R. Doc. 101-10, ¶ 13.
[67] *Id*. at ¶¶ 21-22.
[68] *Id*. at ¶ 24.
[69] *Id*. at ¶ 25.
[70] *Id*. ¶ 26.
[71] *See* pgs. 68 – 69, lines 14 – 6, of deposition testimony of Floyd Williams, attached herein as Exhibit "8."
[72] *See* Exhibit 8, pg. 75, lines 1 – 2.
[73] *Id*. at pg. 76, lines 1 – 5.
[74] *See* R. Doc. 101-10, ¶ 15.
[75] *Williamson v. Larpenter*, 2019 U.S. Dist. LEXIS 133628 (E.D. La. July 2019), adopted, 2019 U.S. Dist. LEXIS 132383 (E.D. La., Aug. 2019); *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); accord *Benshoof v. Layton*, 351 Fed. Appx. 274 (10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004); *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell)(citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)(no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651 (E.D. La. Mar. 2010), adopted, 2010 U.S. Dist. LEXIS 20642 (E.D. La., Mar. 2010) (citing *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."); *Magee v. Crowe*, No. 09-3142, 2010 U.S. Dist.

"require that prisons be completely sanitized or even as clean or free from potential hazards as one's own home might be."[76] Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation.[77]

In this case, no such 'extreme circumstances' were present during Mr. Williams' short stay in the holding cell. Mr. Williams' complaint of unsanitary conditions consisting of being forced to share the same dirty sink and toilet with inmates, being unable to wash his hands after using bathroom until day four, the presence of toilet paper hanging from the ceiling and air conditioning vents, the presence of food, urine, feces, dirty toilet paper, blood, old band-aids, trash and water on the ground, the cell not being cleaned until the fourth day, the presence of throw-up on the ground in the cell, having no trash can in the cell, the presence of dried "loogies" on the wall in the cell, and not being provided enough toilet paper do not constitute extreme circumstances arising to the level of a constitutional violation. This is especially true, considering that Mr. Williams testified that the cell was cleaned during his four (4) day stay in the holding cell.[78] Mr. Williams testified that during this time, the cells were sprayed with disinfectant and mopped.[79] Mr. Williams additionally testified that on occasions when the toilet in the cell would clog, that inmates were provided a plunger to unclog it, and a mop to clean up any water that may have overflown from the toilet.[80] Mr. Williams also testified that whenever

---

LEXIS 14813 (E.D. La. Feb. 19, 2010) (stating that a "short-term sanitation…problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).

[76] *Allen v. St. Tammany Parish,* 2018 U.S. Dist. LEXIS 12254 at *9 (E.D. La. Jan. 2, 2018) *citing McAllister v. Strain,* U.S. Dist. LEXIS 120101 (E.D. La. Dec. 23, 2009).

[77] *Harold v. Tangipahoa Parish Sheriff Office*, 2021 U.S. Dist. LEXIS 129887 (E.D. La. June 2021), adopted, 2021 U.S. Dist. LEXIS 128973, (E.D. La. July 2021).

[78] *See* Exhibit 8, pg. 42, lines 9 – 14.

[79] *Id*. at. pg. 42, lines 9 – 20; *See also* pg. 70, lines 11 – 15.

[80] *Id*. at pg. 41, lines 2 – 11.

there was vomit or blood on the floor of the holding cell, that they would be provided with rubber gloves and a wet rag with disinfectant sprayed on it to clean the mess.[81] Mr. Williams further testified that while they were not provided with a trash can, that they were provided with a plastic bag in which inmates would place their trash, which would in turn be picked up by jail personnel daily.[82]

Additionally, with regard to Mr. Williams' claim that he was not provided enough toilet paper, Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of toilet paper in the cell and replace them as needed.[83] It became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[84] Additionally, there was no directive that detainees were entitled to only three rolls of toilet paper per cell all the time.[85]

Furthermore, prior to consolidation of the *Louviere* and *Baqer* matters, this Court heard testimony and allegations as to the very same unsanitary conditions within the holding cell, and issued a ruling providing that:

> "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[86]

Accordingly, Mr. Williams' complaint regarding the unsanitary conditions within the holding cell is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

---

[81] *Id*. at pgs. 70-71, lines 24 – 5; pg. 71, lines 17 – 21.
[82] *Id*. at pg. 75, lines 1 – 15.
[83] *See* Exhibit 4, pgs. 119 – 120, lines 17 – 4.
[84] *Id*.
[85] *Id*.
[86] *See* R. Doc. 40, pgs. 31 – 32.

**4. Forced to Sleep on Concrete Floor**

Mr. Williams has further asserted that during his time in the holding cell, that he was forced to sleep on the bare concrete floor in the cell, despite the availability of cell space and open beds elsewhere within the STPJ.[87]

This Court, however, has continually held that the provision of bedding is within those matters committed to prison administrators' sound discretion, and that the deprivation of bedding for a limited period of time is not *per se* unconstitutional.[88] Similar deprivations have repeatedly been found to be constitutional.[89] Additionally, numerous Circuits have held that the deprivation of a mattress for a limited period of time is not *per se* unconstitutional.[90] The Fifth Circuit has also held that the Constitution contains no authority requiring that detainees be provided elevated beds.[91]

In this case, Mr. Williams was kept in the holding cell for only four (4) days, during which

---

[87] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 138; *See* R. Doc. 101-10, ¶ 28.

[88] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. April 1, 2020), citing *Walton v. Topps*, 2012 U.S. Dist. LEXIS 127999 (E.D. La. July 23, 2012)(citation omitted), adopted, 2012 U.S. Dist. LEXIS 128415, (E.D. La. Sept. 2012).

[89] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (eighteen days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (fifteen days without a mattress), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. July 13, 2012) (seventeen days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. Aug. 14, 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. June 29, 2011) (sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. Aug. 4, 2011).

[90] *See*, *Fischer v. Ellegood*, 238 Fed. Appx. 428 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); *Stephens v. Cottey*, 145 Fed. Appx. 179 (7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); *Grissom v. Davis*, 55 Fed. Appx. 756 (6th Cir. 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); *Schroeder v. Kaplan*, 1995 U.S. App. LEXIS 18915 (9th Cir. July 6, 1995) (sleeping on floor without mattress for four weeks was not found to be a Constitutional violation).

[91] *See Gaines v. McDonald*, 577 Fed. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); accord *Sanders v. Kingston*, 53 Fed. App'x 781, 783 (7th Cir. 2002); *Finfrock v. Jordan*, 1996 U.S. App. LEXIS 32817 (7th Cir. Dec. 6, 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Williams v. Gusman*, 2015 U.S. Dist. LEXIS 139805 (E.D. La. Oct. 14, 2015); *Walcott v. Terrebonne Par. Consol. Gov't*, 2017 U.S. Dist. LEXIS 204062 (E.D. La. Sept. 2017), adopted, 2017 U.S. Dist. LEXIS 203742 (E.D. La., Dec. 12, 2017)..

time he alleges that he was not provided with a bed. As previously noted above, however, the deprivation of bedding for a limited period of time, including periods of time longer than Mr. Williams's stay in the holding cell, is not *per se* unconstitutional.[92]

Mr. Williams has further complained that he was forced to remain in the holding cell and sleep on the bare concrete floor or the bench space in the cell, despite the STPJ having numerous open beds.[93] However, as noted during the 30(b)(6) deposition testimony of the STPSO, there was no punitive or malicious reason for Mr. Williams not being provided one of the empty beds located in other parts of the STPJ that were reserved for Department of Corrections ("DOC") and/or federal detainees.[94] As Sgt. Kelly-Robertson explained, the STPJ houses inmates from St. Tammany Parish, DOC and U.S. Marshal prisoners and also serves as a hub for reentry for rehabilitative services for seven parishes.[95] The STPJ is under contract to take these DOC and federal inmates, and they are housed in DOC and federal housing units within the STPJ.[96] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[97] Beds within the STPJ are specifically reserved for inmates by those categories.[98] Because of these contracts, if there is an open bed in DOC, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[99] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed in that federal housing unit.[100]

---

[92] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (eighteen days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. July 13, 2012) (seventeen days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. Aug. 14, 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442, (N.D. Miss. June 2011)(sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357, (N.D. Miss. Aug. 2011).
[93] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 138.
[94] *See* Exhibit 4, pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.
[95] *Id*. at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[96] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
[97] *Id*. at pg. 50, lines 5 – 9.
[98] *Id*. at pg. 80, lines 5 – 12.
[99] *Id*. at pg. 80, lines 13 – 17.
[100] *Id*. at pg. 165, lines 3 – 7.

Therefore, even if there are open beds throughout other parts of the STPJ that are dedicated under contract to DOC and/or federal inmates, those parish detainees who are in the holding cell would not be able to access those open beds as they are reserved under contract to DOC and/or federal inmates.

The 30(b)(6) deposition testimony of the STPSO is further supported by Sheriff Randy Smith who attested that as the Sheriff, it has always been his policy to hold individuals in the holding cells only until a space opened up in the jail dormitories, and no individual was kept in the holding cell for any punitive reason.[101] Sheriff Smith further testified that due to the contracts for DOC and Federal inmates, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[102]

Additionally Brett Ibert, Deputy Chief over Corrections, further attested that no pre-trial detainees, including the five Plaintiffs in the instant matter, are held in the holding cells inside the STPJ for any punitive reason.[103] The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[104] Beds within STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[105] The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[106] Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ.[107] Detainees are transferred to the general population housing units when a bed

[101] *See* Exhibit 6, ¶¶ 11, 13.
[102] *See* Exhibit 7, pg. 91, lines 13 – 20.
[103] *See* Exhibit 5, ¶ 13.
[104] *Id*. at ¶ 8.
[105] *Id*. at ¶ 9.
[106] *Id*. at ¶ 11.
[107] *Id*. at ¶ 10.

becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[108] Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed.[109] Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[110]

Furthermore, prior to consolidation of the *Louviere* and *Baqer* matters, this Honorable Court heard allegations and testimony regarding Mr. Baqer being forced to sleep on the concrete floor of the holding cell despite the availability of cell space and beds within the prison and has already issued a ruling finding there to be no evidence of punitive intent.[111]

Accordingly, for the reasons provided above, Mr. Williams' complaint that he was not provided a bedding or mattress during his time in the holding cell is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**5. Deprivation/Denial of Medical Care**

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*.[112] In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.[113] This is true where the

---

[108] *Id.*
[109] *Id.* at ¶ 12.
[110] *Id.*
[111] *See* R. Doc. 40, pg. 3, 32.
[112] *See Estelle v. Gamble*, 429 U.S. 97 (1976).
[113] *Id.* at 104

indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.[114]

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[115] Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.[116] Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not.[117] Additionally, the mere delay or a mere gap in receiving care is not in and of itself a constitutional violation.[118] Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.[119]

***i. Plaintiff received medical treatment without delay, without deliberate indifference to his medical needs***

Mr. Williams, has asserted that he was not provided with a medical or mental health screening until his last day in the holding cells, despite having told jail staff that he needed medications for his heart and breathing.[120] Mr. Williams further asserts that he was provided only a 'puff' of an inhaler, which he had to share with other inmates on the fifth day of his detention in

---

[114] *Id.*
[115] *Id.*
[116] *See Kellup v. Gusman*, 2016 U.S. Dist. LEXIS 84603 (E.D. La. 2016), citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).
[117] *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983"). *See also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).
[118] *See Troia v. Bedwell*, 2006 U.S. Dist. LEXIS 49980 (E.D. La. May 15, 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985).
[119] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[120] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 139; *See* R. Doc. 101-10, ¶ 36; *See* Exhibit 8, pgs. 34 – 35.

the holding cell.[121] Additionally, Mr. Williams asserts that he was never provided heart medication.[122] The alleged delay about which Mr. Williams complains about, however, did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes, because there was no such delay.[123]

A review of Mr. Williams' medical records from the STPJ, however, directly contradicts both Mr. Williams' Complaint, as well as his Sworn Declaration and deposition testimony. According to his medical records, Mr. Williams saw STPJ medical personnel the day that he was booked into the STPJ for a medical and behavioral pre-intake screening on September 28, 2019, at 9:55 a.m., during which time Mr. Williams reported that he had no shortness of breath and/or dyspnea.[124] Mr. Williams further denied any chest pain and/or discomfort.[125]

---

[121] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 140; *See* R. Doc. 101-10, ¶ 37; *See* Exhibit 8, pg. 35, lines 11 – 19; pg. 36, lines 18 – 24.

[122] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 146.

[123] *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing *Monmouth County v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); *Wesson v. Oglesby*, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).

[124] *See* pg. 20 of the STPJ Medical Records of Floyd Williams, attached herein as Exhibit "9."

[125] *See* Exhibit 9, pg. 20.


St. Tammany Parish Sheriff's Office
Pre-Intake Screening

Arrestee: Floyd Williams D.O.B.: / /
Date: 9/27/19 Time: 9:55AM Drug Allergies:

Reason for Evaluation:
☐ Reports a serious medical problem:
☐ Inmate coming from the hospital; treated for:
☐ Recent MVA (24 hours)
☐ Diabetes Mellitus
☐ Suicidal Ideation
☐ Possible Pregnancy
☐ Abnormal Behavior or Altered LOC
☐ Other:

Home Medications:
Albuterol inhaler
Breo Ellipta inhaler

Limited Examination: (Only complete the pertinent items.)
BP- 127/82 P- 97 R- 18 Pox- 98%

General Appearance:
X NAD; speaks in full sentences easily w/o tachypnea
X Alert and oriented to person, place, and day
☐ Other:

CBG: Preg Test:
Drug Screen:

Disposition: X Accepted ☐ Refused; referred to hospital for further evaluation/treatment

Preliminary Orders:
Hx of COPD : Asthma. No SOB and/or dyspnea reported and/or noted. Denies any chest pain and/or discomfort

Medical Staff: [signature], LPN

126

The medical records further provide that during his medical and behavioral pre-intake screening, that Mr. Williams' breathing pattern was noted to be "unremarkable."[127] This would seem to completely contradict Mr. Williams' sworn testimony, wherein he testified that he informed STPJ medical personnel daily, from the date that he first arrived, that he was unable to breathe and that he needed his medication and an inhaler.[128]

---

[126] *Id.*
[127] *Id.* at pg. 5.
[128] *See* Exhibit 8, pgs. 34-35, lines 9-10.

So I wasn't able to take none of my medication with me or anything. And when I arrived at the jail, I told them what I had, that I needed my breathing medication and my heart stuff, and they said, "Oh, they'll -- they'll take care of you."
Q. Okay. And did you ask to see a medical person there on the first day you arrived?
A. Daily filled out requests, everything.
Q. Okay. Were you in any type of distress? Were you unable to breathe or did you feel tingling in your extremities or anything like that?
A. Yes, I did.
Q. All right. And did you communicate that to someone at the jail?
A. Yes.
Q. All right. When did you do that?
A. The first day I was there. [129]

Q. What about the second day?
A. Second day, same thing.
Q. Who did you tell?
A. Told the staff -- told the girl that was coming around to hand out the medication that I needed an inhaler. I couldn't breathe.
Q. Okay. That was the second day?
A. That was every day, from the time I got there.
Q. So first, second, third, fourth day?
A. Yes. [130]

The medical records further provide that on the day he was booked into the STPJ, that STPJ

[129] *Id.*
[130] *Id.*

medical personnel prescribed Mr. Williams lisinopril for his heart and blood pressure, along with two different inhalers.[131]

**Medication Orders**

Order No: 12813221 | Order Status: Released 10/01/2019 23:05 | Written | Last Administered: 10/28/2019 07:00 | Submit Date: 09/28/2019 15:55 | Start Date: 09/28/2019 19:00 | End Date: 10/28/2019 18:59

(Ciclesonide) Alvesco 160 mcg/Actuation Aerosol Inhaler: give 2 HFA Aerosol Inhaler Inhalation BID AM & PM for 30 days KOP. - Ordering Provider: Manicia Liddell

| Time | Type | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07:00 | Init | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | *KOP* | *KOP* | -- |
| 19:00 | Init | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | [illegible] | *KOP* | *KOP* | -- |

Order No: 12813219 | Order Status: Released 10/01/2019 23:05 | Written | Last Administered: 12/27/2019 07:00 | Submit Date: 09/28/2019 15:55 | Start Date: 09/29/2019 00:00 | End Date: 12/27/2019 23:59

lisinopril 10 mg tablet: give 1 tablet by mouth Q AM for 90 days . - Ordering Provider: Manicia Liddell

| Time | Type | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07:00 | Init | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | [illegible] | [illegible] | -- |

**PRN**

Order No: 12813220 | Order Status: Released 10/01/2019 23:05 | Written | Last Administered: 09/28/2019 22:43 | Submit Date: 09/28/2019 15:55 | Start Date: 09/28/2019 19:00 | End Date: 10/28/2019 18:59

(Levalbuterol Tartrate) Xopenex HFA 45 mcg/Actuation Aerosol Inhaler: give 2 HFA Aerosol Inhaler Inhalation QID AM Noon PM HS PRN for 30 days PRN Reason: Shortness of breath. KOP. - Ordering Provider: Manicia Liddell

| Time | Type | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PRN | Times | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | 22:43 [illegible] | | | -- |

132

On September 28, 2019, at 3:03 p.m., Mr. Williams signed the receiving screening document thereby acknowledging that his questions had been fully answered and that he had received information on how to obtain/access medical services.[133]

***I have answered all questions fully. I have been instructed on and received information on how to obtain/access medical services. I have been instructed on and received information on sexual assault awareness. I hereby give my consent for the facility medical provider to provide health care services and share information with health information exchanges which allows medical records, including certain alcohol and substance abuse treatment information; child abuse and neglect reports and records; sexual assault evidence and information; veterans' homes resident records; and any other health information that requires individual consent in order to be disclosed under Federal or State law.***

☐ *I do NOT consent to sharing data with external sources.*

***Patient Signature***

☑ Sign Form **FLOYD A WILLIAMS Date 09/28/2019 3:03:30 PM**



134

As provided above, Mr. Williams' allegations that he did not receive a medical or mental health screening until his last day in the holding cell, that he was only provided an inhaler that he

[131] *Id.* at pgs. 16 – 19, 22.
[132] *Id.*
[133] *Id.* at pg. 12.
[134] *Id.*

had to share with other inmates on his fifth day in the holding cell,[135] and that he was not provided heart medication are all clearly contradicted by Mr. Williams' own medical records from his time at the STPJ. Mr. Williams' allegations are clearly false, as his own medical records provide that he received a received a medical and behavioral pre-intake screening on September 28, 2019, and that he was prescribed heart medication and two inhalers upon arrival at the STPJ. Defendants further note that according to Mr. Williams' records from the STPJ, Mr. Williams filed no grievances related to his allegations of not receiving his medications during his time in the holding area of the jail. Accordingly, Mr. Williams' allegations regarding the Defendants' failure to provide appropriate medical care are without merit and must be dismissed.

**6. Lack of Personal Hygiene Products**

Mr. Williams has further asserted that during his time at the STPJ, that he was denied personal hygiene products, including not being provided soap until his fourth day of confinement in the holding cell,[136] not being provided deodorant,[137] and not being provided a toothbrush until the fifth day of his confinement in the holding cell.[138] The Fifth Circuit, however, has held that temporary deprivations of personal hygiene items, such as those alleged by Mr. Williams, do not constitute egregious conditions sufficient to establish a constitutional violation.[139] Additionally, even if Mr. Williams' allegations were true, he has failed to establish that any such depravation was done with any punitive intent or purpose. Accordingly, Mr. Williams' complaint as to the alleged lack of personal hygiene products during his short time in the holding cell is not an

[135] Defendants note that Mr. Williams was only held in the holding cell for four (4) days.
[136] *See* R. Doc. 101-10, ¶ 21.
[137] *Id.* at ¶ 23.
[138] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 143; *See also* R. Doc. 101-10, ¶ 34.
[139] *See Thomas v. Owens*, 345 Fed. Appx. 892 (5th Cir. 2009)(Holding that "Thomas has not alleged deprivations leading to such egregious conditions in the temporary denial of certain personal property and hygiene items"); *See also*, *Mitchell v. Jefferson Parish Corr. Ctr.*, 2013 U.S. Dist. LEXIS 161153 (E.D. La. Oct. 21, 2013), citing *Matthews v. Murphy*, 1992 U.S. App. LEXIS 4024 (9th Cir. 1992)( finding no constitutional violation where inmate was deprived of towel, toothbrush, toothpowder, comb, soap, or other personal hygiene items for approximately thirty-four days).

actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**7. Limited access to Showers and Clean Clothing**

The Constitution does not require inmates have daily or even weekly showers.[140] Additionally, the Eastern District has held that the denial of shower access for 8 days does not rise to the level of a constitutional violation.[141]

In this case, Mr. Williams has testified that during his four (4) days in the holding cell, that he was permitted to take a shower on the fourth day, and that he was provided clean clothing after taking the shower.[142]

As provided above, Mr. Williams has testified that he was permitted to take a shower during his four (4) day stay in the holding cell, despite there being no Constitutional requirement that inmates have daily or even weekly showers, and that he was provided clean clothes following the shower. While Mr. Williams may be unsatisfied with the number of times he was permitted to take a shower during his time in the holding cell, such unsatisfaction does not create a cause of action for which legal redress is available. Instead, the temporary conditions experienced by Mr. Williams during his time in the holding cell clearly do not rise to the level of a constitutional violation and are instead similar to those "…§1983 claims of temporary conditions regularly rejected by courts in this district."[143] Accordingly, Mr. Williams' complaint as to the number of times he was allowed to shower during his time in the holding cell is nothing more than another

---

[140] *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. January 15, 2021), citing *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); See also *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment."); *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him).

[141] *See Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. January 15, 2021).

[142] *See* R. Doc. 101-10, ¶ 32; *See* Exhibit 8, pg. 42, lines 12-14; pgs. 44-45, lines 24-13.

[143] *See Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 at *54.

complaint with no legal basis.

### 8. Temperature within the Holding Cell

The Fifth Circuit has held that as a general rule, complaints about inadequacy of the ventilation system, without more, do not establish a constitutional violation.[144] Additionally, District Courts within this Circuit have held that a plaintiff's brief confinement in an overly air-conditioned holding cell does not constitute a cause of action for an unconstitutional condition of confinement.[145] The Fifth Circuit has also held that while the temperature may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment.[146]

In this case, Mr. Williams has alleged that the temperature within the holding cell was set to an 'uncomfortably low temperature.'[147] As previously noted above, such a complaint is insufficient to establish a constitutional violation. Additionally, Mr. Williams has failed to allege, or present any evidence establishing that the temperature in the holding cells was kept low for any punitive reason. To the contrary, Sgt. Lacey Kelly-Robertson provided that the temperature of the holding cells was kept at 68 to 69 degrees.[148] Sgt. Kelly-Robertson testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[149] Accordingly, Mr.

---

[144] *Johnson v. Tex. Bd. of Crim. Justice*, 2006 U.S. Dist. LEXIS 101578 (S.D. Tx. December 13, 2006), citing *Parker v. Smith*, 22 F.3d 1094 (5th Cir. 1994) (unpublished) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *See also Johnson v. Thaler*, slip op. no. 99-20222, 1999 U.S. App. LEXIS 39125 (5th Cir. Nov. 12, 1999).

[145] *See Guerra v. City of Alamo*, 2022 U.S. Dist. LEXIS 66870 (S.D. Tx. March 8, 2022); *See also Porter v. Werner*, 2017 U.S. Dist. LEXIS 20660 (S.D. Ms. Feb. 14, 2017).

[146] *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

[147] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 147; *See* R. Doc. 101-10, ¶ 12; *See* Exhibit 8, pg. 74, lines 18 – 19.

[148] *See* Exhibit 4, pg. 25, lines 8-12.

[149] *Id.* at pgs. 25-26, lines 11-5.

Williams' complaint as to the temperature in the holding cells is not an actionable claim and should therefore be dismissed with prejudice.

### 9. Limited and/or No Access to Blankets

Regarding complaints about being provided blankets for either a short period of time or not for 7 days, the Fifth Circuit has previously held that the denial of a blanket for 2 ½ days to an inmate with a cold who was confined indoors in Northern Mississippi in November did not constitute a deprivation of the minimal civilized measures of life's necessities.[150] Additionally, the Eastern District has continually held that a temporary, non-punitive denial of a blanket is not sufficiently egregious to violate the Constitution.[151]

In this case, Mr. Williams' sworn Declaration provides that the guards threatened detainees that if they did not stay quiet, that they would not provide detainees with sheets or blankets.[152] Mr. Williams further provides that as a result, he was not provided a blanket for couple nights.[153] Mr. Williams' sworn Declaration, however, is contradicted by his sworn deposition testimony wherein he testified that he was provided a blanket **every night**.[154] Aside from Mr. Williams' sworn Declaration providing that he was not provided a blanket on a couple nights, which is clearly contradicted by his sworn deposition testimony, he has offered no evidence whatsoever that he was denied blankets at any time during his stay in the holding cell, nor has he provided any evidence that the alleged denial of blankets on a 'couple nights' was done for any punitive reason. Accordingly, Mr. Williams' complaint alleging that he was denied a blanket on a couple of nights is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for

---

[150] *See Phillips v. East*, 81 Fed. Appx. 483, 485 (5th Cir. 2003).
[151] *See Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318, at *10 (E.D. La. Feb. 27, 2015), citing *Carter v. Strain*, 2009 U.S. Dist. LEXIS 91301 (E.D. La. Oct. 1, 2009); *McAllister v. Strain*, 2009 U.S. Dist. LEXIS 15248, (E.D. La. Feb. 25, 2009).
[152] *See* R. Doc. 101-10, ¶ 30
[153] *Id*. at ¶ 31.
[154] *See* Exhibit 8, pg. 44, lines 1-3.

failing to state a claim on which relief may be granted.

**10. Denial of Recreation/Exercise**

The Fifth Circuit has held that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation."[155] Accordingly, in order to succeed on a claim of denial of exercise, Plaintiff must show that the denial adversely affected his health.[156]

Mr. Williams has alleged that he was not provided the opportunity to go out of the cell to engage in physical activity or recreational exercise.[157] As previously noted, the deprivation of exercise is not a *per se* constitutional violation, and the only way for Plaintiff to succeed on such a claim is to show that the denial adversely affected his health. Mr. Williams, however, has failed to allege in his Complaint, Declaration or during his deposition testimony, that the alleged denial of the opportunity for him to participate in recreational exercise adversely affected his health in any way. Mr. Williams has further failed to produce any complaints and/or grievances filed during his time at the STPJ that would have alerted any STPJ personnel that the lack of opportunity for recreational activities and/or exercise was adversely affecting his health in any way. Accordingly, Mr. Williams' complaint as to the denial of the opportunity for recreational exercise is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

---

[155] *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (citing *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977) (per curiam) (designated unpublished); *Stewart v. Winter*, 669 F.2d 328, 336 (5th Cir. 1982)); *see also Martin v. Scott*, 156 F.3d 578, 580 (affirming limits on recreation times).

[156] *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); see also *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008) (granting summary judgment for defendants on claim based on denial of outdoor and out of cell exercise for 13 months where there was no showing of "substantial risk of serious harm" as plaintiff did not "clearly evince" a serious medical need).

[157] *See,* R. Doc. 101-10, ¶ 39.

**11. Mr. Williams did not sustain any injuries as a result of the alleged conditions in the holding hell**

**i. Mr. Williams did not sustain any injuries resulting from a refusal to provide an inhaler and heart medication[158]**

As previously noted above, the Fifth Circuit has held that the mere delay or a mere gap in receiving care is not in and of itself a constitutional violation.[159] Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.[160] The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.[161]

In this case, Plaintiff has provided no evidence establishing that any such permanent loss resulted from delay or failure to provide the appropriate medication. To the contrary, Plaintiff has testified that he failed to seek any medical and/or breathing treatment after his release from the STPJ, and therefore he has no evidence that the alleged failure to provide his medication for five days resulted in his health being compromised.[162]

Q. All right. So has anyone -- any medical person, doctor, nurse -- anyone told you since the time that you were released from the St. Tammany Parish Jail to the time that you've been sitting here now -- has[163]

[158] *See* R. Doc. 211-17, pg. 3, Plaintiff's Answer to Interrogatory No. 6.
[159] *See Troia v. Bedwell*, 2006 U.S. Dist. LEXIS 49980 (E.D. La. May 15, 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985).
[160] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[161] *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing *Monmouth County v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); *Wesson*, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).
[162] *See* Exhibit 8, pg. 37 – 38, lines 22 – 17.
[163] *Id.*

anyone ever told you that as a result of not receiving your medication or the breathing treatment for those five days that you've been -- your health has been compromised?
A. I didn't seek anybody for that situation, but I know that I was in discomfort.
Q. Okay.
A. I got sick after that.
Q. So let's -- let's make -- I'm going to ask you about you getting sick, but I want to make sure I'm clear on this. You didn't see any medical persons after you were released from the jail with respect to any complaints of your nontreatment at the jail; is that correct?
A. I didn't have the co-pay to go see anybody.
Q. Okay. So you didn't; right?
A. No. I would have if I'd had the co-pay.[164]

Furthermore, with regard to Plaintiff's allegations that he suffered chest pains and shortness of breath resulting from STPJ staff refusing to give him an inhaler or other breathing treatment or medication, Defendants again note that Mr. Williams' own medical records clearly contradict these allegations, as he was provided two (2) inhalers and heart medication by the STPJ. As previously noted, Mr. Williams' medical records provide that during his medical and behavioral pre-intake screening, that Mr. Williams reported that he had no shortness of breath and/or dyspnea.[165] Mr. Williams further denied any chest pain and/or discomfort.[166] The medical records note that Mr.

---

[164] *Id.*
[165] *See* Exhibit 9, pg. 20.
[166] *Id.* at pg. 20.

Williams breathing pattern was found to be "unremarkable."[167] Plaintiff's medical records further contradict his own sworn testimony that he informed STPJ medical personnel daily, from the date that he first arrived, that he was unable to breathe and that he needed his heart medication and an inhaler.[168] The medical records further provide that during his medical and behavioral pre-intake screening, that Mr. Williams was prescribed lisinopril for his heart and blood pressure, along with two different inhalers.[169]



Medication Orders

Order No: 12813221 | Order Status: Released 10/01/2019 23:05 | Written | Last Administered: 10/28/2019 07:00 | Submit Date: 09/28/2019 15:55 | Start Date: 09/28/2019 19:00 | End Date: 10/28/2019 18:59

(Ciclesonide) Alvesco 160 mcg/Actuation Aerosol Inhaler: give 2 HFA Aerosol Inhaler Inhalation BID AM & PM for 30 days KOP. - Ordering Provider: Manicia Liddell

Order No: 12813215 | Order Status: Released 10/01/2019 23:05 | Written | Last Administered: 12/27/2019 07:00 | Submit Date: 09/28/2019 15:55 | Start Date: 09/29/2019 00:00 | End Date: 12/27/2019 23:59

lisinopril 10 mg tablet: give 1 tablet by mouth Q AM for 90 days . - Ordering Provider: Manicia Liddell

PRN

Order No: 12813220 | Order Status: Released 10/01/2019 23:05 | Written | Last Administered: 09/28/2019 22:43 | Submit Date: 09/28/2019 15:55 | Start Date: 09/28/2019 19:00 | End Date: 10/28/2019 18:59

(Levalbuterol Tartrate) Xopenex HFA 45 mcg/Actuation Aerosol Inhaler: give 2 HFA Aerosol Inhaler Inhalation QID AM Noon PM HS PRN for 30 days PRN Reason: Shortness of breath. KOP. - Ordering Provider: Manicia Liddell

170

Accordingly, Mr. Williams claim that he suffered any injuries stemming from STPJ personnel refusing to give him an inhaler or other breathing treatment or medication is completely false and must be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**ii. Back, shoulder and neck aches and pain and pulling of a sciatic nerve**

Mr. Williams has alleged that he also sustained back, shoulder, and neck aches and pain and pulling of a sciatic nerve resulting from sleeping on freezing cold concrete without blankets.[171]

[167] *Id.* at pg. 5.
[168] *See* Exhibit 8, pgs. 34-35, lines 9-10.
[169] *Id.* at pgs. 16 – 19, 22.
[170] *Id.*
[171] *See* R. Doc. 211-17, pgs. 3 – 4, Plaintiff's Answer to Interrogatory No. 6.

Defendants first note that Mr. Williams has testified that he was provided a blanket **every night**.[172] With regard to Plaintiff's alleged back, shoulder and neck aches and pain, the Western District of Louisiana, citing the Fifth Circuit, has provided that:

> "…cramps, back pain, loss of sleep and a crook in his neck..." — were *de minimis* at worst. To rise to the level of a constitutional violation, the conditions must be" 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities...'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Thus, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D.Tex.1997)."[173]

Here, Mr. Williams' alleged back, shoulder and neck aches and pain are nothing more than *de minimis* at worst, as Mr. Williams has alleged no more than discomfort and inconvenience, which in respect to his conditions of confinement claim, are insufficient to state a claim for which relief may be granted.

Additionally, Plaintiff has produced a medical record dated November 7, 2019, wherein Mr. Williams sought treatment for hypertension, and it is noted that "The patient complained of back pain (LOW BACK PAIN WITH 3-4 MONTHS SCIATIC DOWN LEFT LEG) but denied stiffness, swelling, muscle weakness and myalgias."[174] According to this medical record, Mr. Williams had been suffering from back pain for a period of three to four months, which predates his stay at the STPJ a month earlier, from September 28, 2019, to October 3, 2019. Mr. Williams was therefore allegedly suffering back pain for a period of 2 – 3 months before his stay at the STPJ. Defendants additionally note that despite having testified that he was unable to eat a lot of the food

[172] *See* Exhibit 8, pg. 44, lines 1-3.
[173] *See Cummings v. Nail*, 2013 U.S. Dist. LEXIS 24098 (W.D. La. Jan. 29, 2013).
[174] *See* pg. 1 of Plaintiffs' Medical Record, dated November 7, 2019, attached herein as Exhibit "10."

at the STPJ due to his peanut allergy,[175] that Mr. Williams' medical records, which he provided, clearly state that "The patient denied food allergy."[176]

Additionally, aside from his own unsupported allegations, Plaintiff's medical record contains no information or determination as to the causation of this injury. Plaintiff has also presented no evidence or expert medical testimony establishing that this medical record, dated over a month after Mr. Williams' release from the holding cell, has any relation whatsoever to the alleged conditions of confinement, or is in any way related to his stay five (5) day stay in the holding cell.[177]

Plaintiff has additionally produced a medical record dated December 2, 2022, wherein Mr. Williams was diagnosed with "Moderate lumbar spondylosis as described, most pronounced at L3-5. Mild associated spinal stenosis with previous laminectomies."[178] Defendants again note that Plaintiff's medical record contains no information or determination as to the causation of this injury. Additionally, Plaintiff has presented no evidence or expert medical testimony establishing that this medical record, **dated over three (3) years after Mr. Williams' release from the holding cell**, has any relation whatsoever to the alleged conditions of confinement, or is in any way related to his stay five (5) day stay in the holding cell. [179]

Mr. Williams has failed to produce any medical records or expert medical testimony establishing that he sustained any such injuries to his back, shoulder and/or neck that was the result

[175] *See* Exhibit 8, pgs. 40 – 41, lines 22 – 1.
[176] *See* Exhibit 10, pg. 2.
[177] *See Thomas v. Owens*, 345 Fed. Appx. 892 (5th Cir. 2009)(Holding that Plaintiff's unsupported allegations that a possible wrist fracture seen in an x-ray months later was due to the incident or that he suffered a bone chip above his eye were insufficient to show that the district court erred in granted summary judgment on this claim.)
[178] *See* pg. 4 of Plaintiffs' Medical Records, dated December 2, 2022, attached herein as Exhibit "11."
[179] *See Thomas*, 345 Fed. Appx. 892 (Holding that Plaintiff's unsupported allegations that a possible wrist fracture seen in an x-ray months later was due to the incident or that he suffered a bone chip above his eye were insufficient to show that the district court erred in granted summary judgment on this claim.)

of being forced to sleep on cold concrete without a blanket.[180] Accordingly, Mr. Williams' claim that he suffered back, shoulder, and neck aches and pain as a result of sleeping on freezing cold concrete without blankets must be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**iii. Sickness resulting from exposure to cold and other sick inmates' bodily fluids such as blood, phlegm, vomit, diarrhea for extended periods**

Mr. Williams has alleged that he suffered sickness resulting from exposure to cold and other sick inmates' bodily fluid such as blood, phlegm, vomit and diarrhea for extended periods. Mr. Williams alleges that as a result of being exposed to these conditions, he was ill for two weeks following his release.[181]

With regard to Plaintiff's claim that he was ill for two weeks following his exposure to the above-described conditions, Defendants first note that Plaintiff's Complaint alleges that he was ill for 2 weeks following his release as a result of being deprived his medication, not as a result of his exposure to the conditions alleged in his Declaration.[182] When questioned during his deposition testimony as to what medical treatment he sought for his alleged illness, Mr. Williams provided that he did not seek any medical treatment.[183]

---

[180] Mr. Williams testified that he was provided a blanket **every night**. (*See* Exhibit 8, pg. 44, lines 1-3).
[181] *See* R. Doc. 101-10, ¶ 40.
[182] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 141.
[183] *See* Exhibit 1, pg. 39, lines 7 – 20.

Q. All right. You mentioned a moment ago that you got sick.
A. Yes.
Q. When did you get sick?
A. I'm -- I was sick the whole -- probably the third day I was in there, I started running a fever, and then it was for two weeks after that.
Q. All right. Other than seeing the medical person at the jail on the fourth day of your incarceration, did you see any other doctors as a result of that sickness?
A. No.
Q. So safe to say, then, that sickness is not documented anywhere?
A. No. [184]

As provided above, Mr. Williams, by his own admission, has no evidence to support that he contracted any illness/sickness for two weeks following his stay in the holding cell, nor does he have any evidence that his alleged illness/sickness was caused by or resulted from the alleged conditions of confinement. Additionally, even if Mr. Williams did contract some illness/sickness during his stay in the holding cell, this Circuit has held that "…isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."[185] Accordingly, Mr. Williams' claim that he suffered sickness as a result of his exposure to the above-described conditions should be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**iv. Mr. Williams' Back Surgery**

As previously noted above, Mr. Williams claims that he underwent back surgery in May

[184] *Id*. at pg. 39, lines 7 – 20.
[185] *Cadena v. El Paso Cty.*, 946 F.3d 717 (5th Cir. 2020), citing *Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009)

of 2022, and that this back surgery was caused, in part, by his five (5) day stay at the STPJ.[186] As of the time of the filing of this motion, however, Plaintiff has produced no medical records regarding this alleged back surgery despite having been served with discovery requests providing that Plaintiff produce all relevant medical records. Moreover, Plaintiff has submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries.[187]

Aside from his own unsupported allegations, Plaintiff has failed to produce any evidence whatsoever supporting his assertion that he underwent back surgery, or that the injuries to his back requiring surgery relate in any way to his five (5) day stay at the STPJ. Furthermore, Defendants note that at no time did Mr. Williams mention that he underwent any such surgery during his deposition testimony. Accordingly, Mr. Williams' claim that he suffered a back injury requiring surgery as a result of his five (5) day stay at the STPJ must be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**E. Plaintiff's Claims Regarding Jail Personnel's statements as to the conditions of confinement**

Mr. Williams has further asserted that during his time at the STPJ, that numerous jail personnel stated in response to he and other detainees concerns regarding the unhealthy living conditions, that "This is St. Slamity,' if you don't like it, don't commit crimes in the parish."[188] When asked to identify which jail employees allegedly made this statement, Mr. Williams failed to provide any details in which to identify these supposed individuals, testifying that he could not provide a name of any jail employees, and instead stated that it was all of the employees who worked at the STPJ.[189]

---

[186] *See* R. Doc. 211-17, pgs. 3 – 4, Answer to Interrogatory No. 6.
[187] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.
[188] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 150; *See* R. Doc. 101-10, ¶ 43; *See* Exhibit 8, pg. 45, lines 14 – 19.
[189] *See* Exhibit 8, pgs. 45-46, lines 14-17.

Q. Okay. I note you note on that last paragraph on page 23, No. 150, "In response to requests for medical assistance and sanitation, guards responded: 'This is St. Slamity. If you don't like it, don't commit crimes in the parish,'" close quote.
A. Correct.
Q. Who told you that?
A. The jail employees.
Q. Which one?
A. All of them. I say -- ask them if I could use the phone, if I could get my phone number, if I could have medical, anything. [190]
Q. So more than --
A. You know the --
Q. -- one person used those words?
A. Yes.
Q. Can you give me a name of any of the guards that would have said that?
A. I -- I can't give you a name. It was the employees that worked there.
Q. Was it more than one?
A. Yes.
Q. More than ten?
A. No.
Q. So somewhere between one and ten people told you essentially that same phrase?
A. At least five.
Q. I'm sorry?
A. At least five. [191]

---

[190] *Id.*
[191] *Id.*

Mr. Williams has also asserted that during his time at the STPJ, that numerous jail personnel admitted that the conditions of confinement were in place to teach inmates a lesson.[192] When again asked to identify any jail personnel who allegedly made this statement, Mr. Williams again failed to provide any details in which to identify these supposed individuals, testifying instead that "You name it, it was them,"[193] and "It was white, black individuals, male and female that told me this, employees of St. Tammany Parish Jail."[194]

```
Q.   Okay.  Next page, 150- -- paragraph 151, "During this
     time, jail staff admitted that the conditions of
     confinement were in place to teach inmates a lesson."
     Who told you that?
A.   Jail staff.
Q.   Which jail staff?
A.   Same ones that would tell you St. Slamity.
Q.   So this is five individuals?  Ten individuals?
```
[195]

[192] *See* Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 151; *See* R. Doc. 101-10, ¶ 45; *See* Exhibit 1, pg. 46, lines 18 – 22.
[193] *See* Exhibit 8, pg. 47, lines 14-15.
[194] *Id*. at lines 22-23.
[195] *Id*.

A. I -- around five.
Q. And can you give me one name of one person that would have said that?
A. I had -- they -- they didn't wear -- I didn't see a name tag, nothing.
Q. Can you describe any of them?
A. I couldn't describe them, but --
Q. I'm sorry?
A. I couldn't describe them, no. They were employees. I -- I mean, like --
Q. Were they tall? Short? White? Black? Heavy? Skinny?
A. They were both.
Q. Male? Female?
A. They were both. You name it, it was them.
Q. So someone that I just described --
MR. JACOB: Floyd, just --
Q. (By Mr. Collings) -- any of them --
MR. JACOB: Floyd, limit your answers to actual answers, not sarcasm, please.
THE WITNESS: Okay.
A. It was white, black individuals, male and female that told me this, employees of St. Tammany Parish Jail. [196]

As provided above, Plaintiff, by his own testimony, is unable to identify a single individual employee of the STPJ who made either of these alleged statements. Moreover, Mr. Williams attributed the statement to every single individual, male or female, who works at the STPJ. Defendants have continually denied that any such statements were made, and Plaintiff has failed to provide any evidence, aside from his own self-serving testimony that any such statements were made. Plaintiff's unsupported and unsubstantiated allegations are not only insufficient to establish

[196] *Id.*

that any of the alleged conditions of confinement were policy of the STPJ, but that they were put in place for a punitive reason or with punitive intent. Accordingly, Plaintiff's claims as to the alleged conditions of confinement should be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**F. Mental Damages**

Mr. Williams has asserted that as a result of his five (5) day stay at the STPJ, that he suffered "…severe anxiety, flashbacks, nightmares of being denied medical treatment while in the holding cells..."[197] With regard to Plaintiff's allegations that he was denied medical treatment, Defendants again reiterate that Plaintiff's own medical records contradict Plaintiff's claims that he was not provided medical treatment and that he denied heart medication and an inhaler. As noted above, Mr. Williams was prescribed and provided heart medication, as well as two (2) different inhalers during his five (5) day stay at the STPJ. Defendants further note that Mr. Williams has also testified that he has never sought treatment for his alleged anxiety or any other mental damages.[198]

Accordingly, this Honorable Court should dismiss Mr. Williams's claim for mental damages, anxiety, flashbacks and nightmares resulting from being denied medical treatment while in the holding cell with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**G. Mr. Williams' Overall Treatment at the STPJ**

While Mr. Williams has alleged numerous unactionable claims in support of his claim for unconstitutional conditions of confinement, Defendants believe it is important to further demonstrate that during his time at the STPJ, that Mr. Williams was provided with all of life's

---

[197] *See* R. Doc. 211-17, pg. 3, Answer to Interrogatory No. 6.
[198] *See* Exhibit 8, pg. 40, lines 11 – 17.

necessities.

For example, during his five (5) day stay at the STPJ, Mr. Williams provided that he was provided toilet paper,[199] and that the cell was cleaned, sprayed with disinfectant and mopped.[200] When the toilet was clogged, inmates were provided with a plunger to unclog it, and a mop to clean up any water that may have overflowed from the toilet.[201] Inmates were provided rubber gloves and a wet rag sprayed with disinfectant to clean any vomit or blood that was present on the floor.[202] Trash was also taken out of the cell on a daily basis by jail personnel.[203]

Mr. Williams further testified that he was fed at least twice a day,[204] that he was able to sleep,[205] that he was provided soap,[206] provided a toothbrush,[207] that he was permitted to take a shower,[208] and that he was provided clean clothing after taking this shower.[209] Mr. Williams further testified that he was provided a blanket to sleep with every night.[210] Mr. Williams testified that he was never threatened by jail personnel.[211] Mr. Williams was additionally prescribed medication for his heart and blood pressure, as well as two different inhalers.[212]

As detailed above, Mr. Williams was never denied life's necessities but was instead continually provided with them. Accordingly, Mr. Williams has failed to provide any evidence in support of his allegations that his conditions of confinement were unconstitutional. Accordingly, this Honorable Court should dismiss Mr. Williams's complaint with prejudice as frivolous and/or

---

[199] *See* R. Doc. 101-10, ¶ 15.
[200] *See* Exhibit 8, pg. 42, lines 9 – 20; *See also* pg. 70, lines 11 – 15.
[201] *Id.* at pg. 41, lines 2 – 11.
[202] *Id.* at pgs. 70-71, lines 24 – 5; pg. 71, lines 17 – 21.
[203] *Id.* at pg. 75, lines 1 – 15.
[204] *Id.* at pg. 40, lines 18 – 22.
[205] *See* R. Doc. 101-10, ¶ 28.
[206] *See* R. Doc. 101-10, ¶ 21.
[207] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 143; *See also* R. Doc. 101-10, ¶ 34.
[208] *See* R. Doc. 101-10, ¶ 32; *See* Exhibit 8, pg. 42, lines 12-14; pgs. 44-45, lines 24-5.
[209] *See* Exhibit 8, pg. 45, lines 8 – 13.
[210] *See* Exhibit 8, pg. 44, lines 1-3.
[211] *Id.* at pg. 77, lines 21 – 25.
[212] *See* Exhibit 9, pgs. 16 – 19, 22.

for failing to state a claim on which relief may be granted.

### H. Defendants are Entitled to Qualified Immunity

As detailed above, to defeat the defense of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[213] While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[214]

In this case, Mr. Williams has failed to provide any evidence in support of his allegations that his conditions of confinement were unconstitutional. As previously noted by Judge Vitter at the April 10, 2020, hearing:

> "In this case, there was no evidence introduced at the hearing regarding society's standards of decency. The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[215]

Mr. Williams has presented no evidence, nor can he cite to any existing authority that would support a conclusion that any alleged policy of the STPSO/STPJ is itself unconstitutional, nor can Plaintiff cite to any authority that places the constitutional question 'beyond debate.' Further, Mr. Williams has failed to produce any evidence or authority establishing any constitutional violations on behalf of the Defendants. Defendants are therefore entitled to qualified immunity as to Plaintiff's claims, as the facts and case law clearly establish that Defendants' conduct was reasonable and violated no particularized and/or clearly established case law.

---

[213] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[214] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[215] *See* R. Doc. 40, pgs. 31 – 32.

## I. Claims against Sheriff Randy Smith and Lacey Kelly

### 1. All claims Against Sheriff Randy Smith and Lacey Kelly in their Official Capacities should be Dismissed

In this case, Plaintiffs have sued Sheriff Randy Smith and Lacey Kelly in their official capacities.[216] A suit against a government officer in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[217] "It is *not* a suit against the official personally, for the real party in interest is the entity."[218] "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[219]

"[E]very sheriff in Louisiana is a political subdivision unto himself, and there is no such thing as a 'Parish Sheriff's Department' or 'Parish Sheriff's Office.'"[220] Sheriff Smith is, for all intents and purposes, the "political subdivision" when he appears in his official capacity. Thus, "official capacity claims" against Sheriff Smith are really claims against the St. Tammany Parish Sheriff itself – a political subdivision of the State of Louisiana.[221]

However, "[l]iability under 42 U.S.C. § 1983 may not be imposed on a government entity on a theory of *respondeat superior* for the actions of government employees."[222] To the contrary, the United States Supreme Court has said that "official policy must be 'the moving force of the

---

216 *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, pgs. 1 – 2.
217 *Ky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).
218 *Id.* at 166 (emphasis original).
219 *Id.*
220 *Powe v. May*, 2003 U.S. App. LEXAS 28628, pp. 2-3 (5th Cir. 2003) (citations omitted); *see also Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 283 (5th Cir. 2002) (same proposition).
221 *See* La. Const. art V, § 27; La. R.S. 13:5102.B.
222 *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-694 (1978)).

constitutional violation in order to establish the liability of a government body under § 1983."[223] In other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[224]

The Fifth Circuit has defined official policy or custom as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[225]

To state a valid § 1983 claim against Sheriff Smith, Plaintiffs must "allege the existence of (1) an ***official*** policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[226]

In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'"[227] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[228] Deliberate indifference generally requires that a plaintiff demonstrate "at least a

---

[223] *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).
[224] *Monell*, 436 U.S. at 694.
[225] *Johnson*, 958 F. 2d at 94 (citation omitted). *See also Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a *Monell* custom requires long and frequent course of conduct).
[226] *Cain v. City of New Orleans*, 2015 U.S. Dist. LEXIS 162221, 2016 U.S. Dist. LEXIS 63527, at *20-21 (E.D. La. May 13, 2016) (emphasis original), (citing *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)).
[227] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting Roberts, 397 F.3d at 293).
[228] *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (quotation and citation omitted).

pattern of similar incidents" arising from clearly inadequate training such that it is "likely to result in the violation of constitutional rights."[229] "An injury is 'highly predictable' where the municipality 'fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'"[230]

In the present action, Plaintiff has merely made conclusory allegations that the St. Tammany Parish Sheriff's Office ("STPSO"), through Sheriff Smith and through Lacey Kelly, were permitting unconstitutional conditions of confinement pursuant to their own pervasive and longstanding policy, custom and practice of failing to supervise their agents and employees and failing to intervene to prevent their agents and employees from tolerating and propagating severely inadequate and harmful conditions.[231] Plaintiff asserts that this includes maintaining a custom practice and "*de facto* policy of new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area."[232]

In making these allegations, however, Plaintiff has simply reiterated the elements of his cause of action. Plaintiff has provided no factual allegations or evidence of any other analogous incidents involving other similarly situated persons, how those situations relate to this plaintiff in this action, the content of the Sheriff and/or Lacey Kelly's alleged policy or custom, or how the Sheriff and/or Lacey Kelly acted with deliberate indifference in this or other scenarios.[233] In fact, Plaintiff has made no specific allegations as to any actions taken by Lacey Kelly against Plaintiff, nor has Plaintiff made any allegations as to any specific 'unconstitutional' policies instituted by

---

[229] *Snyder v. Trepagnier*, 142 F. 3d 791, 798–799 (5th Cir. 1998).
[230] *Hankins v. Wheeler*, 2022 U.S. Dist. LEXIS 109198 (E.D. La. 2022)(quoting *Hutcheson*, 994 F.3d at 482−83).
[231] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶¶ 158 – 162.
[232] *Id.* at ¶ 59.
[233] *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a Monell custom requires long and frequent course of conduct).

Lacey Kelly.[234] Instead, Plaintiff's only allegations as to Lacey Kelly are that she was the warden of the STPJ during the time in which Plaintiff was held in the holding cell.

Furthermore, as discussed more fully above, Plaintiff has failed to establish any constitutional violation resulting from any alleged policy or custom of the Defendants. Therefore, because Plaintiff has failed to establish any facts constituting a *Monell* cause of action against both Sheriff Randy Smith and Lacey Kelly, all official capacity claims should be dismissed with prejudice, as no viable grounds for liability under *Monell* are stated.

**2. All claims Against Sheriff Randy Smith in his Individual Capacity should be Dismissed**

Plaintiff has asserted that he is suing Sheriff Randy Smith "in his official and individual capacities for the acts and omissions which occurred while he was Sheriff."[235] However, there are no factual allegations sufficient to support individual capacity liability as to Sheriff Smith.

To establish personal liability, a §1983 claimant must show that the defendant was personally involved in the deprivation or that the defendant's wrongful actions were causally connected to the deprivation.[236] There can be no individual capacity liability of Sheriff Smith in this case because there is no evidence that he was personally involved, present or even consulted with regard to the confinement of any of the Plaintiffs in the STPJ. Further, Plaintiff has failed to present any evidence supporting supervisory liability,[237] which requires a showing that "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train

---

[234] Plaintiff's Complaint contains no allegations as to any specific 'unconstitutional' actions taken by Lacey Kelly against any of the named Plaintiffs. (*See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1).
[235] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 17.
[236] *See Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012).
[237] Movers note that supervisory officials cannot be liable under § 1983 on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis v. City of N. Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005).

or supervise amounts to deliberate indifference."[238]

Here, Sheriff Randy Smith has no day-to-day role with respect to any individual's confinement in the STPJ, as he has delegated those day-to-day responsibilities to his subordinates.[239] Accordingly, Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in this matter.[240] Sheriff Smith has never met or spoken with any of the individual Plaintiffs with regard to their confinement in the STPJ.[241] Additionally, Sheriff Smith was never personally aware of the incarceration or the conditions of confinement of the individual Plaintiffs in the STPJ holding cells.[242] In fact, Sheriff Smith did not become aware that any of the individual Plaintiffs were ever incarcerated at the STPJ until after this suit was filed.[243]

Accordingly, because there is no evidence supporting liability as against Sheriff Smith in his individual capacity, all such claims should be dismissed with prejudice. Nonetheless, to the extent any such factual allegations are made, which is denied, Sheriff Smith further asserts the defense of qualified immunity.

Defendants further assert that Mr. Williams is unable to point to any clearly established law particularized to the facts of this case which would establish that Sheriff Smith is not entitled to qualified immunity for any claims made against him in his individual capacity. Thus, again, all such claims against him should be dismissed with prejudice.

### J. Punitive Damages

Punitive damages are available only against officers sued in their individual capacities under §1983 if it is shown that a defendant's conduct was motivated by evil motive or intent or involves

---

[238] *See Davidson v. City of Stafford*, 2017 U.S. App. LEXIS 5665, p. 23 (5th Cir. 2017) (citation omitted).
[239] *See* Exhibit 6, ¶ 6.
[240] *See* Exhibit 6, ¶ 7.
[241] *Id.* at ¶ 9.
[242] *Id.* at ¶ 8; *See also* Exhibit 7, pg. 75, lines 7 – 11; pgs. 78 – 79, lines 13 – 20; pg. 80, lines 9 – 21; pg. 83, lines 8 – 14; pg. 115, lines 11 – 15.
[243] *See* Exhibit 6, ¶ 10.

reckless or callous indifference of the federally protected rights of others.[244] It is also well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided by statute, and in the absence of such a specific statutory provision only compensatory damages may be recovered.[245] Where the pleadings filed by plaintiff fail to identify a statutory provision which allows the recovery of punitive damages for state law claims asserted against the defendant, it is appropriate to dismiss those claims.[246]

In this case, Mr. Williams, has alleged that he is entitled to punitive damages as a result of the "extreme, outrageous, and wantonly cruel" actions of Defendants, that "shock the conscience of a reasonable person."[247] As provided above in great detail, despite Plaintiff's assertions to the contrary, Plaintiff has failed to allege any conduct on behalf of Defendants that amounts to a Constitutional violation. Additionally, Plaintiff has failed to provide any evidence supporting that any of the alleged conduct was done for any punitive reason, that it was motivated by an evil intent, or involved reckless or callous indifference to Plaintiff's federally protected rights. Accordingly, Plaintiff's punitive damages claims against the Defendants must be dismissed in their entirety.

**K. Plaintiff's State Law Claims**

As previously noted above, in conjunction with his federal claim under 42 U.S.C. § 1983, Plaintiff has alleged various claims under Louisiana state law, including violations of Article I, Section 20 of the Louisiana Constitution, Negligence and *Respondeat Superior*. The Court currently maintains supplemental jurisdiction over these state-law claims because Plaintiff presented a federal question. But the Court may decline to exercise its supplemental jurisdiction

---

[244] *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed. 632 (1983); *Kolstad v. ADA*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *Simmons v. City of Mamou*, 2009 WL 3294977 (W.D.La. 2009).
[245] *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La. 1988); *Savoy v. St. Landry Parish Counsel* (W.D. La. 2008).
[246] *Savoy*, supra.
[247] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 192.

over state-law claims if it dismisses the federal claim that gives the Court original jurisdiction.[248] "When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims."[249] Accordingly, Defendants respectfully request that upon dismissal of Plaintiff's federal claims, that this Honorable Court issue an Order dismissing Plaintiff's remaining state law claims without prejudice.

**L. Defendants are Entitled to an Award of Attorney's Fees Under 42 U.S.C. § 1988**

The award of attorney's fees and costs are appropriate in favor of the prevailing party upon the dismissal of Plaintiff's federal claims pursuant to 42 U.S.C. § 1988. A prevailing defendant is entitled to an award of attorney's fees upon a finding that the plaintiff's suit is frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so, regardless of whether the suit was brought in good faith."[250] There need not be a finding of bad faith to award a prevailing defendant attorneys' fees under § 1988(b).[251] As noted by the United States Supreme Court, in enacting § 1988, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis."[252] "When a civil rights suit is lacking in any legal or factual basis..., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation."[253] "In determining whether a suit is frivolous, 'a district court should look to factors such as whether the plaintiff established a prima

---

[248] *See* 28 U.S.C. § 1367.
[249] *Cooper v. Dart Area Rapid Transit, No.*, 2015 U.S. Dist. LEXIS 174754 (N.D. Tex. Dec. 18, 2015) (Ramirez, M.J.), adopted by *Cooper v. Dart Area Rapid Transit*, 2016 U.S. Dist. LEXIS 4615 (N.D. Tex. Jan. 14, 2016).
[250] *See Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 424–425 (5th Cir. 2011).
[251] *McCully v. Stephenville Indep. Sch. Dist.*, 2013 U.S. Dist. LEXIS 179989 (N.D. Tx. 2013).
[252] *Fox v. Vice*, 563 U.S. 826, 833 (U.S. 2011), citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (U.S. 1978).
[253] *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (quoting *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987)).

facie case, whether the defendant offered to settle, and whether the court held a full trial.'"[254]

As demonstrated above, Plaintiff's civil rights action lacks adequate factual bases, and relies and relies on indisputably meritless legal theories, is frivolous, unreasonable, and without foundation, thereby warranting an award of attorneys' fees to Defendants as the prevailing party. Additionally, it is clear that Plaintiff's own testimony directly contradicts numerous allegations contained both within his complaint as well as his discovery responses. Accordingly, Defendants move this Honorable Court to award Defendants attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully suggest that the instant motion for summary judgment should be granted, finding that Defendants, Sheriff Randy Smith and Lacey Kelly, are entitled to qualified immunity and dismissing Plaintiff, Floyd Williams', claims with prejudice.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

s/ Chadwick W. Collings

**CHADWICK W. COLLINGS, T.A. # 25373**
**KENNETH R. WHITTLE # 38640**
**SARAH A. FISHER # 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

[254] *Lewis v. Smith*, 2019 LEXIS 159429 (E.D. La. 2019) (Ashe, J.) (quoting *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000)).

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Tuesday, August 08, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Chadwick W. Collings
**Chadwick W. Collings**