**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual capacity** | * | **MAGISTRATE CURRAULT**<br>**JURY DEMAND**<br>**COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC***<br>**ALL CASES** |
| **Defendants** | * | |

**************************************************************************

---

## STATEMENT OF UNDISPUTED FACTS

---

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment as to the claims of Kevin Louviere, Jr., and aver as follows:

### A. Kevin Louviere

1. On June 17, 2019, Plaintiff, Kevin Louviere, Jr., was arrested by the STPSO for two counts of monetary instrument abuse.[1]

[1] *See* pg. 7 of the Jail Records of Kevin Louviere, Jr., attached to Defendants' Motion for Summary Judgment as

2. Upon his arrest, Mr. Louviere, was booked into the STPJ and placed into male holding cell 2.[2]
3. Mr. Louviere was originally placed into Male Holding Cell 2, before being placed into Male Holding Cell 4.[3]
4. Mr. Louviere remained in the holding cells at the STPJ for a total of ten (10) days, from June 17, 2019, until June 26, 2019.[4]
5. Mr. Louviere had taken both heroin and methamphetamine prior to being booked into the STPJ by the STPSO.[5]
6. Mr. Louviere testified that it was safe to say that he was impaired at the time of his arrival at the STPJ.[6]
7. Mr. Louviere testified that he did not recall seeing any feces, urine or vomit on the floor of the holding cell.[7]
8. Mr. Louviere testified that the holding cell was cleaned every four days.[8]
9. Mr. Louviere testified that he was provided a blanket to sleep with every night.[9]
10. Mr. Louviere has testified that he was permitted to take a shower once a week.[10]
11. Mr. Louviere testified that he was able to sleep in the holding cell.[11]
12. Mr. Louviere testified that there was a toilet in the holding cell that he was able to use.[12]

Exhibit "1."
[2] *See* Inmate Cell Movement Report, attached to Defendants' Motion for Summary Judgment as Exhibit "2."
[3] *See* Exhibit 2.
[4] *Id.*
[5] *See* pg. 48, lines 15 – 21 & pg. 65, lines 12 – 19 of the Deposition Testimony of Kevin Louviere, Jr., attached to Defendants' Motion for Summary Judgment as Exhibit "3."
[6] *See* Exhibit 3, pg. 65, lines 20 – 23.
[7] *Id.* at pg. 55, lines 21 – 23.
[8] *Id.* at pg. 44, lines 18 – 21.
[9] *Id.* at pg. 57, lines 15 – 20.
[10] *Id.* at pg. 62, lines 3 – 5; pgs. 67 – 68, lines 24 – 3.
[11] *Id.* at pg. 54, lines 21 – 22.
[12] *Id.* at pg. 55, lines 10 – 13.

13. Mr. Louviere was provided a change of clean clothing after taking a shower.[13]
14. Mr. Louviere testified that he does not know the name of the detainee who battered him the first time.[14]
15. Mr. Louviere testified that he declined to press charges against the detainee who battered him the first time.[15]
16. Mr. Louviere testified that he never sought medical attention while he was in the holding cell.[16]
17. Mr. Louviere testified that he was violently battered a second time, and that the incident occurred after he had been moved into the dorm.[17]
18. Mr. Louviere testified that he did not remember the name of the individual that battered him the second time.[18]
19. Mr. Louviere testified that he informed the STPJ personnel that the second battery had taken place.[19]
20. After being informed that he had been battered, STPJ personnel removed Mr. Louviere from the cell, placing him in a hallway, before ultimately moving him to a different dorm, away from that individual who allegedly battered him.[20]
21. Mr. Louviere testified that he did not seek medical attention after being battered for the second time.[21]
22. Mr. Louviere testified that he never ate any of the spoiled ham sandwiches the STPJ

[13] *See* R. Doc. 101-12, ¶ 38.
[14] *See* Exhibit 3, pg. 29, lines 1 – 3.
[15] *Id*. at pg. 29, lines 4 – 9.
[16] *Id*. at pg. 29, lines 10 – 12.
[17] *Id*. at pg. 43, lines 1 – 10.
[18] *Id*. at pg. 43, lines 11 – 13.
[19] *Id*. at pg. 43, lines 11 – 19.
[20] *Id*. at pgs. 43-44, lines 20 – 14.
[21] *Id*. at pg. 44, lines 15 – 17.

provided.[22]

23. Mr. Louviere testified that he ate red beans and rice during his time in the holding cell.[23]
24. Mr. Louviere testified that, other than it being cold, that there were no issues with the red beans and rice.[24]
25. Mr. Louviere testified that he had been taking heroin and methamphetamine for four years prior to being booked into the STPJ.[25]
26. Mr. Louviere testified that he began undergoing heroin withdrawal two days into his confinement in the holding cell, and that he was still experiencing methamphetamine withdrawal when he was eventually released from jail.[26]
27. Mr. Louviere testified that during his time at the STPJ that he never formally complained about anything in the jail.[27]
28. Mr. Louviere testified that he never personally sought medical attention while he was in the holding cell.[28]
29. Mr. Louviere first saw STPJ medical personnel on June 17, 2019, when he underwent an initial screening.[29]
30. Mr. Louviere's medical records provide that during the initial screening, it was noted that Mr. Louviere's last HIV Viral load test was taken in February of 2019, and showed that the viral load was 'UNDETECTABLE.'[30]

---

[22] *Id*. at pg. 36, lines 1 – 4.
[23] *Id*. at pg. 36, lines 5 – 11.
[24] *Id*. at pg. 36, lines 12 – 16.
[25] *Id*. at pg. 48, lines 19 – 23.
[26] *Id*. at pg. 66, lines 18 – 24.
[27] *Id*. at pg. 34, lines 20 – 23.
[28] *Id*. at pg. 29, lines 10 – 12.
[29] *See* pgs. 16 – 25 of the Medical Records of Kevin Louviere, Jr., from the STPJ, dated June 17, 2019, attached to Defendants' Motion for Summary Judgment as Exhibit "12."
[30] *See* Exhibit 12, pg. 18.

31. Mr. Louviere saw STPJ medical personnel on June 18, 2019, when he underwent an initial behavioral health evaluation and COWS assessment test for detox treatment.[31]
32. Mr. Louviere's medical records provide that Mr. Louviere substance use history included taking "iv heroin use of 0.5g daily," "iv meth use of 0.25 daily," and "smoke thc use of 0.5 weekly."[32]
33. Mr. Louviere's medical records provide that the last time Mr. Louviere had consumed heroin, meth and thc was "upon intake."[33]
34. STPJ medical personnel prescribed Mr. Louviere acetaminophen, loperamide and meclizine to help treat his heroin and methamphetamine detox/withdrawal symptoms.[34]
35. Mr. Louviere was seen by STPJ medical personnel on June 19, 21 and 22.[35]
36. Mr. Louviere saw STPJ medical personnel on June 27, 2019, for his initial PPD test.[36]
37. On July 5, 2019, Mr. Louviere was approached by STPJ medical personnel who checked in with him to see how he was doing. Mr. Louviere noted that he was okay, requested to speak with a counselor and a referral was made.[37]
38. Mr. Louviere was seen by STPJ medical personnel on July 10, 2019, for a mental health evaluation, two (2) weeks after he was moved out of the holding cells.[38]
39. During the July 10, 2019, mental health evaluation, Mr. Louviere was educated on coping skills and cognitive distortions.[39]
40. During the July 10, 2019, mental health evaluation, that Mr. Louviere refused any

[31] *Id*. at pgs. 4 – 8; pg. 32.
[32] *Id*. at pg. 5.
[33] *Id*.
[34] *Id*. at pg. 28.
[35] *Id*. at pg. 2.
[36] *Id*. at pg. 2.
[37] *Id*. at pg. 30.
[38] *Id*. at pgs. 9 – 11.
[39] *Id*.

follow ups.[40]

41. During the July 10, 2019, mental health evaluation Plaintiff informed STPJ medical personnel that he had not been receiving HIV medication and it has been over a month since he had taken them.[41]
42. When asked about why he had not placed a sick call, Mr. Louviere stated that he had told someone but was unsure who it was.[42]
43. Mr. Louviere testified that there was no actual physical manifestation of a worsening medical condition as a result of being off of his HIV medication.[43]
44. Mr. Louviere testified that he was not hospitalized and was not home sick.[44]
45. Mr. Louviere testified that everything was proceeding according to his doctor's expectation of his continued prognosis.[45]
46. Mr. Louviere testified that he received no treatment or therapy for his mental damages resulting from his stay in the STPJ holding cell.[46]
47. Mr. Louviere testified that less than a week after he was released from the STPJ, that he went to Edgefield Rehab Center because of his narcotics abuse, and not in relation to his time in the STPJ.[47]
48. Mr. Louviere testified that he had no economic damages as a result of his time at the STPJ.[48]
49. Mr. Louviere testified that other than his mental problems, there are no other damages

---

[40] *Id*.
[41] *Id*
[42] *Id*.
[43] *See* Exhibit 3, pg. 42, lines 8 – 12.
[44] *Id*. at pg. 42, lines 13 – 17.
[45] *Id*. at pg. 42, lines 22 – 25.
[46] *Id*. at pg. 49, lines 23 – 25.
[47] *Id*. at pg. 48, lines 4 – 14; pg. 51, lines 6 – 9; pg. 52, lines 7 – 11.
[48] *Id*. at pg. 51, lines 17 – 20.

resulting from his time at the STPJ.[49]

50. Plaintiff has provided that he is not in possession of any medical records evidencing any alleged injuries.[50]

**B. Other Plaintiffs**

51. Plaintiff, Terry Matthew Hall, testified that the blankets they were provided were clean, never wet and that they were warm "like they came out the dryer...Never was wet."[51]

52. Plaintiff, Terry Matthew Hall, testified that he was provided three meals a day and that there was nothing wrong with the food.[52]

53. Plaintiff, Klabert Joseph Guillot, Sr., testified that he was provided three meals a day and that there were no issues with the food.[53]

54. Plaintiff, Ahmed Baqer, testified that during his time in the holding cell, that he was fed three time a day.[54]

**C. 30(b)(6) Testimony**

55. Defendant, Sgt. Lacey Kelly-Robertson testified that the temperature of the holding cells was kept at 68 to 69 degrees.[55]

56. Sgt. Kelly-Robertson testified that the reason for this was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick,

---

[49] *Id.* at pg. 52, lines 12 – 18.

[50] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

[51] *See* pgs. 37 – 38, lines 12 – 4, of the deposition testimony of Terry Matthew Hall, Jr., attached to Defendants' Motion for Summary Judgment as Exhibit "9."

[52] *See* Exhibit 9, pg. 21, lines 16 – 22.

[53] *See* pg. 44, lines 15 – 24, of the Deposition Testimony of Klabert Joseph Guillot, Sr., attached to Defendants' Motion for Summary Judgment as Exhibit "10."

[54] *See* pg. 63, lines 4 – 10, of the Deposition Testimony of Ahmed Baqer, attached to Defendants' Motion for Summary Judgment as Exhibit "11."

[55] *See* pg. 25, lines 8-12, of the 30(b)(6) Deposition Testimony of STSPO, attached to Defendants' Motion for Summary Judgment as Exhibit "5".

creating a safety issue for everyone at the facility.[56]

57. Sgt. Lacey Kelly-Robertson testified that the STPJ houses inmates from St. Tammany Parish, Department of Corrections ("DOC") and U.S. Marshal prisoners and serves as a hub for reentry for rehabilitative services for seven parishes.[57]

58. Sgt. Lacey Kelly-Robertson testified that the STPJ is under contract to take these DOC and federal inmates, and they are housed in a DOC general population housing unit.[58] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[59] Beds within the STPJ are specifically reserved for inmates by those categories.[60]

59. Sgt. Lacey Kelly-Robertson testified that because of these federal contracts, if there is an open bed in the DOC housing unit, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[61] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed.[62]

60. There was no punitive action or malice involved in Mr. Hall being kept in the holding cell for the amount of time that he was.[63]

61. Sgt. Lacey Kelly-Robertson testified that detainees have access to medical care 24 hours a day.[64]

62. Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of

---

[56] *See* Exhibit 5, pgs. 25-26, lines 11-5.
[57] *Id.* at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[58] *Id.* at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
[59] *Id.* at pg. 50, lines 5 – 9.
[60] *Id.* at pg. 80, lines 5 – 12.
[61] *Id.* at pg. 80, lines 13 – 17.
[62] *Id.* at pg. 165, lines 3 – 7.
[63] *Id.* at pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.
[64] *Id.* at pg. 88, lines 5 – 12; pg. 103, lines 8 – 15.

toilet paper in the cell and replace them as needed.[65]

63. Sgt. Lacey Kelly-Robertson testified that it became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[66]

64. Sgt. Lacey Kelly-Robertson testified that there was no directive that detainees were entitled to only three rolls of toilet paper per cell.[67]

### D. Sheriff Randy Smith

65. As the elected Sheriff of St. Tammany Parish, Sheriff Smith is in charge of a department of almost 800 employees, and Sheriff Smith is also responsible for the operation of the St. Tammany Parish Jail which has a capacity of approximately 1,200 inmates.[68]

66. Sheriff Smith has no day-to-day role with respect to any individual's confinement in the jail, as he has delegated those day-to-day responsibilities to his subordinates.[69]

67. Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in the above-captioned matter.[70]

68. Sheriff Smith has no first-hand knowledge about the incarceration and the conditions of confinement of any of the individual Plaintiffs in the St. Tammany Parish Jail.[71]

69. Sheriff Smith has never met nor spoken with any of the individual Plaintiffs in this matter with regard to their confinement in the St. Tammany Parish Jail.[72]

---

[65] *Id*. at pgs. 119 – 120, lines 17 – 4.
[66] *Id*.
[67] *Id*.
[68] *See* ¶ 5 of the Affidavit of Sheriff Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "7."
[69] *See* Exhibit 7, ¶ 6.
[70] *Id*. at ¶ 7.
[71] *Id*. at ¶ 8.
[72] *Id*. at ¶ 9.

70. Sheriff Smith did not become aware that any of these individual Plaintiffs were ever incarcerated at the St. Tammany Parish Jail until after this suit was filed.[73]

71. Since Sheriff Smith became Sheriff in 2016, it has always been the policy of the St. Tammany Parish Sheriff's Office to hold individuals in the holding cells only until such time as a bed opens up in one of the jail housing units.[74]

72. The jail housing units are segregated by inmate classification, specifically, these units are designated for St. Tammany Parish pre-trial detainees, Louisiana Department of Corrections ("DOC") inmates, and Federal detainees. St. Tammany Parish pre-trial detainees are not eligible for housing in either of the DOC or the Federal housing units.[75]

73. Since Sheriff Smith became Sheriff in 2016, it has never been the policy or custom of the St. Tammany Parish Sheriff's Office to hold any individual in the holding cells for any punitive reason.[76]

74. Sheriff Smith testified that due to the contract with DOC, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[77]

75. Sheriff Smith testified that there was no policy requiring individuals to be held in the holding cells longer than 48 hours.[78]

**E. Deputy Chief Brett Ibert**

76. STPJ houses pre-trial detainees for St. Tammany Parish, the Louisiana Department of

[73] *Id*. at ¶ 10.
[74] *Id*. at ¶ 11.
[75] *Id*. at ¶ 12.
[76] *Id*. at ¶ 13.
[77] *See* pg. 91, lines 13 – 20 of the Deposition Testimony of Sheriff Randy Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "8."
[78] *See* Exhibit 8, pg. 117, lines 22 – 25.

Corrections ("DOC"), Federal inmates for the U.S. Marshal's Office and also serves as a hub for reentry for rehabilitative services for seven parishes.[79]

77. The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[80]

78. Beds within the STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[81]

79. Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ. Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[82]

80. The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[83]

81. Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed. Rather, pre-trial detainees are only eligible to be moved to open beds as they become available

---

[79] *See* ¶ 7 of the Affidavit of Deputy Chief Brett Ibert, attached to Defendants' Motion for Summary Judgment as Exhibit "6."
[80] *See* Exhibit 6, ¶ 8.
[81] *Id.* at ¶ 9.
[82] *Id.* at ¶ 10.
[83] *Id.* at ¶ 11.

in the pre-trial detainee housing units within the STPJ.[84]

82. No pre-trial detainees are held in the holding cells inside the STPJ for any punitive reason. Further, none of the five plaintiffs in this matter were held in the holding cells within the STPJ for any punitive reason.[85]

**F. Previous Findings of the Court**

83. On April 11, 2020, in the matter titled *Baqer* and prior to consolidation, Judge Vitter issued her Order and Reasons for denying Plaintiffs' Motion for Preliminary Injunction, following the April 10, 2020 hearing in which testimony was provided by Mr. Baqer regarding the conditions of confinement that have been alleged by Plaintiffs to be unconstitutional during their time in the STPJ holding cells.[86]

84. In denying Plaintiffs' Motion for Preliminary Injunction, Judge Vitter held that Plaintiffs did not meet their burden of providing evidence to show a substantial likelihood of success on the merits of the allegations in their March 22, 2020 Complaint regarding the conditions of their confinement in the holding cells at the STPJ violating their constitutional rights.[87]

85. Judge Vitter held that, "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[88]

86. Judge Vitter held that "While Plaintiffs argued that the Court should look to the 'cumulative record' to establish punitive intent and to show the likelihood of success

---

[84] *Id*. at ¶ 12.
[85] *Id*. at ¶ 13.
[86] *See* Order and Reasons (R. Doc. 40, pg. 31).
[87] *See* R. Doc. 40, pg. 27.
[88] *Id.* at pg. 31.

on the merits of their claims, they were unable to point to any specific action by any of the Defendants or jail staff to support that argument, even when the Court specifically asked to be directed to such action."[89]

87. Judge Vitter held that "Plaintiffs have failed to establish conditions which are so egregious that would offend "contemporary standards of decency."[90]

88. Judge Vitter held that, "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[91]

89. Judge Vitter held that, "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent. Instead, the Court finds the facts and analysis of *Allen* are directly on point. Further, Plaintiffs have failed to establish a constitutional violation."[92]

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

s/ Chadwick W. Collings
**CHADWICK W. COLLINGS, T.A. # 25373**
**KENNETH R. WHITTLE # 38640**
**SARAH A. FISHER # 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

[89] *Id*.
[90] *Id*.
[91] *Id*. at pgs. 31 – 32.
[92] *Id*. at pg. 32.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Tuesday, August 08, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Chadwick W. Collings
**Chadwick W. Collings**