**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR.** | * | **NO. 2020-CV-00980** |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| **VERSUS** | * | |
| | * | |
| **ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL,** | * | **MAGISTRATE CURRAULT** |
| **ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official** | * | **JURY DEMAND** |
| **and individual capacity, RODNEY J. STRAIN, in his official and individual** | * | |
| **capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual** | * | **COMBINED WITH *Louviere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC*** |
| **and individual capacity, and LACEY KELLY, in her official and individual** | * | |
| **capacity** | * | **ALL CASES** |
| **Defendants** | * | |

************************************************************************

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF KEVIN LOUVIERE, JR.**

---

**MAY IT PLEASE THE COURT:**

**NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56:

## I. ALLEGATIONS OF FACT

### A. Procedural Background

Plaintiff, Kevin Louviere, filed the instant action on March 22, 2020, in which he has alleged violations of his civil rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to

the United States Constitution, and the laws of the State of Louisiana.[1] Plaintiff's complaint challenges the conditions of their pre-trial detainment, and in particular, alleges the following theories of recovery stemming from the time in which he was detained in the holding cells at the St. Tammany Parish Jail ("STPJ"):

1. Violations of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana;

2. Violations of Article I, Section 20 of the Louisiana Constitution;

3. Negligence; and

4. Liability against Defendants Smith, Strain, Longino and Kelly pursuant to *Respondeat Superior*.[2]

Plaintiff originally named as Defendants not only the current Sheriff of St. Tammany Parish, Randy Smith, and the warden of the St. Tammany Parish Jail at all times relevant to their detentions, Lacey Kelly, but also Sheriff Smith's predecessor-in-office, Rodney Strain, as well as Major Kelly's predecessor, Mr. Greg Longino.[3] The Court subsequently dismissed Plaintiffs' claims against Rodney Strain and Greg Longino with prejudice on March 22, 2021.[4] On April 26, 2021, this matter was consolidated with *Baqer et. al. v. St. Tammany Parish Government, et. al.*, No. 2:20-cv-00980-DJP-DPC, and Plaintiffs' original motions to certify class, which were filed in both the instant matter and in *Louviere*, were denied without prejudice.[5]

**B. Factual Background**

On June 17, 2019, Plaintiff, Kevin Louviere, Jr., was arrested by the STPSO for two counts

[1] *See* Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1.
[2] All claims against Defendants, Strain and Longino, have been dismissed (*See* R. Doc. 149; *See also* 2:20-cv-01840-WBV-DPC, R. Doc. 60).
[3] *Id*. (Lacey Kelly was the warden of the STPJ during the time in which Plaintiffs were held in the holding cells, from 2019 through 2020).
[4] *See* R. Doc. 149.
[5] *See* R. Doc. 152.

of monetary instrument abuse.[6] Upon his arrest, Mr. Louviere, was booked into the STPJ and placed in male holding cell 2.[7] Mr. Louviere remained in the holding cells at the STPJ for a total of ten (10) days, from June 17, 2019, until June 26, 2019.[8] Prior to being admitted into the STPJ, Mr. Louviere had taken both heroin and methamphetamine,[9] leaving him impaired at the time of his arrival at the STPJ.[10]

Despite having admitted to being impaired and undergoing withdrawal of both heroin and methamphetamine throughout the entirety of his stay at the STPJ, Mr. Louviere has alleged that during his time in the STPJ holding cell, that he was subjected to the following conditions of confinement, which he claims violated his constitutional rights:

(1) The length of time he was kept in the holding cell;
(2) Overcrowding of the holding cell;
(3) Unsanitary conditions within the holding cell;
(4) Being forced to sleep on the concrete floor of the holding cell;
(5) Limited and/or no access to blankets at night;
(6) Limited access to showers;
(7) Limited and/or no access to clean clothing;
(8) Denial of the ability to participate in recreational activities and/or exercise;
(9) Cold temperature within the holding cell;
(10) Refusal of STPJ personnel to prevent Mr. Louviere from being battered by other detainees;
(11) Refusal of STPJ personnel to provide medical care to Mr. Louviere after he was battered by other detainees;
(12) Only being provided meals consisting of spoiled, inedible food;
(13) Denial of needed medication; and
(14) Lack of medical treatment.

As will be discussed in further detail below, Plaintiff's claims, despite containing multiple contradictions within his Complaint, sworn Declaration and sworn testimony, are not actionable

---

[6] *See* pg. 7 of the Jail Records of Kevin Louviere, Jr., attached herein as Exhibit "1."
[7] *See* Inmate Cell Movement Report, attached herein as Exhibit "2."
[8] *See* Exhibit 2.
[9] *See* pg. 48, lines 15 – 21 & pg. 65, lines 12 – 19 of the Deposition Testimony of Kevin Louviere, Jr., attached herein as Exhibit "3."
[10] *See* Exhibit 3, pg. 65, lines 20 – 23.

as they consist of allegations and complaints that are not *per se* unconstitutional. Plaintiff has failed to present any evidence establishing that any of the alleged treatment and/or deprivations were done with punitive intent on behalf of the Defendants. Additionally, Plaintiff's claims, by his own admissions, are not actionable, as Plaintiff's testimony establishes that during his time at the STPJ,[11] he was **never** denied and/or deprived of life's necessities but was instead continually provided with them. Accordingly, this Honorable Court should dismiss Plaintiff's claims against Sheriff Randy Smith and Lacey Kelly with prejudice.

## II. LAW AND ARGUMENT

### A. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56 governs the motion for summary judgment in federal court. The rule mandates that a granting of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]

As a general rule, the moving party has the initial burden to establish that there are no issues of material fact and that the mover is entitled to judgment in its favor as a matter of law.[13] Only disputed facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.[14] If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists.[15] A fact is material only when it might affect the outcome of the suit under the governing law.[16] In other words, the mere

[11] A detailed overview of the STPJ, as well as Plaintiffs' complaints, can be reviewed in the Expert Report of Lenard Vare, attached herein as Exhibit "4."
[12] Fed. R. Civ. P. 56(a); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).
[13] *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District*, 349 F.3d 244, 246-47 (5th Cir. 2003).
[14] *Condiff v. R.D. Werner Company, Inc.*, 2003 WL 21977167, *1 (E.D. La. 2003).
[15] *New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776, 780 (E.D. La 2003).
[16] *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006); *see also Thomas v. Barton Lodge II, Ltd.,* 174 F.3d

existence of some alleged factual dispute will not defeat an otherwise properly supported motion.

In practice, the Fifth Circuit requires the nonmoving party to tender what it has called "significant" and "probative" evidence to rebut a properly supported summary judgment motion.[17] This burden placed on the non-mover to offer countervailing evidence is a heavy one. In fact, one court has expressed, in rather blunt terms, that summary judgment is the stage of the proceedings for parties "to put up or shut up."[18] "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[19] Additionally, while all reasonable inferences are drawn in favor of the nonmoving party, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[20]

**B. Summary Judgment Standard for Qualified Immunity**

The general rules regarding summary judgment are even further manifest when dealing with claims asserted under § 1983 where the defendant raises qualified immunity as a defense, as Defendants have done here. As summarized by one court:

> The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, **it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised**. An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact

636, 644 (5th Cir. 1999) "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

[17] *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).

[18] *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2nd Cir. 2000); *see also*, *Ankum v. White Consolidated Industries*, 1992 WL 236961, *5 (E.D. La. 1992) (Sear, J.) ("The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask the other party to 'put up for shut up.' The opposing party then must go beyond the pleadings and offer proof of his claim.") (emphasis added).

[19] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[20] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

regarding the reasonableness of the official's conduct.[21]

"[T]he qualified-immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[22] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" in situations in which "existing precedent…placed the statutory or constitutional question beyond debate."[23] To defeat the defense of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[24] "The movant, on the other hand, can support its motion by relying solely on the pleadings."[25]

Qualified immunity exists to ensure that "fear of liability will not unduly inhibit officials in the discharge of their duties."[26] As noted by the United States Supreme Court, while qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[27] This "clearly established law should not be defined 'at a high level of generality.'"[28] Instead, it must be "particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of

[21] *Tolan v. Cotton*, 854 F.Supp.2d 444, 463 (S.D. Tex. 2012)(emphasis added)(internal citations omitted), affirmed 713 F.3d 299 (5th Cir. 2013), reversed on other grounds, 134 S. Ct. 1861, 188 L.Ed.2d 895 (2014) (emphasis added).
[22] *Dolan v. Parish of St. Tammany*, 2014 U.S. Dist. LEXIS 26200 *citing Behrens v. Pelletier*, 516 U.S. 299, 305 (1996).
[23] *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).
[24] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[25] *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007).
[26] *Camreta v. Greene*, 563 U.S. 692, 705 (2011) *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[27] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[28] *See White*, 137 S. Ct. at 552.

extremely abstract rights."[29] The "statutory or constitutional question" must be "beyond debate"[30] and so clearly established that a "reasonably official would have understood that what he is doing violates that right."[31]

This high burden requires Plaintiff to identify a "case where an officer acting under similar circumstances as [each of the defendants] was held to have violated [a person's constitutional rights]."[32] "If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages."[33] This notice is paramount, and the Supreme Court has in the past questioned a party for not submitting any Supreme Court cases that address the facts at bar and has even openly mused about the value of Circuit precedent in clearly establishing law.[34] It is for this reason that the Supreme Court has stated that "[m]any Courts of Appeals therefore decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity," as such decisions do not "settle constitutional standards or prevent repeated claims of qualified immunity."[35] This follows from the general practice of *stare decisis* whereby district court decisions are not binding authority "in either a different judicial district, the same judicial district, or even upon the same judge in a different case."[36] As will be shown below, Plaintiff fails to identify a violation of any clearly established, protected right, and therefore, Defendants are entitled to qualified immunity and summary judgment.

---

[29] *Id.*
[30] *Rivas-Villegas v. Cortesluna,* 2021 U.S. LEXIS 5311 at *6 (Oct. 18, 2021) *citing White v. Pauly,* 137 S. Ct. 548, 551 (2017).
[31] *Id citing Mullenix v. Luna* 577 U.S. 7, 11 (2015).
[32] *Id.*
[33] *Camreta* 563 U.S. at 705.
[34] *Rivas-Villegas,* U.S. LEXIS 5211 at *7.
[35] *Camreta* 563 U.S. at 709; *see also Crane v. Utah Dep't of corr.* 2021 U.S. App. LEXIS 31681 at *7 (10th Cir. 10/21/21); *Matusick v. Erie Cty. Water Auth.,* 757 F.3d 31, 61 (2d Cir. 2014); *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 545 (4th Cir. 2017).
[36] *Camreta* 563 U.S. at 709; *see also* 18 Moore's Federal Practice - Civil § 134.02[1][d] (2021).

**C. Qualified Immunity Should be Determined on Summary Judgment**

The issue of qualified immunity is uniquely ripe for disposition via summary judgment. This is why a district court denial of summary judgment to a defendant on the issue of qualified immunity is immediately appealable when the "issue appealed concerned…whether or not certain given facts show a violation of a clearly established law."[37]

**D. Plaintiff has Failed to State any Actionable Claims with regard to the Alleged 'Conditions of Confinement'**

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[38] or "episodic act or omission."[39] The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment."[40] "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless"[41] "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose.[42] "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules."[43]

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of

[37] *Johnson v. Jones,* 515 U.S. 304, 304 (1995) (citation omitted).
[38] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker*, 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan*, 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught*, 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry*, 288 U.S. App. D.C. 311, 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell*, 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins*, 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson*, 651 F.2d 96 (2d Cir.1981) (overcrowding).
[39] *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (en banc).
[40] *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir.1996).
[41] *Bell*, 441 U.S. at 539.
[42] *Id.* at 561.
[43] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646 (5th Cir.1996).

confinement on pretrial detainees that constitute punishment," as opposed to simple detention while awaiting trial.[44] Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences.[45] Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.[46] The Fifth Circuit has also recognized that, "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."[47] When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights.[48] When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate.[49] Deliberate indifference is established by showing that the defendant officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.[50]

### 1. Time in the Holding Cells and alleged Violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code

Plaintiff, Kevin Louviere, asserts that the length of time that he was held in the holding cells was unconstitutional.[51] Mr. Louviere asserts that because he was held in the holding cell for

---

[44] *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).
[45] *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.
[46] *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318 (E.D. La. Mar. 19, 2015).
[47] *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).
[48] *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).
[49] *Scott*, 114 F.3d at 53-54.
[50] *See Harrell v. Gusman*, 2016 U.S. Dist. LEXIS 39549 (E.D. La. March 25, 2016), quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998); *See also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).
[51] Kevin Louviere was detained in the holding cells for 10 days.

longer than 48 hours, that Defendants violated Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code.[52] Plaintiff's claim under the Louisiana Administrative Code, however, does not provide relief under 42 U.S.C. § 1983, which requires that Plaintiff show that there is a violation of federal law. As this Circuit has previously held, a violation of a state administrative code is not, in and of itself, a basis for federal relief.[53]

Additionally, this Court has previously ruled that a Plaintiff being held in a holding cell for 18 days was such a short period of time that it was insufficient to rise to the level of a constitutional violation.[54] Here, the length of time that Mr. Louviere was held in the holding cell was for 10 days. As previously noted by this Court, the short period of time in which Mr. Louviere was held in the holding cell is insufficient to rise to the level of a constitutional violation. Accordingly, Plaintiff's allegation regarding the length of time that he was held in the holding cell amounts to nothing more than a *de minimis* inconvenience which does not constitute "punishment" or otherwise rise to the level of a constitutional violation.[55] There was no punitive intent or malice involved in Mr. Louviere being kept in the holding cell.[56] There was also no policy requiring individuals to be held in the holding cells longer than 48 hours.[57] Additionally, as of April 11,

---

[52] *See* Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1.

[53] *See, e.g., Tweedy v. Boggs*, 1993 U.S. App. LEXIS 40937 (5th Cir. Jan. 5, 1993); *See Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018); *See also Mathews v. Bowie Cty.*, 2013 U.S. Dist. LEXIS 130978 (E.D. Tex. Sept. 13, 2013).

[54] *Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (finding that detainee's eighteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *See also Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. July 31, 2020)(finding that detainee's seventeen day confinement in the holding cell to be insufficient to rise to the level of a constitutional violation), adopted, *Terry v. Smith*, 2021 U.S. Dist. LEXIS 12680 (E.D. La., Jan. 2021); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018) (finding that detainee's fifteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018).

[55] *Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. July 2020), adopted, *Terry v. Smith*, 2021 U.S. Dist. LEXIS 12680 (E.D. La., Jan. 2021).

[56] *See* pg. 161, lines 10 – 14; pg. 166, lines 1 – 6, of the 30(b)(6) testimony of the STPSO, attached herein as Exhibit "5"; *See* ¶ 13 of the Affidavit of Deputy Chief Brett Ibert, attached herein as Exhibit "6"; *See also* ¶ 13 of the Affidavit of Sheriff Randy Smith, attached herein as Exhibit "7."

[57] *See* pg. 117, lines 22 – 25 of the Deposition Testimony of Sheriff Randy Smith, attached herein as Exhibit "8."

2020, prior to the consolidation of this matter with the *Baqer* matter, this Honorable Court issued a ruling finding that there was no evidence of punitive intent with regard to all of the plaintiffs' claims as to the conditions of confinement.[58] Accordingly, this Honorable Court should dismiss Plaintiff's claim regarding the length of time that he was held in the holding cells, including any alleged violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code with prejudice for failing to state a claim on which relief may be granted.[59]

**2. Overcrowding in the Holding Cells**

Mr. Louviere further complains that the alleged overcrowding of the holding cells during the time he was detained at the STPJ constituted cruel and unusual conditions of confinement. Such conditions of confinement, however, are not unconstitutional, and the Courts have consistently provided that overcrowding of holding cells does not present a legally cognizable claim.[60] This was previously noted by the District Court, prior to consolidation of the *Louviere* and *Baqer* matters, in its denial of Plaintiffs' Motion for Preliminary Injunction, wherein Judge Vitter held that: "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[61] Judge Vitter further provided that after reviewing the record as a whole, no evidence of any such punitive intent could be found.[62]

Here, as previously noted by Judge Vitter, Plaintiff has failed to provide any evidence

---

[58] *See* R. Doc. 40, pg. 32, providing that: "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent…Further, Plaintiffs have failed to establish a constitutional violation."

[59] *Smith*, 2020 U.S. Dist. LEXIS 248351, at *5. (Plaintiff's complaint regarding being held in the holding cell for 17 days was dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted).

[60] *See Rhodes v. Chapman*, 452 U.S. 337, 347-50, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981); *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Chavera v. Allison*, 2009 U.S. Dist. LEXIS 32177 (S.D. Miss. 4/15/09); *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 U.S. Dist. LEXIS 122 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 U.S. Dist. LEXIS 61160 (N.D. Miss. 2008).

[61] *See* Order and Reasons (R. Doc. 40, pg. 31).

[62] *See* R. Doc. 40, pg. 32, providing that: "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent…Further, Plaintiffs have failed to establish a constitutional violation."

whatsoever, that the alleged overcrowding of the holding cells was done with punitive intent. Accordingly, because Plaintiff has failed to establish that the alleged overcrowding of the holding cells was done with punitive intent on behalf of the Defendants, this Honorable Court must dismiss Plaintiff's claim as to the alleged overcrowding of the holding cells with prejudice for failing to state a claim on which relief may be granted.

**3. Unsanitary Conditions**

Mr. Louviere has alleged that during his ten (10) day stay in the holding cell, that he was faced with the following unsanitary conditions constituting a violation of his constitutional rights: (1) having to share a dirty toilet and sink with other detainees;[63] (2) being unable to wash his hands with soap in the cell;[64] (3) the presence of toilet paper hanging from the ceiling;[65] (4) the presence of old food, urine, feces, dirty toilet paper, vomit, used bandages, trash, water, dust, puss and blood on the floor;[66] that (5) the holding cell smelled of trash and feces;[67] and that (6) they were not provided enough toilet paper.[68]

Regarding the unsanitary conditions alleged by the Plaintiff, Defendants note that some of the alleged unsanitary conditions, which Mr. Louviere has alleged, under penalty of perjury in his Declaration, are directly contradicted by his sworn testimony. For example, Mr. Louviere's sworn Declaration asserts the following:

> "27. The cell had old food, urine, feces, dirty toilet paper, vomit, used bandages, trash, and water on the floor."[69]

Mr. Louviere's sworn Declaration, however, contradicts his sworn deposition testimony,

---

[63] *See* R. Doc. 101-12, ¶ 13.
[64] *See* R. Doc. 101-12, ¶¶ 22 – 23.
[65] *See* R. Doc. 101-12, ¶ 24.
[66] *See* R. Doc. 101-12, ¶ 27; *See also* Exhibit 3, pg. 55, lines 3 – 7.
[67] *See* Exhibit 3, pg. 56, lines 5 – 8.
[68] *See* R. Doc. 101-12, ¶ 15.
[69] *See* R. Doc. 101-12, ¶ 27.

wherein he testified that he does not recall seeing any feces, urine or vomit on the floor of the holding cell.[70]

> Q Did any of those substances, the feces, urine or vomit, end up on the floor?
>
> A Not that I can recall. [71]

Additionally, according to Mr. Louviere's sworn Declaration, the cell was never cleaned, and was only swept on two occasions.[72] Mr. Louviere's sworn testimony, however, provides that the cell was cleaned every four days,[73] while the allegations contained within Mr. Louviere's Complaint also assert that the cell was cleaned every four days.[74]

Moreover, regarding Mr. Louviere's allegations of unsanitary conditions as a whole, this Court, as well as Fifth Circuit, has held that such short-term sanitation problems as described by Mr. Louviere above, although admittedly unpleasant, do not amount to constitutional violations.[75] Additionally, as the Eastern District has previously noted, the Constitution does not "require that prisons be completely sanitized or even as clean or free from potential hazards as one's own

---

[70] *See* Exhibit 3, pg. 55, lines 20 – 23.
[71] *Id.* at pg. 55, lines 21 – 23.
[72] *See* R. Doc. 101-12, ¶ 30.
[73] *See* Exhibit 3, pg. 44, lines 18 – 21.
[74] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 108.
[75] *Williamson v. Larpenter*, 2019 U.S. Dist. LEXIS 133628 (E.D. La. July 2019), adopted, 2019 U.S. Dist. LEXIS 132383 (E.D. La., Aug. 2019); *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); accord *Benshoof v. Layton*, 351 Fed. Appx. 274 (10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004); *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell)(citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)(no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651 (E.D. La. Mar. 8, 2010) (citing *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."); *Magee v. Crowe*, 2010 U.S. Dist. LEXIS 14813 (E.D. La. Feb. 19, 2010) (stating that a "short-term sanitation…problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).

home might be."[76] Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation.[77]

In this case, no such 'extreme circumstances' were present during Mr. Louviere's stay in the holding cell. Even if this Honorable Court were to disregard the direct contradictions contained within Mr. Louviere's sworn Declaration and sworn deposition testimony, Mr. Louviere's complaint of unsanitary conditions consisting of having to share a dirty toilet and sink with other detainees, being unable to wash his hands with soap in the cell, the presence of toilet paper hanging from the ceiling, the presence of old food, urine, feces, dirty toilet paper, vomit, used bandages, trash, water, dust, puss and blood on the floor, that the holding cell smelled of trash and feces and that they were not provided enough toilet paper do not constitute extreme circumstances arising to the level of a constitutional violation. This is especially true considering that Mr. Louviere testified that the cells were cleaned every four days,[78] and that the trash in the cell was picked up.[79] Mr. Louviere additionally testified that there was no presence of feces, urine or vomit on the floor of the holding cell.[80]

Additionally, with regard to Mr. Louviere's claim that they were not provided enough toilet paper, Sgt. Lacey Kelly-Robertson testified that it is common practice to place five rolls of toilet paper in the cell and replace them as needed.[81] It became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[82] Additionally, there was no directive

---

[76] *Allen v. St. Tammany Parish,* 2018 U.S. Dist. LEXIS 12254 at *9 (E.D. La. Jan. 2, 2018) *citing McAllister v. Strain,* U.S. Dist. LEXIS 120101 at *3 (E.D. La. Dec. 23, 2009).

[77] *Harold v. Tangipahoa Parish Sheriff Office*, 2021 U.S. Dist. LEXIS 129887 (E.D. La. June 2021), adopted, 2021 U.S. Dist. LEXIS 128973, (E.D. La. July 2021).

[78] *See* Exhibit 3, pg. 44, lines 18 – 21.

[79] *Id*. at pg. 25, lines 11 – 15.

[80] *Id*. at pg. 55, lines 21 – 23.

[81] *See* Exhibit 5, pgs. 119 – 120, lines 17 – 4.

[82] *Id*.

that detainees were entitled to only three rolls of toilet paper per cell all the time.[83]

Furthermore, prior to consolidation of the *Louviere* and *Baqer* matters, this Court heard testimony and allegations as to the very same unsanitary conditions within the holding cell, and issued a ruling providing that:

> "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[84]

Accordingly, Mr. Louviere's complaint regarding the unsanitary conditions within the holding cell is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**4. Forced to Sleep on Concrete Floor**

Mr. Louviere has further asserted that during his time in the holding cell, that he was forced to sleep on the bare concrete floor in the cell, despite the availability of cell space and open beds elsewhere within the STPJ.[85]

This Court, however, has continually held that the provision of bedding is within those matters committed to prison administrators' sound discretion, and that the deprivation of bedding for a limited period of time is not *per se* unconstitutional.[86] Similar deprivations have repeatedly been found to be constitutional.[87] Additionally, numerous Circuits have held that the deprivation

[83] *Id.*
[84] *See* R. Doc. 40, pgs. 31 – 32.
[85] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 100-101; *See* R. Doc. 101-12, ¶ 32; *See also*, Exhibit 3, pg. 54, lines 21 – 24.
[86] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. April 1, 2020), citing *Walton v. Topps*, 2012 U.S. Dist. LEXIS 127999 (E.D. La. July 2012) (citation omitted), adopted, 2012 U.S. Dist. LEXIS 128415 (E.D. La. Sept. 2012).
[87] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (eighteen days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La., Jan. 2018) (finding that detainee's fifteen-day confinement in the St. Tammany Parish Jail's holding cells was too brief a period to support a constitutional claim), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La., Jan. 2018); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. July 13, 2012) (seventeen days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. Aug. 14, 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. June 2011) (sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. Aug. 2011).

of a mattress for a limited period of time is not *per se* unconstitutional.[88] The Fifth Circuit has also held that the Constitution contains no authority requiring detainees be provided elevated beds.[89]

In this case, Mr. Louviere was kept in the holding cell for only ten (10) days, during which time he alleges that he was not provided with a bed. As previously noted above, however, the deprivation of bedding for a limited period of time, including periods of time longer than Mr. Louviere's stay in the holding cell, is not *per se* unconstitutional.[90]

Mr. Louviere has further complained that he was forced to remain in the holding cell and sleep on the bare concrete floor or the bench space in the cell, despite the STPJ having numerous open beds.[91] However, as noted during the 30(b)(6) deposition testimony of the STPSO, there was no punitive or malicious reason for Mr. Louviere not being provided one of the empty beds located in other parts of the STPJ that were reserved for Department of Corrections ("DOC") and/or federal detainees.[92] As Sgt. Kelly-Robertson explained, the STPJ houses inmates from St. Tammany

---

[88] *See*, *Fischer v. Ellegood*, 238 Fed. Appx. 428 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); *Stephens v. Cottey*, 145 Fed. Appx. 179 (7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); *Grissom v. Davis*, 55 Fed. Appx. 756 (6th Cir. 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); *Schroeder v. Kaplan*, 1995 U.S. App. LEXIS 18915 (9th Cir. July 6, 1995) (sleeping on floor without mattress for four weeks was not found to be a Constitutional violation).

[89] *See Gaines v. McDonald*, 577 Fed. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); accord *Sanders v. Kingston*, 53 Fed. App'x 781, 783 (7th Cir. 2002); *Finfrock v. Jordan*, 1996 U.S. App. LEXIS 32817 (7th Cir. Dec. 6, 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Williams v. Gusman*, 2015 U.S. Dist. LEXIS 139805 (E.D. La. Oct. 14, 2015); *Walcott v. Terrebonne Par. Consol. Gov't*, 2017 U.S. Dist. LEXIS 204062 (E.D. La. Sept. 2017), adopted, 2017 U.S. Dist. LEXIS 203742 (E.D. La., Dec. 12, 2017).

[90] *See Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. Apr. 2020) (eighteen days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La., May 2020); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. July 13, 2012) (seventeen days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. Aug. 14, 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. June 2011) (sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. Aug. 2011).

[91] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 101.

[92] *See* Exhibit 5, pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.

Parish, DOC and U.S. Marshal prisoners and also serves as a hub for reentry for rehabilitative services for seven parishes.[93] The STPJ is under contract to take these DOC and federal inmates, and they are housed in DOC and federal housing units within the STPJ.[94] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[95] Beds within the STPJ are specifically reserved for inmates by those categories.[96] Because of these contracts, if there is an open bed in DOC, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[97] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed in that federal housing unit.[98] Therefore, even if there are open beds throughout other parts of the STPJ that are dedicated under contract to DOC and/or federal inmates, those parish detainees who are in the holding cell would not be able to access those open beds as they are reserved under contract to DOC and/or federal inmates.

The 30(b)(6) deposition testimony of the STPSO is further supported by Sheriff Randy Smith who attested that as the Sheriff, it has always been his policy to hold individuals in the holding cells only until a space opened up in the jail dormitories, and no individual was kept in the holding cell for any punitive reason.[99] Sheriff Smith further testified that due to the contracts for DOC and Federal inmates, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[100]

Additionally Brett Ibert, Deputy Chief over Corrections, further attested that no pre-trial

---

93 *Id.* at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
94 *Id.* at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
95 *Id.* at pg. 50, lines 5 – 9.
96 *Id.* at pg. 80, lines 5 – 12.
97 *Id.* at pg. 80, lines 13 – 17.
98 *Id.* at pg. 165, lines 3 – 7.
99 *See* Exhibit 7, ¶¶ 11, 13.
100 *See* Exhibit 8, pg. 91, lines 13 – 20.

detainees, including the five Plaintiffs in the instant matter, are held in the holding cells inside the STPJ for any punitive reason.[101] The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[102] Beds within STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[103] The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[104] Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ.[105] Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[106] Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed.[107] Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[108]

Furthermore, prior to consolidation of the *Louviere* and *Baqer* matters, this Honorable Court heard allegations and testimony regarding Mr. Baqer being forced to sleep on the concrete floor of the holding cell despite the availability of cell space and beds within the prison and has

---

[101] *See* Exhibit 6, ¶ 13.
[102] *Id*. at ¶ 8.
[103] *Id*. at ¶ 9.
[104] *Id*. at ¶ 11.
[105] *Id*. at ¶ 10.
[106] *Id*.
[107] *Id*. at ¶ 12.
[108] *Id*.

already issued a ruling finding there to be no evidence of punitive intent.[109]

Accordingly, for the reasons provided above, Mr. Louviere's complaint that he was not provided a bedding or mattress during his time in the holding cell is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**5. Limited Access to Blankets**

Regarding complaints concerning blankets being withheld or provided for only a short period of time, the Fifth Circuit has previously held that the denial of a blanket for 2 ½ days to an inmate with a cold who was confined indoors in Northern Mississippi in November did not constitute a deprivation of the minimal civilized measures of life's necessities.[110] Additionally, the Eastern District has continually held that a temporary, non-punitive denial of a blanket is not sufficiently egregious to violate the Constitution.[111]

In this case, Mr. Louviere has alleged that each night he was provided a blanket for only a limited amount of time to sleep with.[112] Mr. Louviere has further alleged that the blankets that detainees were provided were always damp.[113]

With regard to Plaintiff's allegations, Defendants note that no other Plaintiff in this matter has alleged that the blankets they were provided with were damp. To the contrary, Plaintiff, Terry Matthew Hall, Jr. testified that the blankets they were provided were "…warm, like they came out the dryer...Never was wet."[114]

---

[109] *See* R. Doc. 40, pg. 3, 32.
[110] *See Phillips v. East*, 81 Fed. Appx. 483, 485 (5th Cir. 2003).
[111] *See Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318, at *10 (E.D. La. Feb. 27, 2015), citing *Carter v. Strain*, 2009 U.S. Dist. LEXIS 91301 (E.D. La. Oct. 1, 2009); *McAllister v. Strain*, 2009 U.S. Dist. LEXIS 15248 (E.D. La. Feb. 25, 2009).
[112] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 102; *See* R. Doc. 101-12, ¶ 33; *See also*, Exhibit 3, pg. 57, lines 15 – 25.
[113] *See* R. Doc. 101-12, ¶ 34.
[114] *See* pgs. 37 – 38, lines 12 – 4, of the deposition testimony of Terry Matthew Hall, Jr., attached herein as Exhibit

Additionally, Mr. Louviere, has failed to provide any evidence whatsoever that he was denied a blanket, or that the alleged denial and/or removal of the blanket was for punitive reasons. Instead, Mr. Louviere has testified that he was provided a blanket every night, and that the reason the blankets were allegedly taken away from detainees at 5 a.m., was not for any punitive reason, but was because there were not enough blankets within the STPJ.[115]

> Q Do you know why it was that they waited until 3:00 and then took them away at 5:00?
>
> A They claimed it was because they didn't have enough blankets. They as in the deputies.

[116]

Accordingly, Mr. Louviere's complaint regarding his alleged limited use of a blanket at night is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

### 6. Access to Showers and Clean Clothing

The Constitution does not require inmates have daily or even weekly showers.[117] Additionally, the Eastern District has held that the denial of shower access for 8 days does not rise to the level of a constitutional violation.[118]

In this case, Mr. Louviere has testified that during his ten (10) day stay in the holding cell, that he was permitted to take a shower once a week.[119] Accordingly, Mr. Louviere was permitted

---

"9."

[115] *See* Exhibit 3, pg. 58, lines 1 – 6.

[116] *Id.* at pg. 58, lines 1 – 6.

[117] *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. January 15, 2021), citing *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); See also *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment."); *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him).

[118] *See Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. January 15, 2021).

[119] *See* Exhibit 3, pg. 62, lines 3 – 5; pgs. 67 – 68, lines 24 – 3.

to take a shower on two (2) occasions.

Mr. Louviere's allegations regarding being provided clean clothing, however, are also inconsistent, as the allegations contained within Mr. Louviere's Complaint, sworn Declaration and sworn deposition testimony again directly conflict with one another. For example, the allegations contained within Mr. Louviere's Complaint and his Sworn Declaration both provide that Mr. Louviere was provided a change of clean clothing after showering.[120]

However, when asked during his deposition testimony whether or not he was provided a change of clean clothing after his shower, Mr. Louviere contradicted his previous Sworn Declaration and allegations contained within his Complaint, and instead testified that he never received a change of clean clothing during his time in the holding cell.[121]

A I showered twice during the 13 days
that I was there.
Q Did you ever get clean clothes?
A No.
Q How about after your showers?
A No. [122]

Taking the allegations contained within Mr. Louviere's sworn Declaration and Complaint as true, Mr. Louviere, by his own admission, was permitted to take a shower on at least two occasions during his ten (10) day stay in the holding cell, despite there being no Constitutional requirement that inmates have daily or even weekly showers, and he was provided a change of clothing after each shower. While Mr. Louviere may be unsatisfied with the number of times he was permitted to take a shower during his time in the holding cell, such unsatisfaction does not

---

[120] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 104; *See also* R. Doc. 101-12, ¶ 38, providing: "38. Inmates were provided clean clothes only after their shower."
[121] *See* Exhibit 3, pg. 62, lines 4 – 9.
[122] *Id.* at pg. 62, lines 4 – 9.

create a cause of action for which legal redress is available. Instead, the temporary conditions experienced by Mr. Louviere during his time in the holding cell do not rise to the level of a constitutional violation and are instead similar to those "…§1983 claims of temporary conditions regularly rejected by courts in this district."[123] Accordingly, Mr. Louviere's complaint as to the number of times he was allowed to shower during his time in the holding cell is nothing more than an unactionable complaint with no legal basis. Additionally, Mr. Louviere's complaint as to whether or not he received clean clothing during his time in the holding cell, while containing obvious contradictions between the allegations contained within his Complaint, his sworn Declaration and testimony, is also nothing more than another complaint with no legal basis.

### 7. Denial of Recreation/Exercise

The Fifth Circuit has held that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation."[124] Accordingly, in order to succeed on a claim of denial of exercise, Plaintiff must show that the denial adversely affected his health.[125]

In this case, Mr. Louviere has alleged that he was not provided an opportunity to engage in any recreational activity and/or exercise.[126] As previously noted, the deprivation of exercise is not a *per se* constitutional violation, and the only way for Plaintiff to succeed on such a claim is to show that the denial adversely affected his health. Mr. Louviere, however, has failed to allege in

[123] *See Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 at *54.
[124] *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir. 2001) (citing *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977) (per curiam) (designated unpublished); *Stewart v. Winter*, 669 F.2d 328, 336 n. 19 (5th Cir. 1982)); see also *Martin v. Scott*, 156 F.3d 578, 580 (affirming limits on recreation times).
[125] *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); see also *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008) (granting summary judgment for defendants on claim based on denial of outdoor and out of cell exercise for 13 months where there was no showing of "substantial risk of serious harm" as plaintiff did not "clearly evince" a serious medical need).
[126] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 110; *See* R. Doc. 101-12, ¶ 45; *See also*, Exhibit 3, pg. 45, lines 11 – 15.

his Complaint, or testify during his deposition, that the alleged denial of the opportunity for him to participate in recreational exercise adversely affected his health in any way. Mr. Louviere has further failed to produce any complaints and/or grievances filed during his time at the STPJ that would have alerted any STPJ personnel that the lack of opportunity for recreational activities and/or exercise was adversely affecting his health in any way.

Accordingly, Mr. Louviere's complaint as to the denial of the opportunity for recreational exercise is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**8. Temperature within the Holding Cell**

The Fifth Circuit has held that as a general rule, complaints about inadequacy of the ventilation system, without more, do not establish a constitutional violation.[127] Additionally, District Courts within this Circuit have held that a plaintiff's brief confinement in an overly air-conditioned holding cell does not constitute a cause of action for an unconstitutional condition of confinement.[128] The Fifth Circuit has also held that while the temperature may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment.[129]

In this case, Mr. Louviere has alleged that the temperature within the holding cell was "freezing,"[130] and claims that one holding cell was "…extremely hot. The second and third cells I was in were extremely cold."[131] Defendants first note that, as provided in the Inmate Cell

---

[127] *Johnson v. Tex. Bd. of Crim. Justice*, 2006 U.S. Dist. LEXIS 101578 (S.D. Tx. December 13, 2006), citing *Parker v. Smith*, 22 F.3d 1094 (5th Cir. 1994) (unpublished) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *See also Johnson v. Thaler*, slip op. no. 99-20222, 1999 U.S. App. LEXIS 39125 (5th Cir. Nov. 12, 1999).
[128] *See Guerra v. City of Alamo*, 2022 U.S. Dist. LEXIS 66870 (S.D. Tx. March 8, 2022); *See also Porter v. Werner*, 2017 U.S. Dist. LEXIS 20660 (S.D. Ms. Feb. 14, 2017).
[129] *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).
[130] *See* R. Doc. 101-12, ¶ 12.
[131] *See* Exhibit 3, pg. 57, lines 10 – 14.

Movement Report, that Mr. Louviere was only ever placed in two different cells during his ten (10) day stay in the STPJ.[132] Accordingly, Mr. Louviere's testimony regarding being placed in three (3) separate holding cells is false, as jail records clearly show that he was only held in two (2) holding cells.

Furthermore, as previously noted above, Mr. Louviere's complaint regarding the temperature in the holding cell is insufficient to establish a constitutional violation. Additionally, Mr. Louviere has failed to allege, or present any evidence establishing that the temperature in the holding cells was kept low for any punitive reason. To the contrary, Sgt. Lacey Kelly-Robertson provided that the temperature of the holding cells was kept at 68 to 69 degrees.[133] Sgt. Kelly-Robertson testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[134] Accordingly, Mr. Louviere's complaint as to the temperature in the holding cells is not an actionable claim and should therefore be dismissed with prejudice.

**9. Alleged Battery by Detainee and Subsequent Refusal of Medical Care**

Mr. Louviere has asserted that during his time in the holding cell, "…violent inmates battered…[him]…twice resulting in bruises to his head and face."[135] Mr. Louviere further asserts that "During that time, guards at the jail did nothing to prevent the beatings or provide him with medical attention afterwards."[136]

Plaintiff's allegations, however, lack any supporting evidence, and instead attempt to

---

[132] *See* Exhibit 2.
[133] *See* Exhibit 5, pg. 25, lines 8-12.
[134] *Id.* at pgs. 25-26, lines 11-5.
[135] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 106.
[136] *Id.* at R. Doc. 1, ¶ 107.

improperly shift the burden to Defendants to prove a negative, *i.e.,* that no such assault occurred, and that no medical treatment was denied. Despite it not being the Defendants' burden to prove that Mr. Louviere was not assaulted and was not denied medical care, Defendants have conducted a search of their records for any incident reports or inmate complaints related to Mr. Louviere being denied any medical care following an assault by a detainee. Defendants, however, have been unable to locate any such record, and Plaintiff has failed to produce evidence of any such record.

Furthermore, when questioned about these allegations, Mr. Louviere testified that on one occasion, when he was punched by an unidentified detainee, that he declined to press charges against that unidentified detainee and that he never sought medical attention for those injuries while in the holding cell.[137]

Q So an individual, do you remember his name that would have punched you?
A I do not.
Q So after he punched you, he informed you it would be bad for you to press charges?
A Yes.
Q And you made the determination not to press charges.
A Yes.
Q Did you ever seek medical attention while you were in the holding cell?
A No. [138]

Mr. Louviere's testimony obviously begs the question as to how he could have possibly been denied medical care that he, himself, admits he never requested it?

Mr. Louviere further testified that the second incident occurred after he had been moved

[137] *See* Exhibit 3, pg. 29, lines 1 – 12.
[138] *Id.* at pg. 29, lines 1 – 12.

from the holding cell into the dorm.[139] Mr. Louviere again testified that he did not remember the name of the individual that battered him, but that he did inform the STPJ personnel that the battery had taken place.[140] After being informed that he had been battered, STPJ personnel removed Mr. Louviere from the cell, placed him in a hallway, and ultimately moved him to a different dorm, away from that individual who allegedly battered him.[141] Mr. Louviere again testified that he also did not seek any medical attention after this second battery.[142]

> A I was moved into a hallway for about
> four hours and then ultimately moved to a
> different dorm.
> Q So you were on a bench in a hall for
> four hours after that assault?
> A Yes.
> Q Or that battery?
> A Yes.
> Q And then, approximately, four hours
> later, you were put into a different dorm,
> without -- that other individual was no longer
> there?
> A Yes.
> Q Did you seek medical attention for
> that battery?
> A No. [143]

As provided above, Mr. Louviere has testified that he was battered on two occasions, only one occurring during his time in the holding cells, and that he did not seek medical attention as a result of either battery. Mr. Louviere testified that after the first battery, he did not inform the STPJ personnel as to the attack, nor did he inform the STPJ personnel as to the identity of the person who attacked him. Mr. Louviere further testified that when he did inform the STPJ

[139] *Id.* at pg. 43, lines 1 – 10.
[140] *Id.* at pg. 43, lines 11 – 19.
[141] *Id.* at pg. 44, lines 2 – 14.
[142] *Id.* at pg. 44, lines 2 – 17.
[143] *Id.* at pg. 44, lines 2 – 17.

personnel about the second battery, that the STPJ personnel promptly removed him from the dorm, placed him into a hallway so that he was safe from the individual who attacked him, and moved him to a different dorm from that individual who allegedly battered him. Mr. Louviere's own testimony undercuts his allegations that he was both denied medical treatment after being battered, and that STPJ personnel did nothing to prevent the attacks from taking place. Accordingly, this Honorable Court must dismiss Mr. Louviere's complaint regarding the failure of STPJ personnel to provide medical care after he was battered, as well as his complaint that STPJ personnel did nothing to prevent the attacks on him with prejudice.

**10. Mr. Louviere's Allegations Regarding Spoiled, Inedible Food**

The Fifth Circuit has held that the deprivation of food constitutes cruel and unusual punishment "only if it denies a prisoner the 'minimal civilized measure of life's necessities.'"[144] "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it."[145] A prisoner is entitled only to reasonably adequate food.[146]

In this case, Mr. Louviere alleges that during his ten (10) day stay in the holding cells at the STPJ, that the only meals that were provided to him were made up of cold and spoiled food.[147] Specifically, Mr. Louviere has alleged that during the entirety of his stay in the holding cell, that detainees were provided spoiled, inedible ham sandwiches with rotten meat, moldy cheese and moldy bread.[148] Mr. Louviere claims that the detainees were provided with these spoiled, inedible

---

[144] *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (emphasis added).
[145] *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985); *see also Davis v. Missouri*, 389 Fed. Appx. 579, 579-80 (8th Cir. 2010)(designated unpublished); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986), citing *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).
[146] *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).
[147] *See* Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 105; *See* R. Doc. 101-12, ¶ 40.
[148] *See* Exhibit 3, pg. 33, lines 2 – 9.

ham sandwiches twice a day.[149]

Regarding Mr. Louviere's complaints as to the food served by the STPJ, Defendants note that no other Plaintiff in this matter has alleged that there were any issues with the food that was served by the STPJ. Plaintiffs, Terry Matthew Hall, Jr., Klabert Joseph Guillot, Sr. and Ahmed Baqer, testified that there were no issues with the food, while Plaintiff, Floyd Williams, provided no testimony regarding any issues with the food.[150]

Moreover, Mr. Louviere testified that he never actually ate the allegedly spoiled, inedible ham sandwiches, but that he instead ate red beans and rice.[151] Mr. Louviere provided that, other than the red beans and rice being cold, that there were no issues with them.[152]

A I didn't eat the ham sandwiches.
Q I'm sorry. For 13 days, you didn't eat?
A I didn't eat the ham sandwiches.
Q Was there other food provided?
A Yes.
Q What was provided in addition to the ham sandwiches?
A Red beans and rice.
Q And you ate that?
A I ate that.
Q Did that appear to be spoiled?
A It was cold.
Q Other than the fact that it was cold, was there anything wrong with it?
A No. [153]

Defendants further note that Plaintiff has failed to allege or provide any evidence

---

[149] *Id.* at pg. 35, lines 12 – 22. Defendants further note that Mr. Louviere's testimony is inconsistent, as he later claims that the detainees were provided ham sandwiches once a day and red beans and rice twice a day. (*See* Exhibit 3, pgs. 36 – 37, lines 17 – 7).

[150] *See* Exhibit 9, pg. 21, lines 16 – 22. (providing that there was no issues with the food); *See also* pg. 44, lines 15 – 24, of the Deposition Testimony of Klabert Joseph Guillot, Sr., attached herein as Exhibit "10." (providing that there was nothing wrong with the food detainees were served.); *See also*, pg. 63, lines 4 – 10, of the Deposition Testimony of Ahmed Baqer, attached herein as Exhibit "11."

[151] *See* Exhibit 3, pg. 36, lines 1 – 11.

[152] *Id.* at pg. 36, lines 12 – 16.

[153] *Id.* at pg. 36, lines 1 – 16.

establishing that any of the food that he consumed was not reasonably adequate, or that it was an immediate danger to his health and well-being. Plaintiff has additionally failed to provide any evidence establishing that the food that he consumed was nutritionally inadequate and resulted in any medical problems.[154]

As provided above, despite Mr. Louviere's unsupported, self-serving testimony that the ham sandwiches provided by the STPJ were spoiled and therefore inedible, Mr. Louviere has testified that each day he was provided with edible food, which he ate, and which he had no issues with. By his own admission Mr. Louviere was provided with adequate food that did not present an immediate danger to his health and well-being. Accordingly, Mr. Louviere's complaint as to being provided allegedly spoiled, inedible food should be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

**11. Denial of Medication and Lack of Medical Treatment**

In this case, Plaintiff has alleged that he was denied his HIV medication during his time in the holding cell at the STPJ.[155]

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*.[156] In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.[157] This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access

---

[154] *See Green v. Ferrell*, 801 F.2d 765 (5th Cir. 1986)(finding that the inmates had no medical problems caused by inadequate diet).
[155] *See* R. Doc. 101-12, ¶ 42.
[156] *See Estelle v. Gamble*, 429 U.S. 97 (1976).
[157] *Id.* at 104

to medical care or intentionally interfering with the treatment once prescribed.[158]

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[159] Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.[160] Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not.[161] Additionally, the mere delay or a mere gap in receiving care is not in and of itself a constitutional violation.[162]

#### *i. Plaintiff's Alleged Delay in Receiving HIV Medication during his time in the Holding Cell Fails to Rise to the Level of a Constitutional Violation*

Mr. Louviere asserts that he is HIV-positive. Courts in this Circuit, however, have held that such an allegation, alone, is not sufficient to demonstrate that a Plaintiff is under imminent danger of serious physical injury.[163]

Mr. Louviere has also asserted that despite his numerous requests to the guards, he was not immediately provided his HIV medication during his ten (10) day stay in the holding cells. As previously noted above, however, a delay in receiving care is not in and of itself a constitutional violation, and Courts have found that plaintiffs who have alleged that they were not provided HIV

---

[158] *Id.*
[159] *Id.*
[160] *See Kellup v. Gusman*, 2016 U.S. Dist. LEXIS 84603 (E.D. La. 2016), citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).
[161] *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983"). *See also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).
[162] *See Troia v. Bedwell*, 2006 U.S. Dist. LEXIS 49980 (E.D. La. May 15, 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985).
[163] *See Walker v. Collier*, 2017 U.S. Dist. LEXIS 232674 (E.D. Tx. 2017).

medication for periods of time longer than Mr. Louviere, had failed to state a claim that rose to the level of a constitutional violation. For example, in *Gray v. Henderson County Jail*, 2011 U.S. Dist. LEXIS 20457 (E.D. Tx. 2011), the plaintiff, an inmate in the Henderson County Jail, complained of a delay of approximately two weeks in receiving his HIV medication. The court found that his claim did not rise to the level of a constitutional violation.[164]

In *Krivan v. Dallas County*, 2002 U.S. Dist. LEXIS 576 (N.D. Tx. 2002), the plaintiff complained that he informed a nurse on January 8, 1999, that his supply of an AIDS medication called Nelfinavir had run out, but he did not receive any more until February 3, 1999. On March 9, 1999, he told a nurse that he needed AIDS medications called AZT and Combivir, but was told that he would "just have to wait for it to arrive from the pharmacy."[165] He complained again eight days later, and was told that there were no HIV medications in stock and that he would have to wait; he finally received these medications on March 20.[166] The plaintiff also asserted that he requested Nelfinavir on June 15, 1999, and then again on June 21, but the nurse told him that she was "too busy."[167] He did not receive the medication until June 24.[168] That court concluded that the relatively brief delays in receiving medication which the plaintiff had suffered did not rise to the level of a constitutional violation.[169]

Here, even if true, Mr. Louviere's claim regarding the length of time that he was not provided his HIV medication during the ten (10) days that he was in the holding cell does not rise to the level of a constitutional violation.

---

[164] *See Gray v. Henderson County Jail*, 2011 U.S. Dist. LEXIS 20457 (E.D. Tx. 2011)
[165] *See Krivan v. Dallas County*, 2002 U.S. Dist. LEXIS 576 (N.D. Tx. 2002)
[166] *Id.*
[167] *Id.*
[168] *Id.*
[169] *Id.* citing *Russell v. Enser*, 496 F.Supp. 320 (D.S.C.1979), aff'd 624 F.2d 1095 (4th Cir.1980) and *Ladd v. Hannigan*, 1997 U.S. App. LEXIS 6374 (10th Cir., April 3, 1997).

### *ii. No Evidence of Deliberate Indifference to Plaintiff's Medical Needs*

Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.[170] In this case, Mr. Louviere has failed to present any evidence that defendants acted with deliberate indifference to his serious medical needs. In fact, according to Mr. Louviere's own medical records, it was not until July 10, 2019, over two (2) weeks after he had been moved from the holding cells, that Plaintiff first notified STPJ medical personnel that he had not received his HIV medication in over one month.[171] The medical records further provide that Mr. Louviere had **failed** to place a sick call to STPJ medical personnel regarding not receiving his HIV medication.[172] When asked by STPJ medical personnel why he did not place a sick call, it was noted that Mr. Louviere stated that "he had told someone but was unsure who it was."[173] Accordingly, Mr. Louviere's own medical records clearly provide that Mr. Louviere did not place a sick call to STPJ medical personnel, and that he did not notify STPJ medical personnel that he had not been receiving his HIV medication until July 10, 2019, over two (2) weeks after he had been moved out of the holding cells.

Mr. Louviere further testified that during his time at the STPJ, that he never formally complained about anything in the jail.[174] Mr. Louviere additionally testified that he never sought medical attention while he was in the holding cell.[175] Therefore, by his own admission, Mr.

[170] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Kellup v. Gusman*, 2016 U.S. Dist. LEXIS 84603 (E.D. La. 2016).
[171] *See* pg. 9 of the Medical Records of Kevin Louviere, Jr., from the STPJ, attached herein as Exhibit "12." (Defendants note that Plaintiff has falsely claimed that during his time in the holding cell, that he alerted the psychologist that he was not receiving his HIV medication. *See* Exhibit 3, pg. 29, lines 13 – 21. Plaintiff did not see and/or inform the psychologist that he was not receiving his HIV medication until July 10, 2019, over two (2) weeks after he was moved from the holding cells.)(Plaintiff's claim is further inconsistent with his prior testimony stating that he did never formally complained about anything in the jail, and that he never personally seek medical attention while he was in the holding cell. *See* Exhibit 3, pg. 34, lines 20 – 23; pg. 29, lines 10 – 12).
[172] *See* Exhibit 12, pg. 9.
[173] *Id.*
[174] *See* Exhibit 3, pg. 34, lines 20 – 23.
[175] *Id.* at pg. 29, lines 10 – 12.

Louviere has testified that he never made any formal complaints during his time in the holding cells at the STPJ, and that he never sought medical attention while he was in the holding cell.

Additionally, as noted by Sgt. Lacey Kelly-Robertson testified that detainees have access to medical care 24 hours a day, providing detainees an opportunity to ask for medical assistance if there is a medical problem.[176] Mr. Louviere, therefore, had numerous opportunities to notify medical personnel that he was not receiving his HIV medication, but failed to do so until July 10, 2019. Accordingly, Defendants could not have possibly acted with deliberate indifference to Mr. Louviere's medical condition during his time in the holding cells, as Mr. Louviere, himself, failed to inform STPJ medical personnel that he was not receiving his HIV medication until July 10, 2019, despite having numerous opportunities on a daily basis to do so.

***iii. Plaintiff Suffered No Injury***

Additionally, the delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.[177] In this case, Plaintiff has not alleged any such permanent loss resulting from delay, nor has Plaintiff alleged that his medical condition had been aggravated or worsened. To the contrary, Plaintiff has testified that there was no actual physical manifestation of a worsening medical condition as a result of being off of his HIV medication, he was not hospitalized and was not home sick.[178] Plaintiff further testified that everything was proceeding according to his doctor's expectation of his continued prognosis.[179]

---

[176] *See* Exhibit 5, pg. 88, lines 5 – 12; pg. 103, lines 8 – 15.
[177] *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing *Monmouth County v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); *Wesson*, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).
[178] *See* Exhibit 3, pg. 42, lines 8 – 12.
[179] *Id.* at pg. 42, lines 22 – 25.

Q She told you your medical condition has been aggravated or worsened as a result?
A It had been compromised. I had to go submit blood work, and we ultimately switched to a different medication that I'm still currently taking.
Q So were there any actual physical manifestations of a worsening medical condition as a result of you being off of the HIV medication?
A No.
Q You weren't hospitalized?
A No.
Q You weren't home sick or anything like that, correct?
A No.
Q And you were placed back on your medication, and you've been on it ever since?
A We switched to a different medication, and I've been on it ever since.
Q Everything is proceeding according to your doctor's expectation of your continued prognosis?
A Yes. [180]

Defendants further note that Mr. Louviere has specifically testified that, aside from his alleged mental damages, that he suffered no other damages as a result of his time at the STPJ.[181] Plaintiff has additionally submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries, including his alleged 'mental injuries.'[182] As provided above, Mr. Louviere's own testimony clearly establishes that he has suffered no injury as a result of the alleged delay in receiving his HIV medication.

[180] *Id.* at pg. 42, lines 2 – 25.
[181] *Id.* at pg. 52, lines 12 – 18.
[182] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

### *iv. Mr. Louviere Received Medical Treatment Throughout the Entirety of his Stay in the STPJ Holding Cells*

Plaintiff additionally alleges that he was only allowed to see STPJ medical personnel one time, when he first arrived.[183] A review of Plaintiff's STPJ medical records, however, provides that Plaintiff saw STPJ medical personnel on multiple occasions. Plaintiff first saw STPJ medical personnel on June 17, 2019, when he underwent an initial screening.[184] During this initial screening, it was noted that Mr. Louviere's last HIV Viral load test was taken in February of 2019, and showed that the viral load was 'UNDETECTABLE.'[185]

On June 18, 2019, Mr. Louviere saw STPJ medical personnel for the second time when he underwent an initial behavioral health evaluation and COWS assessment test for detox treatment.[186] During this evaluation, it was noted that Mr. Louviere was an avid drug user, taking "iv heroin use of 0.5g daily," "iv meth use of 0.25 daily," and "smoke thc use of 0.5 weekly."[187] It was noted that the last time Mr. Louviere had consumed heroin, meth and thc was "upon intake."[188] Mr. Louviere was prescribed acetaminophen, loperamide and meclizine in order to help treat his heroin and methamphetamine detox/withdrawal symptoms.[189] Mr. Louviere was also seen by STPJ medical personnel on June 19, 21 and 22, while STPJ medical personnel were monitoring Mr. Louviere's detox/withdrawal recovery.[190]

After he was moved out of the holding cell, Plaintiff continued to be treated by STPJ medical personnel. On June 27, 2019, Mr. Louviere received his initial PPD test from STPJ

---

[183] *See* Exhibit 3, pg. 68, lines 4 – 6.
[184] *See* Exhibit 12, pgs. 16 – 25.
[185] *Id*. at pg. 18.
[186] *Id*. at pgs. 4 – 8; pg. 32.
[187] *Id*. at pg. 5.
[188] *Id*.
[189] *Id*. at pg. 28.
[190] *Id*. at pg. 2.

medical personnel.[191] On July 5, 2019, Plaintiff was approached by STPJ medical personnel who checked in with him to see how he was doing. Plaintiff noted that he was okay, requested to speak with a counselor and a referral was made.[192] Plaintiff was additionally seen by STPJ medical personnel on July 10, 2019, for a mental health evaluation, during which time Plaintiff was educated on coping skills and cognitive distortions.[193] It was noted by STPJ medical personnel that during this time, Plaintiff refused any follow ups.[194]

As provided above, Plaintiff's allegation that he was only allowed to see STPJ medical personnel on the day that he first arrived at the STPJ, is factually inaccurate, as Mr. Louviere's own medical records clearly show that he was treated by STPJ medical personnel throughout the entirety of his stay in the holding cells, as well as during the time that he was transferred out of the holding cells. Accordingly, Plaintiff's claim that he did not receive adequate medical care during his time in the STPJ should be dismissed with prejudice.

**12. Mr. Louviere's Mental Damages**

With regard to the alleged mental damages sustained by Mr. Louviere as a result of his time in the holding cells, Mr. Louviere has testified that he has received no treatment or therapy for his mental damages resulting from his ten (10) day stay in the STPJ holding cell.[195] Mr. Louviere has specifically testified that he was treated at Edgefield Rehab Center for his narcotics abuse, and not as a result of his time at the STPJ.[196] Additionally, Plaintiff has submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries.[197] Accordingly, this Honorable Court must dismiss Plaintiff's claims as to any mental damages with

---

[191] *Id*. at pg. 2.
[192] *Id*. at pg. 30.
[193] *Id*. at pgs. 9 – 11.
[194] *Id*. at pg. 10.
[195] *See* Exhibit 3, pg. 49, lines 23 – 25.
[196] *Id*. at pg. 48, lines 4 – 14; pg. 51, lines 6 – 9; pg. 52, lines 7 – 11.
[197] *See* R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

prejudice.

### 13. Mr. Louviere's Overall Treatment at the STPJ

While Mr. Louviere has alleged numerous unactionable claims in support of his claim asserting unconstitutional conditions of confinement, Defendants believe it is important to further demonstrate that Mr. Louviere's testimony clearly provides that during his time in the holding cell at the STPJ he was never denied life's necessities. For example, Mr. Louviere has testified that during his time in the holding cell, that he was able to sit and/or sleep on the benches or floor of the cell, that he was provided a blanket to sleep with every night, that he was fed three meals a day, that he was provided the opportunity to shower every week and that he was allowed to see STPJ medical personnel.[198]

Q And there were benches in the holding cell, as well, correct?
A Yes.
Q And some people sat on the benches, slept on the benches, and some people sat on the floor --
A Yes.
Q -- and slept on the floor, correct?
A Yes.
Q That pretty much was true throughout your time at the jail, correct, when you were in holding?
A Yes.
Q You were given blankets to sleep every night, correct?
A Yes.
Q And you were fed three meals a day, correct?
A Yes.
Q You were allowed to shower every seven days --

[199]

[198] *See* Exhibit 3 at pgs. 67 – 68, lines 5 – 6; *See also* Exhibit 12.
[199] *See* Exhibit 3 at pgs. 67 – 68, lines 5 – 6.

A Yes.
Q -- while you were in holding?
A Yes.
Q And you were allowed to see jail health care personnel, correct?
A When I got there, yes. Yes. [200]

Additionally, Mr. Louviere testified that during his time at the STPJ, that he never formally complained about anything in the jail.[201]

Q So you never actually formally complained about anything in the jail. Is that safe to say?
A No. Yes, it's safe to say. [202]

Mr. Louviere testified that right before he was arrested, that he had taken both heroin and methamphetamine.[203] Mr. Louviere testified that he had been taking heroin and methamphetamine for four years.[204] Mr. Louviere further testified that he began undergoing heroin withdrawal two days into his confinement in the holding cell, and that he was still experiencing methamphetamine withdrawal when he was eventually released from jail.[205] In order to help Mr. Louviere through his heroin and methamphetamine detox/withdrawal symptoms, STPJ medical personnel prescribed Mr. Louviere medication, including acetaminophen, loperamide and meclizine.[206]

As detailed above, Mr. Louviere's own testimony clearly provides that during his time at the STPJ he was never denied life's necessities.

---

[200] *Id.*
[201] *Id.* at pg. 34, lines 20 – 23.
[202] *Id.*
[203] *See* Exhibit 3, pg. 48, lines 15 – 21; pg. 65, lines 12 – 19.
[204] *Id.* at pg. 48, lines 22 – 23.
[205] *Id.* at pg. 66, lines 18 – 24.
[206] *See* Exhibit 12, pg. 28.

### E. Defendants are Entitled to Qualified Immunity

As detailed above, to defeat the defense of qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[207] While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[208]

In this case, Mr. Louviere has failed to provide any evidence in support of his allegations that his conditions of confinement were unconstitutional. As previously noted by Judge Vitter at the April 10, 2020, hearing:

> "In this case, there was no evidence introduced at the hearing regarding society's standards of decency. The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[209]

Mr. Louviere has presented no evidence, nor can he cite to any existing authority that would support a conclusion that any alleged policy of the STPSO/STPJ is itself unconstitutional, nor can Plaintiff cite to any authority that places the constitutional question 'beyond debate.' Further, Mr. Louviere has failed to produce any evidence or authority establishing any constitutional violations on behalf of the Defendants. Defendants are therefore entitled to qualified immunity as to Plaintiff's claims, as the facts and case law clearly establish that Defendants' conduct was reasonable and violated no particularized and/or clearly established case law.

---

[207] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[208] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[209] *See* R. Doc. 40, pgs. 31 – 32.

### F. Claims against Sheriff Randy Smith and Lacey Kelly

#### 1. All claims Against Sheriff Randy Smith and Lacey Kelly in their Official Capacities should be Dismissed

In this case, Plaintiffs have sued Sheriff Randy Smith and Lacey Kelly in their official capacities.[210] A suit against a government officer in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[211] "It is *not* a suit against the official personally, for the real party in interest is the entity."[212] "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[213]

"[E]very sheriff in Louisiana is a political subdivision unto himself, and there is no such thing as a 'Parish Sheriff's Department' or 'Parish Sheriff's Office.'"[214] Sheriff Smith is, for all intents and purposes, the "political subdivision" when he appears in his official capacity. Thus, "official capacity claims" against Sheriff Smith are really claims against the St. Tammany Parish Sheriff itself – a political subdivision of the State of Louisiana.[215]

However, "[l]iability under 42 U.S.C. § 1983 may not be imposed on a government entity on a theory of *respondeat superior* for the actions of government employees."[216] To the contrary, the United States Supreme Court has said that "official policy must be 'the moving force of the

---

[210] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, pgs. 1 – 2.
[211] *Ky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).
[212] *Id*. at 166 (emphasis original).
[213] *Id*.
[214] *Powe v. May*, 2003 U.S. App. LEXAS 28628, pp. 2-3 (5th Cir. 2003) (citations omitted); *see also Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 283 (5th Cir. 2002) (same proposition).
[215] *See* La. Const. art V, § 27; La. R.S. 13:5102.B.
[216] *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-694 (1978)).

constitutional violation in order to establish the liability of a government body under § 1983."[217] In other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[218]

The Fifth Circuit has defined official policy or custom as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[219]

To state a valid § 1983 claim against Sheriff Smith, Plaintiffs must "allege the existence of (1) an ***official*** policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[220]

In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'"[221] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[222] Deliberate indifference generally requires that a plaintiff demonstrate "at least a

---

[217] *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).
[218] *Monell*, 436 U.S. at 694.
[219] *Johnson*, 958 F. 2d at 94 (citation omitted). *See also Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a *Monell* custom requires long and frequent course of conduct).
[220] *Cain v. City of New Orleans*, 2015 U.S. Dist. LEXIS 162221, 2016 U.S. Dist. LEXIS 63527, at *20-21 (E.D. La. May 13, 2016) (emphasis original), (citing *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)).
[221] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting Roberts, 397 F.3d at 293).
[222] *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (quotation and citation omitted).

pattern of similar incidents" arising from clearly inadequate training such that it is "likely to result in the violation of constitutional rights."[223] "An injury is 'highly predictable' where the municipality 'fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'"[224]

In the present action, Plaintiff has merely made conclusory allegations that the St. Tammany Parish Sheriff's Office ("STPSO"), through Sheriff Smith and through Lacey Kelly, were permitting unconstitutional conditions of confinement pursuant to their own pervasive and longstanding policy, custom and practice of failing to supervise their agents and employees and failing to intervene to prevent their agents and employees from tolerating and propagating severely inadequate and harmful conditions.[225] Plaintiff asserts that this includes maintaining a custom practice and "*de facto* policy of new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area."[226]

In making these allegations, however, Plaintiff has simply reiterated the elements of his cause of action. Plaintiff has provided no factual allegations or evidence of any other analogous incidents involving other similarly situated persons, how those situations relate to this plaintiff in this action, the content of the Sheriff and/or Lacey Kelly's alleged policy or custom, or how the Sheriff and/or Lacey Kelly acted with deliberate indifference in this or other scenarios.[227] In fact, Plaintiff has made no specific allegations as to any actions taken by Lacey Kelly against Plaintiff, nor has Plaintiff made any allegations as to any specific 'unconstitutional' policies instituted by

---

[223] *Snyder v. Trepagnier*, 142 F. 3d 791, 798–799 (5th Cir. 1998).
[224] *Hankins v. Wheeler*, 2022 U.S. Dist. LEXIS 109198 (E.D. La. 2022)(quoting *Hutcheson*, 994 F.3d at 482−83).
[225] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶¶ 158 – 162.
[226] *Id.* at ¶ 59.
[227] *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a Monell custom requires long and frequent course of conduct).

Lacey Kelly.[228] Instead, Plaintiff's only allegations as to Lacey Kelly are that she was the warden of the STPJ during the time in which Plaintiff was held in the holding cell.

Furthermore, as discussed more fully above, Plaintiff has failed to establish any constitutional violation resulting from any alleged policy or custom of the Defendants. Therefore, because Plaintiff has failed to establish any facts constituting a *Monell* cause of action against both Sheriff Randy Smith and Lacey Kelly, all official capacity claims should be dismissed with prejudice, as no viable grounds for liability under *Monell* are stated.

### 2. All claims Against Sheriff Randy Smith in his Individual Capacity should be Dismissed

Plaintiff has asserted that he is suing Sheriff Randy Smith "in his official and individual capacities for the acts and omissions which occurred while he was Sheriff."[229] However, there are no factual allegations sufficient to support individual capacity liability as to Sheriff Smith.

To establish personal liability, a §1983 claimant must show that the defendant was personally involved in the deprivation or that the defendant's wrongful actions were causally connected to the deprivation.[230] There can be no individual capacity liability of Sheriff Smith in this case because there is no evidence that he was personally involved, present or even consulted with regard to the confinement of any of the Plaintiffs in the STPJ. Further, Plaintiff has failed to present any evidence supporting supervisory liability,[231] which requires a showing that "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train

---

[228] Plaintiff's Complaint contains no allegations as to any specific 'unconstitutional' actions taken by Lacey Kelly against any of the named Plaintiffs. (*See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1).
[229] *See* Docket no. 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 17.
[230] *See Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012).
[231] Movers note that supervisory officials cannot be liable under § 1983 on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis v. City of N. Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005).

or supervise amounts to deliberate indifference."[232]

Here, Sheriff Randy Smith has no day-to-day role with respect to any individual's confinement in the STPJ, as he has delegated those day-to-day responsibilities to his subordinates.[233] Accordingly, Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in this matter.[234] Sheriff Smith has never met or spoken with any of the individual Plaintiffs with regard to their confinement in the STPJ.[235] Additionally, Sheriff Smith was never personally aware of the incarceration or the conditions of confinement of the individual Plaintiffs in the STPJ holding cells.[236] In fact, Sheriff Smith did not become aware that any of the individual Plaintiffs were ever incarcerated at the STPJ until after this suit was filed.[237]

Accordingly, because there is no evidence supporting liability as against Sheriff Smith in his individual capacity, all such claims should be dismissed with prejudice. Nonetheless, to the extent any such factual allegations are made, which is denied, Sheriff Smith further asserts the defense of qualified immunity.

Defendants further assert that Mr. Louviere is unable to point to any clearly established law particularized to the facts of this case which would establish that Sheriff Smith is not entitled to qualified immunity for any claims made against him in his individual capacity. Thus, again, all such claims against him should be dismissed with prejudice.

**G. Punitive Damages**

Punitive damages are available only against officers sued in their individual capacities under §1983 if it is shown that a defendant's conduct was motivated by evil motive or intent or

---

[232] *See Davidson v. City of Stafford*, 2017 U.S. App. LEXIS 5665, p. 23 (5th Cir. 2017) (citation omitted).
[233] *See* Exhibit 7, ¶ 6.
[234] *See* Exhibit 7, ¶ 7.
[235] *Id.* at ¶ 9.
[236] *Id.* at ¶ 8; *See also* Exhibit 8, pg. 75, lines 7 – 11; pgs. 78 – 79, lines 13 – 20; pg. 80, lines 9 – 21; pg. 83, lines 8 – 14; pg. 115, lines 11 – 15.
[237] *See* Exhibit 7, ¶ 10.

involves reckless or callous indifference of the federally protected rights of others.[238] It is also well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided by statute, and in the absence of such a specific statutory provision only compensatory damages may be recovered.[239] Where the pleadings filed by plaintiff fail to identify a statutory provision which allows the recovery of punitive damages for state law claims asserted against the defendant, it is appropriate to dismiss those claims.[240]

In this case, Mr. Louviere, has alleged that he is entitled to punitive damages as a result of the "extreme, outrageous, and wantonly cruel" actions of Defendants, that "shock the conscience of a reasonable person."[241] As provided above in great detail, despite Plaintiff's assertions to the contrary, Plaintiff has failed to allege any conduct on behalf of Defendants that amounts to a Constitutional violation. Additionally, Plaintiff has failed to provide any evidence supporting that any of the alleged conduct was done for any punitive reason, that it was motivated by an evil intent, or involved reckless or callous indifference to Plaintiff's federally protected rights. Accordingly, Plaintiff's punitive damages claims against the Defendants must be dismissed in their entirety.

**H. Plaintiff's State Law Claims**

As previously noted above, in conjunction with his federal claim under 42 U.S.C. § 1983, Plaintiff has alleged various claims under Louisiana state law, including violations of Article I, Section 20 of the Louisiana Constitution, Negligence and *Respondeat Superior*. The Court currently maintains supplemental jurisdiction over these state-law claims because Plaintiff presented a federal question. But the Court may decline to exercise its supplemental jurisdiction

---

[238] *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed. 632 (1983); *Kolstad v. ADA*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *Simmons v. City of Mamou*, 2009 WL 3294977 (W.D.La. 2009).
[239] *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La. 1988); *Savoy v. St. Landry Parish Counsel*, 2008 WL 2796887 (W.D. La. 2008).
[240] *Savoy*, supra.
[241] *See* Complaint in Case 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 192.

over state-law claims if it dismisses the federal claim that gives the Court original jurisdiction.[242] "When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims."[243] Accordingly, Defendants respectfully request that upon dismissal of Plaintiff's federal claims, that this Honorable Court issue an Order dismissing Plaintiff's remaining state law claims without prejudice.

### I. Defendants are Entitled to an Award of Attorney's Fees Under 42 U.S.C. § 1988

The award of attorney's fees and costs are appropriate in favor of the prevailing party upon the dismissal of Plaintiff's federal claims pursuant to 42 U.S.C. § 1988. A prevailing defendant is entitled to an award of attorney's fees upon a finding that the plaintiff's suit is frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so, regardless of whether the suit was brought in good faith."[244] There need not be a finding of bad faith to award a prevailing defendant attorneys' fees under § 1988(b).[245] As noted by the United States Supreme Court, in enacting § 1988, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis."[246] "When a civil rights suit is lacking in any legal or factual basis..., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation."[247] "In determining whether a suit is frivolous, 'a district court should look to factors such as whether the plaintiff established a prima

---

[242] *See* 28 U.S.C. § 1367.
[243] *Cooper v. Dart Area Rapid Transit, No.*, 2015 U.S. Dist. LEXIS 174754 (N.D. Tex. Dec. 18, 2015) (Ramirez, M.J.), adopted by *Cooper v. Dart Area Rapid Transit*, 2016 U.S. Dist. LEXIS 4615 (N.D. Tex. Jan. 14, 2016).
[244] *See Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 424–425 (5th Cir. 2011).
[245] *McCully v. Stephenville Indep. Sch. Dist.*, 2013 U.S. Dist. LEXIS 179989 (N.D. Tx. 2013).
[246] *Fox v. Vice*, 563 U.S. 826, 833 (U.S. 2011), citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (U.S. 1978).
[247] *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (quoting *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987)).

facie case, whether the defendant offered to settle, and whether the court held a full trial.'"[248]

As demonstrated above, Plaintiff's civil rights action lacks adequate factual bases, and relies and relies on indisputably meritless legal theories, is frivolous, unreasonable, and without foundation, thereby warranting an award of attorneys' fees to Defendants as the prevailing party. Additionally, it is clear that Plaintiff's own testimony directly contradicts numerous allegations contained both within his complaint as well as his discovery responses. Accordingly, Defendants move this Honorable Court to award Defendants attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully suggest that the instant motion for summary judgment should be granted, finding that Defendants, Sheriff Randy Smith and Lacey Kelly, are entitled to qualified immunity and dismissing Plaintiff, Kevin Louviere, Jr.'s, claims with prejudice.

---

[248] *Lewis v. Smith*, 2019 LEXIS 159429 (E.D. La. 2019) (Ashe, J.) (quoting *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000)).

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

s/ Chadwick W. Collings

**CHADWICK W. COLLINGS, T.A.** **# 25373**
**KENNETH R. WHITTLE** **# 38640**
**SARAH A. FISHER** **# 39881**
**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone: (985) 292-2000**
**Facsimile: (985) 292-2001**
**ccollings@millinglaw.com**
**kwhittle@millinglaw.com**
**sfisher@millinglaw.com**
***Counsel for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Tuesday, August 08, 2023, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Chadwick W. Collings
**Chadwick W. Collings**