**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| AHMED BAQER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ST. TAMMANY PARISH GOVERNMENT, a/k/a/ ST. TAMMANY PARISH COUNCIL, et al.,<br><br>Defendants. | * * * * * * * * * * * * * | **CIVIL ACTION NO.: 20-00980-DJP-DPC (Consolidated with 20-1840-WBV-DPC)**<br><br>JUDGE DARREL JAMES PAPILLION<br><br>MAGISTRATE JUDGE PHILLIPS CURRAULT<br><br>JURY TRIAL |

******************************************************************************

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF LENARD VARE**

**MAY IT PLEASE THE COURT:**

NOW COME the Plaintiffs, AHMED BAQER, KLABERT JOSEPH GUILLOT, SR., TERRY HALL, FLOYD WILLIAMS, and KEVIN LOUVIERE (hereinafter collectively referred to as "Plaintiffs"), by and through their counsel of record, ROMANUCCI & BLANDIN, LLC, JACOB LITIGATION, INC., and THE GLORIOSO LAW FIRM, and, pursuant to Rule 702 of the Federal Rules of Evidence and Local Civil Rule 7, Plaintiffs respectfully submit the instant memorandum of law in support of their motion to exclude the proposed expert testimony of Lenard Vare, stating as follows:

## I. Summary of the Motion

Certain expert opinions and testimony proffered by Defendants Randy Smith and Lacey Kelley's retained expert Lenard Vare should be excluded for the following reasons:

First, Mr. Vare is unqualified to render any opinions or statements that the Plaintiffs "suffered no harm[,]"[1] given an absence on the part of Mr. Vare of any professional medical training or experience that would so render him an expert.

Second, certain opinions of Mr. Vare are not actually expert opinions, but, rather, merely a parroting of other statements purportedly made to Mr. Vare by Major Daniel Fleischman, and are, therefore, unreliable given the methodology employed by Mr. Vare in this regard.

Third, certain other opinions of Mr. Vare are wholly irrelevant, given those allegations and issues at play in the instant case.

Finally, various other opinions of Mr. Vare usurp the factfinder's inherent authority to make credibility determinations attendant to certain witnesses – namely, the Plaintiffs.

## II. Factual Background

Plaintiffs' allegations in the instant case primarily concern those periods of time wherein they were each forced to endure extended periods of confinement within the holding cells at the St. Tammany Parish Jail in Covington, Louisiana (a detention facility operated by Defendant St. Tammany Parish Sheriff's Office, and referred to herein as the "STPJ facility"), all the while retaining their designation as "pre-trial detainees"[2] – specifically, (1) Plaintiff Baqer was kept in holding from December 3, 2019, to December 17, 2019;[3] (2) Plaintiff Louviere was kept in holding for approximately thirteen (13) days with as many as thirty other inmates, from roughly June 17, 2019 to June 29, 2019;[4] (3) Plaintiff Hall was kept in holding for fifteen (15) days with as many as thirty other inmates, in late October 2019;[5] (4) Plaintiff Williams was kept in holding for five

---

[1] *See* ECF 235-6, at p. 7.
[2] *See* ECF 1, at ¶¶ 13, 31; *see also* ECF 158-1, at p. 1.
[3] *See* ECF 234-6.
[4] *See* ECF 239-6, at p. 25.
[5] *See* ECF 236-5, at pp. 19-20; ECF 236-6.

(5) days, from September 28, 2019 into early October 2, 2019;[6] and (5) Plaintiff Guillot, Sr. was kept in holding from December 29, 2019 to January 10, 2020.[7] As of the authorship of the instant memorandum of law, Plaintiffs' claims concerning their confinement continue to lie against the following Defendants: (1) Defendant Randy Smith, the current Sheriff of St. Tammany Parish (as well as the sheriff at all times relevant to the Plaintiffs' pre-trial detention), both in his official and individual capacity; and (2) Defendant Lacey Kelley, the warden of the STPJ facility at all times relevant to the Plaintiffs' pre-trial detention, both in her official and individual capacity (hereinafter collectively referred to as the "STPG Defendants").[8]

Referring once more to the conditions of their pre-trial detention and confinement, the Plaintiffs previously alleged the following within their Memorandum of Law in Support of their Motion for Class Certification (filed May 5, 2021):

> Within the [STPJ facility] are four holding cells that measure approximately twenty feet long by eight feet wide. Each holding cell has one partially exposed toilet, one sink, and two concrete "benches" on either side of the holding cell. Notwithstanding [certain applicable or relevant] policies and procedures, former inmates at the [STPJ facility] have come forward to report horrific conditions of confinement in the holding cells. From March 22, 2019 to [the date of filing, *i.e.*, May 7, 2021,] individuals have reported being kept in holding for extended periods of time, overcrowding in the holding cells, deplorable sanitation practices in the holding cells, and other conditions that, when taken together, subject St. Tammany Jail holding cell inmates to unconstitutional confinement prohibited by the Fourteenth Amendment.[9]

For a fuller assessment of the facts in the instant case, Plaintiffs would refer the Court to certain forthcoming submissions to be filed – namely, Plaintiffs' responses in opposition to the STPG Defendants' five (5) Motions for Summary Judgment due to the Court by September 4,

---

[6] *See* ECF 101-10, at ¶¶ 5-6; ECF 236-11, Williams Deposition, at p. 48:2-51:1.
[7] *See generally* ECF 235-5, Inmate Movement Report.
[8] *See* ECF 235-3, at p. 2.
[9] *See* ECF 158-1, at p. 3.

2023[10] (*see* "STATEMENT OF THE FACTS"). In an effort to avoid redundancy and duplication, Plaintiffs do not repeat those facts in the instant filing, but, rather, preemptively incorporate the "STATEMENT OF THE FACTS" from the aforementioned filings, as well as any referenced exhibits, herein in full by reference.

## III. LENARD VARE'S OPINIONS

According to the STPG Defendants' retained expert, Lenard Vare ("Mr. Vare"), a self-identified "corrections consultant and expert," the focus of his expert report in this matter concerns "the conditions of confinement in the holding cell areas of the St. Tammany Parish Jail [ ]" (referred to here as the "STPJ facility").[11] Within his report, Mr. Vare, further, notes that he will, "specifically[,] consider whether the conditions of confinement at St. Tammany Parish Jail during the relevant [time] period presented a substantial risk of serious harm to pretrial detainees."[12] Upon reviewing those materials relayed to him by counsel for the STPG Defendants,[13] Mr. Vare offered the following (*de facto* and more formal) opinions:

1. It is Mr. Vare's opinion that, based upon his review of Plaintiffs' complaint (including previous iterations thereof), "other than being housed in the holding cells when these areas were over capacity, [P]laintiffs Baqer[ ] and Guillot, Sr. suffered no harm from being assaulted by any inmates or staff nor were they deprived of any medications or medical/mental health treatment[;]"[14]

2. It is Mr. Vare's opinion and estimate that, in 2020, "the total costs related to jail operations [for the STPG Defendants,] including health care and other expenditures[,] including staffing, training, materials, etc., was approximately $19.2 million[;]"[15]

3. It is Mr. Vare's opinion "[t]hat there is no profit possible [for the STPG Defendants] when beds are being rented out [to other agencies] at a cost lower than what it might take to house an individual in the STPJ facility[;]"[16]

---

[10] *See generally* ECF 244.
[11] *See* ECF 235-6, at pp. 4, 54.
[12] *Id.*
[13] *Id.*, at pp. 8-13, 37.
[14] *Id.*, at p. 7.
[15] *Id.*, at p. 18.
[16] *Id.*, at pp. 19-20.

4. It is Mr. Vare's opinion or observation that, "[b]ecause of classification requirements and safety and security reasons, any empty beds available in the dorms that house Louisiana Department of Corrections inmates and Federal inmates cannot be shared with persons who are pre-trial [detainees] and unsentenced[;]"[17]

5. It is Mr. Vare's opinion and observation that "[t]he jail housing [at the STPJ facility] primarily consists of dormitory-style accommodations[,]" and "[t]here are very few beds available in the jail that are single and double-occupancy beds[;]"[18]

6. It is Mr. Vare's opinion that "[t]here would be significant challenges for an unsentenced individual to be placed inside one of the[ ] areas [of the STPJ facility where sentenced offenders are housed] even if the facility had numerous empty beds in such locations due to classification issues and concerns over detainee safety[,]" as "[t]he facility assumes substantial risks when deciding to house someone who may be [a] pre-trial [detainee] and unsentenced and possibly even awaiting charges to be housed with a group of sentenced offenders who may have high-risk factors[;]"[19]

7. It is Mr. Vare's opinion and observation that "the jail population and the ebb and flow of inmates coming in and out of jail [at the STPJ facility] was fluid and ever-changing[,]" in alignment with "jails throughout the nation[;]"[20]

8. It is Mr. Vare's opinion that "[t]he decision to stop Code 6 releases [(*i.e.*, the "release valve mechanism" whereby the staff could release inmates)] resulted in jail crowding conditions[;]"[21]

9. It is Mr. Vare's opinion that "there is no safe way to house unsentenced, pre-trial detainees in areas [of the STPJ facility] which are occupied by sentenced offenders in a dormitory-style housing space[,]" and it is, further, Mr. Vare's opinion and observation that "[t]his set of circumstances occasionally resulted in the jail holding areas becoming crowded and exceeding capacity as set by the Fire Marshal's office[;]"[22]

10. It is Mr. Vare's opinion that "[s]entenced offenders give up certain rights once they have been found guilty of a crime and placed into a status where they are serving time for their criminal conduct[;]"[23]

11. It is Mr. Vare's observation that "prosecutors in St. Tammany Parish took a median of [sixty-nine] days in 2016 and [fifty-seven] days in 2017 to reach decisions [about] whether to prosecute felony suspects[,]" and it is, further, Mr. Vare's opinion that "[t]his inevitably

---

[17] *Id.*, at p. 20.
[18] *Id.*, at p. 21.
[19] *Id.*, at p. 24.
[20] *Id.*, at p. 27.
[21] *Id.*, at pp. 27-28.
[22] *Id.*, at p. 28.
[23] *Id.*, at p. 35.

creates situations where[in] jail staff are unable to reach a decision-making point [about] where to place pre-trial detainees as their status remains in limbo[;]"[24]

12. Otherwise referred to as Mr. Vare's (more formal) "Opinion 1," it is his opinion that any allegation that the STPG Defendants "were motivated by profit to house inmates from external agencies" is without merit, and, while Mr. Vare does acknowledge "that the revenue generated by renting beds […] serves to offset some of the costs[,]" the practice of housing inmates from external agencies "does not appear to be profitable, and the [STPG Defendants are] operating the jail without sufficient funds[.]"[25] It is, further, Mr. Vare's opinion that any conditions of crowding at the STPJ facility are "partly due to the facility['s] design[,] […] having mostly dormitory-style housing[,] and[,] in part[,] due to delays in the prosecutor's office [in] deciding whether to charge [certain] individuals."[26] Accordingly, Mr. Vare is of the mind that "[a] significant level of responsibility for the incidents of crowding is due to the sheriff's office not having the legal and statutory authority to release individuals rom custody without approval from the courts[;]"[27]

13. Otherwise referred to as Mr. Vare's (more formal) "Opinion 2," it is his observation that there is no evidence to suggest "that the [STPG Defendants] engaged in a practice of deliberately creating crowded conditions inside the holding cells[ ]" at the STPJ facility.[28] That being said, Mr. Vare is of the mind that, "[w]hile crowding may have occurred intermittently, staff constantly worked towards reducing this deficiency[,] as evidenced by the numerous Fire Marshal inspections [during] which the facility" would bring its population numbers below capacity, in order to return to a state of compliance with the Fire Marshal's requirements;[29]

14. Otherwise referred to as Mr. Vare's "Opinion 3," it is his opinion that there is "no evidence to substantiate the allegation that the holding cells were unsafe or that individuals placed in the holding cells were at substantial risk of serious harm."[30] That being said, "[a]lthough fights did occur inside the holding cells as well as in other parts of the [STPJ facility]," Mr. Vare is of the mind that "there were more staff available to respond to incidents inside the holding cells due to the proximity of [certain] corrections deputies assigned to the booking/intake area of the jail[,] which was approximately [ten] feet from the holding cells."[31] Rather disappointingly, Mr. Vare has made known the fact that he believes "that some of the alleged unsafe conditions inside the holding cells were created by at least one of the original[ly-named] plaintiffs in this case[,]" and he has even invoked one such plaintiff's recent arrest for "serious drug crimes[ ]" as a way of inappropriately bolstering this notion;[32]

---

[24] *Id.*, at p. 36.
[25] *Id.*, at p. 37.
[26] *Id.*
[27] *Id.*, at pp. 37-38.
[28] *Id.*, at p. 39.
[29] *Id.*, at pp. 39-40.
[30] *Id.*, at p. 40.
[31] *Id.*
[32] *Id.*, at pp. 40-41.

15. It is Mr. Vare's observation that "[j]ails in the United States are dangerous places and there is no guarantee that a general population housing unit will be any safer than the holding cells[,]" and it is, further, Mr. Vare's opinion that, as it concerns the STPJ facility, the holding cell areas might be safer on account of the number of staff present immediately outside of the holding cells;[33]

16. According to Mr. Vare, "[n]othing in [his] examination of this case indicates [to him] that there is any increased substantial risk for harm after [a pre-trial detainee's] first [forty-eight] hours of detention[,]" nor is Mr. Vare aware of any evidence "that the risk [for harm] in the holding cells is greater than in any other parts of the jail[,]" and he has a great deal of difficulty believing that the Plaintiffs "were all feeling unsafe based on their charges[ ] [and] actions while in the holding cells[ ]" and based on their prior arrests;[34]

17. Otherwise referred to as Mr. Vare's "Opinion 4," it is his opinion that there is "no evidence to support the allegation that staff [at the STPJ facility] did not respond to inmate-on-inmate assaults while individuals were being held in the holding cells[ ]" – rather, Mr. Vare is of the mind that the "staff were proactive and responsive" in addressing "inmate concerns over physical safety and took appropriate measures as necessary[;]"[35]

18. In assessing a claim by Plaintiff Louviere "that he allegedly received bruises to his head and face after [having been] battered by other inmates[ ]" and failed to "receive[ ] any medical attention following [said] assaults[,]" Mr. Vare is of the opinion that either (a) "no such incident occurred[,]" or (b), "if it did occur, [Plaintiff] Louviere failed to inform staff and did not seek medical attention[ ]" of his own accord;[36]

19. It is Mr. Vare's opinion and observation that "the custom and practice [at the STPJ facility] appears to be that[,] when corrections deputies respond to any incidents of violence, they always escort the involved parties to medical or have medical respond to the area where the injured individual might be at [that] time[;]"[37]

20. Upon referring to one singular incident involving an alleged instance of "inmate-on-inmate" violence, Mr. Vare notes that this one "incident serves as an example that [the] staff [at the STPJ facility] proactively investigates allegations of inmate-on-inmate assaults even when such events occur outside of the view of corrections personnel[;]"[38]

21. Otherwise referred to as Mr. Vare's "Opinion 5," it is his opinion that staff at the STPJ facility abided by proper food service and handling protocols and he could, further, "find no evidence to support the allegation that the provided to individuals in the holding cells was spoiled and cold[;]"[39]

---

[33] *Id.*, at p. 41.
[34] *Id.*, at p. 42.
[35] *Id.*, at p. 44.
[36] *Id.*
[37] *Id.*, at p. 45.
[38] *Id.*, at pp. 45-46.
[39] *Id.*, at p. 46.

22. Otherwise referred to as Mr. Vare's "Opinion 6," it is his opinion that Plaintiff Williams "was provided with prompt medical attention and his allegations are without merit[;]"[40] *and…*

23. Otherwise referred to as Mr. Vare's "Opinion 7," it is his opinion that "[t]here is no evidence to support the allegation that individuals held in the holding cells were deprived of hygiene items, showers, and were not provided access to blankets."[41]

## IV. Legal Standard

Within the United States Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[42] the Court reiterated that it is the responsibility of "the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable.""[43] As a result, Rule 702 of the Federal Rules of Evidence (*i.e.*, the rule "govern[ing] the admissibility of expert witness testimony")[44] was amended such that, today, it would provide for the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

One such responsibility that the Court is beholden to in exercising its "gatekeeping function," as contemplated by *Daubert*, "involves a two-part inquiry into reliability and relevance."[45]

---

[40] *Id.*, at p. 47.
[41] *Id.*, at p. 50.
[42] 509 U.S. 579 (1993).
[43] *Dempster v. Lamorak Insurance Co.*, Civil Action No. 20-95, 2021 WL 848788, *6 (E.D. La. Mar. 5, 2021) (citing *Daubert*, 509 U.S. at 597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).
[44] *Id.*, at *5 (citing Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579).
[45] *Id.*, at *6.

On the subject of reliability, in ascertaining "whether […] proffered expert testimony is reliable[,]" the Court must "assess whether the reasoning or methodology underlying the expert's testimony is valid[,]"[46] and, in so doing, "exclude expert testimony based merely on subjective belief or unsupported speculation."[47] In an effort to assist the district courts on this front, "[i]n *Daubert*, the United States Supreme Court identified a number of factors that are useful in analyzing the reliability of an expert's testimony[,]" including the following: "(1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community."[48] The United States Supreme Court in *Kumho Tire Co.* would, later, suggest that the goal of this prong of the district court's analysis "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[49] On the subject of relevance (*i.e.*, the second prong of the district court's analysis), the Court "must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence – in other words, whether it is relevant."[50]

---

[46] *Id*. (citing *Daubert*, 509 U.S. at 592-93).
[47] *Id*. (citing *Daubert*, 509 U.S. at 590).
[48] *Id*. (citing *Daubert*, 509 U.S. at 592-94).
[49] *Id*. (citing *Kumho Tire Co.*, 526 U.S. at 152) (internal quotation marks omitted).
[50] *Id*. (citing *Daubert*, 509 U.S. at 591; FED. R. EVID. 702).

## V. PLAINTIFFS' ARGUMENTS

### a. Arguments attendant to Mr. Vare's qualifications.

i. Mr. Vare is unqualified to render any opinions or statements that the Plaintiffs "suffered no harm[,]"[51] including those statements contained within Mr. Vare's (more formal) "Opinion 3."[52]

In order "[t]o qualify as an expert, '[a] witness must have such knowledge or experience in [their] field or calling as to make it appear that [their] opinion or inference will probably aid the trier in [their] search for truth.'"[53] Relatedly, under those parameters of Rule 702 of the Federal Rules of Evidence, "an expert may be qualified based on "knowledge, skill, experience, training, or education.""[54] Notably, however, the Fifth Circuit has previously indicated that "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify **in a particular field** or **on a given subject**.""[55] In the instant case, by his own admission, Mr. Vare is "not a medical expert[.]"[56] However, despite this acknowledgment, Mr. Vare proceeds to opine within his report that, based upon his review of the Plaintiffs' complaints, "other than being housed in the holding cells when these areas were over capacity," Mr. Vare is of the opinion that "[P]laintiffs Baqer[ ] and Guillot, Sr. **suffered no harm**" as a result of their pre-trial detention and confinement.[57]

Of note, and perhaps a fitting reminder of Mr. Vare's absence of qualifications on this front, in *Anderson v. Redman*,[58] the United States District Court for the District of Delaware

---

[51] *See* ECF 235-6, at p. 7.
[52] *Id.*, at pp. 40-41.
[53] *Shawler v. Ergon Asphalt & Emulsions, Inc.*, Civil Action No. 15-2599, 2016 WL 1019121, *2 (E.D. La. Mar. 15, 2016) (citing *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004); *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)) (certain internal quotation marks omitted).
[54] *Id.* (citing *Hicks*, 389 F.3d at 524; *Kumho Tire Co., Ltd.*, 526 U.S. at 137, 147).
[55] *Id.* (citing *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)) (emphasis added).
[56] *See* ECF 235-6, at p. 3.
[57] *Id.*, at p. 7 (emphasis added).
[58] Civ. A. No. 76-364, 429 F.Supp. 1105 (D. Del. Feb. 16, 1977).

acknowledged the fact that certain overcrowding at a correctional facility had caused (1) severe physical and psychological damage to inmates; (2) increased incidences of self-mutilation, suicide, attempted suicide, theft, assault, and rape; (3) destroyed all privacy; (4) overtaxed the sanitary facilities; (5) exacerbated certain problems attendant to filth, noise, and vermin; (6) caused serious deterioration in medical care at the facility; (7) fostered increased idleness; (8) broke down the classification and incentive systems in place at the facility; and (9) demoralized the staff.[59] Given these observations, as well as the fact that Mr. Vare, himself, concedes that he is not a medical professional or "expert," Plaintiffs would ask that this Court preclude Mr. Vare from opining that the Plaintiffs "suffered no harm" as a result of their pre-trial detention.

**b. Arguments attendant to reliability.**

Several of Mr. Vare's opinions are not actually expert opinions, but rather regurgitations of statements purportedly provided to Mr. Vare by Major Daniel Fleischman. To the extent that the Defendants attempt to finagle Mr. Fleischman's testimony into evidence through Mr. Vare's expert report, such should not be permitted. Mr. Vare's formulation of the opinions or statements below was not rooted in methodology, but an apparent recitation of what was told to him by STPJ Defendants' employee, Major Daniel Fleischman,[60] and, thereby, under *Daubert*, impermissibly based on little more than just "subjective belief or unsupported speculation[,]"[61] the following should be excluded:

1. Any opinions or statements concerning the comingling of "sentenced Louisiana Department of Corrections inmates" or "Federal inmates" with pre-trial detainees;[62]

---

[59] *Id.*, at 1112-1118.
[60] *Id.*, at pp. 3-4.
[61] *Nola Ventures, LLC v. Upshaw Insurance Agency, Inc.*, Civil Action No. 12-1026, 2014 WL 12721798 (E.D. La. Oct. 31, 2014) (citing *Daubert*, 509 U.S. at 590).
[62] *See, e.g.,* ECF 235-6, at pp. 21-22.

2. Any opinions or statements suggesting that "the holding cell areas [at the STPJ facility] might be safer" than any general population housing on account of the number of staff present in the immediate vicinity of the holding cells;[63]

3. Any opinions or statements suggesting that the staff at the STPJ facility "proactively investigates allegations of inmate-on-inmate assaults even when such events occur outside of the view of corrections personnel[;]"[64]

4. Any opinions or statements suggesting that the staff at the STPJ facility abided by the proper food service and handling protocols;[65] *and…*

5. Any opinions or statements suggesting that "[t]here is no evidence to support the allegation that individuals held in the holding cells were deprived of hygiene items, showers, and were not provided access to blankets."[66]

**c. Arguments attendant to relevance.**

i. Those opinions or statements contained within Mr. Vare's "Opinion 1" are wholly irrelevant, and Mr. Vare is precluded from rendering any legal conclusions contained therein

The central allegations in this case concern those conditions of confinement that the Plaintiffs were subjected to and forced to endure over the course of their extended pre-trial detention within the holding cells at the STPJ facility across various points in time in 2019,[67] and the primary issues attendant to these allegations are whether the Plaintiffs endured a violation (or series of violations) of their civil rights pursuant to 42 U.S.C. section 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the state of Louisiana.[68] These central allegations and issues notwithstanding, however, Mr. Vare's "Opinion 1" is almost entirely concerned with and preoccupied by the notion that the STPSO Defendants are "operating the [STPJ facility] without sufficient funds[.]"[69] Mr. Vare, further, seems to impart blame for any

---

[63] *Id.*, at p. 41.
[64] *Id.*, at p. 46.
[65] *Id.*
[66] *Id.*, at p. 50.
[67] *See generally* ECF 1.
[68] *See* ECF 235-3, at pp. 1-2.
[69] *See* ECF 235-6, at p. 37.

overcrowding at the STPJ facility on any number of factors, including the following: (1) the facility's design (*i.e.*, the use of dormitory-style housing); (2) delays on the part of prosecutors in charging pre-trial detainees; and (3) the absence of any legal and/or statutory authority on the part of the STPG Defendants "to release individuals from custody without approval from the courts."[70]

Mr. Vare's opinions or testimony on this front will not in any way assist the trier of fact in understanding the evidence or determining whether the conditions of the Plaintiffs' pre-trial detention amount to a violation of their civil rights.[71] To be sure, Mr. Vare's opinions or testimony on this front do not relate to *any* issue in this case and, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[72] Accordingly, any relevance to be derived from Mr. Vare's "Opinion 1" is "substantially outweighed by the danger of confusing the issue, misleading the jury, and wasting time[,]" pursuant to Rule 403 of the Federal Rules of Evidence,[73] and this testimony should, therefore, be excluded on this basis alone.

Additionally, to the extent that Mr. Vare's "Opinion 1" contains any legal conclusions (such as, the proposition that the STPSO Defendants do not possess "the legal and statutory authority to release individuals from custody without approval from the courts[,]" or the legal mechanisms by which sheriffs are "ultimately responsible for operating" parish jails),[74] Plaintiffs would note that such are impermissible and they should, therefore, be excluded from Mr. Vare's opinions and testimony.[75]

ii. The portion of Mr. Vare's expert report entitled, "St. Tammany Parish Sheriff's Office and Parish Jail Profile,"[76] is wholly irrelevant –

[70] *Id.*, at pp. 37-38.
[71] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (quoting *Daubert*, 509 U.S. at 591 (citation omitted)) (internal quotation marks omitted).
[72] *Id.*
[73] *Dempster*, 2021 WL 848788, at *6.
[74] *See* ECF 235-6, at pp. 37-38.
[75] *Shawler*, 2016 WL 1019121, at *10 (citing *In re Midland Enterprises, Inc.*, No. Civ. A. 00-3750, 2002 WL 31780156, *3 (E.D. La. Dec. 11, 2002)).
[76] *See* ECF 235-6, at pp. 13-20.

particularly, given the stated focus of Mr. Vare's report (*i.e.*, "the conditions of confinement in the holding cell areas of the St. Tammany Parish Jail").[77]

The portion of Mr. Vare's expert report entitled, "St. Tammany Parish Sheriff's Office and Parish Jail Profile," fails to address any particular issue in the case, and is, therefore, both wholly irrelevant and will be "non-helpful[ ]" to the trier of fact.[78] Accordingly, Plaintiffs maintain that any relevance to be derived from this particular testimony is "substantially outweighed by the danger of confusing the issue, misleading the jury, and wasting time[,]" pursuant to Rule 403 of the Federal Rules of Evidence,[79] and should, therefore, be excluded from Mr. Vare's opinions and testimony.

iii. Any opinions or statements concerning the COVID-19 pandemic from Mr. Vare's expert report are wholly irrelevant, given the time period at issue.

Plaintiffs' allegations in the instant case primarily concern those periods of pre-trial detention and confinement that they were subjected to during the year 2019. Notably, none of the conduct at issue nor any of the allegations levied by the Plaintiffs concern any pre-trial detention that would have occurred after January 10, 2020. Accordingly, any opinions or statements concerning the COVID-19 pandemic on the part of Mr. Vare fail to address any particular issues in the case given the relevant time period (*i.e.*, certain durations of 2019, prior to the onset of the COVID-19 pandemic), and should, therefore, be deemed wholly irrelevant and "non-helpful[ ]" to the trier of fact,[80] and so excluded on this basis.

iv. Any opinions or statements concerning Mr. Vare's previous employment as "the jail administrator over [the] Napa County Jail in Napa, [California]" are wholly irrelevant.[81]

---

[77] *Id.*, at p. 4.
[78] *Moore*, 151 F.3d at 275 (quoting *Daubert*, 509 U.S. at 591 (citation omitted)).
[79] *Dempster*, 2021 WL 848788, at *6.
[80] *Moore*, 151 F.3d at 275 (quoting *Daubert*, 509 U.S. at 591 (citation omitted)).
[81] *See* ECF 235-6, at pp. 26-27.

Any opinions or statements concerning Mr. Vare's previous employment as "the jail administrator over [the] Napa County Jail in Napa, [California]"[82] fail to address any particular issue in the case, and are, therefore, both wholly irrelevant and will be "non-helpful[ ]" to the trier of fact.[83] Additionally, there is a concern on the part of the Plaintiffs that any references to the "authorization" received by Mr. Vare "from [a] presiding judge to make the determination [as to] which inmates should [have] be[en] transferred to other jurisdictions[ ]" is *highly* prejudicial,[84] given the risk that Mr. Vare's experience or opinions in other regards might inappropriately be considered by members of the jury to have been sanctioned, endorsed, or approved by a member of the judiciary. Accordingly, any relevance to be derived from this particular testimony is "substantially outweighed by the danger of confusing the issue, misleading the jury, and wasting time[,]" in accordance with Rule 403 of the Federal Rules of Evidence,[85] and should, therefore, be excluded from Mr. Vare's opinions and testimony.

v. Any opinions or statements suggesting that "[s]entenced offenders give up certain rights once they have been found guilty of a crime"[86] are both wholly irrelevant and impermissible legal conclusions.

Any opinions or statements on the part of Mr. Vare suggesting that "[s]entenced offenders give up certain rights once they have been found guilty of a crime"[87] fail to address any particular issue in the case—which concerns pretrial detainees—and are, therefore, both wholly irrelevant and will be "non-helpful[ ]" to the trier of fact.[88] Additionally, such opinions or statements constitute impermissible legal conclusions. As this Court previously acknowledged in *Tajonera v.*

---

[82] *Id.*
[83] *Moore*, 151 F.3d at 275 (quoting *Daubert*, 509 U.S. at 591 (citation omitted)).
[84] *See* ECF 235-6, at pp. 26-27.
[85] *Dempster*, 2021 WL 848788, at *6.
[86] *See* ECF 235-6, at p. 35.
[87] *Id.*
[88] *Moore*, 151 F.3d at 275 (quoting *Daubert*, 509 U.S. at 591 (citation omitted)).

*Black Elk Energy Offshore Operations, L.L.C.*,[89] Rule 704 of the Federal Rules Evidence (which holds that "[a]n opinion is not objectionable just because it embraces an ultimate issue[ ]") was enacted in order "to change the old view that the giving [of] an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[90] Notably, however, Rule 704 "does not "open the door to all opinions[,]"" and it cannot be said that "the rule [was] intended to allow a witness to give legal conclusions."[91] Accordingly, any opinions or statements on the part of Mr. Vare suggesting that "[s]entenced offenders give up certain rights once they have been found guilty of a crime"[92] should be excluded on the basis that they are both wholly irrelevant and impermissible legal conclusions.

vi. Any opinions or statements concerning the length of time afforded prosecutors to file charges across the country, including within the state of Louisiana, are wholly irrelevant.

Plaintiffs would invoke those arguments referenced above for the exclusion of any opinions or statements on the part of Mr. Vare suggesting that "[s]entenced offenders give up certain rights once they have been found guilty of a crime"[93] herein in full by reference for the exclusion of any opinions or statements concerning the length of time afforded prosecutors to file charges across the country, including within the state of Louisiana.[94]

vii. Any opinions or statements given by Mr. Vare alleging a predisposition for violence or criminal activity[95] and/or a history of having been arrested for purportedly "serious drug crimes"[96] on the part of any of the Plaintiffs are both highly irrelevant and unduly prejudicial.

---

[89] Civil Action No. 13-0366, 2016 WL 9414347 (E.D. La. May 13, 2016)
[90] *Id.*, at *11 (citing *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)) (internal quotation marks omitted).
[91] *Id.* (internal quotation marks omitted).
[92] *See* ECF 235-6, at p. 35.
[93] *Id.*
[94] *Id.*, at p. 36.
[95] *See, e.g.,* ECF 235-6, at pp. 40-44.
[96] *Id.*, at p. 40.

In the event the STPSO Defendants would seek to introduce evidence, by way of Mr. Vare's expert opinions or testimony, of any of the Plaintiffs' "other crimes, wrongs, or acts […] in order to show that they acted in conformity therewith[,]" such would be a clear violation of Rule 404(b)'s prohibition on the use of such character evidence,[97] and should, therefore, be excluded.

**d. Arguments attendant to credibility determinations.**

i. Any opinions or statements given by Mr. Vare speaking to the relative credibility and veracity of the Plaintiffs should be excluded, insofar as this testimony usurps the factfinder's inherent authority to make credibility determinations.

To the extent that any opinions or statements on the part of Mr. Vare attempt to "determine[e] the credibility of witnesses[,]" including the Plaintiffs, such must remain within the province of the jury.[98] Stated another way, Mr. Vare is precluded from "comment[ing] on the veracity or credibility" of witnesses,[99] and any opinions or statements to the contrary must be so excluded.

Relatedly, in *Grand Isle Shipyards, Inc. v. Black Elk Offshore Operations, LLC*,[100] this Court acknowledged that certain "factual bases speak for themselves[,]" and the Court would, therefore, "not require an expert to read and apply [said] factual bases."[101] *Waymo LLC v. Uber Technologies, Inc.*,[102] a case previously pending before the United States District Court for the Northern District of California, highlights an instance wherein an expert opinion had been excluded "when the evidence the expert relie[d] upon [spoke] for itself[.]"[103] Accordingly, in the

---

[97] *Jones v. Southern Pacific R.R.*, 962 F.2d 447, 449 (5th Cir. 1992) (citing FED. R. EVID. 404(b)).
[98] *Henson*, 2008 WL 449726, at *2 (citing *United States v. Deville*, 278 F.3d 500, 506 (5th Cir. 2002); *United States v. Rasco*, 123 F.3d 222, 229 (5th Cir. 1997)).
[99] *Id.*
[100] Civil Action No. 15-129, 2021 WL 533706 (E.D. La. Feb. 12, 2021).
[101] *Id.*, at *4.
[102] No. 17-939, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017).
[103] *Grand Isle Shipyards, Inc.*, 2021 WL 533706, at *4 n.42 (citing *Waymo LLC*, 2017 WL 5148390, at *5).

instant case, Mr. Vare should be precluded from rendering an expert opinion in those instances wherein the evidence relied upon by Mr. Vare "speaks for itself."[104]

## VI. PRAYER

**WHEREFORE**, the Plaintiffs, AHMED BAQER, KLABERT JOSEPH GUILLOT, SR., TERRY HALL, FLOYD WILLIAMS, and KEVIN LOUVIERE, by and through their counsel of record, respectfully requests that this Court enter an Order granting Plaintiffs' Motion to Exclude Proposed Expert Testimony of Lenard Vare, and for all such other and further relief to which the Plaintiffs may be justly entitled.

**Date: August 22, 2023**

Respectfully submitted,
ROMANUCCI & BLANDIN, LLC

/s/ Sam Harton, PHV

One of Plaintiffs' attorneys

Maria B. Glorioso (#24435), T.A.
Vincent J. Glorioso, Jr. (#6064)
**THE GLORIOSO LAW FIRM**
2716 Athania Parkway
Metairi, LA 70002
+1 (504) 569-9999, *Telephone*
+1 (504) 569-9022, *Facsimile*
maria@gtorts.com

Devon M. Jacob (*pro hac vice*)
**JACOB LITIGATION, INC.**
P.O. Box 837
Mechanicsburg, PA 17055-0837
+1 (717) 796-7733, *Telephone*
djacob@jacoblitigation.com

---

[104] *Id.*

Antonio M. Romanucci (*pro hac vice*)
Bhavani K. Raveendran (*pro hac vice*)
Sam Harton (*pro hac vice*)
Javier Rodriguez, Jr. (*pro hac vice **pending***)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
+1 (312) 458-1000, *Main*
+1 (312) 458-1004, *Facsimile*
aromannuci@rblaw.net
b.raveendran@rblaw.net
sharton@rblaw.net
jrodriguez@rblaw.net

*Attorneys for Plaintiffs, Ahmed Baqer, Floyd Alan Williams, Terry Hall, Kevin Louviere, and Klabert Guillot, Sr.*

**PROOF OF SERVICE**

I, the undersigned, on oath, subject to penalty of perjury, state that I served this notice by filing this memorandum with the Clerk of Court, on **August 22, 2023**, using the CM/ECF system.

Respectfully submitted,
ROMANUCCI & BLANDIN, LLC

/s/ Sam Harton, PHV

One of Plaintiffs' attorneys