# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AHMED BAQER, KLABERT JOSEPH GUILLOT, JR., and KLABERT JOSEPH GUILLOT, SR. | * * * | NO. 2020-CV-00980 |
| Plaintiffs | * | JUDGE PAPILLION |
| VERSUS | * | |
| | * | |
| ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL, ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, in his official and individual capacity, RODNEY J. STRAIN, in his official and individual capacity, GREG LONGINO, in his official and individual capacity, and LACEY KELLY, in her official and individual and individual capacity, and LACEY KELLY, in her official and individual capacity | * * * * * * * * * * * | MAGISTRATE DOSSIER JURY DEMAND COMBINED WITH *Louiere v. St. Tammany Parish Government No. 2:20-cv-01840-WBV-DPC* |
| Defendants | * | ALL CASES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

## STATEMENT OF UNDISPUTED FACTS

---

**MAY IT PLEASE THE COURT:**

NOW COME, through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment as to the claims of Ahmed Baqer, and aver as follows:

### A. Ahmed Baqer

1. On March 20, 2019, Ahmed Baqer, was arrested by the Causeway Police Department.[1]

---

[1] See pgs. 2 – 11 of the Jail Records for Ahmed Baqer, attached to Defendants' Motion for Summary Judgment as Exhibit "1."

2.  Mr. Baqer was charged with Aggravated flight from an officer, Aggravated Obstruction of a Highway, Operation of a vehicle while intoxicated, Possession of marijuana 14 grams or less and Improper equipment.[2]

3.  A trial date was set for July 16, 2019, stemming from charges from the arrest taking place on March 20, 2019.[3]

4.  An attachment was issued for Contempt of Court due to Mr. Baqer's failure to appear in Court for the charges stemming from the March 20, 2019, arrest.[4]

5.  Mr. Baqer, was arrested by the St. Tammany Parish Sheriff's Office (STPSO) on December 2, 2019, and was officially booked into the St. Tammany Parish Jail ("STPJ") on December 2, 2019, at 19:40 hours, and placed into a holding cell.[5]

6.  Mr. Baqer, was held in the holding cells at the STPJ for a total of sixteen (16) days, from December 2, 2019, until December 17, 2019.[6]

7.  On December 2, 2019, Mr. Baqer, was placed into Male Holding Cell 2.[7]

8.  On December 17, 2019, Mr. Baqer, was transferred to the C-Building Dorm.[8]

9.  Mr. Baqer testified that the holding cell was cleaned and all trash was removed on shower days, and that he showered three times the first week, and two times the second week.[9]

10. Mr. Baqer testified that when he was allowed to shower, that the cells were both

---

[2] See Exhibit 1, pgs. 2 – 5.
[3] See Louisiana 22nd JDC Minutes, 07/16/2019, attached to Defendants' Motion for Summary Judgment as Exhibit "2."
[4] See Exhibit 2.
[5] See Exhibit 1 at pg. 88.
[6] See Inmate Cell Movement Report, attached to Defendants' Motion for Summary Judgment as Exhibit "3."
[7] See Exhibit 3.
[8] See Exhibit 3.
[9] See pg. 35, lines 1 – 13, of the Transcript of Hearing on Motion Proceedings, dated April 10, 2020, to Defendants' Motion for Summary Judgment as Exhibit "11."

mopped and swept and that the trash was removed.[10]

11. Mr. Baqer testified that the longest that vomit ever remained on the ground in the holding cell before being mopped up was six (6) hours.[11]

12. Mr. Baqer testified that the STPJ provided soap to the detainees in the holding cell.[12]

13. Mr. Baqer testified that there were no other bodily excrements, such has feces or blood, present on the ground.[13]

14. Mr. Baqer testified that when he showered, he was provided soap, shampoo and a clean set of clothing.[14]

15. Mr. Baqer testified that during his time in the holding cell, that he was fed three time a day.[15]

16. Mr. Baqer testified that during his time in the holding cell, that he was able to lay down to sleep.[16]

17. Mr. Baqer testified that during his time in the holding cell, that he was provided toilet paper.[17]

18. Mr. Baqer testified that during his time in the holding cell, that he was provided a blanket every night to sleep with.[18]

19. Mr. Baqer testified that during his time in the holding cell that he was never assaulted or struck by anyone.[19]

---

[10] See Exhibit 11, pg. 35, lines 14 – 17.
[11] *Id*. at pgs. 32, lines 16 – 23.
[12] *Id*. at pg. 33, lines 23 – 24.
[13] See pg. 68, lines 2 – 6 of the deposition testimony of Ahmed Baqer, attached to Defendants' Motion for Summary Judgment as Exhibit "10."
[14] See Exhibit 10, pg. 72, lines 10 – 20.
[15] *Id*. at pg. 63, lines 4 – 10.
[16] *Id*. at pg. 67, lines 1 – 3.
[17] *Id*. at pg. 68, lines 7 – 9.
[18] *Id*. at pg. 71, lines 16 – 21; See also, Exhibit 11, pg. 45, lines 8 – 10.
[19] See Exhibit 11, pgs. 51 – 52, lines 25 – 3.

20. Mr. Baqer testified that he cannot provide the name of any deputy who he believes violated his rights in any way.[20]

21. Mr. Baqer, testified that none of the alleged demeaning remarks by STPJ personnel were ever directed towards him.[21]

22. Mr. Baqer testified that he did not have a problem with the temperature in the holding cells being cold, and that he would instead rather it be cold.[22]

23. Mr. Baqer testified that when he was first booked into the STPJ, that he did not have his medication on him.[23]

24. Mr. Baqer testified that he was not complaining about being allegedly denied his prescription medication.[24]

25. Mr. Baqer testified that he did not seek any treatment for his alleged mental injuries resulting from his time in the STPJ holding cells.[25]

26. Mr. Baqer testified that he did not sustain any physical injuries as a result of his time in the holding cells.[26]

27. Mr. Baqer testified that when he arrived at the STPJ on December 2, 2019, that he was neither detoxing nor coming off of any drugs.[27]

28. Mr. Baqer's jail medical records provide that he was "intoxicated or detoxing from alcohol/other drugs" during his time at the STPJ.[28]

---

[20] See Exhibit 10, pg. 62, lines 14 – 25.
[21] *Id*. at pgs. 69 – 70, lines 25 – 2.
[22] *Id*. at pg. 71, lines 11 – 15.
[23] *Id*. at pgs. 60 – 61, lines 23 – 2; See also Exhibit 11 at pg. 46, lines 2 – 7.
[24] See Exhibit 10, pg. 61, lines 6 – 9; See also Exhibit 11, pg. 46, lines 2 – 7.
[25] See Exhibit 10, pg. 64, lines 5 – 15.
[26] *Id*. at pg. 64, lines 5 – 17.
[27] See Exhibit 10, pg. 75, lines 1 – 8.
[28] See pg. 7 of the Medical Records of Ahmed Baqer from the STPJ, attached to Defendants' Motion for Summary Judgment as Exhibit "12."

29. Mr. Baqer's jail medical records provide that on the day that he arrived he had been taking "opiate pills, 10 roxies a day; and snorting heroin gram daily," "THC 3.5 grams daily" and "alcohol half a handle a day (big bottle)."[29]

30. Mr. Baqer's medical records provided that he took "[cocaine] on occasions," at least a week before arriving at the STPJ.[30]

31. Mr. Baqer's medical records indicate that he consumed alcohol at least 3 days a week and that he took Xanax and heroin daily.[31]

32. Mr. Baqer's medical records indicate that he began withdrawal for alcohol, Xanax and heroin upon his arrest by the STPSO on December 2, 2019.[32]

33. Mr. Baqer was prescribed multiple medications by the STPJ medical personnel to treat his detox symptoms, including chlordiazepoxide, folic acid, thiamime HCl, acetaminophen, loperamide and meclizine.[33]

34. Mr. Baqer was seen by STPJ medical personnel, and had his vitals taken numerous times from December 3, 2019, through December 7, 2019.[34]

35. Mr. Baqer was also seen by STPJ medical personnel on December 12, 2019.[35]

36. Mr. Baqer is not in possession of any medical records evidencing any injuries he allegedly sustained during his time in the STPJ holding cells.[36]

37. Mr. Baqer never initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") during his time in the STPJ holding cells.[37]

---

[29] *Id*. at pg. 6
[30] *Id*.
[31] *Id*. at pgs. 21 – 22.
[32] *Id*. at pgs. 21 – 22.
[33] *Id*. at pgs. 32 – 33.
[34] *Id*. at pgs. 3 – 4.
[35] *Id*. at pgs. 5 – 10.
[36] See R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.
[37] See R. Doc. 37-1, ¶ 25.

**B. 30(b)(6) Testimony**

38. Defendant, Sgt. Lacey Kelly testified that the temperature of the holding cells was kept at 68 to 69 degrees.[38]

39. Sgt. Lacey Kelly testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[39]

40. Sgt. Lacey Kelly testified that the STPJ houses inmates from St. Tammany Parish, Department of Corrections ("DOC") and U.S. Marshal prisoners and serves as a hub for reentry for rehabilitative services for seven parishes.[40]

41. Sgt. Lacey Kelly testified that the STPJ is under contract to take these DOC and federal inmates, and they are housed in a DOC general population housing unit.[41] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[42] Beds within the STPJ are specifically reserved for inmates by those categories.[43]

42. Sgt. Lacey Kelly testified that because of these federal contracts, if there is an open bed in DOC, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[44] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed.[45]

---

[38] See pg. 25, lines 8 – 12, of the 30(b)(6) Deposition Testimony of STSPO, attached to Defendants' Motion for Summary Judgment as Exhibit "4."
[39] See Exhibit 4, pgs. 25-26, lines 11-5.
[40] *Id*. at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[41] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4.
[42] *Id*. at pg. 50, lines 5 – 9.
[43] *Id*. at pg. 80, lines 5 – 12.
[44] *Id*. at pg. 80, lines 13 – 17.
[45] *Id*. at pg. 165, lines 3 – 7.

43. Sgt. Lacey Kelly testified that there was no punitive action or malice involved in Mr. Baqer being kept in the holding cell for the amount of time that he was.[46]

44. Sgt. Lacey Kelly testified that detainees have access to medical care 24 hours a day.[47]

45. Sgt. Lacey Kelly testified that the STPJ contracts with a third-party vendor to provide medical services.[48]

46. Sgt. Kelly testified that the third-party medical vendor sets the medical policies and practices, not the STPJ.[49]

47. Sgt. Lacey Kelly testified that it is common practice to place five rolls of toilet paper in the cell and replace them as needed.[50]

48. Sgt. Lacey Kelly testified that it became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keeping it for themselves and not sharing it.[51]

49. Sgt. Lacey Kelly testified that there was no directive that detainees were entitled to only three rolls of toilet paper per cell.[52]

**C. Sheriff Randy Smith**

50. As the elected Sheriff of St. Tammany Parish, Sheriff Smith is in charge of a department of almost 800 employees, and Sheriff Smith is also responsible for the operation of the St. Tammany Parish Jail which has a capacity of approximately 1,200 inmates.[53]

---

[46] *Id*. at pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.
[47] *Id*. at pg. 88, lines 5 – 12; pg. 103, lines 8 – 15.
[48] *Id*. at pgs. 102 – 103, lines 22 – 7.
[49] *Id*.
[50] *Id*. at pgs. 119 – 120, lines 17 – 4.
[51] *Id*.
[52] *Id*.
[53] *See* ¶ 5 of the Affidavit of Sheriff Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "8."

51. Sheriff Smith has no day-to-day role with respect to any individual's confinement in the jail, as he has delegated those day-to-day responsibilities to his subordinates.[54]

52. Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in the above-captioned matter.[55]

53. Sheriff Smith has no first-hand knowledge about the incarceration and the conditions of confinement of any of the individual Plaintiffs in the St. Tammany Parish Jail.[56]

54. Sheriff Smith has never met nor spoken with any of the individual Plaintiffs in this matter with regard to their confinement in the St. Tammany Parish Jail.[57]

55. Sheriff Smith did not become aware that any of these individual Plaintiffs were ever incarcerated at the St. Tammany Parish Jail until after this suit was filed.[58]

56. Since Sheriff Smith became Sheriff in 2016, it has always been the policy of the St. Tammany Parish Sheriff's Office to hold individuals in the holding cells only until such time as a bed opens up in one of the jail housing units.[59]

57. The jail housing units are segregated by inmate classification, specifically, these units are designated for St. Tammany Parish pre-trial detainees, Louisiana Department of Corrections ("DOC") inmates, and Federal detainees. St. Tammany Parish pre-trial detainees are not eligible for housing in either of the DOC or the Federal housing units.[60]

58. Since Sheriff Smith became Sheriff in 2016, it has never been the policy or custom of the St. Tammany Parish Sheriff's Office to hold any individual in the holding cells for

---

[54] See Exhibit 8, ¶ 6.
[55] *Id*. at ¶ 7.
[56] *Id*. at ¶ 8.
[57] *Id*. at ¶ 9.
[58] *Id*. at ¶ 10.
[59] *Id*. at ¶ 11.
[60] *Id*. at ¶ 12.

any punitive reason.[61]

59. Sheriff Smith testified that due to the contract with DOC, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[62]

60. Sheriff Smith testified that there was no policy requiring individuals to be held in the holding cells longer than 48 hours.[63]

## D. Deputy Chief Brett Ibert

61. STPJ houses pre-trial detainees for St. Tammany Parish, the Louisiana Department of Corrections ("DOC"), Federal inmates for the U.S. Marshal's Office and also serves as a hub for reentry for rehabilitative services for seven parishes.[64]

62. The STPJ is under contract to take these DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units within the STPJ which are reserved for St. Tammany Parish pre-trial detainees.[65]

63. Beds within the STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal.[66]

64. Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ. Detainees are transferred to the general population housing units when a bed becomes available based

---

[61] *Id*. at ¶ 13.
[62] See pg. 91, lines 13 – 20 of the Deposition Testimony of Sheriff Randy Smith, attached to Defendants' Motion for Summary Judgment as Exhibit "5."
[63] See Exhibit 5, pg. 117, lines 22 – 25.
[64] See ¶ 7 of the Affidavit of Deputy Chief Brett Ibert, attached to Defendants' Motion for Summary Judgment as Exhibit "6."
[65] See Exhibit 6, ¶ 8.
[66] *Id*. at ¶ 9.

on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[67]

65. The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[68]

66. Under this arrangement of having the STPJ housing units segregated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed.  Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[69]

67. No pre-trial detainees are held in the holding cells inside the STPJ for any punitive reason. Further, none of the five plaintiffs in this matter were held in the holding cells within the STPJ for any punitive reason.[70]

**E. Warden Daniel Fleischman**

68. Warden Fleischman testified that there is not enough room in the holding cells to fit mattresses or beds for pre-trial detainees.[71]

69. Warden Fleischman testified that placing mattresses or beds into the holding cells would reduce the number of detainees that would be able to be held in the holding cells due to lack of space.[72]

70. Warden Fleischman testified that placing mattresses or beds into the holding cells

---

[67] *Id*. at ¶ 10.
[68] *Id*. at ¶ 11.
[69] *Id*. at ¶ 12.
[70] *Id*. at ¶ 13.
[71] See pg. 41, lines 10 – 14 and pg. 105, lines 12 – 23 of the Deposition Testimony of Daniel Fleischman, attached to Defendants' Motion for Summary Judgment as Exhibit "7."
[72] See Exhibit 7, pg. 105, lines 9 – 21.

would force the pre-trial detainees to navigate over them and cause more issues than not having them.[73]

71. Warden Fleischman testified that the jail is under contract to house state and federal inmates.[74]

72. Warden Fleischman testified that even if there were an open bed, that pre-trial detainees would remain in holding cells and not be moved to open beds in DOC or federal housing units.[75]

73. Warden Fleischman testified that pre-trial detainees have not been convicted, and that moving them into a dorm with convicted felons/federal inmates would put the pre-trial detainee into more danger than sleeping on a cement bench.[76]

74. Warden Fleischman testified that the STPJ is under contract with the Marshals Service and the Bureau of Prisons to reserve 150 beds for male and 30 beds for female federal detainees.[77]

75. Warden Fleischman testified that the contract with the Marshals Service and the Bureau of Prisons is still in effect.[78]

76. Warden Fleischman testified that detainees of the Marshals Service and Bureau of Prisons are held in their dorm separate from other inmates including DOC, Parish and pre-trial.[79]

77. Warden Fleischman testified that detainees of the Marshals Service and Bureau of Prisons are never comingled with pre-trial detainees because: (1) the Marshal Service

---

[73] *Id*. at pg. 105, lines 20 – 23.
[74] *Id*. at pgs. 53 – 54, lines 24 – 5.
[75] *Id*. at pgs. 65 – 66, lines 23 – 6.
[76] *Id*. at pg. 66, lines 7 – 21.
[77] *Id*. at pgs. 94 – 95, lines 4 – 1.
[78] *Id*. at pg. 94, lines 7 – 11.
[79] *Id*. at pg. 95, lines 6 – 12.

does not want them comingled and (2) because those federal detainees are more dangerous than pre-trial detainees.[80]

78. Warden Fleischman testified that he would not place pre-trial detainees into open beds with federal detainees because of the contract that is in effect.[81]

79. Warden Fleischman testified that pre-trial detainees in holding cells receive fresh air mixed with the air conditioning through fresh air dampers.[82]

80. Warden Fleischman testified that to his knowledge it has always been STPJ policy for detainees to have a blanket at night.[83]

81. Warden Fleischman testified that lights in the holding cells are kept on 24/7.[84]

82. Warden Fleischman testified that the lights in the holdings cells are kept on 24/7 for inmate safety.[85]

83. Warden Fleischman testified that if the lights are not kept on 24/7, then STPJ officials are not able to see if people are fighting or doing things they are not supposed to be doing.[86]

84. Warden Fleischman testified that the first 72 hours of incarceration are the most critical time to monitor people, especially if they have never been arrested before, because you do not know their state of mind.[87]

85. Warden Fleischman testified that to the best of his knowledge, the current policy of leaving the lights on in the holding cells 24/7 is no different that it was in 2019 and

---

[80] *Id*. at pgs. 95 – 96, lines 13 – 4.
[81] *Id*. at pg. 96, lines 5 – 18.
[82] *Id*. at pgs. 75 – 76, lines 14 – 17.
[83] *Id*. at pgs. 105 – 106, lines 24 – 19.
[84] *Id*. at pg. 98, lines 1 – 5.
[85] *Id*. at pg. 98, lines 7 – 10.
[86] *Id*. at pg. 98, lines 11 – 17.
[87] *Id*. at pg. 98, lines 18 – 25.

2020.[88]

86. Warden Fleischman testified that the jail contracts out with another party for medical services.[89]

87. Warden Fleischman testified that the vendor who provides medical services sets their own policies and rules.[90]

88. Warden Fleischman testified that STPJ personnel such as correctional officers, the warden, captains and sergeants cannot give out medication, only the vendor providing medical services can.[91]

89. Warden Fleischman testified that the contractor is the one who sets the policy for how to give medication out.[92]

90. Warden Fleischman testified that neither the jail nor the Sheriff's office keep people in holding cells longer than 48 hours for any punitive reasons.[93]

91. Warden Fleischman testified that the object of the jail and Sheriff's office is to move people out of holding as quick as possible in order to make room for the next group that comes to holding.[94]

92. Warden Fleischman testified that neither the jail nor the Sheriff's office have anything to gain from keeping an individual in a holding cell for longer than 48 hours.[95]

**F. Defendants' Contract with the U.S. Marshal's Service, Bureau of Prisons and U.S. Immigration and Customs Enforcement**

93. The St. Tammany Parish Sheriff's Office has a contract with the U.S. Department of

---

[88] *Id*. at pgs. 98 – 99, lines 25 – 4.
[89] *Id*. at pg. 101, lines 18 – 22.
[90] *Id*.
[91] *Id*. at pg. 102, lines 2 – 4.
[92] *Id*. at pg. 102, lines 5 – 8.
[93] *Id*. at pg. 97, lines 4 – 11.
[94] *Id*.
[95] *Id*.

Justice, United States Marshals Service Prisoner Operations Division.[96]

94. Under the terms of this contract, the St. Tammany Parish Jail must provide 180 total beds for the detainees of the U.S. Marshals Service, the Bureau of Prisons ("BOP") and U.S. Immigration and Customs Enforcement ("ICE").[97]

95. Under the terms of the contract, these 180 beds are specifically designated for use by the Marshals Service, BOP and ICE to house only the designated population.[98]

96. The terms of the contract defines the designated population as follows: "The population (hereinafter referred to as "Federal detainees,") will include individuals charged with Federal offenses and detained while awaiting trial, individuals who have been sentenced and are awaiting designation and transport to a Bureau of Prisons (BOP) facility, and individuals who are awaiting a hearing on their immigration status or deportation."[99]

## G. Previous Findings of the Court

94. On April 10, 2020, a hearing was held on Plaintiffs' Motion for Preliminary Injunction.[100]

95. At the time of the April 10, 2020, hearing, Mr. Baqer, was no longer being held in the holding cells at the St. Tammany Parish Jail.[101]

96. During the April 10, 2020, hearing, Mr. Baqer provided testimony regarding the conditions of confinement that he believed to be unconstitutional during his time in the

---

[96] See U.S. Department of Justice – United States Marshals Service Contract, attached to Defendants' Motion for Summary Judgment as Exhibit "9"; See also, Exhibit 7-A.
[97] See Exhibit 9; See also Exhibit 7-A.
[98] Id.
[99] Id. at pg. 3.
[100] See Exhibit 11.
[101] Id. at pg. 30.

STPJ holding cells.[102]

97. Upon conclusion of oral argument, the Honorable Judge Wendy B. Vitter took the matter under advisement.[103]

98. On April 11, 2020, Judge Vitter issued her Order and Reasons for denying Plaintiffs' Motion for Preliminary Injunction.[104]

99. In denying Plaintiffs' Motion for Preliminary Injunction, Judge Vitter held that Plaintiffs did not meet their burden of providing evidence to show a substantial likelihood of success on the merits of the allegations in their March 22, 2020 Complaint regarding the conditions of their confinement in the holding cells at the STPJ violating their constitutional rights.[105]

100. Judge Vitter held that, "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment."[106]

101. Judge Vitter held that "While Plaintiffs argued that the Court should look to the 'cumulative record' to establish punitive intent and to show the likelihood of success on the merits of their claims, they were unable to point to any specific action by any of the Defendants or jail staff to support that argument, even when the Court specifically asked to be directed to such action."[107]

102. Judge Vitter held that "Plaintiffs have failed to establish conditions which are so egregious that would offend "contemporary standards of decency."[108]

---

[102] *Id*. at pgs. 29 – 58.
[103] *Id*. at pg. 145.
[104] See R. Doc. 40, pg. 31.
[105] *Id*. at pg. 27.
[106] *Id.* at pg. 31.
[107] *Id*.
[108] *Id*.

103.    Judge Vitter held that, "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[109]

104.    Judge Vitter held that, "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent. Instead, the Court finds the facts and analysis of *Allen* are directly on point. Further, Plaintiffs have failed to establish a constitutional violation."[110]

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Andrew R. Capitelli*

| | |
|---|---|
| **ANDREW R. CAPITELLI** | **# 31649** |
| **BRUCE A. CRANNER** | **# 1796** |
| **KENNETH R. WHITTLE** | **# 38640** |
| **SARAH A. FISHER** | **# 39881** |

**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone:    (985) 292-2000**
**Facsimile:    (985) 292-2001**
acapitelli@millinglaw.com
bcranner@millinglaw.com
kwhittle@millinglaw.com
sfisher@millinglaw.com
***Counsel for Defendants***

---

[109] *Id*. at pgs. 31 – 32.
[110] *Id*. at pg. 32.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Wednesday, May 15, 2024, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

s/ Andrew R. Capitelli
**Andrew R. Capitelli**