# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AHMED BAQER, KLABERT JOSEPH | * | NO. 2020-CV-00980 |
| GUILLOT, JR., and KLABERT JOSEPH | * | |
| GUILLOT, SR. | * | |
| Plaintiffs | * | JUDGE PAPILLION |
| VERSUS | * | |
| | * | |
| ST. TAMMANY PARISH GOVERNMENT, | * | MAGISTRATE DOSSIER |
| a/k/a ST. TAMMANY PARISH COUNCIL, | * | |
| ST. TAMMANY PARISH SHERIFF'S | * | |
| OFFICE, RANDY SMITH, in his official | * | JURY DEMAND |
| and individual capacity, RODNEY J. | * | |
| STRAIN, in his official and individual | * | |
| capacity, GREG LONGINO, in his official | * | COMBINED WITH *Louviere v.* |
| and individual capacity, and LACEY | * | *St. Tammany Parish Government* |
| KELLY, in her official and individual | * | *No. 2:20-cv-01840-WBV-DPC* |
| and individual capacity, and LACEY | * | |
| KELLY, in her official and individual | * | |
| capacity | * | ALL CASES |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF TERRY MATTHEW HALL JR.

---

## MAY IT PLEASE THE COURT:

   **NOW COME,** through undersigned counsel, Defendants, Sheriff Randy Smith and Lacey Kelly, each in their individual and official capacities, who respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56:

### I.    ALLEGATIONS OF FACT

   Defendants note that the foregoing Motion for Summary Judgment is being resubmitted in accordance with this Court's February 7, 2024 Order[1] and May 6, 2024 Telephone Status

---

[1] See R. Doc. 367.

Conference.[2] Defendants further note that in the interest of consolidating all arguments to a single motion, that the foregoing Motion for Summary Judgment is a combination of the previously filed Motion for Summary Judgment[3] and associated pleadings.[4]

### A. Procedural Background

Plaintiff, Terry Matthew Hall, Jr., filed the instant action on March 22, 2020 alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana.[5] Plaintiff's Complaint challenges the conditions of his pre-trial detainment, and in particular, alleges the following theories of recovery stemming from the time he was detained in holding cells at the St. Tammany Parish Jail ("STPJ"):

1. Violations of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana;

2. Violations of Article I, Section 20 of the Louisiana Constitution;

3. Negligence; and

4. Liability against Defendants Smith, Strain, Longino and Kelly pursuant to *Respondeat Superior*.[6]

Plaintiff originally named as Defendants not only the current Sheriff of St. Tammany Parish, Randy Smith, and the warden of the STPJ at all times relevant to their detentions, Lacey Kelly, but also Sheriff Smith's predecessor-in-office, Rodney Strain, as well as Major Kelly's predecessor, Mr. Greg Longino.[7] The Court subsequently dismissed Plaintiff's claims against Rodney Strain and Greg Longino with prejudice on March 22, 2021.[8]  On April 26, 2021, this

---

[2] See R. Doc. 378.
[3] See R. Doc. 236.
[4] See R. Doc. 337.
[5] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1.
[6] All claims against Defendants, Strain and Longino, have been dismissed (R. Doc. 149; See also 2:20-cv-01840-WBV-DPC, R. Doc. 60).
[7] *Id*. (Lacey Kelly was the warden of the STPJ during the time in which Plaintiffs were held in the holding cells, from 2019 through 2020).
[8] See R. Doc. 149.

matter was consolidated with *Baqer et. al. v. St. Tammany Parish Government, et. al.*, No. 2:20-cv-00980-DJP-DPC, and Plaintiffs' original motions to certify class, which were filed in both the instant matter and in *Louviere*, were denied without prejudice.[9]

### B. Factual Background

In October of 2015, Terry Matthew Hall, Jr., was placed on probation for five (5) years, from October 22, 2015, until October 22, 2020, stemming from charges relating to Possession of Schedule I and Aggravated Second Degree Battery.[10] On October 18, 2019, Terry Matthew Hall, Jr., was arrested by the STPSO for violating the terms of his probation by testing positive for an illegal substance.[11] Upon his arrest, Mr. Hall was booked into the STPJ and placed into male holding cell 1.[12] Mr. Hall remained in the holding cells at the STPJ for a total of fifteen (15) days, from October 18, 2019, until his release on November 1, 2019.[13]

Mr. Hall has alleged that during his time in the STPJ holding cell, that he was subjected to the following conditions of confinement, which he claims violated his constitutional rights:

(1) The length of time he was kept in the holding cell;
(2) Overcrowding of the holding cell;
(3) Unsanitary conditions within the holding cell;
(4) Being forced to sleep on the concrete floor of the holding cell;
(5) Limited and/or no access to blankets at night;
(6) Limited access to showers;
(7) Denial of the ability to participate in recreational activities and/or exercise;
(8) Cold temperature within the holding cell; and
(9) That the conditions of the holding cell resulted in Mr. Hall contracting gangrene in his foot and lower back pain.

As will be discussed in further detail below, Plaintiff's claims are not actionable as they

---

[9] See R. Doc. 152.
[10] See pgs. 25-26 of the Jail Records of Terry Matthew Hall, Jr., attached herein as Exhibit "1."
[11] See Exhibit 1, pg. 3; See also pgs. 18 – 19, lines 23 – 2 of the Deposition Testimony of Terry Matthew Hall, Jr., attached herein as Exhibit "2."
[12] See Inmate Cell Movement Report, attached herein as Exhibit "3."
[13] See Exhibit 1, pgs. 4, 31.

consist of allegations and complaints that are not *per se* unconstitutional. Plaintiff has failed to present any evidence establishing that any of the alleged treatment and/or deprivations were done with punitive intent on behalf of the Defendants. Additionally, Plaintiff's claims, by his own admissions, are not actionable, as Plaintiff's testimony establishes that during his time at the STPJ, he was **never** denied and/or deprived of life's necessities but was instead continually provided with them. Accordingly, this Honorable Court should dismiss Plaintiff, Terry Matthew Hall, Jr.'s claims against Defendants, Sheriff Randy Smith and Lacey Kelly, with prejudice.

## II.    LAW AND ARGUMENT

### A. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment in federal court. The rule mandates that granting of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14]

As a general rule, the moving party has the initial burden to establish that there are no issues of material fact and that the mover is entitled to judgment in its favor as a matter of law.[15] Only disputed facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.[16] If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of material fact exists.[17] A fact is material only when it might affect the outcome of the suit under the governing law.[18] In other words, the mere

---

[14] Fed. R. Civ. P. 56(a); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Poole v City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[15] *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District*, 349 F.3d 244, 246-47 (5th Cir. 2003).

[16] *Condiff v. R.D. Werner Company, Inc.*, 2003 U.S. Dist. LEXIS 14288 (E.D. La. 2003).

[17] *New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776, 780 (E.D. La 2003).

[18] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see also Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party...If the evidence is merely colorable, or is not significantly probative, summary

existence of some alleged factual dispute will not defeat an otherwise properly supported motion.

The Fifth Circuit requires the nonmoving party to tender "significant" and "probative" evidence to rebut a summary judgment motion.[19] This burden placed on the non-mover to offer countervailing evidence is a heavy one. In fact, one court has expressed, in rather blunt terms, that summary judgment is the stage of the proceedings for parties "to put up or shut up."[20] "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[21] While all reasonable inferences are drawn in favor of the nonmoving party, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[22]

### B. Summary Judgment Standard for Qualified Immunity

The general rules regarding summary judgment are even further manifest when dealing with claims asserted under § 1983 where the defendant raises qualified immunity as a defense, as Defendants have done here. As summarized by one court:

> The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, **it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised**. An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.[23]

---

judgment may be granted."
[19] *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).
[20] *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2nd Cir. 2000); See also, *Ankum v. White Consolidated Industries*, 1992 WL 236961, *5 (E.D. La. 1992) (Sear, J.) ("The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask the other party to 'put up for shut up.' The opposing party then must go beyond the pleadings and offer proof of his claim.") (emphasis added).
[21] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[22] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[23] *Tolan v. Cotton*, 854 F.Supp.2d 444, 463 (S.D. Tx. 2012)(emphasis added)(internal citations omitted), affirmed 713 F.3d 299 (5th Cir. 2013), reversed on other grounds, 134 S. Ct. 1861, 188 L.Ed.2d 895 (2014) (emphasis added).

"[T]he qualified-immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[24] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" in situations in which "existing precedent…placed the statutory or constitutional question beyond debate."[25] To defeat qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[26] "The movant, on the other hand, can support its motion by relying solely on the pleadings."[27]

Qualified immunity exists to ensure that "fear of liability will not unduly inhibit officials in the discharge of their duties."[28] While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[29] This "clearly established law should not be defined 'at a high level of generality.'"[30] It must be "particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."[31] The "statutory or constitutional question" must be "beyond debate"[32] and so clearly established that a "reasonably official would have understood that what he is doing violates that right."[33]

This high burden requires Plaintiff to identify a "case where an officer acting under similar

---

[24] *Dolan v. Parish of St. Tammany*, 2014 U.S. Dist. LEXIS 26200 *citing Behrens v. Pelletier*, 516 U.S. 299, 305 (1996).
[25] *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).
[26] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[27] *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007).
[28] *Camreta v. Greene*, 563 U.S. 692, 705 (2011) *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[29] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[30] See *White*, 137 S. Ct. at 552.
[31] *Id*.
[32] *Rivas-Villegas v. Cortesluna*, 2021 U.S. LEXIS 5311 at *6 (Oct. 18, 2021) *citing White*, 137 S. Ct. 548, 551.
[33] *Id citing Mullenix v. Luna* 577 U.S. 7, 11 (2015).

circumstances as [each of the defendants] was held to have violated [a person's constitutional rights]."[34] "If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages."[35] This notice is paramount, and the Supreme Court has questioned a party for not submitting any Supreme Court cases that address the facts at bar and has even openly mused about the value of Circuit precedent in clearly establishing law.[36] For this reason the Supreme Court has stated that "[m]any Courts of Appeals therefore decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity," as such decisions do not "settle constitutional standards or prevent repeated claims of qualified immunity."[37] This follows from the general practice of *stare decisis* whereby district court decisions are not binding authority "in either a different judicial district, the same judicial district, or even upon the same judge in a different case."[38] As provided below, Plaintiff fails to identify a violation of any clearly established, protected right, and therefore, Defendants are entitled to qualified immunity and summary judgment.

### C. Qualified Immunity Should be Determined on Summary Judgment

The issue of qualified immunity is uniquely ripe for disposition via summary judgment. This is why a district court denial of summary judgment to a defendant on the issue of qualified immunity is immediately appealable when the "issue appealed concerned…whether or not certain given facts show a violation of a clearly established law."[39]

---

[34] *Id.*
[35] *Camreta* 563 U.S. at 705.
[36] *Rivas-Villegas,* U.S. LEXIS 5211 at *7.
[37] *Camreta* 563 U.S. at 709; *see also Crane v. Utah Dep't of corr.* 2021 U.S. App. LEXIS 31681 at *7 (10th Cir. 2021); *Matusick v. Erie Cty. Water Auth.,* 757 F.3d 31, 61 (2d Cir. 2014); *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 545 (4th Cir. 2017).
[38] *Camreta* 563 U.S. at 709; *see also* 18 Moore's Federal Practice - Civil § 134.02[1][d] (2021).
[39] *Johnson v. Jones,* 515 U.S. 304, 304 (1995) (citation omitted).

### D.  Plaintiff Asks that this Court Order Defendants to Breach their Contract

#### i.  Defendants' Contractual Agreements

Plaintiff's Complaint essentially asks this Court to find Defendants guilty of a constitutional violation for alleged overcrowding of the holding cell and failure to provide detainees with a bed while in the holding cell despite the fact that relocating Plaintiff would have resulted in Defendants' breach of contractual agreements with both the state and the federal government. These contractual agreements between the STPJ and the Department of Corrections, ("DOC"), as well as the Department of Justice ("DOJ"), have been thoroughly explained by both Sgt. Kelly-Robertson,[40] Sheriff Smith[41] and Brett Ibert[42] and Warden Daniel Fleischman.[43]

As explained by Lacey Kelly, Sheriff Smith and Brett Ibert, there was no punitive or malicious reason for Mr. Hall not being provided one of the empty beds located in other parts of the STPJ that were reserved for Department of Corrections ("DOC"), and/or federal detainees.[44] Warden Fleischman also testified that neither the jail nor the Sheriff's office keep people in holding cells longer than 48 hours for any punitive reasons.[45] Warden Fleischman further testified that the object of the jail and Sheriff's office is to move people out of holding as quick as possible in order to make room for the next group that comes to holding,[46] and that neither the jail nor the Sheriff's office have anything to gain from keeping an individual in a holding cell for longer than 48 hours.[47]

Instead, it has been thoroughly explained that the STPJ is under contract to take DOC and

[40] See pgs. 48-50, 80, 165 of the 30(b)(6) Deposition Testimony of STPSO, attached herein as Exhibit "4."
[41] See pg. 91, lines 13 – 20 of the Deposition Testimony of Sheriff Randy Smith attached herein as Exhibit "5."
[42] See Affidavit of Deputy Chief Bret Ibert, attached herein as Exhibit "6."
[43] See pgs. 53 – 54, pgs. 93 – 96 of the Deposition Testimony of Daniel Fleischman, and all exhibits thereto, attached herein as Exhibit "7."
[44] See Exhibit 4, pg. 161, lines 10 – 14; pg. 166, lines 1 – 6; Exhibit 6, ¶¶ 11 – 13; See ¶ 13 of the Affidavit of Sheriff Randy Smith, attached herein as Exhibit "8."
[45] See Exhibit 7, pg. 97, lines 4 – 11.
[46] *Id.*
[47] *Id.*

Federal inmates, and to house such inmates in separate DOC and Federal housing units within the STPJ, which are separate and apart from the housing units within the STPJ reserved for St. Tammany Parish pre-trial detainees.[48] Based on contracts, beds within STPJ are specifically reserved for inmates by category, *i.e.*, Parish inmates/detainees, DOC inmates and Federal inmates.[49] The STPJ works daily to facilitate movement throughout the facility to decrease the occupancy of the holding cells.[50] Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ.[51] Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[52]

Under this arrangement of having the STPJ housing units separated by DOC, Federal and pre-trial Parish detainees, if there is an open bed in a Federal or DOC housing unit, a pre-trial detainee in a holding cell is not eligible to be moved to that open bed.[53] Rather, pre-trial detainees are only eligible to be moved to open beds as they become available in the pre-trial detainee housing units within the STPJ.[54]

In this case, Mr. Hall's chief complaint centers around the STPJ abiding by its contracts with the DOC and federal authorities, which were in place prior to Randy Smith being elected Sheriff of St. Tammany Parish.[55] Essentially, what Mr. Hall is asking is that the Sheriff be held liable for failing to violate his contract with the DOC and/or the federal government by moving

---

[48] See Exhibit 4, pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4; See Exhibit 6, ¶ 8.
[49] See Exhibit 4, pg. 80, lines 5 – 12; See Exhibit 6, ¶ 9.
[50] See Exhibit 6, ¶ 11.
[51] *Id*. at ¶ 10.
[52] *Id*. at ¶ 10.
[53] See Exhibit 4, pg. 80, lines 13 – 17; See Exhibit 5, pg. 91, lines 13 – 20; See Exhibit 6, ¶ 12.
[54] See Exhibit 6, ¶ 12.
[55] See Exhibit 5, pg. 119, lines 14 – 18.

pre-trial detainees to beds reserved **under contract** exclusively for DOC and/or federal inmates. Plaintiff has cited **no case law** that would support forcing Defendant to violate this contract because no such case law exists.[56] Defendants further note that Mr. Hall is free to disagree with this policy, but it is clear that this policy is related to a legitimate governmental purpose, and therefore does not constitute a constitutional violation.

      **ii.**    **Defendants' Contract with the U.S. Marshal's Service, Bureau of Prisons and U.S. Immigration and Customs Enforcement**

Defendants further note that the contract between the United States Marshals Service ("Marshals Service") and the STPJ, requires the STPJ to provide 180 total beds for its detainees, as well as detainees for the Bureau of Prisons ("BOP") and U.S. Immigration and Customs Enforcement agency ("ICE").[57] These 180 beds are, in accordance with the terms of the contract, designated for use by the Marshals Service, BOP and ICE to house only the following specifically designated population of inmates:

> "The population (hereinafter referred to as "Federal detainees,") will

---

[56] **No Constitutional Violation for Overcrowding:** *See Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981); *Castillo v. Cameron County, Texas*, 238 F.3d 339, 354 (5th Cir. 2001)("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.") *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Chavera v. Allison*, 2009 U.S. Dist. LEXIS 32177 (S.D. Miss. 2009); *Crook v. McGee*, 2008 U.S. Dist. LEXIS 122 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 U.S. Dist. LEXIS 61160 (N.D. Miss. 2008); *Kelly v. Gusman*, 2007 U.S. Dist. LEXIS 99098 (E.D. La. 2007); *Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318 (E.D. La. 2015); *Williams v. Gusman*, 2015 U.S. Dist. LEXIS 139811 (E.D. La. 2015); *See* Order and Reasons (R. Doc. 40, pg. 31).

**No Constitutional Violation for Not being Provided with a Bed/Mattress:** *Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. 2020) (18 days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La. 2020); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La. 2018) (15 days without a mattress), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La. 2018); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. 2012) (17 days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442, (N.D. Miss. 2011)(16 days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357, (N.D. Miss. 2011); *See Gaines v. McDonald*, 577 Fed. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); accord *Sanders v. Kingston*, 53 Fed. App'x 781, 783 (7th Cir. 2002); *Finfrock v. Jordan*, 1996 U.S. App. LEXIS 32817 (7th Cir. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Williams v. Gusman*, 2015 U.S. Dist. LEXIS 139805 (E.D. La. Oct. 2015); *Walcott v. Terrebonne Par. Consol. Gov't*, 2017 U.S. Dist. LEXIS 204062 (E.D. La. 2017), adopted, 2017 U.S. Dist. LEXIS 203742 (E.D. La. 2017).

[57] See U.S. Department of Justice – United States Marshals Service Contract, attached herein as Exhibit "9"; See also, Exhibit "7-A".

include individuals charged with Federal offenses and detained while awaiting trial, individuals who have been sentenced and are awaiting designation and transport to a Bureau of Prisons (BOP) facility, and individuals who are awaiting a hearing on their immigration status or deportation."[58]

Notably, none of the Plaintiffs in this matter fall within the specifically designated 'population' as provided under the terms of the agreement. Therefore, if Defendants were to move any state inmates or pre-trial detainees such as the Plaintiffs in this matter to any of these 180 beds, the Sheriff would be directly breaching the terms of the contract with the Marshals Service. Defendants further note that Warden Fleischman testified that detainees of the Marshals Service and Bureau of Prisons are never comingled with pre-trial detainees because: (1) the Marshal Service does not want them comingled and (2) because those federal detainees are more dangerous than pre-trial detainees.[59] Accordingly, Plaintiffs' argument that any of the Plaintiffs in this matter could have been moved to any of the 'open beds' that are specifically reserved under contract for other federal and/or state agencies, and that Defendants instead chose not to do so for some alleged punitive reason, has no evidentiary basis. The Sheriff clearly had an interest in not violating the contractual agreement, and in protecting pretrial detainees, and such legitimate interests have no punitive intent behind them.

### E. Chronic Understaffing at the STPJ

Defendants note that everything that happens within the jail requires resources, and that the largest and most finite of these resources which in turn dictates everything, is **manpower**.[60] Defendants have explained that overall manpower within the STPJ is a key factor that dictates numerous actions, including how, when and why inmates are moved around the facility.[61]

---

[58] *Id*. at pg. 3.
[59] See Exhibit 7, pgs. 95 – 96, lines 13 – 4.
[60] See Exhibit 4, pg. 195, lines 17 – 25.
[61] *Id*. at pgs. 197-198, lines 22 – 4; pg. 204, lines 1 – 20.

Defendants have specifically informed Plaintiff that the STPJ has always had an issue with being shorthanded.[62] Plaintiff, however, attempts to create the false illusion that the STPJ has unlimited resources, and should have no issues with immediately providing a bed for every single pretrial detainee upon admission, be able to move detainees at all times to showers, be able to move detainees outside every single day so that they can have recreational activity and be able to keep the entirety of the STPJ spotless from floor to ceiling. Plaintiff's assertions simply ignore reality and demand that the STPJ perform functions that are beyond the realm of possibility as the STPJ simply does not have the resources, including the staff necessary, to perform them. Accordingly, every single action undertaken by the STPJ is dictated by what is allowable by the STPJ's available manpower at that time, which is as clear a penological interest as possible.

### F. Plaintiff has Failed to State any Actionable Claims with regard to the Alleged 'Conditions of Confinement'

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement" or "episodic act or omission."[63] An "action is characterized properly as an 'episodic act or omission' case" when "the complained-of harm is a particular act or omission of one or more officials."[64] If a case falls under the "episodic act or omission" category, Courts apply the deliberate indifference standard.[65]

The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment."[66] "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or

---

[62] *Id*. at pg. 197, lines 4 – 9.
[63] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997)(en banc).
[64] *Tamez v. Manthey*, 589 F.3d 764 (5th Cir. 2009).
[65] *Id*. at 769.
[66] See *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir.1996).

purposeless"[67] "Reasonably related" means that the restriction is: (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose.[68] "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules."[69]

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment," as opposed to simple detention while awaiting trial.[70] Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences.[71] Further, such judicial restraint is appropriate because the Constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.[72] The Fifth Circuit has also recognized that, "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."[73] When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights.[74] When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate.[75] Deliberate indifference is established by showing that the defendant officials: (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.[76]

---

[67] *Bell*, 441 U.S. at 539.

[68] *Id.* at 561.

[69] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646 (5th Cir.1996).

[70] *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).

[71] *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.

[72] *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318 (E.D. La. 2015).

[73] *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

[74] *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

[75] *Scott*, 114 F.3d at 53-54.

[76] *See Harrell v. Gusman*, 2016 U.S. Dist. LEXIS 39549 (E.D. La. 2016), quoting *Bradley v. Puckett*, 157 F.3d 1022,

Accordingly, to establish his conditions-of-confinement claim, Mr. Hall must satisfy two prongs. First, Mr. Hall must show that his confinement resulted in an "objectively, sufficiently serious" deprivation that "constitutes a 'denial of the minimal civilized measures of life's necessities.'"[77] Second, Mr. Hall must demonstrate that the Defendants acted with deliberate indifference to his health and safety.[78] Deliberate indifference "is an extremely high standard to meet."[79] The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law."[80] Only those conditions which are "inhuman and barbaric" and deny an inmate of "the minimal measure of life's necessities" violate the Eighth Amendment.[81]

### 1.  Time in the Holding Cells and alleged Violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code

Plaintiff, Terry Matthew Hall, Jr., asserts that the length of time that he was held in the holding cell was unconstitutional.[82] Plaintiff asserts that because he was held in the holding cell for longer than 48 hours, that Defendants violated Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code.[83] Plaintiff's claim under the Louisiana Administrative Code, however, does not provide relief under 42 U.S.C. § 1983, which requires that Plaintiff show that there is a violation of federal law. As this Circuit has previously held, a violation of a state administrative code is not, in and of itself, a basis for federal relief, and is therefore **not** a constitutional violation.[84]

---

1025 (5th Cir. 1998); *See also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

[77] *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[78] *Farmer*, 511 U.S. at 834.

[79] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

[80] *Farmer*, 511 U.S. at 837.

[81] *Palmer*, 193 F.3d at 352.

[82] Terry Matthew Hall, Jr. was detained in the holding cell for 15 days.

[83] See Case 2:20-cv-01840-LMA-MBN, R. Doc. 1.

[84] See *Tweedy v. Boggs*, 1993 U.S. App. LEXIS 40937 (5th Cir. 1993); *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254, adopted, 2018 U.S. Dist. LEXIS 11337; *Mathews v. Bowie Cty.*, 2013 U.S. Dist. LEXIS 130978 (E.D. Tx. 2013); *Dickinson v. Acadia Par. Jail*, 2022 U.S. Dist. LEXIS 209736 (W.D. La. 2022).

Additionally, this Court has held that a Plaintiff being detained in a holding cell **_for 18 days_** (i.e., three days **_longer_** than Plaintiff) was such a short period of time that it was insufficient to rise to the level of a constitutional violation.[85] In fact, this Court has specifically dealt with this issue numerous times as it involves the STPJ, and has repeatedly held that keeping individuals in holding cells at the STPJ for periods as long as **_fifteen to eighteen days_** "is insufficient to rise to the level of a constitutional violation."[86] Here, Mr. Hall was held in the holding cell for 15 days,[87] a period of time that is insufficient to rise to the level of a constitutional violation.

Despite these clear holdings, Plaintiff now asks that this same Court, which has repeatedly held that keeping individuals in holding at the STPJ for periods as long as eighteen days is insufficient to rise to the level of a constitutional violation, to completely disregard its prior rulings and now find a constitutional violation under the same set of facts. Defendants would urge this Honorable Court to deny Plaintiff's argument and reaffirm its previous rulings with regard to the period of time an individual is held in the holding cells in the STPJ.

Additionally, Defendants note that Plaintiff has failed to show a constitutional violation. More importantly Plaintiff has failed to show how any of the individual and/or official capacity Defendants were deliberately indifferent to a substantial risk of harm. Finally, Defendants again note that there was no punitive intent or malice involved in Mr. Hall being kept in the holding

---

[85] See *Hill*, 2020 U.S. Dist. LEXIS 81559 (detainee's 18 day confinement in the STPJ's holding cells was too brief a period to support a constitutional claim), adopted, 2020 U.S. Dist. LEXIS 80409; *Terry v. Smith*, 2020 U.S. Dist. LEXIS 248351 (E.D. La. 2020)(detainee's 17 day confinement in the holding cell to be insufficient to rise to the level of a constitutional violation), adopted, 2021 U.S. Dist. LEXIS 12680; *Allen*, 2018 U.S. Dist. LEXIS 12254 (detainee's 15 day confinement in the STPJ's holding cells was too brief a period to support a constitutional claim), adopted, 2018 U.S. Dist. LEXIS 11337.
[86] *Hill*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. 2020)(18 days in holding is insufficient to rise to the level of constitutional violation), *adopted* at 2020 U.S. Dist. LEXIS 80409 (E.D. La. 2020); *Allen*, 2018 U.S. Dist. LEXIS 12254 (E.D. La. 2018)(detainee's 15 day confinement in the STPJ's holding cells was too brief a period to support a constitutional claim), *adopted*, 2018 U.S. Dist. LEXIS 11337 (E.D. La. 2018)
[87] See Exhibit 1, pgs. 4, 31; See also Exhibit 3.

cell,[88] and there was no policy requiring individuals to be held in the holding cells longer than 48 hours.[89] Indeed, as of April 11, 2020, this Honorable Court has already issued a ruling finding that there is no evidence of punitive intent with regard to all of plaintiffs' claims as to the conditions of confinement.[90]

Accordingly, this Honorable Court should dismiss Plaintiff's claim regarding the length of time that he was held in the holding cells, including any alleged violations of Title 22, Part III, Subpart 2, Section 3301(F) of the Louisiana Administrative Code with prejudice for failing to state a claim on which relief may be granted.[91]

## 2. Overcrowding in the Holding Cells

### i. No Constitutional Violation for Overcrowding

Mr. Hall next complains that the alleged overcrowding of the holding cells during the time that he was detained at the STPJ constituted cruel and unusual conditions of confinement. Such conditions of confinement, however, are not unconstitutional, and the Supreme Court and this Circuit have consistently held that overcrowding of holding cells does not present a legally cognizable claim.[92] This was also previously noted by the District Court in this matter in its denial of Plaintiffs' Motion for Preliminary Injunction, wherein Judge Vitter held that: "It has been repeatedly held that, absent some indication of punitive intent, the mere overcrowding of a jail

---

[88] See Exhibit 4, pg. 161, lines 10 – 14; pg. 166, lines 1 – 6; See Exhibit 6, ¶ 13; See Exhibit 8, ¶ 13.
[89] See Exhibit 5, pg. 117, lines 22 – 25.
[90] See R. Doc. 40, pg. 32, providing that: "The Court has reviewed the exhibits and testimony and does not find evidence of punitive intent…Further, Plaintiffs have failed to establish a constitutional violation."
[91] *Smith*, 2020 U.S. Dist. LEXIS 248351, at *5, adopted in *Terry*, 2021 U.S. Dist. LEXIS 12680 (Plaintiff's complaint regarding being held in the holding cell for 17 days was dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted).
[92] See *Rhodes*, 452 U.S. 337, 347-50 (1981); *See Castillo*, 238 F.3d 339, 354 (5th Cir. 2001)("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not *per se* unconstitutional.") *See Collins*, 382 F.3d 529, 540 (5th Cir. 2004); *Chavera*, 2009 U.S. Dist. LEXIS 32177 (S.D. Miss. 2009); *Crook,* 2008 U.S. Dist. LEXIS 122 (S.D. Miss. 2008); *Robertson*, 2008 U.S. Dist. LEXIS 61160; *Kelly*, 2007 U.S. Dist. LEXIS 99098; *Maddox*, 2015 U.S. Dist. LEXIS 34318; *Williams*, 2015 U.S. Dist. LEXIS 139811.

does not violate the Fourteenth Amendment."[93] Judge Vitter further provided that after reviewing the record as a whole, no evidence of any such punitive intent could be found.[94]

Further, this Court, in *Desroche v. Strain*, found that a plaintiff's complaint that the holding tank was overcrowded and that he had to sleep on the floor for ten days in the crowded holding tank failed to state a constitutional violation, specifically finding that while the conditions described by the plaintiff were not comfortable or pleasant, they were temporary and therefore did not rise to a level of unconstitutional overcrowding.[95] Citing to the Supreme Court's ruling in *Farmer v. Brennan*, the Court held that the crowded and uncomfortable conditions that plaintiff experienced for only a short time does not result in "sufficiently serious" conditions posing "a substantial risk of serious harm."[96] Further, the Court held that plaintiff's transfer to the jail's dorm space after only ten (10) days in the holding cell negated any inference of deliberate indifference in the constitutional sense.[97]

Here, Mr. Hall alleges that he was detained in the holding cell for fifteen (15) days before he was ultimately released. Like the plaintiff in *Desroche*, Mr. Hall's claims as to the overcrowding in the holding cell and that he was forced to sleep on the ground in the holding cell were only **temporary**, until he was ultimately released, and therefore do not rise to the level of a constitutional violation. Additionally, any inference of deliberate indifference was negated once he was released.

Plaintiff has therefore failed to show a constitutional violation, and more importantly, has failed to show how any of the individual and/or official capacity Defendants were deliberately

---

[93] See R. Doc. 40, pg. 31, citing *Rhodes*, 452 U.S. 337, 347-50 (1981); *See Collins*, 382 F.3d 529, 540 (5th Cir. 2004); *Chavera*, 2009 U.S. Dist. LEXIS 32177 (S.D. Miss. 2009); *Crook*, 2008 U.S. Dist. LEXIS 122 (S.D. Miss. 2008); *Robertson,* 2008 U.S. Dist. LEXIS 61160 (N.D. Miss. 2008).
[94] See R. Doc. 40, pg. 32.
[95] *Desroche v. Strain*, 507 F. Supp. 2d 571 (E.D. La. 2007).
[96] *Id*.
[97] *Id*.

indifferent to a substantial risk of harm. Accordingly, Mr. Hall's claim as to the overcrowding of the holding cells also fails to rise to the level of a constitutional violation.

### ii.    No Constitutional Violation for Alleged Capacity/Code Violations

Plaintiff has continually pointed to alleged violations of the fire marshal's capacity for the holding cell as 'evidence' of an alleged constitutional violation. The Fifth Circuit, however, has held that in operating a prison, the state is not constitutionally required to observe all the safety and health standards applicable to private industry,[98] nor is it bound by the standards set by the safety codes of private organizations.[99] Additionally, standards suggested by experts are merely advisory.[100]

This Court has further held that to the extent that a plaintiff alleges that overcrowding may pose a fire hazard due to violations of state and federal fire codes, that any such contention is insufficient to transform his allegations into a colorable claim.[101] Such codes are not determinative for the Court's purposes, in that the minimum constitutional standards are the only applicable measures for Eighth Amendment claims.[102] In this regard, the Fifth Circuit has held that such allegations fail to state a viable claim, providing that:

> "[w]hile fire and electrical codes can be helpful in determining whether a lack of fire safety can constitute a violation of the Eighth Amendment, they are **not** determinative, and the Eighth Amendment does not require that prisons meet fire and electrical codes. [Where a prisoner does] not allege that anyone had been injured by any type of fire or that [the jail] was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim."[103]

---

[98] *Sampson*, 693 F.2d 566, citing *Ruiz v. Estelle*, 679 F.2d 1115, 1159 (5th Cir. 1982); *See also Sims v. Assumption Par. Sheriff Off.*, 2023 U.S. Dist. LEXIS 209764 (E.D. La. 2023); *Billizone v. Jefferson Parish Corr. Ctr.*, 2015 U.S. Dist. LEXIS 54652 (E.D. La. 2015); *Hayes v. Gusman*, 2015 U.S. Dist. LEXIS 73812 (E.D. La. 2015)

[99] *Bell v. Wolfish*, 441 U.S. 520, 543 n. 27 (1979); *See also Sims*, 2023 U.S. Dist. LEXIS 209764; *Billizone*, 2015 U.S. Dist. LEXIS 54652; *Hayes*, 2015 U.S. Dist. LEXIS 73812.

[100] *Sampson*, 693 F.2d at 569, citing *Bell*, at 543 n. 27; *Ruiz*, at 1149-50.

[101] *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651 (E.D. La. 2010).

[102] *Davis*, 2010 U.S. Dist. LEXIS 20651.

[103] *Johnson v. Texas Board of Criminal Justice*, 281 Fed. App'x 319, 322 (5th Cir. 2008); See also *Sampson*, 693 F.2d

As provided above, plaintiff's allegations that overcrowding in the holding cell was in violation of the fire code fail to constitute a viable claim against Defendants, as the STPJ is under no constitutional obligation to meet all safety and health standards applicable to private industry, nor is it bound by such standards. Accordingly, Plaintiff's allegations of alleged constitutional violations due to failure to adhere to all safety and health standards and/or fire codes should be dismissed with prejudice.

### 3. Unsanitary Conditions

The Supreme Court and Fifth Circuit have both provided that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions.[104] Additionally, this Court has previously noted, the Constitution does not "require that prisons be completely sanitized or even as clean or free from potential hazards as one's own home might be."[105] Allegations about dirty conditions or faulty plumbing at the prison simply fail to establish constitutional a violation.[106] Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation.[107] Instead, "jails must provide only reasonably adequate

---

at 569; *James v. Edwards*, 2020 U.S. Dist. LEXIS 85629 (E.D. La. 2020); *Clark v. Seal*, 2017 U.S. Dist. LEXIS 33784 (E.D. La. 2017); *Jernigan v. Dretke*, 2005 U.S. Dist. LEXIS 42498 (S.D. Tx. 2005) ("At the most, Jernigan has alleged a condition that may violate local fire codes. The prison does not violate the Constitution if it fails to comply with all health and safety standards. Although the situation Jernigan describes is far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue. No actual harm has been alleged, and Jernigan's speculative worries do not establish a claim.")

[104] See *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *See also Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998).

[105] See *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (E.D. La. 2018), adopted, 2018 U.S. Dist. LEXIS 11337 (E.D. La. 2018) *citing McAllister v. Strain,* 2009 U.S. Dist. LEXIS 120101 at *3 (E.D. La. 2009).

[106] See *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)(no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 WL 890980 at *9 (E.D. La. 2010) (Lemmon, J.)(citing *Talib*, 138 F.3d at 215); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989))(Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, fifty-two inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

[107] *Harold v. Tangipahoa Parish Sheriff Office*, 2021 U.S. Dist. LEXIS 129887 (E.D. La. 2021), adopted, 2021 U.S. Dist. LEXIS 128973, (E.D. La. 2021).

hygiene and sanitation conditions."[108] The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment.[109] "Leaky toilets and puddles are unpleasant but not unconstitutional."[110]

In this case, however, no such 'extreme circumstances' were present during Mr. Hall's stay in the holding cell. Here, Mr. Hall has alleged that during his fifteen (15) day stay in the holding cell, that he was faced with the following unsanitary conditions constituting a violation of his constitutional rights: (1) toilet paper thrown on the ceiling by other detainees;[111] (2) the presence of urine on the ground around the toilet in the cell;[112] (3) the presence of toilet paper on the ground around the toilet;[113] (4) the presence of water on the ground around the toilet from detainees washing their hands;[114] (5) spilled food on the ground[115]; and (6) that the holding cell smelled from "humans not taking a shower."[116] Instead, as this Court and the Fifth Circuit have continually held, such short-term sanitation problems as described by Mr. Hall above, although admittedly unpleasant, do not amount to constitutional violations.[117]

---

[108] *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995)(citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)).

[109] *Lee v. Hennigan*, 98 Fed. Appx. 286, 288 (5th Cir. 2004).

[110] *Davis,* 2010 U.S. Dist. LEXIS 20651, citing *Smith v. Melvin*, 1996 U.S. App. LEXIS 20592 (7th Cir. 1996); see also *Wilkerson v. Champagne*, 2003 U.S. Dist. LEXIS 21645 (E.D. La. 2003); *Fox v. Seals*, 2020 U.S. Dist. LEXIS 30059 (E.D. La. 2020); *Marshall v. Pohlman*, 2017 U.S. Dist. LEXIS 96391 (E.D. La. 2017); *Matthews v. Tangipahoa Parish Police Jury*, 2016 U.S. Dist. LEXIS 183553 (E.D. La. 2016).

[111] See Exhibit 2, pg. 30, lines 4 – 10.

[112] *Id*. at pg. 31, lines 12 – 25.

[113] *Id*. at pg. 32, lines 3 – 9.

[114] *Id*. at pg. 32, lines 10 – 16.

[115] *Id*. at pg. 32, lines 17 – 20.

[116] *Id*. at pg. 35, lines 1 – 6.

[117] *Williamson v. Larpenter*, 2019 U.S. Dist. LEXIS 133628 (E.D. La. 2019), adopted, 2019 U.S. Dist. LEXIS 132383 (E.D. La. 2019); *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tx. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); accord *Benshoof v. Layton*, 351 Fed. Appx. 274 (10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004); *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell)(citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)(no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651 (E.D. La. 2010), adopted, 2010 U.S. Dist. LEXIS 20642 (E.D. La. 2010)(citing *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989))(Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, restroom four feet from the dining area, toilets leaking water and

Here, Mr. Hall has testified that during his fifteen (15) days in the holding cell, that he was allowed to shower three (3) separate times.[118] Defendants additionally note that, with regard to any alleged sanitation issues in the holding cells, that Mr. Hall has testified that:

- The holding cells were cleaned about every two (2) days,[119] or twice a week.[120]

- The holding cells were cleaned by mopping the floor with bleach.[121]

- When the holding cells were cleaned, that any urine present around the toilet was also cleaned.[122]

- There was no presence of feces on the floor of the holding cell.[123]

- There was no presence of vomit or blood on the floor of the holding cell.[124]

- He was permitted to take a shower on three separate occasions.[125]

- After he showered he was provided a set of clean clothes.[126]

- He was able to use a working toilet in the holding cell when needed.[127]

- He was provided toilet paper and toothpaste during his time in the holding cell.[128]

With regard to Mr. Hall's claim that they were not provided enough toilet paper, Lacey Kelly testified that it is common practice to place five rolls of toilet paper in the cell and replace

---

unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."); *Magee v. Crowe*, 2010 U.S. Dist. LEXIS 14813 (E.D. La. 2010)( a "short-term sanitation…problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).
[118] See Exhibit 2, pg. 21, lines 8 – 15.
[119] *Id*. at pg. 26, lines 5 – 15.
[120] *Id*. at pg. 35, lines 14 – 16.
[121] *Id*. at. pg. 35, lines 17 – 22.
[122] *Id*. at pg. 31, lines 19 – 23.
[123] *Id*. at pg. 32, lines 3 – 16.
[124] *Id*. at pgs. 32-33, lines 17 – 1.
[125] *Id.* at pg. 21, lines 8-15.
[126] *Id*. at pg. 23, lines 11 – 13.
[127] *Id*. at pgs. 22-23, lines 23 – 6.
[128] *Id*. at pgs. 24-25, lines 24 – 1.

them as needed.[129] It became common practice not to put too much toilet paper into the holding cells due to the fact that it would go missing due to other inmates hoarding it and keep it for themselves.[130] Additionally, there was no directive that detainees were entitled to only three rolls of toilet paper per cell all the time.[131]

As provided above, the conditions experienced by Mr. Hall during his time in the holding cell did not rise to the level of a constitutional violation and are instead similar to those "…§1983 claims of temporary conditions regularly rejected by courts in this district."[132] Here, Plaintiff has neither established a constitutional violation nor has Plaintiff shown how any of the individual and/or official capacity Defendants were deliberately indifferent to a substantial risk of harm. Accordingly, Mr. Hall's complaint as to the overall sanitation and hygiene fails to establish any constitutional violation.

Furthermore, this Court has already heard testimony from Plaintiffs as to the very same allegations of unsanitary conditions within the holding cell, and has issued a ruling that:

> "The Court does not find that the conditions testified to, while unsanitary, rise to the level of egregiousness which would offend contemporary standards of decency to support a constitutional violation."[133]

As provided above, the conditions experienced by Mr. Hall during his time in the holding cell did not rise to the level of a constitutional violation and are instead similar to those "…§1983 claims of temporary conditions regularly rejected by courts in this district."[134] Here, Plaintiff has neither established a constitutional violation nor has Plaintiff shown how any of the individual and/or official capacity Defendants were deliberately indifferent to a substantial risk of harm. Mr.

---

[129] See Exhibit 4, pgs. 119 – 120, lines 17 – 4.
[130] *Id*.
[131] *Id*.
[132] See *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 at *54.
[133] See R. Doc. 40, pgs. 31 – 32.
[134] See *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 at *54 (E.D. La. 2021).

Hall's complaint as to the overall sanitation and hygiene therefore fails to establish any constitutional violation. Accordingly, Mr. Hall's complaint regarding the alleged unsanitary conditions within the holding cell is not an actionable claim and should be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

### 4. Forced to Sleep on Concrete Floor

#### i. Not Provided Bed or Mattress

Mr. Hall has additionally asserted that during his time in the holding cell, he was forced to sleep on the bare concrete floor in the cell despite the availability of cell space and open beds elsewhere within the STPJ.[135] Specifically, Mr. Hall testified that he only slept on the ground the first two (2) nights in the holding cell, and that **he slept on the bench the remainder of the time, for thirteen (13) days**.[136]

This Court, however, has continually held that the provision of bedding is within those matters committed to prison administrators' sound discretion, and that the deprivation of bedding for a limited period of time is not *per se* unconstitutional.[137] Similar deprivations have repeatedly been found to be constitutional.[138] Additionally, numerous Circuits have held that the deprivation of a mattress for a limited period of time is not *per se* unconstitutional.[139] The Fifth Circuit has

---

[135] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1, ¶ 119.

[136] See Exhibit 2, pgs. 33- 34, lines 16 – 17.

[137] *Hill*, 2020 U.S. Dist. LEXIS 81559, adopted, 2020 U.S. Dist. LEXIS 80409, citing *Walton v. Topps*, 2012 U.S. Dist. LEXIS 127999 (E.D. La. 2012)(citation omitted), adopted, 2012 U.S. Dist. LEXIS 128415 (E.D. La. 2012).

[138] *Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (18 days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409; *Allen v. St. Tammany Parish*, 2018 U.S. Dist. LEXIS 12254 (15 days without a mattress), adopted, 2018 U.S. Dist. LEXIS 11337; *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. 2012) (17 days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. 2011)(sixteen days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. 2011).

[139] *Fischer v. Ellegood*, 238 Fed. Appx. 428 (11th Cir. 2007)(sleeping on floor for 5 days does not violate Eighth Amendment); *Stephens v. Cottey*, 145 Fed. Appx. 179 (7th Cir. 2005)(no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for 3 days and on the floor with no bedframe for 5 days); *Grissom v. Davis*, 55 Fed. Appx. 756 (6th Cir. 2003)(7 days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996)(sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); *Schroeder v. Kaplan*, 1995 U.S. App.

also held that the Constitution contains no authority requiring that detainees be provided elevated beds.[140] Additionally, the Fifth Circuit, in *Novak v. Beto*, found **no constitutional violation** where the inmates in solitary confinement were given gowns and blankets, but were not provided mattresses or pillows, even during nighttime hours, **for 15 days**.[141]

Defendants further note that Warden Fleischman testified that it would be physically impossible to place a mattress or bed in the holding cells for each pre-trial detainee, as there is not enough space in the holding cells to accommodate mattresses or beds.[142] Placing mattresses or beds into the holding cells would further reduce the number of detainees that would be able to be held in the holding cells due to lack of space.[143] Additionally, placing mattresses or beds into the holding cells would force the pre-trial detainees to navigate over them and cause more issues than not having them.[144]

## ii. Status Based Segregation

Mr. Hall has complained that he was forced to remain in the holding cell and sleep on concrete despite the STPJ having numerous open beds.[145] To this end, the Fifth Circuit has specifically held that housing pretrial detainees with DOC inmates is a violation of their rights "unless such a practice is reasonably related to the institution's interest in maintaining jail security…or physical facilities do not permit their separation."[146] The Fifth Circuit has held that a

---

LEXIS 18915 (9th Cir. 1995)(sleeping on floor without mattress for 4 weeks was not a Constitutional violation).

[140] *Gaines v. McDonald*, 577 Fed. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986); accord *Sanders v. Kingston*, 53 Fed. App'x 781, 783 (7th Cir. 2002); *Finfrock v. Jordan*, 1996 U.S. App. LEXIS 32817 (7th Cir. 1996); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Williams v. Gusman*, 2015 U.S. Dist. LEXIS 139805 (E.D. La. 2015); *Walcott v. Terrebonne Par. Consol. Gov't*, 2017 U.S. Dist. LEXIS 204062 (E.D. La. 2017), adopted, 2017 U.S. Dist. LEXIS 203742 (E.D. La. 2017).

[141] *Novak v. Beto*, 453 F.2d 661, 665-66, 669, 671 (5th Cir. 1971).

[142] See Exhibit 7, pg. 41, lines 10 – 14 and pg. 105, lines 12 – 23.

[143] *Id*. at pg. 105, lines 9 – 21.

[144] *Id*. at pg. 105, lines 20 – 23.

[145] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1, ¶ 119.

[146] *Jones v. Dallas Cnty.*, 2022 U.S. App. LEXIS 22500 (5th Cir. 2022), citing *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981); See also *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415 (5th Cir. 2017).

constitutional violation exists when no classification system was in place to separate pretrial detainees and convicted detainees.[147] The Fifth Circuit has further held that "[i]nmates have no protectable property or liberty interest in custodial classification," and that the classification of prisoners "…is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."[148] Further, this Court has continually held that "[t]he general policy favoring such status-based segregation is to protect the pretrial detainees from the perhaps more dangerous convicted inmates."[149]

Here, Defendants have implemented a policy of status-based segregation in order to protect pretrial detainees from the more dangerous convicted inmates. The importance of this policy was noted by Warden Fleischman who testified that pre-trial detainees have not been convicted, and that moving them into a dorm with an open bed that houses convicted felons/federal inmates would put the pre-trial detainee into more danger than sleeping on a cement bench.[150] Accordingly, the STPJ policy of status-based segregation is **not** for a punitive reason, but for the protection of the pretrial detainees from more dangerous, convicted inmates.

Lacey Kelly further detailed the policy of status based segregation at the STPJ, noting that there was no punitive or malicious reason for Mr. Hall not being provided one of the empty beds located in other parts of the STPJ that were reserved for Department of Corrections ("DOC"), and/or federal detainees.[151] As Lacey Kelly explained, the STPJ houses inmates from St. Tammany

---

[147] *Pembroke v. Wood County*, 981 F.2d 225, 229 (5th Cir. 1993).
[148] *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by *Booth v. Churner*, 532 U.S. 731, 735 (2001); accord *Jones v. Roach*, 196 Fed. Appx. 287 (5th Cir. 2006); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).
[149] *Lathers v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 36357 (E.D. La. 2010); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651; *Diggs v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 25159 (E.D. La. 2010); *McFarland v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 86783 (E.D. La. 2010).
[150] See Exhibit 7, pg. 66, lines 7 – 21.
[151] See Exhibit 4, pg. 161, lines 10 – 14; pg. 166, lines 1 – 6.

Parish, DOC and U.S. Marshal prisoners and serves as a hub for reentry for rehabilitative services for seven parishes.[152] The STPJ is under contract to take these DOC and federal inmates, and they are housed in a DOC general population housing unit.[153] Different parts of the STPJ are dedicated for the different classifications of inmates from parish, DOC and federal.[154] Beds within the STPJ are specifically reserved for inmates by those categories.[155] Because of these contracts, if there is an open bed in DOC, a pretrial detainee in the holding cell who is a parish detainee would not be moved to that bed.[156] Under no scenario will a parish detainee from a holding cell be put in the federal housing unit when there is an available bed in that federal housing unit.[157] Therefore, even if there are open beds throughout other parts of the STPJ that are dedicated under contract to DOC and/or federal inmates, those parish detainees who are in the holding cell would not be able to access those open beds booth for the parish detainees own safety and as they are reserved under contract to DOC and/or federal inmates.

The 30(b)(6) deposition testimony of the STPSO is further supported by Sheriff Randy Smith who attested that as the Sheriff, it has always been his policy to hold individuals in the holding cells only until a space opened up in the jail dormitories, and that no individual was kept in the holding cell for any punitive reason.[158] Sheriff Smith further testified that due to the contracts for DOC and Federal inmates, when beds were not available in general population, detainees in the holding cells could not be put into DOC or federal beds.[159]

Additionally Brett Ibert, Deputy Chief over Corrections, further attested that no pre-trial

---

[152] *Id*. at pg. 48, lines 14 – 18; pg. 49, lines 19 – 21.
[153] *Id*. at pg. 49, lines 7 – 10; pgs. 49-50, lines 25 – 4; See also Exhibit 7-A and Exhibit 9.
[154] See Exhibit 4, pg. 50, lines 5 – 9.
[155] *Id*. at pg. 80, lines 5 – 12.
[156] *Id*. at pg. 80, lines 13 – 17.
[157] *Id*. at pg. 165, lines 3 – 7.
[158] See Exhibit 8, ¶¶ 11, 13.
[159] See Exhibit 5, pg. 91, lines 13 – 20.

Page **26** of **55**

detainees, including the five Plaintiffs in the instant matter, are held in the holding cells inside the STPJ for any punitive reason.[160] As noted above, the STPJ is under contract to take the DOC and Federal inmates, and they are housed in separate DOC and Federal housing units within the STPJ, which are distinct from those housing units reserved for parish pre-trial detainees.[161] Beds within STPJ are specifically reserved for inmates by those categories, i.e. Parish, DOC and Federal, based on safety concerns and as required by contract.[162] Accordingly, a bed only becomes available for a parish detainee when one opens up in the pre-trial detainee housing units within the STPJ.[163] At that point, the detainee who has been held the longest in the holding cell generally receives the next available bed.[164]

Further, this Honorable Court has already heard allegations and testimony from Mr. Hall regarding his being forced to sleep on the concrete floor of the holding cell despite the availability of cell space and beds within the prison and has already issued a ruling finding there to be no evidence of punitive intent.[165]

As provided above, the facts are clear in that Mr. Hall was only detained in the holding cell for fifteen days before he was ultimately released from the STPJ. The deprivation of bedding for such a limited period of time, including periods of time longer than Mr. Hall's stay in the holding cell, is not *per se* unconstitutional.[166] Instead, like the plaintiff in *Desroche*,[167] Mr. Hall's claims as to the overcrowding in the holding cell and that he was forced to sleep on the ground in the

---

[160] See Exhibit 6, ¶ 13.
[161] *Id*. at ¶ 8.
[162] *Id*. at ¶ 9.
[163] *Id*. at ¶ 10.
[164] *Id*.
[165] See R. Doc. 40, pg. 3, 32.
[166] *Hill v. Smith*, 2020 U.S. Dist. LEXIS 81559 (E.D. La. 2020) (18 days without a bed or mattress), adopted, 2020 U.S. Dist. LEXIS 80409 (E.D. La. 2020); *McClay v. Gusman*, 2012 U.S. Dist. LEXIS 114131 (E.D. La. 2012)(17 days without a mattress), adopted, 2012 U.S. Dist. LEXIS 114143 (E.D. La. 2012); *Sykes v. Beilcham*, 2011 U.S. Dist. LEXIS 86442 (N.D. Miss. 2011) (16 days without a mat), adopted, 2011 U.S. Dist. LEXIS 86357 (N.D. Miss. 2011).
[167] *Desroche v. Strain*, 507 F. Supp. 2d 571 (E.D. La. 2007).

holding cell were only **temporary**, until a space opened for him in the STPJ dormitories, and therefore do not rise to the level of a constitutional violation. Additionally, any inference of deliberate indifference was negated once he was released from the holding cell. Therefore, because Plaintiff has failed to establish a constitutional violation, and has further failed to establish how any of the individual and/or official capacity Defendants were deliberately indifferent to a substantial risk of harm, Plaintiff has failed to plead a viable claim against Defendants for failure to provide a mattress. Therefore, Mr. Hall's complaint that he was forced to sleep on the ground of the holding cell during his time at the STPJ is not an actionable claim and should be dismissed with prejudice.

### 5. Lights Kept on 24/7

Plaintiff additionally takes issue with the fact that the lights in the holding cell are kept on 24/7, asserting that no legitimate governmental purpose existed for doing so. However, as Plaintiff is well-aware, the lights are kept on in this manner for health and safety purposes so that the guards could see what was going on in the cell at all times.[168] Lacey Kelly explained that STPJ personnel need to be able to monitor new inmates who comes into the STPJ, especially those entering a jail for the first time due to heightened health concerns, as they are the most at risk for suicidal ideation as their "whole universe just changed."[169] Additionally, because some detainees in the holding cell may be coming down from narcotics or other drugs, STPJ personnel need to be able to monitor them at all times in case they are in need of medical treatment.[170]

Lacey Kelly's testimony is further supported by Warden Fleischman, who testified that the lights are kept on in the holding cells 24/7 for inmate safety.[171] Warden Fleischman testified that

---

[168] See Exhibit 4, pgs. 193-195, lines 24 – 5.
[169] *Id*. at pgs. 193-195, lines 24 – 5.
[170] *Id*.
[171] See Exhibit 7, pg. 98, lines 7 – 10.

if the lights are not kept on 24/7, then STPJ officials are not able to see if people are fighting or doing things they are not supposed to be doing.[172] Warden Fleischman further testified that the first 72 hours of incarceration are the most critical time to monitor people, especially if they have never been arrested before, because you do not know their state of mind.[173] Warden Fleischman testified that to the best of his knowledge, the current policy of leaving the lights on in the holding cells 24/7 is no different that it was in 2019 and 2020.[174]

As provided above, the STPJ therefore has a legitimate governmental purpose in leaving the lights in the holding cells on 24/7. Specifically, it is necessary in order to monitor the health and safety of new inmates. The Fifth Circuit and other Courts within this Circuit have held that 24-hour lighting is constitutional if it serves a legitimate penological interest.[175] Accordingly, because, Plaintiff has failed to show a constitutional violation, and has further failed to establish how any of the individual and/or official capacity Defendants were deliberately indifferent to a substantial risk of harm, Plaintiff has failed to plead a viable claim against Defendants for keeping the lights on 24/7 in the holding cells.

---

[172] *Id*. at pg. 98, lines 11 – 17.
[173] *Id*. at pg. 98, lines 18 – 25.
[174] *Id*. at pgs. 98 – 99, lines 25 – 4.
[175] See *Chavarria v. Stacks*, 102 Fed. Appx. 433 (5th Cir. 2004) ("The policy of constant illumination is thus reasonably related to the legitimate penological interest of guard security. Accordingly, the enforcement of the policy does not violate the Eighth Amendment. Accordingly, the enforcement of the policy does not violate the Eighth Amendment. Because the policy of 24-hour illumination does not violate the Eighth Amendment, Chavarria's complaint about the policy is based upon an indisputably meritless legal theory."); *Unger v. Taylor*, 2007 U.S. Dist. LEXIS 118802 (E.D. Tx. 2007) ("Even assuming arguendo that Unger has sufficiently alleged that the constant illumination led to sleep deprivation sufficiently serious to be cognizable under the Eighth Amendment, Unger cannot establish a constitutional violation because he cannot show that his sleep deprivation was unnecessary and wanton. Because the constant illumination is pursuant to a legitimate governmental interest, and the lack of sleep was not the result of unnecessary and wanton behavior, this condition of confinement is not a violation of Unger's constitutional rights."); *Treece v. Andrews*, 2005 U.S. Dist. LEXIS 43597 (W.D. La. 2005) (24-hour lighting constitutional as it related to the obviously legitimate penological interest of security); *Burns v. Smith*, 2009 U.S. Dist. LEXIS 79525 (W.D. La. 2009) (24-hour lighting constitutional based on a legitimate penological interest manifest from the complaint even though defendants did not proffer any rationale for the policy).

### 6. Limited Access to Showers

The Constitution does not require that inmates have daily or even weekly showers.[176] This Court has also found that the denial of shower access for 7 to 9 days, as well as only being allowed to shower twice over the course of twenty-one (21) days, do not rise to the level of a constitutional violation.[177] Additionally, the Fifth Circuit has found that a number of courts have held that one or two showers a week is sufficient to satisfy constitutional requirements.[178]

In this case, Mr. Hall has testified that during his fifteen (15) days in the holding cell, that he was permitted to take a shower on three separate occasions.[179]

```
 8        Q    In your 15 days, how many times did
 9   you get to take a shower?
10        A    First week, twice; the second week,
11   once.  That's because they had like a
12   commotion, and they didn't do showers.
13        Q    So in 15 days, you took three
14   showers?
15        A    Yeah.
```
[180]

As provided above, Mr. Hall was, by his own admission, permitted to take a shower on three separate occasions during his fifteen (15) days in the holding cell, despite there being no Constitutional requirement that inmates have daily or even weekly showers. While Mr. Hall may

---

[176] *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. 2021), citing *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); See also *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment."); *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him).

[177] See *McAllister v. Strain*, 2009 U.S. Dist. LEXIS 15248 (E.D. La. 2009)(denial of shower for 7-day period did not amount to a constitutional violation); *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 (E.D. La. 2021)(denial of shower for 8 days); See *Carter v. Strain*, 2009 U.S. Dist. LEXIS 91301 (E.D. La. 2009)(prisoner's complaint that he was allowed only one shower during 8-day period was "merely a brief deprivation which would not violate the [C]onstitution"); See also *Magee v. Crowe*, 2010 U.S. Dist. LEXIS 14813 (E.D. La. 2010)(two showers in (21) days).

[178] *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir. 1982)(footnote no. 6).

[179] *See* Exhibit 2, pg. 21, lines 8-15.

[180] *Id.*

be unsatisfied with the number of times he was permitted to take a shower during his time in the holding cell, such unsatisfaction does not create a cause of action for which legal redress is available. Instead, the temporary conditions experienced by Mr. Hall during his time in the holding cell do not rise to the level of a constitutional violation and are instead similar to those "…§1983 claims of temporary conditions regularly rejected by courts in this district."[181] Accordingly, Mr. Hall's complaint as to the number of times he was allowed to shower while in the holding lacks any actionable legal basis, thereby warranting dismissal.

### 7. Denial of Recreation/Exercise

The Fifth Circuit has held that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation."[182] Accordingly, in order to succeed on a claim of denial of exercise, a Plaintiff must show that the denial adversely affected his health.[183] The Fifth Circuit has previously found that an inmate did not suffer an Eighth Amendment violation by being denied exercise for thirteen months because there was "no indication" that the conditions he suffered ("muscle atrophy, stiffness, loss of range of motion, and depression") "posed a substantial risk of serious harm."[184]

In this case, Mr. Hall has alleged that during his time in the holding cell, that he was not provided an opportunity to engage in any recreational activity and/or exercise.[185] As previously noted, the deprivation of exercise is not a *per se* constitutional violation, and the only way for a

---

[181] See *Young v. Ledet*, 2021 U.S. Dist. LEXIS 39485 at *54.

[182] *Lewis v. Smith*, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir. 2001) (citing *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977) (per curiam) (designated unpublished); *Stewart v. Winter*, 669 F.2d 328, 336 n. 19 (5th Cir. 1982)); see also *Martin v. Scott*, 156 F.3d 578, 580 (affirming limits on recreation times).

[183] *Miller v. Carson*, 563 F.2d 741 (5th Cir. 1977); see also *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008)(granting summary judgment for defendants on claim based on denial of outdoor and out of cell exercise for 13 months where there was no showing of "substantial risk of serious harm" as plaintiff did not "clearly evince" a serious medical need).

[184] See *Hernandez v. Velasquez*, 522 F.3d 556 (5th Cir. 2008).

[185] See Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 126; See also Exhibit 2, pg. 37, lines 4-7.

Plaintiff to succeed on such a claim is to show that the denial adversely affected his health. Mr. Hall, however, has failed to allege in his Complaint, or testify during his deposition, that the alleged denial of the opportunity for him to participate in recreational exercise adversely affected his health in any way, nor has Mr. Hall presented any medical records establishing such adverse health conditions. Mr. Hall has further failed to produce any complaints and/or grievances filed during his time at the STPJ that would have alerted any STPJ personnel that the lack of opportunity for recreational activities and/or exercise was adversely impacting his health in any way.

Accordingly, Mr. Hall's complaint as to the denial of the opportunity for recreational exercise during his time in the holding cell lacks any actionable legal basis, thereby warranting dismissal.

### 8. Temperature within the Holding Cell & Ventilation System

The Fifth Circuit has held that as a general rule, complaints about inadequacy of the ventilation system, without more, do not establish a constitutional violation.[186] Additionally, District Courts within this Circuit have held that a plaintiff's brief confinement in an overly air-conditioned holding cell does not constitute a cause of action for an unconstitutional condition of confinement.[187] The Fifth Circuit has also held that while the temperature may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment.[188]

Mr. Hall has alleged that the temperature within the holding cell was 'freezing,' and that

---

[186] *Johnson v. Tex. Bd. of Crim. Justice*, 2006 U.S. Dist. LEXIS 101578 (S.D. Tx. 2006), citing *Parker v. Smith*, 22 F.3d 1094 (5th Cir. 1994) (unpublished) (citing *Rhodes*, 452 U.S. 337, 347-48; See also *Johnson v. Thaler*, 1999 U.S. App. LEXIS 39125 (5th Cir. 1999).
[187] See *Guerra v. City of Alamo*, 2022 U.S. Dist. LEXIS 66870 (S.D. Tx. 2022); See also *Porter v. Werner*, 2017 U.S. Dist. LEXIS 20660 (S.D. Ms. 2017).
[188] See *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995); See also *Alex v. Stadler*, 225 F. App'x 313, 314 (5th Cir. 2007)(prisoner's claims he was held in cold conditions for an extended period with only a paper gown did not give rise to compensatory damages without physical injury).

he estimated it to be about 60 degrees.[189] Mr. Hall has failed to allege, much less present any evidence establishing, that the temperature in the holding cells was kept low for any punitive reason. To the contrary, Sgt. Lacey Kelly provided that the temperature of the holding cells was kept at 68 to 69 degrees.[190] Sgt. Lacey Kelly testified that the reason for this was not punitive, but was for safety reasons, due to the fact that when the temperature is higher than this, condensation starts to form throughout the facility, which causes the windows to fog and the floors to get slick, creating a safety issue for everyone at the facility.[191]

Regarding Plaintiff's complaints regarding the ventilation system and claims of lack of fresh air while in the holding cells, Defendants note that Plaintiff's Complaint, testimony before the Court and deposition testimony never allege any issues with the ventilation system or lack of fresh air. However, out of an abundance of caution, Defendants address these allegations, and note that this Circuit has routinely dismissed such claims, where the Plaintiff, like Mr. Hall, has failed to establish any physical injury resulting from such deprivation.[192] Furthermore, Warden Fleischman testified that pre-trial detainees in the holding cells are indeed provided fresh air as they receive fresh air mixed with the air conditioning through fresh air dampers.[193] Accordingly, Mr. Hall's complaints as to the temperature in the holding cells and lack of fresh air are not an actionable claim and should therefore be dismissed with prejudice.

### 9. Limited and/or No Access to Blankets

Regarding complaints concerning blankets being withheld or provided for only a short period of time, the Fifth Circuit has previously held that the denial of a blanket for 2 ½ days to an

---

[189] See Exhibit 2, pg. 35, lines 7-13.
[190] See Exhibit 4, pg. 25, lines 8-12.
[191] *Id*. at pgs. 25-26, lines 11-5.
[192] *Smith v. Hebert*, 533 Fed. Appx. 479, 2013 U.S. App. LEXIS 13307 (5th Cir. 2013) (Dismissing plaintiff's claims that he was confined to a cell with inadequate sunlight and fresh air, because he failed to allege any physical injury stemming from his confinement).
[193] See Exhibit 7, pgs. 75 – 76, lines 14 – 17.

inmate with a cold who was confined indoors in Northern Mississippi in November did not constitute a deprivation of the minimal civilized measures of life's necessities.[194] Additionally, the Eastern District has continually held that a temporary, non-punitive denial of a blanket is not sufficiently egregious to violate the Constitution.[195]

Here, Mr. Hall has alleged that he was not provided a blanket for seven (7) days.[196] Mr. Hall's allegation, however, is contradicted by his own deposition testimony wherein he testified that during the fifteen (15) days he was at the STPJ, that he was provided a blanket every night except for "one or two nights."[197] Mr. Hall further testified that the blankets he was provided with were clean, never wet and that they were warm "like they came out the dryer."[198]

Regarding whether or not the denial of the blankets for two (2) out of the fifteen (15) nights that he was in the holding cell was for any punitive reason, Mr. Hall testified that "Right. You could say that, yes."[199] Aside from Mr. Hall's own self-serving testimony regarding his subjective belief that "*you could say*" that the denial of the blankets on two occasions was for punitive reasons, he has failed to offer any evidence whatsoever that he was ever denied a blanket, or that the alleged denial of blankets on two separate occasions was for any punitive reasons. Accordingly, Mr. Hall's complaint regarding allegedly being denied a blanket on two separate occasions is not an actionable claim and should therefore be dismissed with prejudice as frivolous and/or for failing to state a claim on which relief may be granted.

---

[194] See *Phillips v. East*, 81 Fed. Appx. 483, 485 (5th Cir. 2003).
[195] See *Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318, at *10 (E.D. La. 2015), citing *Carter v. Strain*, 2009 U.S. Dist. LEXIS 91301 (E.D. La. 2009); *McAllister v. Strain*, 2009 U.S. Dist. LEXIS 15248 (E.D. La. 2009).
[196] See Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 122.
[197] See Exhibit 2, pg. 23, lines 14-20; pg. 36, lines 2-11.
[198] *Id*. at pgs. 37-38, lines 23-4.
[199] *Id*. at pg. 37, lines 1-3.

### 10. Medical Treatment/Injury

#### a. STPSO/STPJ Staff do NOT Provide Medical Care

Contrary to Plaintiff's claims, the STPSO/STPJ is not responsible for handling the medical care that was provided to Plaintiff at the STPJ. Under La. R.S. 15:703(A) the STPSO/STPJ is specifically required to contract with a healthcare provider to provide healthcare to prisoners in parish jails. Therefore, as provided by Lacey Kelly, in accordance with La. R.S. 15:703(A), the STPJ contracts with a third-party vendor to provide medical services,[200] and that third-party medical vendor sets the medical policies and practices, not the STPJ.[201] Lacey Kelly's testimony is further supported by Warden Fleischman who testified that the jail contracts with another party for medical services,[202] and that the vendor/contractor who provides medical services to the STPJ sets their own policies and rules.[203] Warden Fleischman further testified that STPJ personnel cannot give out medication, only the vendor/contractor providing medical services can,[204] and that the vendor is the one who sets the policy for how to give medication out.[205]

In this case, it is undisputed that the third-party healthcare provider who provided medical care to the Plaintiff during his time in the holding cell was Correct Care Solutions. This Court, in *Belcher v. Lopinto*, specifically declined to impose liability on the Jefferson Parish Sheriff's Office ("JPSO") for an inmate's medical care where Correct Health Jefferson, L.L.C. ("CH"), a healthcare provider, was "the only entity responsible for providing medical care to inmates."[206] The Court further held that JPSO could not be held liable for: "(1) the quality of medical care

---

[200] See Exhibit 4, pgs. 102 – 103, lines 22 – 7.
[201] *Id*.
[202] See Exhibit 7, pg. 101, lines 18 – 22.
[203] *Id*.
[204] *Id*. at pg. 102, lines 2 – 4.
[205] *Id*. at pg. 102, lines 5 – 8.
[206] See *Belcher v. Lopinto*, 492 F. Supp. 3d 636, 659 (E.D. La. 2020) (declining to impose municipal liability on a sheriff's office for an inmate's medical care where a healthcare provider was "the only entity responsible for providing medical care to inmates").

provided by CH, or (2) the actions/inactions of a CH employee."[207]

As provided above, the only entity who provided medical care to the Plaintiff during his time in the holding cell was Correct Care Solutions. Defendants, therefore, cannot be held liable for the quality of medical care provided by Correct Care Solutions or the actions/inactions of any Correct Care Solutions employee. Accordingly, Plaintiff's claims against Defendants for inadequate medical care and deliberate indifference to his serious medical needs should be dismissed.

### b. Alleged Gangrene

Mr. Hall has alleged that as a result of his stay in the holding cell at the STPJ, that he contracted gangrene in his foot due to the 'freezing' temperature and moisture in the holding cell.[208] Mr. Hall testified that he believed the gangrene was caused by the "…moisture, it being dirty, bacteria, not being able to shower, get between my toes, you know. That's exactly what that was coming from."[209] Mr. Hall testified that the alleged condition was resolved within a week or two after his release from the STPJ.[210]

Defendants note that, aside from his own self-serving testimony, Plaintiff has produced no medical records and/or evidence establishing that he: (1) contracted gangrene, or (2) that the gangrene was the result of any condition at the STPJ. Plaintiff has additionally submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries.[211] Defendants further note that contrary to Mr. Hall's sworn testimony that he received treatment for his alleged gangrene at the Urgent Care at West End Park following his release from the STPJ,[212]

---

[207] *Belcher*, 492 F. Supp. 3d at 659.
[208] See Exhibit 2, pg. 25, lines 18-21.
[209] *Id*. at pg. 27, lines 13-18.
[210] *Id*. at pg. 28, lines 9 – 14.
[211] See R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.
[212] See Exhibit 2, pgs. 26 – 28, lines 16 – 11.

that Mr. Hall's own medical records clearly establish that ***he did not receive any medical care***

***and/or treatment*** at the Doctors After Hours Urgent Care and Walk-in Clinic, (also referred to as

"Urgent Care West End New Orleans"), for any alleged gangrene.[213] In fact, Mr. Hall's medical

records not only contain no mention of gangrene, but they clearly establish that ***he has not received***

***any treatment at this medical clinic since 2015***.[214]

     Mr. Hall has further presented no evidence suggesting that he even reported the alleged

gangrene to any STPJ official, nor has he presented any evidence that he requested medical

attention for his alleged gangrene and or was denied such treatment. Additionally, even if Mr. Hall

allegedly contracted gangrene in his foot, which is explicitly denied, this Circuit has held that

"…isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions

of confinement are constitutionally inadequate."[215] Accordingly, even if Mr. Hall allegedly

contracted gangrene, it is nothing more than an isolated incident, as there has been no other similar

allegations by any other plaintiff, nor has Plaintiff presented any evidence that any other incidents

occurred.

     Therefore, this Honorable Court must reject any claims by Mr. Hall alleging that he

contracted gangrene in his foot as a result of the alleged conditions of his confinement in the STPJ,

as Plaintiff has failed to provide any medical records and/or evidence that such an injury occurred,

has submitted to this Court that he is in possession of no such medical records[216] and due to the

fact that such an injury, even if it occurred, (which is denied), is considered to be *de minimis* at

worst, and therefore fails to rise to the level of a constitutional violation.

---

[213] See Terry Matthew Hall, Jr. Medical Records from Doctors After Hours Urgent Care & Walk in Clinic, attached herein as Exhibit "10."
[214] See Exhibit 10.
[215] *Cadena v. El Paso Cty.*, 946 F.3d 717 (5th Cir. 2020), citing *Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009)
[216] See R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.

### c. Alleged Back Injury

Mr. Hall has additionally asserted that he suffered back pain as a result of being forced to sleep on concrete during his fifteen (15) day stay in the holding cells at the STPJ.[217] When questioned about whether he had seen any doctor for his alleged back pain, Mr. Hall testified that he had not seen any doctors for his alleged back pain.[218] Defendants again note that, as in the case with Plaintiff's alleged contraction of gangrene, aside from his own self-serving testimony, Plaintiff has produced no medical records and/or evidence establishing that he: (1) suffered back pain and/or a back injury; or (2) that the back pain and/or injury was the result of any condition at the STPJ. Plaintiff has additionally submitted to this Court that he is not in possession of any medical records evidencing any such alleged injuries.[219] Mr. Hall has also presented no evidence suggesting that he reported any back pain to any STPJ official, nor has he presented any evidence that he requested medical attention for his alleged back pain and was denied.

Further, the Western District of Louisiana, citing the Fifth Circuit, has provided that:

> "…cramps, back pain, loss of sleep and a crook in his neck..." — were *de minimis* at worst. To rise to the level of a constitutional violation, the conditions must be" 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities...'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Thus, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D.Tex.1997)."[220]

Accordingly, Plaintiff's alleged lower back injuries, even if true, are nothing more than *de minimis*, as Plaintiff has alleged nothing more than discomfort and inconvenience, which in respect

[217] See Exhibit 2, pg. 29, lines 3 – 8.
[218] *Id*. at pg. 29, lines 9 – 11.
[219] See R. Doc. 213, pgs. 4, 6, 8-9, 13, 19.
[220] See *Cummings v. Nail*, 2013 U.S. Dist. LEXIS 24098 (W.D. La. 2013).

to his conditions of confinement claim, are insufficient to state a claim for which relief may be granted.

Accordingly, this Honorable Court must reject Mr. Hall's claims that he suffered back pain as a result of the alleged conditions of his confinement in the STPJ, as Plaintiff has failed to provide any medical records and/or evidence that such an injury occurred, and due to the fact that such an injury, even if it occurred, (which is denied), is considered to be *de minimis* and therefore fails to rise to the level of a constitutional violation.

### G. Mr. Hall Overall Treatment at the STPJ

As previously noted, in order to establish a conditions of confinement claim, Plaintiff must show that his confinement resulted in an "'objectively, sufficiently serious deprivation that constitutes a denial of the minimal civilized measures of life's necessities.'"[221]

In this case, Mr. Hall's own testimony clearly provides that during his time in the holding cell at the STPJ he was **never** denied life's necessities. For example, Mr. Hall testified that during his time in the holding cell, that he was able to shower on multiple occasions, that he was provided three meals a day and that he was able to sleep.[222] Mr. Hall further testified that during his time in the holding cell, that he was never assaulted or battered by any inmates, that he did not file any grievances with the sheriff's office and that he was able to use a working toilet in the holding cell when needed.[223] Mr. Hall testified that when inmates were involved in fights and/or physical altercations, that they were swiftly broken up within 10 seconds by the guards, and that those involved were removed from the holding cell.[224] Mr. Hall further testified that during his time in

---

[221] *Jarvis v. Hall*, 2023 U.S. App. LEXIS 13887 (5th Cir. 2023).
[222] See Exhibit 2, pg. 21, lines 13 – 24.
[223] *Id*. at pgs. 22-23, lines 15 – 3.
[224] *Id*. at pg. 43, lines 13 – 24. (Defendants note that Mr. Hall's sworn testimony directly contradicts the allegations in his Complaint, wherein he alleges that the "Defendants breached their duties to Plaintiffs and members of the Class and were negligent in one or more of the following ways: …(g) Allowed detainees in holding cells to engage in physical altercations…" (See Case 2:20-cv-01840-LMA-MBC, R. Doc. 1, ¶ 183(g)).

the STPJ, that he was provided clean clothes after showering, a blanket to sleep with,[225] had no trouble or issues with the STPJ correction officers[226] and that he was provided with a toilet paper, a toothbrush and toothpaste.[227] Mr. Hall also testified that he never initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") during his time in the STPJ.[228]

As detailed above, Mr. Hall's own testimony clearly provides that during his time at the STPJ he was never denied life's necessities. Accordingly, Plaintiff's conditions of confinement claim should be dismissed with prejudice.[229]

## H. Totality of the Conditions

Plaintiff contends that the totality of the conditions he has alleged constitute a cruel and unusual punishment and therefore violate Plaintiff's constitutional rights. Plaintiff urges this Court to ignore the fact that every condition he has alleged have **continually** been found not to be constitutional violations and have been consistently held to be minor inconveniences. Plaintiff urges this Court to ignore the voluminous case law governing these issues, which Defendants have provided, and instead set a new precedent, wherein a pre-trial detainee, like Mr. Hall, can lump together a multitude of trivial/minor inconveniences that have consistently been found to **not** establish a constitutional violation, provide **no medical records or supporting evidence** aside from his own contradictory testimony and still be able to maintain his cause of action. Allowing Plaintiff to set such a precedent, ***in clear contradiction of the well-established case law in this Circuit***, would result in a completely unsustainable prison system that would become even more overburdened and buried in litigation for the most trivial of inconveniences.

---

[225] See Exhibit 2, pg. 23, lines 11 – 20.
[226] *Id*. at pg. 24, lines 3 – 12.
[227] *Id*. at pgs. 24-25, lines 24-1.
[228] *Id*. at pg. 22, lines 19 – 22.
[229] See *Jarvis*, 2023 U.S. App. LEXIS 13887 (5th Cir. 2023) (Dismissing plaintiff's claims of deprivation of food, water, clothing, bedding and personal hygiene items as not sufficient to establish a conditions of confinement claim).

### I.   Defendants have Numerous Unwritten Policies in Place

As noted above, Plaintiff has asserted that Defendants have failed to establish multiple policies. Defendants note that while the Sheriff does not have a written policy for every minute issue that may arise, certain things and/or actions are taken by the STPJ simply as a matter of course, *i.e.* pursuant to unwritten policy. Examples of STPJ's numerous unwritten policies, include the following:

1.  **Length of time in Holding Cell/Utilization of Holding Cells:** It is the policy of the STPJ to hold parish detainees in the holding cells only until such time as a bed opens up in one of the parish pre-trial detainee jail housing units.[230] Detainees are held in the holding cells within the STPJ until such time as a bed becomes available in the pre-trial detainee housing units within the STPJ. Detainees are transferred to the general population housing units when a bed becomes available based on the date they were booked into the facility, with the person who has been held the longest in the holding cell generally getting the next available bed in the general housing units.[231]

2.  **Showers:** It is the policy of the STPSJ to for pretrial detainees to shower on Monday, Wednesday and Friday.[232]

3.  **Cleaning of Holding Cells:** It is the policy of the STPJ that everything, even the walls, benches, phones, floors, toilet and sink are to be disinfected when the cell is cleaned. This policy is part of the training program each STPJ employee must take.[233] Guards are further obligated to inspect the holding cells for cleanliness and keep them clean.[234]

---

[230] See Exhibit 8, pg. 2, ¶ 11.
[231] See Exhibit 6, pg. 2, ¶ 10; See Exhibit 4, pg. 15, lines 18 – 25.
[232] See Exhibit 4, pg. 61, lines 19-21.
[233] *Id.* at pgs. 69 – 70, lines 6 – 4.
[234] *Id.* at pg. 69, lines 8 – 11.

The STPJ is inspected annually by the Department of Health,[235] and the STPJ's cleaning policy meets the Department of Health standards.[236]

4. **Instructions to Guards re: Medication:** It is the policy of the STPJ that guards are to direct detainees who claim they are taking medication prior to being detained to jail medical staff for processing.[237]

5. **Bedding:** It is the policy of the STPJ to provide pretrial detainees in the holding cell with a blanket at night.[238]

6. **Toilet Paper:** It is the policy of the STPJ to place five rolls of toilet paper in the cell and replace them as needed.[239]

7. **24/7 Lighting:** It is the policy of the STPJ to leave the lights on in the holding cells 24/7 for health and safety purposes so that the guards can see what was going on in the holding cell at all times.[240] STPJ personnel need to be able to monitor new inmates who come into the STPJ, especially those entering a jail for the first time, due to heightened health concerns, as they are the most at risk for suicidal ideation as their "whole universe just changed."[241] Additionally, because detainees that are in the holding cell may be coming down from narcotics or other drugs, STPJ personnel need to be able to monitor them at all times in case they are in need of medical treatment.[242]

As clearly provided above, many of the policies Plaintiff has alleged Defendants failed to implement were clearly implemented and were common practices of the STPJ and are all supported

---

[235] *Id*. at pg. 65, lines 8 – 18.
[236] *Id*. at pgs. 75 – 76, lines 13 – 3.
[237] *Id*. at pgs. 89 – 92, lines 15 – 19.
[238] *Id*. at pg. 105, lines 9 – 13.
[239] *Id*. at pgs. 119 – 120, lines 21 – 4.
[240] *Id*. at pgs. 193-195, lines 24 – 5.
[241] *Id*.
[242] *Id*.

by uncontradicted testimony in the record.

**J.  Defendants are Entitled to Qualified Immunity**

To defeat the defense of qualified immunity, a plaintiff must show: (1) that the official

violated a statutory or constitutional right, and (2) that the right was clearly established at the time

of the challenged conduct."[243] While qualified immunity "does not require a case directly on point

for a right to be clearly established, existing precedent must have placed the statutory or

constitutional question beyond debate."[244]

In this case, Mr. Hall has failed to provide any evidence in support of his claim that the

conditions of confinement were unconstitutional. As previously noted by Judge Vitter after hearing

the testimony of Plaintiff, Mr. Baqer, at the April 10, 2020, hearing:

> "In this case, there was no evidence introduced at the hearing regarding
> society's standards of decency. The Court does not find that the conditions
> testified to, while unsanitary, rise to the level of egregiousness which would
> offend contemporary standards of decency to support a constitutional
> violation…The Court has reviewed the exhibits and testimony and does not
> find evidence of punitive intent…Plaintiffs have failed to establish a
> constitutional violation."[245]

Mr. Hall has presented no evidence, and he is unable to cite to any existing authority that

would support a conclusion that any alleged policy and/or custom of the STPSO/STPJ is itself

unconstitutional, much less cite to any authority that places the constitutional question 'beyond

debate.' To the contrary, Defendants have cited **<u>extensive</u>** case law establishing that none of the

alleged conditions of Mr. Hall's confinement nor any of the policies and/or customs of the

Defendants, amount to a constitutional violation. Defendants have also provided extensive case

law from this Court involving nearly identical claims that have been previously asserted against

---

[243] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[244] *White v. Pauly*, 137 S. Ct. 548, 551 (2017).
[245] See R. Doc. 40, pgs. 31 – 32.

the STPJ, that have been dismissed with prejudice. Accordingly, there is **<u>no case law</u>** that would clearly establish that any reasonable official, operating under similar circumstances, would have understood that the conditions and/or policies/customs of the STPJ violated any of Mr. Hall's constitutional rights.

Mr. Hall has failed to produce any evidence or authority establishing any constitutional violations on behalf of the Defendants. Defendants are therefore entitled to qualified immunity as to Plaintiff's claims as the facts and case law clearly establish that Defendants' conduct was reasonable and violated no particularized and/or clearly established case law.

Further, Mr. Hall's allegations that Defendants failed to establish and/or implement multiple policies, which Plaintiff personally believes should have been implemented, fails to establish a valid constitutional violation. A failure to adopt a policy claim requires a showing of intentional choice and deliberate indifference.[246] As the Court in *Bouchereau* explained:

> "Such an omission by a municipal policymaker can be the basis for § 1983 liability only if it is an intentional choice, not merely an unintentionally negligent oversight. A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. To establish deliberate indifference, [the supervisors] must have had actual or constructive notice that a particular omission in policy causes…employees to violate citizens' constitutional rights and still have chosen to omit that policy."[247]

Like *Bouchereau*, while Mr. Hall parrots the phrase "deliberate indifference" and references other incidents, as demonstrated above, this is insufficient to make the required showing

---

[246] See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)(Holding that a municipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been "deliberately indifferent."); *Grant v. Leblanc*, 2022 U.S. App. LEXIS 2873 (5th Cir. 2022)("[F]ailure to promulgate policy 'must amount to an intentional choice, not merely an unintentionally negligent oversight', and 'can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights'"); *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)(An omission by a municipal policymaker can be the basis for § 1983 liability only if it is an intentional choice, "not merely an unintentionally negligent  oversight."); See also *Bouchereau v. Gautreaux*, 2015 U.S. Dist. LEXIS 121225 (M.D. La. 2015).
[247] *Id*.

that it was obvious that constitutional violations would be a likely consequence of not adopting

specific policies as alleged by Plaintiff, particularly given the assertion of qualified immunity.

### K. Claims against Defendants Sheriff Randy Smith and Lacey Kelly

#### 1. All Claims Against Sheriff Randy Smith and Lacey Kelly in their Official Capacities should be Dismissed

In this case, Plaintiffs have sued Sheriff Randy Smith and Lacey Kelly in their official

capacities.[248]  A suit against a government officer in his official capacity "generally represent[s]

only another way of pleading an action against an entity of which an officer is an agent."[249]  "It is

*not* a suit against the official personally, for the real party in interest is the entity."[250]  "[A] plaintiff

seeking to recover on a damages judgment in an official-capacity suit must look to the

government entity itself."[251]

"[E]very sheriff in Louisiana is a political subdivision unto himself, and there is no such

thing as a 'Parish Sheriff's Department' or 'Parish Sheriff's Office.'"[252]  Sheriff Smith is, for all

intents and purposes, the "political subdivision" when he appears in his official capacity.  Thus,

"official capacity claims" against Sheriff Smith are really claims against the St. Tammany Parish

Sheriff itself – a political subdivision of the State of Louisiana.[253]

However, "[l]iability under 42 U.S.C. § 1983 may not be imposed on a government entity

on a theory of *respondeat superior* for the actions of government employees."[254]  To the contrary,

the United States Supreme Court has said that "official policy must be 'the moving force of the

---

[248] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1, pg. 2 and ¶ 17.
[249] *Ky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).
[250] *Id*. at 166 (emphasis original).
[251] *Id*.
[252] *Powe v. May*, 2003 U.S. App. LEXIS 28628, pp. 2-3 (5th Cir. 2003) (citations omitted); *see also Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 283 (5th Cir. 2002) (same proposition).
[253] See La. Const. Art. V, § 27; La. R.S. 13:5102.B.
[254] *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992) (citing *Monell*, 436 U.S. 658, 690-694 (1978)).

constitutional violation in order to establish the liability of a government body under § 1983."[255] In other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[256]

> The Fifth Circuit has defined official policy or custom as:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[257]

To state a valid § 1983 claim against Sheriff Smith, Plaintiff must establish "the existence of (1) an **official** policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[258]

In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'"[259] "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[260] Deliberate indifference generally requires that a plaintiff demonstrate "at least a

---

[255] *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).

[256] *Monell*, 436 U.S. at 694.

[257] *Johnson*, 958 F. 2d at 94 (citation omitted); *See also Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a *Monell* custom requires long and frequent course of conduct).

[258] *Cain v. City of New Orleans*, 2015 U.S. Dist. LEXIS 162221, 2016 U.S. Dist. LEXIS 63527, at *20-21 (E.D. La. 2016) (emphasis original), (citing *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)).

[259] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting Roberts, 397 F.3d at 293).

[260] *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (quotation and citation omitted).

pattern of similar incidents" arising from clearly inadequate training such that it is "likely to result in the violation of constitutional rights."[261] "An injury is 'highly predictable' where the municipality 'fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'"[262]

Here, Plaintiff has only made conclusory allegations that the STPSO, through Sheriff Smith, was permitting unconstitutional conditions of confinement pursuant to an alleged pervasive and longstanding policy, custom and practice.[263] Mr. Hall, however, has failed to establish any longstanding policy, custom or practice ***that Sheriff Smith*** had actual or constructive knowledge of, that was an actual constitutional violation. Instead, Mr. Hall has merely alleged numerous claims that both this Circuit and this Court have repeatedly held are not constitutional violations.

Indeed, Plaintiff has simply reiterated the elements of his cause of action, without providing any factual allegations or evidence of any other analogous incidents involving other similarly situated persons, how those situations relate to the Plaintiff in this action, the content of the Sheriff's alleged policy or custom, or how the Sheriff acted with deliberate indifference in this or other scenarios.[264] Further, many of the policies and customs Plaintiff has alleged violated his Fourteenth Amendment Rights, are clearly contradicted by his own testimony.[265] Defendants aver that if any of these policies were indeed long-standing 'policies' of the STPJ as Plaintiff has

---

[261] *Snyder v. Trepagnier*, 142 F. 3d 791, 798–799 (5th Cir. 1998).

[262] *Hankins v. Wheeler*, 2022 U.S. Dist. LEXIS 109198 (E.D. La. 2022)(quoting *Hutcheson*, 994 F.3d at 482−83).

[263] Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. ¶¶ 161 – 162.

[264] *Webster*, 735 F.2d 838, 842 (a Monell custom requires long and frequent course of conduct).

[265] Mr. Hall **never** specifically testified that he slept in urine, but instead testified that most of the time he slept on the bench, and that he only slept on the floor the first two nights in the holding cell. (See Exhibit 2, pgs. 33- 34, lines 16 – 17). Mr. Hall has **never** testified that he was forced to sit in urine, vomit, used toilet paper, old food and blood. Mr. Hall has **never** testified or alleged that the blankets were not washed, that they were soiled, or that they were likely used by a different pretrial detainee the night before. To the contrary, Mr. Hall testified blankets he was provided with were clean, never wet and that they were warm "like they came out the dryer." (See Exhibit 2, pgs. 37-38, lines 23- 4). Mr. Hall has **never** testified or alleged that the guards withheld blankets as collective punishment or simply because they chose to. Mr. Hall has **never** asserted a complaint regarding the lights being left on 24/7.

alleged, then Plaintiff surely would have testified and/or alleged that he was subjected to each one of them during his time in the STPJ holding cells.

Defendants further note that there is absolutely no possible way that Defendants could have possibly been on notice of, or envisioned that any alleged policy, custom etc. of the STPJ could have possibly resulted in any alleged injury to Mr. Hall,[266] especially considering that Mr. Hall has failed to allege any claim that constitutes a constitutional violation. Accordingly, Plaintiff has failed to establish any constitutional violation resulting from any alleged policy or custom of the Defendants. Therefore, because Plaintiff has failed to establish any facts constituting a *Monell* cause of action against Sheriff Randy Smith, all official capacity claims against him should be dismissed with prejudice, as no viable grounds for liability under *Monell* are stated.

Additionally as recently noted by this Court in *McManus v. St. Tammany Par. Jail*, all official capacity claims against Lacey Kelly should be dismissed for one simple reason: Lacey Kelly cannot be sued in her official capacity because she is not a policymaker.[267] Additionally, in *Guillot ex rel. T.A.G. v. Russell*, the Fifth Circuit upheld the district court's dismissal of an official-capacity suit against the then-warden of Ouachita Correctional Facility, explaining that "Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit...[and] [i]n Louisiana, the sheriff [not the warden] is the final policymaker."[268]

Finally, Defendants note that Plaintiff has previously conceded that his official capacity

---

[266] Defendants again note that Mr. Hall is in possession of no evidence of any physical and/or mental injuries, that he never sought any medical treatment for any alleged injuries and that he has **no medical records** to establish any of his alleged injuries.

[267] *McManus v. St. Tammany Par. Jail*, 2024 U.S. Dist. LEXIS 71608 (E.D. La. 2024) ("…at the outset we find that any official-capacity claims against [Warden] Fleishman must be dismissed for a simple reason: [Warden] Fleishman cannot be sued in his official capacity because he is not a policymaker.")

[268] *Guillot ex rel. T.A.G.*, 59 F.4th 743, 750–51 (5th Cir. 2023).

claim against Lacey Kelly cannot continue.[269] Accordingly, this Honorable Court must dismiss all claims against Lacey Kelly in her official capacity, as the Sheriff is the proper defendant in an official capacity suit challenging conditions at the parish prison.[270]

### 2. All Claims Against Sheriff Randy Smith and Lacey Kelly in their Individual Capacities should be Dismissed

To establish personal liability, a §1983 claimant must show that the defendant was personally involved in the deprivation or that the defendant's wrongful actions were causally connected to the deprivation.[271] "Personal involvement is an essential element of a civil rights cause of action."[272]

### i.    Sheriff Smith

Plaintiff has filed suit against Sheriff Randy Smith "in his official and individual capacities for the acts and omissions which occurred while he was Sheriff."[273] However, there are no factual allegations sufficient to support individual capacity liability as to Sheriff Smith.

In this case, there can be no individual capacity liability of Sheriff Smith because there is no evidence that he was personally involved, present or even consulted with regard to the confinement of any of the Plaintiffs in the STPJ. Further, Plaintiff has failed to present any evidence supporting supervisory liability,[274] which requires a showing that: "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise

---

[269] See R. Doc. 296, pg. 63, footnote no. 9.
[270] See also *Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. Ct. App. 2d Cir. 1991)(explaining that the Sheriff is the proper defendant in an official capacity suit challenging conditions at parish prison).
[271] See *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012); *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).
[272] *McManus*, 2024 U.S. Dist. LEXIS 71608, citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).
[273] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1, pg. 2 and ¶ 17.
[274] Movers again note that supervisory officials cannot be liable under § 1983 on any theory of vicarious or *respondeat superior* liability. See *Estate of Davis v. City of N. Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005).

amounts to deliberate indifference."[275] Sheriff Smith has no day-to-day role with respect to any individual's confinement in the STPJ as he has delegated those day-to-day responsibilities to his subordinates.[276] Accordingly, Sheriff Smith has no first-hand knowledge of any of the individual Plaintiffs' claims in this matter.[277]

Sheriff Smith has also never met or spoken with any of the individual Plaintiffs with regard to their confinement in the STPJ.[278] Sheriff Smith was never personally aware of the incarceration or the conditions of confinement of the individual Plaintiffs in the STPJ holding cells.[279] In fact, Sheriff Smith did not become aware that any of the individual Plaintiffs were ever incarcerated at the STPJ until after this suit was filed.[280] Sheriff Smith has further testified that he does not know if pretrial detainees received recreation time, whether more than 20 detainees were held in a holding cell, if pretrial detainees were being held in holding cells in excess of 48 hours, or if bedding was provided.[281] Defendants further note that supervisory officials, such as Sheriff Smith, cannot be held liable under § 1983 on any theory of vicarious or *respondeat superior* liability.[282]

Accordingly, because there is no evidence supporting liability as against Sheriff Smith in his individual capacity, all such claims should be dismissed with prejudice. Nonetheless, to the extent any such factual allegations are made, which is denied, Sheriff Smith further asserts the defense of qualified immunity. Defendants further assert that Mr. Hall is unable to point to any clearly established law particularized to the facts of this case which would establish that Sheriff

---

[275] See *Davidson v. City of Stafford*, 2017 U.S. App. LEXIS 5665, p. 23 (5th Cir. 2017) (citation omitted).
[276] See Exhibit 8, ¶ 6.
[277] *Id.* at ¶ 7.
[278] *Id.* at ¶ 9.
[279] *Id*. at ¶ 8; See also Exhibit 5, pg. 75, lines 7 – 11; pgs. 78 – 79, lines 13 – 20; pg. 80, lines 9 – 21; pg. 83, lines 8 – 14; pg. 115, lines 11 – 15.
[280] See Exhibit 8, ¶ 10.
[281] See Terry Matthew Hall, Jr.s' Additional Statement of Facts (R. Doc. 294-2, pgs. 10 – 11, ¶ 74).
[282] *Estate of Davis*, 406 F. 3d 375, 381 (5th Cir. 2005), citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

Smith is not entitled to qualified immunity for any claims made against him in his individual capacity. Thus, again, all such claims against him should be dismissed with prejudice.

### ii.    Lacey Kelly

Plaintiff has asserted that he is suing Lacey Kelly in her official and individual capacities for the acts and omissions which occurred while she was warden of the STPJ.[283] However, there are no factual allegations sufficient to support individual capacity liability as to Lacey Kelly.

There can be no individual capacity liability of Lacey Kelly, because there is no evidence that she was personally involved in the actions on which Plaintiff's claims are based. Further, Plaintiff has failed to present any evidence supporting supervisory liability,[284] which requires a showing that: "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference."[285] Further, Lacey Kelly cannot be held liable under § 1983 on any theory of vicarious or *respondeat superior* liability.[286]

Accordingly, because there is no evidence supporting liability against Lacey Kelly in her individual capacity, all such claims should be dismissed with prejudice. Nonetheless, to the extent any such factual allegations are made, which is denied, Lacey Kelly further asserts the defense of qualified immunity. Defendants further assert that Mr. Hall is unable to point to any clearly established law particularized to the facts of this case which would establish that Lacey Kelly is not entitled to qualified immunity for any claims made against her in her individual capacity. Thus, again, all such claims against her should be dismissed with prejudice.

---

[283] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. 1, ¶¶ 22 – 23.

[284] Movers note that supervisory officials cannot be liable under § 1983 on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis*, 406 F. 3d 375, 381 (5th Cir. 2005).

[285] *Davidson v. City of Stafford*, 2017 U.S. App. LEXIS 5665, p. 23 (5th Cir. 2017) (citation omitted).

[286] See *Estate of Davis*, 406 F. 3d 375, 381, citing *City of Canton*, 489 U.S. 378, 385; *Monell*, 436 U.S. 658, 691; *Evett*, 330 F.3d 681, 689; *Alton*, 168 F.3d 196, 201; *Thompkins*, 828 F.2d 298, 303-04.

### L. Punitive Damages

Punitive damages are available only against officers sued in their individual capacities under §1983 if it is shown that a defendant's conduct was motivated by evil motive or intent or involves reckless or callous indifference of the federally protected rights of others.[287]  It is also well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided by statute, and in the absence of such a specific statutory provision only compensatory damages may be recovered.[288]  Where the pleadings filed by plaintiff fail to identify a statutory provision which allows the recovery of punitive damages for state law claims asserted against the defendant, it is appropriate to dismiss those claims.[289]

In this case, Plaintiff, Mr. Hall, has alleged that he is entitled to punitive damages as a result of the "extreme, outrageous, and wantonly cruel" actions of Defendants, that "shock the conscience of a reasonable person."[290]  As provided above in great detail, despite Plaintiff's assertions to the contrary, Plaintiff has failed to allege any conduct on behalf of Defendants that amounts to a Constitutional violation.  Additionally, Plaintiff has failed to provide any evidence supporting that any of the alleged conduct was done for any punitive reason, that it was motivated by an evil intent, or involved reckless or callous indifference to Plaintiff's federally protected rights.  Accordingly, Plaintiff's punitive damages claims against the Defendants must be dismissed in their entirety.

Defendants further note that a Section 1983 claim against a Louisiana sheriff in his official capacity "is 'in essence' a suit against a municipality,"[291] and the United States Supreme Court has

---

[287] *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Kolstad v. ADA*, 527 U.S. 526 (1999); *Simmons v. City of Mamou*, 2009 WL 3294977 (W.D. La. 2009).
[288] *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La. 1988); *Savoy v. St. Landry Parish Counsel*, 2008 WL 2796887 (W.D. La. 2008).
[289] *Savoy*, supra.
[290] See Docket No. 2:20-cv-01840-WBV-DPC, R. Doc. ¶ 192.
[291] *Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005));

held unequivocally that "[a] municipality is immune from liability for punitive damages in a §
1983 action."[292] "It is well settled that municipalities are not subject to the imposition of punitive
damages under Section 1983."[293] Furthermore, "[i]t is equally well settled that a suit against a
municipal official in his or her official capacity is simply another way of alleging municipal
liability."[294] Therefore, Plaintiff is barred from recovering punitive damages against a defendant
acting in his official capacity.

Accordingly, for these additional reasons, Plaintiff's demand for punitive damages must
be dismissed.

## M. Plaintiff's State Law Claims

As previously noted above, in conjunction with his federal claim under 42 U.S.C. § 1983,
Plaintiff has alleged various claims under Louisiana state law, including violations of Article I,
Section 20 of the Louisiana Constitution, Negligence and *Respondeat Superior*. The Court
currently maintains supplemental jurisdiction over these state-law claims because Plaintiff
presented a federal question. The Court may decline to exercise its supplemental jurisdiction over
state-law claims if it dismisses the federal claim that gives the Court original jurisdiction.[295] "When
all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court
to decline exercising jurisdiction over the remaining state law claims."[296] Accordingly, Defendants
respectfully request that upon dismissal of Plaintiff's federal claims, that this Honorable Court

---

*Williams v. Gusman*, 2015 U.S. Dist. LEXIS 96868 (E.D. La. 2015); *See also, Bouchereau v. Gautreaux*, 2015 U.S.
Dist. LEXIS 121225 (M.D. La. 2015); *Jordan v. Prator*, 2013 U.S. Dist. LEXIS 114389 (W.D. La. 2013).
[292] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981).
[293] *Howell v. Town of Ball*, 2012 U.S. Dist. LEXIS 128433 (W.D. La. 2012) (citing *Cook County v. United States ex
rel. Chandler*, 538 U.S. 119, 123 (2003); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, (1981); and *Webster
v. City of Houston*, 735 F.2d 838 (5th Cir. 1984)).
[294] *Howell*, 2012 U.S. Dist. LEXIS 128433 (citing *Monell*, 436 U.S. 658 (1978)).
[295] See 28 U.S.C. § 1367.
[296] *Cooper v. Dart Area Rapid Transit*, 2015 U.S. Dist. LEXIS 174754 (N.D. Tx. 2015), adopted by *Cooper v. Dart
Area Rapid Transit*, 2016 U.S. Dist. LEXIS 4615 (N.D. Tx. 2016).

issue an Order dismissing Plaintiff's remaining state law claims without prejudice.

### N.  Defendants are Entitled to an Award of Attorney's Fees Under 42 U.S.C. § 1988

The award of attorney's fees and costs are appropriate in favor of the prevailing party upon the dismissal of Plaintiff's federal claims pursuant to 42 U.S.C. § 1988. A prevailing defendant is entitled to an award of attorney's fees upon a finding that the plaintiff's suit is frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so, regardless of whether the suit was brought in good faith."[297] There need not be a finding of bad faith to award a prevailing defendant attorneys' fees under § 1988(b).[298] As noted by the United States Supreme Court, in enacting § 1988, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis."[299] "When a civil rights suit is lacking in any legal or factual basis...an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation."[300] "In determining whether a suit is frivolous, 'a district court should look to factors such as whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial.'"[301]

As demonstrated above, Plaintiff's civil rights action lacks adequate factual bases, relies on indisputably meritless legal theories, is frivolous, unreasonable, and without foundation, thereby warranting an award of attorneys' fees to Defendants as the prevailing party.  Further, it is clear that Plaintiff's own testimony directly contradicts numerous allegations contained both

---

[297] See *Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 424−425 (5th Cir. 2011).
[298] *McCully v. Stephenville Indep. Sch. Dist.*, 2013 U.S. Dist. LEXIS 179989 (N.D. Tx. 2013).
[299] *Fox v. Vice*, 563 U.S. 826, 833 (U.S. 2011)(citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (U.S. 1978).
[300] *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (quoting *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987)).
[301] *Lewis v. Smith*, 2019 LEXIS 159429 (E.D. La. 2019) (Ashe, J.) (quoting *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000)).

within his complaint as well as his discovery responses. Accordingly, Defendants move this Honorable Court to award Defendants attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully suggest that the instant motion for summary judgment should be granted, dismissing Plaintiff's claims against Defendants, Sheriff Randy Smith and Lacey Kelly, with prejudice. Defendants further aver that Plaintiff's claims should be dismissed with prejudice as they are entitled to qualified immunity.

Respectfully submitted,

**MILLING BENSON WOODWARD L.L.P.**

*s/ Andrew R. Capitelli*

| | |
|---|---|
| **ANDREW R. CAPITELLI** | **# 31649** |
| **BRUCE A. CRANNER** | **# 1796** |
| **KENNETH R. WHITTLE** | **# 38640** |
| **SARAH A. FISHER** | **# 39881** |

**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone:    (985) 292-2000**
**Facsimile:    (985) 292-2001**
acapitelli@millinglaw.com
bcranner@millinglaw.com
kwhittle@millinglaw.com
sfisher@millinglaw.com
*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Wednesday, May 15, 2024, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Andrew R. Capitelli*

**Andrew R. Capitelli**