UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AHMED BAQER, KLABERT JOSEPH | * | NO. 2020-CV-00980 |
| GUILLOT, JR., and KLABERT JOSEPH | * | |
| GUILLOT, SR. | * | |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| VERSUS | * | |
| | * | |
| ST. TAMMANY PARISH GOVERNMENT, | * | **MAGISTRATE DOSSIER** |
| a/k/a ST. TAMMANY PARISH COUNCIL, | * | |
| ST. TAMMANY PARISH SHERIFF'S | * | |
| OFFICE, RANDY SMITH, in his official | * | **JURY DEMAND** |
| and individual capacity, RODNEY J. | * | |
| STRAIN, in his official and individual | * | |
| capacity, GREG LONGINO, in his official | * | **COMBINED WITH** *Louviere v.* |
| and individual capacity, and LACEY | * | *St. Tammany Parish Government* |
| KELLY, in her official and individual | * | *No. 2:20-cv-01840-WBV-DPC* |
| and individual capacity, and LACEY | * | |
| KELLY, in her official and individual | * | |
| capacity | * | **ALL CASES** |
| **Defendants** | * | |

***************************************************************************

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR RECONSIDERATION

**MAY IT PLEASE THE COURT:**

    **NOW COMES,** through undersigned counsel, Defendant, Sheriff Randy Smith, in his official capacity, who respectfully submit this Memorandum in Support of his Motion for Reconsideration.

**I.    <u>INTRODUCTION</u>**

    In its March 28, 2025 Order on Defendants' Motions for Summary Judgment,[1] (hereinafter referred to as the "Order"), the Court correctly dismissed the following claims asserted by the

---

[1] R. Doc. 457.

Plaintiffs:

(1) Plaintiffs' conditions of confinement claims regarding

    a.  Sanitation;[2]
    b.  24/7 lighting;[3]
    c.  Temperature;[4]
    d.  Blankets;[5] and
    e.  Medical treatment.[6]

(2) Plaintiffs' claims regarding exercise on the basis of qualified immunity;[7]

(3) Plaintiffs' claims regarding sleep/mattresses on the basis of qualified immunity, and on the basis that "a reasonable jury could yet conclude that Defendants' proffered explanations for denying Plaintiffs mattresses are related to a legitimate governmental objective";[8]

(4) All of Plaintiffs' claims against Sheriff Smith in his individual capacity on the basis of qualified immunity;[9]

(5) All of Plaintiffs' claims against Lacey Kelly in her individual capacity on the basis of qualified immunity;[10] and

(6) All of Plaintiffs' claims against Lacey Kelly in her official capacity.[11]

The Court, however, allowed Plaintiffs' remaining federal claims as it relates to *Monell* liability for sleep and exercise, as well as Plaintiffs' punitive damages claims to survive. Accordingly, Defendant respectfully submits the foregoing Motion for Reconsideration as to the Court's denial of his Motions with regard to: (1) Plaintiffs' claims for punitive damages, (2) Plaintiffs' *Monell* claims concerning STPJ's sleep and exercise policies, (3) Mr. Guillot's failure

---

[2] See R. Doc. 457, pg. 14.
[3] See R. Doc. 457, pg. 19, note 139.
[4] See R. Doc. 457, pg. 19, note 139.
[5] See R. Doc. 457, pg. 19, note 139.
[6] R. Doc. 457, pgs. 19 – 21.
[7] R. Doc. 457, pg. 23.
[8] R. Doc. 457, pg. 23.
[9] R. Doc. 457, pgs. 22 – 23 and 24.
[10] R. Doc. 457, pgs. 22 – 23 and 24.
[11] R. Doc. 457, pg. 21, fn 153 ("To the extent official capacity claims remain against Kelly and Sheriff Smith, apart from Sheriff Smith's legal status as a municipal entity, those claims are dismissed.")

to exhaust his administrative remedies, and (4) allowing Plaintiffs' to assert claims that they have never pled. Defendant avers that the Court's ruling is based on both manifest error of law and fact and warrants reconsideration of the Order. Indeed, as provided below in further detail, the Court committed clear error in its application of the *Monell* analysis, and in failing to dismiss Plaintiffs' *Monell* claims as to sleep policy despite holding that the policy was related to a legitimate governmental objective.

## II.    LEGAL STANDARD FOR RECONSIDERATION UNDER RULE 54(b)

"Since the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, such motions are treated as either a motion to challenge a judgment or order under Rule 54(b), 59(e), or 60(b)."[12] "While Rules 59 and 60 apply to final judgments only, 'if a party seeks reconsideration of an order that adjudicates fewer than all the claims among all the parties prior to entry of final judgment, then Rule 54(b) controls.'"[13]

"Rule 54 provides that district courts 'possess[ ] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'"[14] "Under such a standard, district courts can be 'more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"[15] "Though this standard is lower than the threshold used for reconsideration of judgments under Rule 59, courts still 'look to similar considerations as those it considers when evaluating Rule 59(e) motions.'"[16]

---

[12] *Gulf Island Shipyards, LLC v. LaShip, LLC*, 2024 WL 1794361, at *3 (E.D. La. 2024), citing *Holmes v. Reddoch*, 2022 WL 16712872 at *2 (E.D. La. 2022).
[13] *Id*.
[14] *Gulf Island Shipyards*, 2024 WL 1794361, at *3, citing *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981).
[15] *Gulf Island Shipyards*, citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017).
[16] *Gulf Island Shipyards*, citing *Edwards v. Take Fo' Records, Inc.*, 2020 WL 3832606 at *11 & n.2 (E.D. La. 2020).

In this case, reconsideration is necessary to prevent a manifest error in both law and fact.[17]

## III.  LAW AND ARGUMENT

### A. The Court committed manifest error in failing to dismiss plaintiffs' punitive damages claims.

On May 16, 2024, Defendants filed their Motions for Summary Judgment, seeking dismissal of, among other claims, Plaintiffs' claims for punitive damages.[18] In its March 28, 2025 Order, the Court dismissed all of the Plaintiffs' claims against the Defendants in their individual capacities, finding that the Defendants were entitled to qualified immunity.[19] This Court's Order, however, failed to dismiss or address Plaintiffs' punitive damages claims.[20]

As this Court is well-aware, the U.S. Supreme Court is clear in that punitive damages are available only against officers sued in their _**individual capacities**_ under §1983 if it is shown that a defendant's conduct was motivated by evil motive or intent or involves reckless or callous indifference of the federally protected rights of others.[21] A Section 1983 claim against a Louisiana sheriff in his official capacity "is 'in essence' a suit against a municipality,"[22] and the United States Supreme Court has held unequivocally that "[a] municipality is immune from liability for punitive damages in a § 1983 action."[23] "It is well settled that municipalities are not subject to the imposition of punitive damages under Section 1983."[24] Furthermore, "[i]t is equally well settled that a suit against a municipal official in his or her official capacity is simply another way of

---

[17] _Gulf Island Shipyards, LLC_, citing _Henry v. New Orleans La. Saints, L.L.C._, 2016 WL 3524107, at *2 (E.D. La. 2016) and _Fields v. Pool Offshore, Inc._, 1998 WL 43217, at *2 (E.D. La. 1998).
[18] See R. Docs. 387, 388, 391 & 392.
[19] See R. Doc. 457, pgs. 22 – 23.
[20] _Id_.
[21] _Smith v. Wade_, 461 U.S. 30, 56 (1983); _Kolstad v. ADA_, 527 U.S. 526 (1999); _Simmons v. City of Mamou_, 2009 WL 3294977 (W.D. La. 2009).
[22] _Brown v. Strain_, 663 F.3d 245, 251 (5th Cir. 2011) (citing _Woodard v. Andrus_, 419 F.3d 348, 352 (5th Cir. 2005)); _Williams v. Gusman_, 2015 U.S. Dist. LEXIS 96868 (E.D. La. 2015); See also _Bouchereau v. Gautreaux_, 2015 U.S. Dist. LEXIS 121225 (M.D. La. 2015); _Jordan v. Prator_, 2013 U.S. Dist. LEXIS 114389 (W.D. La. 2013).
[23] _City of Newport v. Fact Concerts, Inc._, 453 U.S. 247, 270-71 (1981).
[24] _Howell v. Town of Ball_, 2012 U.S. Dist. LEXIS 128433 (W.D. La. 2012) (citing _Cook_, 538 U.S. 119, 123 (2003); _City of Newport_, 453 U.S. 247; _Webster v. City of Houston_, 735 F.2d 838 (5th Cir. 1984)).

alleging municipal liability."[25]

In this case, the Court committed manifest error in failing to dismiss Plaintiffs' punitive damages claims while, at the same time, dismissing Plaintiffs' individual capacity claims. Indeed, as of this time, Plaintiffs' only remaining claims are against Sheriff Smith in his official capacity, who is "immune from liability for punitive damages in a § 1983 action."[26] Accordingly, for these reasons, this Honorable Court must dismiss Plaintiffs' punitive damages claims.

### B. The sheriff is statutorily obligated to house federal detainees/prisoners

Throughout its Order, the Court notes that the STPJ voluntarily entered into contracts to house federal and state inmates, in addition to the pretrial detainees it is required by Louisiana law to house.[27] Indeed, the Court, in denying Defendants' Motions for Summary Judgment as to the official capacity claims against Sheriff Smith, specifically held that the moving force for overcrowding and lack of mattresses for pretrial detainees was the STPJ's decision to enter into contracts with the federal government:

> "The Court recognizes that Defendants' concern for commingling pretrial detainees and convicted inmates is certainly plausible, but a reasonable jury could nonetheless attribute this predicament to STPJ's decision to dedicate a significant portion of its facilities to housing federal and state convicted inmates or failing to properly allocate its resources to ensure that it complies with its baseline constitutional obligations."[28]

In reaching this conclusion, however, the Court has confused the issues. Under Louisiana law the Sheriff is ***required to house federal detainees/inmates***. Indeed, the actions of the STPJ in entering into contracts with the appropriate federal entities, *i.e.*, the U.S. Marshal's Office, is

---

[25] *Howell*, 2012 U.S. Dist. LEXIS 128433 (citing *Monell*, 436 U.S. 658 (1978)).
[26] *City of Newport*, 453 U.S. 247, 270-71.
[27] See R. Doc. 457, pg. 3.
[28] See R. Doc. 457, pg. 18; See also pg. 19, providing "a reasonable jury could infer that this explanation traces its source to STPJ's contracts to hold state and federal inmates, which uses up considerable bed space in STPJ and, as discussed above, is a voluntary obligation unrelated to STPJ's foundational purpose—housing pretrial detainees."

to **recover reimbursement for the mandatory housing of these individuals**. As this Court is surely aware, La. R.S. 15:707 specifically mandates that the STPJ accept federal inmates/detainees, under threat of legal action by the state of Louisiana, providing:

> All the sheriffs, jailers, prison keepers, and their deputies to whom any person shall be sent or committed by United States marshals or their deputies, under the authority of the United States, whether on civil or criminal process, or upon any process or warrant which may be issued by the President of the United States, or those to whom he may delegate authority for any cause whatever under the law of the United States, **shall take the prisoners into custody and keep them safely until their discharge by due course of law**.

> Any sheriff, jailer or prison keeper violating this Section **shall be liable to the same penalties and the parties aggrieved shall be entitled to the same remedies** as if the prisoners had been committed to their custody by virtue of legal process issued under the authority of Louisiana.

> The sheriffs or jailers **may contract with the U.S. Marshal** of his district **for the payment** of a minimum rate of one dollar per day for the keeping of each federal prisoner. The sheriffs may use the funds for the proper care and safekeeping of the federal prisoners and to pay any expenses incurred in connection with their office or jail. (emphasis added).

As clearly provided above, under La. R.S. 15:707, the STPJ is legally mandated to take in federal inmates/detainees, and failure to do so will result in legal action against the STPJ by the state of Louisiana. Indeed, under Louisiana law, the inclusion of the word "shall" within La. R.S. 15:707 provides that adherence to this statute is ***mandatory***,[29] leaving the STPJ with ***no choice in the matter***. The mandatory provisions of La. R.S. 15:707 are further reinforced by the opinion of the Louisiana Attorney General, which provides that "LSA-R.S. 15:707 mandates that sheriffs 'shall' take federal prisoners into custody and keep them until their discharge."[30]

Additionally, as La. R.S. 15:707 indicates, the Sheriff has the authority to enter into contracts with the U.S. Marshal for payment for keeping federal prisoners, which he is statutorily

---

[29] See La. R.S. 1:3; See also La. C.C.P. Art. 5053.
[30] La. Atty. Gen. Op. No. 89-15, 1989 WL 454254.

mandated to take.[31] This statutory provision is also supported by the Attorney General's Office, which has opined that La. R.S. 15:707 "allows a sheriff to contract with the federal government for compensation for the keeping of such prisoners."[32]

Accordingly, the STPJ is statutorily obligated to take federal inmates/detainees in accordance with La. R.S. 15:707. In this case, the record clearly provides that in accordance with this statutory obligation, the STPJ has entered into a contractual agreement with the Marshal's office in order to be reimbursed for being obligated to hold these individuals, in accordance with the specific legal mandates of La. R.S. 15:707.[33]

Despite the STPJ's clear statutory obligation to hold these federal inmates/detainees – or face legal consequences by the state of Louisiana – this Court's Order seeks to hold Sheriff Smith liable for complying with those obligations. In light of the foregoing statute, the entire basis for the denial of summary judgment as to Plaintiff's *Monell* claims appears to challenge the fact that the STPJ is adhering to the laws of the state of Louisiana in being forced to house and provide beds for federal inmates/detainees and entering into contractual arrangements with the Marshal's Office in order to receive compensation. In short, the Court is allowing the Plaintiffs to continue to pursue *Monell* claims against Sheriff Smith based on his **adherence to Louisiana law**.

However, as noted by the U.S. Supreme Court, Congress did not intend to impose liability on a municipality unless deliberate action ***attributable to the municipality itself*** is the "moving force" behind the plaintiff's deprivation of federal rights.[34] To this point, the Fifth Circuit has long recognized that simply following the ***mandatory dictates of state law*** cannot form a

---

[31] See La. R.S. 15:707.
[32] La. Atty. Gen. Op. No. 89-15, 1989 WL 454254.
[33] See R. Docs. 392-11 & 392.13.
[34] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997), citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).

predicate for *Monell* liability.[35] Indeed, a plaintiff who wants a judgment against the municipality under that statute must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself.[36] When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury.[37] Accordingly, the Sheriff's adherence to mandatory state law, which he has **no discretion or control over**, and which is therefore **not attributable to the Sheriff as the municipality**, cannot form the basis of *Monell* liability.

Indeed, Sheriff Smith cannot be liable for violating a provision of the Louisiana Administrative Code ("LAC"),[38] which is not law, through adherence to mandatory statutory law, especially when considering that the Louisiana Supreme Court has specifically held that the LAC does not take precedence over the Louisiana Revised Statutes,[39] and this Circuit has held that a violation of a state administrative code is not a basis for federal relief.[40]

Sheriff Smith further notes that the U.S. Supreme Court has specifically held that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to

---

[35] *West v. Congemi*, 28 F.2d 385 (E.D. La. 1998) ("The Fifth Circuit has long recognized that simply following the mandatory dictates of state law cannot form a predicate for Monell liability. This point was explained in *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir.1988), when the Fifth Circuit stated that a county official's "deliberate or mistaken departure from controlling law" cannot be said to represent county policy. See also *West*, citing *Bethesda Lutheran Homes and Svcs. Inc. v. Leean*, 154 F.3d 716, 718–719 (7th Cir.1998) ("But the state of mind of local officials who enforce or comply with state or federal regulations is immaterial to whether the local government is violating the Constitution if the local officials could not act otherwise without violating state or federal law. The spirit, the mindset, the joy or grief of local officials has no consequences for the plaintiffs if these officials have no discretion that they could exercise in the plaintiffs' favor. '[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives.'") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

[36] *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998).

[37] *Bethesda Lutheran Homes and Services, Inc*, 154 F.3d 716.

[38] Title 22, part III § 3301(F).

[39] *Jenkins v. AIU Ins. Co. People Ready Temp Serv.*, 343 So. 3d 927 (La. App. 5 Cir. 2022), citing *Jurisich v. Jenkins*, 749 So. 2d 597, 602 (La. 1999).

[40] *Dickinson*, 2022 WL 17069898 (W.D. La. 2022), citing *Tweedy*, 1993 WL 4507 (5th Cir. 1993); (quoting *Smith v. Sullivan*, 611 F.2d 1039, 1045 (5th Cir. 1980) (internal quotations omitted); *Allen*, 2018 WL 558503.

follow a course of action is made from among various alternatives",[41] and in this case, no such alternatives exist, as the only other option for the STPJ was to refuse all federal inmates/detainees and face legal action by the state of Louisiana for violating La. R.S. 15:707. Such an option clearly indicates that the Sheriff has no other viable alternatives as it relates to the holding of federal inmates/detainees. Accordingly, this Court erred in holding that the STPJ voluntarily accepted federal inmates/detainees when the law clearly provides that the STPJ is statutorily **_obligated_** to do so. Therefore, Plaintiffs' remaining _Monell_ claims cannot continue and must therefore be dismissed, as Sheriff Smith cannot be held liable for adhering to Louisiana statutory law which is **<u>not</u>** attributable to the Sheriff, but instead, to the legislature.

### C.  Plaintiffs' _Monell_ claims must be dismissed.

#### a.  Plaintiffs' _Monell_ claims cannot exist without a constitutional violation.

In this case, the Court correctly stated the legal standard for _Monell_ claims, which places the burden on the plaintiff to show all three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."[42] Yet, the Court's conclusion—that Sheriff Smith's knowledge about overcrowding, the policy of not providing mattresses in holding cells, and the lack of opportunity for exercise is sufficient for Plaintiffs to survive summary judgment—is clearly erroneous.

Sheriff Smith respectfully submits that the Court overlooked the third essential element of _Monell_ liability, _i.e._, the existence of an underlying constitutional violation. Indeed, it is well established that to recover against a municipality under § 1983, a plaintiff must "allege and establish that he sustained a deprivation of a constitutional or other federally protected right

---

[41] _Pembaur_, 475 U.S. 469, 483 (1986).
[42] _Valle v. City of Houston_, 613 F.3d 536, 541–42 (5th Cir.2010).

because of some official policy, practice, or custom of that governmental entity."[43] As reiterated by the Fifth Circuit just last month, "without a predicate constitutional violation, there can be no *Monell* liability."[44] Under the established jurisprudence in the Fifth Circuit, neither overcrowding, nor the failure to provide detainees with mattresses, nor the failure to provide them with an opportunity to exercise, violates the Constitution.

Indeed, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment.[45] Here, as this Court previously found when denying Plaintiffs' Motion for Preliminary Injunction[46] – and reaffirmed in the Order – there is no evidence of punitive intent.[47]

### i. No constitutional violation for sleep/mattresses or exercise.

At the outset, Defendant again reiterates that the Supreme Court and this Circuit have consistently held that overcrowding of holding cells does not present a legally cognizable claim.[48] Indeed, while overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.[49] Defendant additionally notes that the Fifth Circuit has dismissed claims by pretrial detainees for lack of recreation/exercise, holding that such a claim, even if true, is *de minimis* under the U.S. Supreme Court's holding in *Bell*[50] and does not rise to the level of a

---

[43] *Christopher Rusanowsky v. The City of Dallas*, 2025 WL 855317 (5th Cir. 2025), citing *Grisham v. Valenciano*, 93 F.4th 903, 912 (5th Cir. 2024) (citing *Monell*, 436 U.S. 658, 691–94).
[44] *Christopher Rusanowsky*, 2025 WL 855317; *Loftin v. City of Prentiss, Mississippi*, 33F. 4th 774 (5th Cir. 2022), citing *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (citing *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)).
[45] R. Doc. 40, pg. 31, citing *Rhodes,* 452 U.S. 337, 347-50 (1981); *Collins*, 382 F.3d 529, 540; *Chavera*, 2009 U.S. Dist. LEXIS 32177; *Crook*, 2008 U.S. Dist. LEXIS 122; *Robertson*, 2008 U.S. Dist. LEXIS 61160.
[46] R. Doc. 40, pgs. 31 – 32.
[47] R. Doc. 457, pg. 15.
[48] *Rhodes*, 452 U.S. 337, 347-50; *Castillo*, 238 F.3d 339, 354 ("overcrowding itself is not *per se* unconstitutional."); *Collins*, 382 F.3d 529, 540; *Chavera*, 2009 U.S. Dist. LEXIS 32177; *Crook*, 2008 U.S. Dist. LEXIS 122; *Robertson*, 2008 U.S. Dist. LEXIS 61160; *Kelly*, 2007 U.S. Dist. LEXIS 99098; *Maddox*, 2015 U.S. Dist. LEXIS 34318; *Williams*, 2015 U.S. Dist. LEXIS 139811.
[49] *Castillo*, 238 F.3d 339, 354, citing *Rhodes,* 452 U.S. 337, 347-50.
[50] *Bell v. Wolfish*, 441 U.S. 520.

constitutional claim.[51] Notably, the Fifth Circuit has consistently dismissed claims brought by pretrial detainees regarding jail policies of exercise/recreation, holding that such claims do not rise to the level of constitutional violations.[52] Further, to succeed in a §1983 claim for lack of exercise opportunities, a plaintiff must show he suffered a serious physical health injury due to the denial of movement, as a conditions of confinement claim only becomes a constitutional violation if it leads to significant harm.[53] As this Court is aware, Plaintiffs have presented no evidence of any harm resulting from the STPJ's exercise policy.

Defendant further reiterates that the provision of bedding is within the sound discretion of prison administrators, which the judiciary is ill equipped to micro-manage, and the failure to provide bedding does not establish a constitutional violation.[54] Indeed, just ten (10) days prior to this Court's Order, another division of this Court, in *Beckendorf v. Fleischman*, dismissed a pretrial detainee's claim of lack of mattress/bedding in the holding cells with prejudice, noting that the plaintiff failed to assert a viable constitutional claim, as failure to provide a mattress/bedding in a holding cell is ***not a constitutional violation***.[55]

As this Court is aware, qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[56] In this case, the Court

---

[51] *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir.1996).

[52] *Mahmoud v. Bowie*, 234 F.3d 29 (5th Cir. 2000); *Jane Doe 5 v. City of Haltom City*, 106 Fed. Appx. 906 (5th Cir. 2004); *Soto v. City of Haltom City*, 106 Fed. Appx. 903 (5th Cir. 2004); *Garcia Guevara v. City of Haltom City*, 106 Fed. Appx. 900 (5th Cir. 2004); *Howard-Barrows v. City of Haltom City*, 106 Fed. Appx. 912 (5th Cir. 2004).

[53] *Beckendorf v. Fleischman*, 2025 WL 842970, at *3 (E.D. La. 2025), citing *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993); See also, *Hawkins v. Ledet*, 2025 WL 487193 (E.D. La. 2025); 42 U.S.C. § 1997e(e).

[54] *McAllister*, 2009 WL 500560; *Desroche*, 507 F. Supp. 2d 571; *Walton*, 2012 WL 3947629; *Hill*, 2020 WL 2226316.

[55] *Beckendorf* , 2025 WL 842970, citing *Hill*, 2020 WL 2226316 (detainee's 18 day confinement at STPJ without a bed or mattress not a constitutional claim), adopted, 2020 WL 2226316; *Terry*, 2020 WL 13788378 (detainee's 17 day confinement in holding cell not a constitutional violation), adopted, 2021 WL 242870; *Allen*, 2018 WL 558503 (detainee's 15 day confinement without a mattress in the STPJ holding cells was too brief a period to support a constitutional claim), adopted, 2018 WL 537495; *McClay*, 2012 WL 3438367 (17 days without a mattress), adopted, 2012 WL 3481899; *Sykes*, 2011 WL 3425616 (16 days without a mat), adopted, 2011 WL 3420854.

[56] *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).

dismissed all of Plaintiffs' individual capacity claims on the basis of qualified immunity, specifically holding that with regard to sleep and exercise:

> "the lack of clear authority from the Supreme Court or Fifth Circuit mandates the application of qualified immunity. The Fifth Circuit in *Mayfield* and *Hebert* recognized pretrial detainees need sleep and recreation, like any person. But neither of those cases, nor any Fifth Circuit case since, provide sufficient guidance for a jail official to recognize the constitutional boundaries of those rights."[57]

As provided above, ***this Court's own holding*** clearly provides that no constitutional claim exists as it relates to Plaintiffs' claims relating to sleep and exercise. Indeed, the Court's granting of qualified immunity as it relates to sleep and exercise is based on the fact that the Court has held that the alleged rights were ***not clearly established constitutional rights***. Accordingly, this holding is ***fatal*** to Plaintiffs' *Monell* liability claim, which ***requires*** the Plaintiffs to establish a violation of their constitutional rights.

 In dealing with similar situations where courts have dismissed individual capacity claims on the basis of qualified immunity and for lack of a constitutional violation, the Fifth Circuit has specifically held that the dismissal of the *Monell* claim must also be dismissed for failure to identify a clearly established constitutional violation.

For example, just three (3) weeks ago, the Fifth Circuit, in *Rusanowsky v. The City of Dallas*, dismissed the plaintiff's *Monell* claims on the basis that the defendant was entitled to qualified immunity, holding, in pertinent part:

> Because Sergeant Rudloff is entitled to qualified immunity, Rusanowsky cannot show he suffered constitutional violations from his arrest. Therefore, the municipal liability claims against the City of Dallas cannot proceed.[58]

In *Sanchez v. Edwards*, the Fifth Circuit affirmed the district court's granting of qualified immunity to the deputies, and further affirmed the denial of the plaintiff's *Monell* claims, noting

---

[57] See R. Doc. 457, pg. 23.
[58] *Rusanowsky v. The City of Dallas*, 2025 WL 855317 (5th Cir. 2025).

that the plaintiff had failed to establish an underlying constitutional violation, providing:

> The plaintiffs also bring municipal-liability claims under § 1983 against Sheriff Edwards and Hammond City. To succeed on such a claim, the plaintiffs must show an underlying constitutional violation resulting from an official policy. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As the plaintiffs are unable to show an underlying constitutional violation, they have failed to meet their burden under the Monell standard.[59]

Similarly, in *Fortune v. McGee*, the Fifth Circuit affirmed the district court's dismissal of the plaintiff's individual capacity claims against the defendants, and further affirmed the dismissal of the *Monell* claims, holding that "[b]ecause there was no constitutional violation, the plaintiff's claim against the county was properly dismissed."[60]

As provided both above and within this Court's Order,[61] because no constitutional claim exists as to Plaintiffs' claims for sleep and exercise, ***Monell liability based on those claims cannot exist.***

Defendant further notes that if there is no clear authority from the Supreme Court or Fifth Circuit with regard to Plaintiffs' claims of sleep and exercise, and if there is not sufficient guidance from the Fifth Circuit for a jail official to be able to recognize the constitutional boundaries as to Plaintiffs' claims of sleep and exercise, ***as this Court held***,[62] then, as a practical matter, there can be no *Monell* claim. Indeed, if the constitutional rights are not clearly recognized and/or outlined by the Supreme Court or Fifth Circuit, then the Defendant cannot be found liable for failing to protect those same undefined, unrecognized and un-outlined rights through implementation of some policy. For example, without any specific guidance from the Supreme Court or Fifth Circuit, the Defendant has no notice as to what specific policy and/or training must be implemented in

---

[59] *Sanchez v. Edwards*, 433 Fed. Appx. 272 (5th Cir. 2011).
[60] *Fortune v. McGee*, 606 F. App'x 741 (5th Cir. 2015)
[61] See R. Doc. 457, pg. 23.
[62] See R. Doc. 457, pg. 23.

order to protect these rights.

### a. Defendant has provided sufficient reasons for the existence of these conditions/policies.

Constitutional attacks on general conditions, practices, rules, or restrictions, otherwise known as jail condition cases, are subject to the *Bell* test which is premised on a reasonable relationship between the condition, practice, rule, or restriction and a legitimate governmental interest.[63] To pass constitutional muster, the challenged jail policy or practice must be reasonably related to a legitimate governmental interest.[64]

As noted by the U.S. Supreme Court, "[i]n considering whether a specific practice or policy is "reasonably related" to security interests, courts should play a very limited role, since such considerations are peculiarly within the province and professional expertise of corrections officials."[65] "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"[66] "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."[67]

"Simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."[68] "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."[69] The fact of confinement as well as the legitimate

---

[63] *Thornhill v. Breazeale*, 88 F.Supp. 2d 647 (S.D. Ms. 2000), citing *Hare v. City of Corinth, Miss*, 74 F.3d 633, 644 (5th Cir. 1996).
[64] *Thornhill*, 88 F.Supp. 2d 647, citing *Hare*, 74 F.3d 633 at 642.
[65] *Block v. Rutherford*, 468 U.S. 576 (1984), citing *Bell*, 441 U.S. 520, 540-541.
[66] *Block*, 468 U.S. 576.
[67] *Block*, 468 U.S. 576.
[68] *Bell*, 441 U.S. at 545-546.
[69] *Id*.

goals and policies of the penal institution limits these retained constitutional rights."[70] "The institution must be permitted to use **reasonable means** to insure that its legitimate interests in security are safeguarded."[71] Indeed, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."[72] Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."[73]

With regard to determining whether a specific restriction is reasonably related to security interests, the U.S. Supreme Court has specifically noted that courts should play a very limited role in the administration of detention facilities, providing that courts should:

> heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.[74]

The Supreme Court has also cautioned that "prison administrators [are to be] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."[75] The Supreme Court has further noted that there is no dispute that internal security of detention facilities is a legitimate governmental interest.[76]

---

[70] *Bell*, 441 U.S. 520, 545–46.
[71] *Id*. at 441 U.S. 520, 544. (emphasis added).
[72] *Id.* at 546–47.
[73] *Id.*
[74] *Block*, 468 U.S. 576, citing *Bell*, at 540–541, n. 23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).
[75] *Block*, 468 U.S. 576, citing *Bell* at 547.
[76] *Block*, 468 U.S. 576, fn 8, ("In *Wolfish* itself, we characterized the maintenance of security, internal order, and discipline as "essential goals," which at times require the "limitation or retraction of...retained constitutional rights." 441 U.S., at 546, 99 S.Ct., at 1878. Government, we said, "must be able to take steps to maintain security and order

### i.    Mattress/Bedding Policy (Sleep)

As noted above, the STPJ is statutorily obligated to hold federal detainees/inmates in accordance with La. R.S. 15:707 and can only procure compensation from these federal entities by entering into contractual agreements with the U.S. Marshals Service, which the Sheriff has done.[77] Under this statutory arrangement, the STPJ is required to provide 180 total beds for its detainees, as well as detainees for the U.S. Marshals Service, the Bureau of Prisons ("BOP") and U.S. Immigration and Customs Enforcement agency ("ICE").[78] The terms of this agreement clearly states that the beds are reserved for only federal inmates/detainees.[79]

In this case, **_none_** of the Plaintiffs fall within this specifically designated, statutorily - required population for which the STPJ has entered into in order to receive compensation, and therefore the Plaintiffs **_cannot_** be housed with those federal detainees.

Sheriff Smith further notes that if he were to place the Plaintiffs in areas with open beds that house either state/parish inmates and/or federal inmates, that he would be liable for **_violating the Plaintiff's constitutional rights_**.[80] Indeed, the Fifth Circuit has specifically held that housing pretrial detainees with convicted inmates is a violation of their rights,[81] and that a constitutional violation exists when no classification system is in place to separate pretrial detainees and convicted inmates/detainees.[82]

Additionally, this Court has continually held that "[t]he general policy favoring such status-based segregation is to protect the pretrial detainees from the perhaps more dangerous convicted

---

at [an] institution and make certain no weapons or illicit drugs reach detainees." Id., at 540, 99 S.Ct., at 1874. See also *Pell v. Procunier*, 417 U.S. 817, 823 (1974))"
[77] See R. Docs. 392-11 & 392.13.
[78] *Id*.
[79] *Id*. at pg. 3.
[80] *Jones v. Dallas Cnty.*, 2022 WL 3334493 (5th Cir. 2022), citing *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981); See also *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415 (5th Cir. 2017).
[81] *Id*.
[82] *Pembroke v. Wood County*, 981 F.2d 225, 229 (5th Cir. 1993).

inmates,"[83] which is exactly the reason why the STPJ employs such a classification system, and which this Court acknowledged is a concern.[84] Indeed, Warden Fleischman testified that moving pre-trial detainees who have not been convicted into a dorm with an open bed that houses either convicted Department of Corrections ("DOC") felons or federal inmates/detainees would put the pre-trial detainee into more danger than sleeping on a cement bench, as those DOC and federal inmates/detainees are more dangerous and violent.[85] Warden Fleischman further testified that detainees of the Marshals Service, which the STPJ is obligated to house in accordance with La. R.S. 15:707, are never comingled with pre-trial detainees because: (1) the Marshal Service does not allow them comingled, and (2) because those federal detainees are more dangerous than pre-trial detainees.[86]

As noted by Lacey Kelly, placement in a holding cell is for a temporary basis, not long term, and not done to "[try] to punish or hurt people,"[87] and therefore beds are not provided. Additionally, as noted by Warden Fleischman, it would be physically impossible to place a mattress or bed in the holding cell for each pretrial detainee due to lack of space within the cells to accommodate them.[88] Furthermore, placing mattresses or beds into the holding cells would further reduce the available space.[89] Placing mattresses or beds into the holding cells would also force the pre-trial detainees to navigate over them and cause more issues.[90]

As noted above, "municipal liability under § 1983 attaches where—and only where—a

---

[83] *Lathers v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 36357 (E.D. La. 2010); *Davis v. St. Charles Parish Corr. Ctr.*, 2010 U.S. Dist. LEXIS 20651; *Diggs v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 25159 (E.D. La. 2010); *McFarland v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 86783 (E.D. La. 2010).
[84] See R. Doc. 457, 18.
[85] See R. Doc. 387-10, pgs. 95 – 96, lines 13 – 4; pgs. 66 – 67, lines 19 – 21.
[86] *Id.* at pgs. 95 – 96, lines 13 – 4.
[87] See R. Doc. 381-8, pgs. 13-14, lines 24 – 8; pg. 15, lines 1 – 12; pg. 27, lines 10 – 14; pgs. 108 – 110, lines 21 – 6.
[88] See R. Doc. 392-3, pg. 24, citing R. Doc. 387-10 at pg. 41, lines 10 – 14 and pg. 105, lines 12 – 23.
[89] *Id.* at pg. 105, lines 9 – 21.
[90] *Id.* at pg. 105, lines 20 – 23.

deliberate choice to follow a course of action is made from among various alternatives."[91] In this case, the only "alternative" that exists for the Sheriff to select from as it relates to the sleep/mattress policy would: (1) violate the constitutional rights of pretrial detainees by housing them with DOC felons and federal inmates/detainees;[92] (2) place pretrial detainees, who have not been convicted of any crime, in danger by housing them with violent and dangerous DOC felons and federal inmates/detainees; (3) violate Louisiana law (La. R.S. 15:707) by refusing to take federal inmates/detainees; and (4) violate the contractual agreements entered into with the U.S. Marshal's office in accordance with La. R.S. 15:707, by placing pretrial detainees in beds specifically reserved for federal inmates/detainees.[93]

Accordingly, because there are no legal or safe alternatives for providing mattresses or bedding to pretrial detainees, or for housing them with DOC felons or federal inmates, the Sheriff cannot be held liable under *Monell* for any deliberate action or decision in this matter.

### ii.    Exercise/Recreation policy

Sheriff Smith has established a legitimate governmental interest in temporarily not affording Plaintiffs the opportunity to exercise outdoors, in a dayroom, or in a gymnasium while they are held in a holding cell. Indeed, Plaintiffs, during their short-term detainment in the holding cells, were not permitted to enter other parts of the facility in order to avoid being comingled with convicted inmates, a measure taken for legitimate security and safety reasons, as pretrial detainees have not been convicted, and are therefore kept separate from both convicted DOC felons and federal inmates/detainees for their own safety (as DOC felons and federal inmates/detainees are more dangerous and violent).[94]

---

[91] *Pembaur*, 475 U.S. 469, 483 (1986).
[92] *Jones*, 2022 WL 3334493, citing *Jones*, 636 F.2d 1364; *Alderson*, 848 F.3d 415.
[93] *Jones*, 2022 WL 3334493, citing *Jones*, 636 F.2d 1364; *Alderson*, 848 F.3d 415.
[94] R. Doc. 387-10, pgs. 95 – 96, lines 13 – 4; pgs. 66 – 67, lines 19 – 21.

Further, as pretrial detainees in the holding cells, Plaintiffs did not have access to outdoor recreation, a dayroom, or a gymnasium in order to prevent interaction with sentenced prisoners. This placement was not punitive in nature, as pretrial detainees are provided recreation as soon as they are moved from the holding cells into permanent housing in the jail when a bed is available.[95] Instead, this placement was the result of a protective measure, due to the violent nature of both convicted DOC felons and federal inmates/detainees.

Lacey Kelly also noted that overall manpower within the STPJ is a key factor that dictates numerous actions, including how, when and why inmates are moved around the facility.[96] Lacey Kelly further testified that the STPJ has always had an issue with being shorthanded, and that moving inmates/detainees throughout the jail requires sufficient staffing.[97] Indeed, lack of appropriate staffing to move individuals, including moving those from holding cells to recreation and back, without appropriate staffing, would result in serious and significant security concerns for the STPJ and the prison's population as a whole.

Accordingly, as indicated above, there are numerous valid reasons, which are out of the STPJ's control, as to why the crowding level exists at the jail, and why the STPJ cannot house/provide pretrial detainees in areas with open beds that are reserved for parish/state inmates and/or federal inmates/detainees. Given that Sheriff Smith, as the keeper of STPJ, has an overriding obligation to preserve order, he must allocate limited resources, including personnel, in a way that prioritizes institutional safety. This case demonstrates that, despite constrained resources, STPJ carried out its core function. For these reasons, Plaintiffs' *Monell* claims as to exercise/recreation must be dismissed.

---

[95] See R. Doc. 387-10 at pg. 103, lines 5 – 9; See also, R. Doc. 392-9, ¶ 10.
[96] See R. Doc. 392-3, pgs. 11 – 12, citing R. Doc. 392-7, pgs. 197-198, lines 22 – 4; pg. 204, lines 1 – 20.
[97] *Id*. at pgs. 197 – 198, lines 4 – 6.

**b. Internal Inconsistency: The Court's finding of the existence of a legitimate governmental objective for denying mattresses mandates dismissal of plaintiffs' *Monell* claim.**

As noted above, in order to pass constitutional muster, the challenged jail policy or practice must be reasonably related to a legitimate governmental interest.[98] Indeed, in cases that are grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest.[99]

For example, in *Anderson v. Marshall County, Miss.*, the plaintiff asserted a *Monell* claim alleging that the Marshall County Jail had a policy of incarcerating inmates in jails that lack both sufficient medical facilities and access to doctors.[100] In reviewing the plaintiff's claim, the Fifth Circuit noted that the plaintiff must establish: "(1) a rule or restriction, an intended condition or practice, or a de facto policy as evidenced by sufficiently extended or pervasive acts of jail officials, (2) not reasonably related to a legitimate governmental objective, and (3) that violated [the detainee's] constitutional rights."[101] The Court noted that in order to establish the second prong, that the plaintiff must show that the jail's lack of on-site medical facilities was not reasonably related to a **legitimate government interest**.[102] In denying plaintiff's claim, the Court found that the Plaintiff presented no evidence that the policy was not reasonably related to a legitimate government interest, and further noted that the county had provided that the policy was in place for a legitimate interest in both inmate and fiscal prudence.[103]

In this case, in dismissing the Plaintiffs' individual capacity claims as it relates to the

---

[98] *Thornhill*, 88 F.Supp. 2d 647, citing *Hare*, 74 F.3d 633 at 642.
[99] *Duvall v. Dallas County, Tex.*, 631 F.3d 203 (5th Cir. 2011).
[100] *Anderson v. Marshall County, Miss.*, 637 Fed. Appx. 127 (5th Cir. 2016).
[101] *Anderson*, 637 Fed. Appx. 127.
[102] *Id*.
[103] *Id*.

lack of mattresses/bedding in the holding cells, the Court held that "a reasonable jury could yet conclude that Defendants' proffered explanations for denying Plaintiffs mattresses ***are related to a legitimate governmental objective***."[104] However, despite finding that the denial of mattresses was related to a legitimate governmental objective, the Court improperly denied Sheriff Smith's Motions as to *Monell* claims for lack of mattresses/bedding in the holding cells.

Upon finding that the policy of denying Plaintiffs mattresses was related to a legitimate governmental objective, the Court should have dismissed Plaintiffs' individual and official capacity claims, as **no constitutional violation** can exist if the policy is related to a legitimate governmental objective. As noted above, without an underlying constitutional violation, Plaintiffs' *Monell* claim as to lack of mattresses/bedding in the holding cells cannot continue. Indeed, because the Court found that a legitimate governmental objective for the STPJ's policy exists, the Plaintiffs are unable to meet their burden in establishing that no reasonable relationship to a legitimate governmental interest exists for the policy. Accordingly, the Court's Order is **internally inconsistent** and in error when it: (1) found a legitimate governmental objective existed for the policy, while at the same time (2) failing to dismiss the Plaintiffs' *Monell* claim as to sleep/mattresses.

### c. The cases relied upon by the Court do not apply.

#### i. Mattress/Bedding (Sleep)

In its Order, this Court cited *Hebert v. Maxwell* and *Martinez v. Harris County Jail*, in support of the assertion that pretrial detainees have a constitutional right to a mattress.[105] However, neither of these cases stand for the proposition that pretrial detainees have a constitutional right to a mattress, and as this Court noted, these cases are clearly distinguishable from the facts at issue

---

[104] See R. Doc. 457, pg. 23. (emphasis added).
[105] See R. Doc. 457, pgs. 18, 23.

herein. Indeed, the holdings in both *Hebert* and *Martinez* are fact-specific, and do not represent general propositions of law.

For example, in *Hebert*, the plaintiff was arrested for criminal trespass by a Concordia Parish Sheriff's deputy at the direction of Sheriff Maxwell, who told the deputy to hold Hebert until they "found out more information."[106] Hebert was then taken to the parish jail on Saturday afternoon, where he was provided two bedsheets, two towels, and two hand towels, was permitted to call his wife, and was placed in a holding cell called the "tank."[107] Sheriff Maxwell testified that the "hold" was maintained until they could "find out who [Hebert] was."[108] Hebert filed suit based on the conditions of his confinement, which alleged that the cell reeked of human waste which was strewn across the walls and the floor, that there was no bed but only a hard wooden bench, that the lights were on 24/7, that he was not permitted to shower or exercise, and that he was not given soap, toilet paper, toothbrush, or toothpaste until shortly before release.[109] In denying qualified immunity, the Fifth Circuit noted the fact-specific nature of the case, providing:

> [Hebert] alleges that he was forced to sleep on a wooden plank while the county had other cells with mattresses available. ***The government's stated objective was to "find out who [Hebert] was."*** In the absence of a compelling governmental interest, housing a detainee in a room without sleeping accommodations, when other available rooms had sleeping facilities, is enough to survive a summary judgment motion based on qualified immunity.[110]

As clearly indicated above, the reasons for the Fifth Circuit's holding in *Hebert* was fact-specific, as the Defendant ***failed to provide a compelling governmental objective/interest*** in keeping Hebert in jail over the weekend and housing him alone in a "tank" with no mattress when other sleeping accommodations were available.

---

[106] *Hebert v. Maxwell*, 214 Fed. Appx. 451 (5th Cir. 2007).
[107] *Hebert*, 214 Fed. Appx. 451.
[108] *Id*.
[109] *Id*.
[110] *Id*. (emphasis added).

In *Martinez v. Harris County Jail*, Martinez, a pretrial detainee, alleged that a month after he was placed into jail he was separated from the other inmates, denied privileges, and placed into solitary confinement for a month, where he had no mattress for the first seven days, was allowed only three showers and suffered a nervous breakdown.[111] The Fifth Circuit reversed the district court, noting that the record contained no order that Martinez be placed into solitary confinement and that prison officials ***provided no reason as to why they chose to segregate Martinez*** from the rest of the prison population.[112] Accordingly, the Fifth Circuit held that the record ***failed to establish any legitimate objective*** for Martinez's segregation and therefore the court could not conclusively say that Martinez was not "punished."[113] Because the Fifth Circuit found that the conditions could constitute punishment, and there was "nothing in the record, nor any testimony elicited at the Spears hearing, indicates why prison officials denied Martinez a mattress and showers," the Fifth Circuit held that the lack of a mattress could constitute punishment of Martinez as a pretrial detainee.[114]

The facts at issue in this matter are clearly distinguishable from those in *Hebert* and *Martinez*, as Sheriff Smith has provided multiple, compelling governmental objectives/interests in not providing a mattress to pretrial detainees:

(1) Placement in a holding cell is for a temporary basis, not long term, and not done to "[try] to punish or hurt people";[115]

(2) The STPJ is under a statutory obligation to accept federal inmates/detainees in accordance with La. R.S. 15:707;

(3) If the STPJ houses pretrial detainees with either state/parish inmates and/or federal inmates, the STPJ would be liable for violating the constitutional rights of the pretrial

---

[111] *Martinez v. Harris County Jail*, 71 F.3d 876 (5th Cir. 1995).
[112] *Id*.
[113] *Id*.
[114] *Id*.
[115] See R. Doc. 381-8, pgs. 13-14, lines 24 – 8; pg. 15, lines 1 – 12; pg. 27, lines 10 – 14; pgs. 108 – 110, lines 21 – 6.

detainees;[116]

(4) The STPJ would commit a constitutional violation if there was no classification system in place to separate pretrial detainees and convicted detainees;[117]

(5) The Marshals Service does not allow the federal detainees/inmates to be comingled with state or parish inmates/detainees;[118]

(6) Pretrial detainees have not been convicted, and are therefore kept separate from both convicted DOC felons and federal inmates/detainees for their own safety as those DOC and federal inmates/detainees are more dangerous and violent;[119]

(7) It would be physically impossible to place a mattress or bed in the holding cell for each pretrial detainee due to lack of space within the cells to accommodate them;[120]

(8) Placing mattresses or beds into the holding cells would further reduce the available space;[121] and

(9) Placing mattresses or beds into the holding cells would force the pre-trial detainees to navigate over them and cause more issues than not having them.[122]

As provide above, the facts in this matter are clearly distinguishable from the cases relied upon by the Court, as the STPJ has numerous legitimate governmental objectives/interests for its mattress/bedding policy, any of which mandates dismissal of Plaintiffs' *Monell* claims through a proper application of the *Monell* analysis.[123]

### ii. Exercise/Recreation

As previously noted above, in order to succeed in a § 1983 for lack of exercise, a pretrial detainee must establish an injury. However, the Court, in allowing Plaintiffs' *Monell* claim as to exercise to continue erroneously relied on *Scott v. Moore* for the proposition that "[i]n many jail

---

[116] See R. Doc. 392-3, pgs. 24 – 28, citing *Jones*, 2022 WL 3334493, citing *Jones*, 636 F.2d 1364; See also *Alderson*, 848 F.3d 415.
[117] *Id*. at pg. 25, citing *Pembroke*, 981 F.2d 225, 229.
[118] See R. Doc. 392-3, pg. 11, citing R. Doc. 387-10, pgs. 95 – 96, lines 13 – 4.
[119] *Id*., citing R. Doc. 387-10, pgs. 95 – 96, lines 13 – 4; pgs. 66 – 67, lines 19 – 21.
[120] See R. Doc. 392-3, pg. 24, citing R. Doc. 387-10 at pg. 41, lines 10 – 14 and pg. 105, lines 12 – 23.
[121] *Id*. at pg. 105, lines 9 – 21.
[122] *Id*. at pg. 105, lines 20 – 23.
[123] *Thornhill*, 88 F.Supp. 2d 647, citing *Hare*, 74 F.3d 633 at 642; See also *Duvall*, 631 F.3d 203 (5th Cir. 2011).; *Anderson v. Marshall County, Miss.*, 637 Fed. Appx. 127 (5th Cir. 2016).

condition cases, the conditions themselves constitute the harm."[124] Indeed, while this statement appears in *Scott*, it is not binding authority or related to this matter.

First, *Scott* is factually distinguishable. It involved a pretrial detainee who was allegedly sexually assaulted by a correctional officer. According to the plaintiff in *Scott*, the assault resulted from improper staffing procedures that failed to ensure the presence of either a female jail official or at least two male officials when a female pretrial detainee was in custody. ***Notably, Scott did not involve allegations of lack of sleep or exercise***.

Second, *Scott* is not a case about conditions of confinement. Indeed, the Fifth Circuit concluded that the case "[did] not "fit well within the conditions-of-confinement category and, in fact, bears a closer resemblance to cases regarding episodic acts by prison employees."[125]

Additionally, while the *Scott* court did note that "in many jail condition cases, the conditions themselves constitute the harm—for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions"[126]—this statement is ***dicta*** and does not support a broad proposition applicable to the present case. Indeed, the *Scott* court did not analyze the elements of a conditions of confinement claim or the caselaw addressing the requisite showing of harm. Instead, the court cursorily noted the distinction between conditions of confinement claims and those involving episodic acts ***but ultimately focused its analysis on the latter***. Notably, the statement has been cited by courts as a "screening test" to distinguish conditions of confinement cases from claims based on episodic acts or omissions, with most courts applying the test concluding that the claims before them involved episodic acts or omissions by specific jail officials, and therefore did not require a detailed analysis of the elements of a

---

[124] *Scott v. Moore* 114 F.3d 51, 53 (5th Cir. 1997).
[125] *Scott*, 114 F.3d 51, 54.
[126] *Id*. at 53.

conditions of confinement cause of action nor constitute a *Monell* claim against a municipality.[127]

Accordingly, Plaintiffs' claims related to lack of opportunity to exercise outside the holding depends on showing of adverse physical health injury. Since none of the Plaintiffs suffered such injury, Plaintiffs' *Monell* claim should be dismissed for this additional reason.

Defendant further notes that the Court's reliance on *McCord v. Maggio* is misplaced. This is especially true considering the Fifth Circuit has consistently dismissed claims by pretrial detainees for lack of recreation/exercise, holding that such claims are *de minimis* and do not rise to the level of a constitutional claim,[128] and that since temporarily restricting Plaintiffs from exercising outdoors or accessing a dayroom or gymnasium served a legitimate governmental purpose—namely, the safety of both Plaintiffs and the broader prison population—no constitutional violation occurred. Accordingly, the Court's reliance on *McCord v. Maggio* and its remarks regarding the lack of funding not being a justification for the neglect of citizens' constitutional rights[129] are misplaced.

Indeed, *McCord v. Maggio* is inapposite to the present case, as it involved clear and egregious constitutional violations of the plaintiff's Eighth Amendment rights. Unlike the Plaintiffs in the foregoing matter, the plaintiff in *McCord* was an inmate who was subjected to intolerable and deplorable conditions while held in solitary confinement.[130] He "lived in roach-

---

[127] *Mathis v. Cotton*, 1997 WL 457514 (N.D. Tx. 1997) ("The recent en banc opinion in *Scott v. Moore*, however, makes clear that lawsuits of this type must be considered as stating episodic-acts claims."); *Nazerzadeh v. Harris Cnty.*, 2010 WL 3817149 (S.D. Tx. 2010) ("This case involves allegations of an episodic act or omission."); *Castro v. Harris Cnty. Jail*, 2007 WL 2446821 (S.D. Tx. 2007) ("A review of Castro's complaint demonstrates that this case involves allegations of an episodic act or omission."); *Morel v. Lopinto*, 2022 WL 110496 (E.D. La. 2022) ("Indeed, this case does not fit the conditions-of-confinement framework."); *Mitchell v. Denton Cnty.*, 2022 WL 989392 (E.D. Tx. 2022), *report and recommendation adopted*, 2022 WL 987819 (E.D. Tx. 2022) ("the Court construes Plaintiff's allegations as raising an episodic-acts-or-omissions due process claim.")
[128] *Mahmoud*, 234 F.3d 29; *Jane Doe 5*, 106 Fed. Appx. 906; *Soto*, 106 Fed. Appx. 903; *Garcia Guevara*, 106 Fed. Appx. 900; *Howard-Barrows*, 106 Fed. Appx. 912.
[129] R. Doc. 457, pg. 17.
[130] *McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir.1991).

infested, windowless, unlighted cells into which rain water and backed-up sewage leaked."[131] When the floors flooded, he "either had to stand up all night or sleep on a wet mattress on the floor."[132]

Here, the conditions of Plaintiffs' holding cells were uncomfortable, but they were not unconstitutional and certainly not deplorable. Sheriff Smith provided Plaintiffs with conditions that both respected their constitutional rights and assured their safety. Indeed, the facts in *McCord* are clearly distinguishable from the foregoing matter, as the defendants were denied qualified immunity, while in this matter the Court held that both Defendants were entitled to qualified immunity.[133] Additionally, as proclaimed by *Mayfield v. Ellet,* the physical constraints of the jail are a valid consideration when assessing a claim under the Fourteenth Amendment.[134] In the space available to all prison population at the STPJ, Sheriff Smith properly segregated pretrial detainees from convicted inmates and kept all of them safe.

Further, *Miller v. Carson*[135] no longer constitutes good precedent. Under current Fifth Circuit jurisprudence, and the precedent of this Court, claims by pretrial detainees for lack of recreation/exercise are *de minimis* and do not rise to the level of a constitutional claim,[136] and pretrial detainees do not have a constitutional right to outdoor exercise or recreation.[137]

Second, this Court's reliance on the statement from *Miller* providing that "presumably

---

[131] *McCord*, 927 F.2d 844, 846.
[132] *Id*. at 847.
[133] *Id*.
[134] *Mayfield v. Ellett*, 102 F.3d 549 (5th Cir.1996), ("Given the physical constraints of the Panola County Jail facility, we are convinced that the facts alleged by Mayfield would not even arguably suffice to sustain a finding that he was unconstitutionally punished within the meaning of the Fourteenth Amendment.")
[135] *Miller v. Carson*, 563 F.2d 741 (5th Cir.1977).
[136] *Mahmoud*, 234 F.3d 29; *Jane Doe 5*, 106 Fed. Appx. 906; *Soto*, 106 Fed. Appx. 903; *Garcia Guevara*, 106 Fed. Appx. 900; *Howard-Barrows*, 106 Fed. Appx. 912.
[137] *Callicutt v. Panola Cnty. Jail*, 200 F.3d 816 (5th Cir. 1999). Also, *Miller v. Carson* is factually distinguishable, as it was brought by detainees who "were literally stored in a building designed as a maximum security penal institution a building designed to punish as well as to hold. […] Inmates presumed innocent by the law were often kept for months in these cellblocks while waiting for trial." *Miller v. Carson*, 563 F.2d 741, 750 (5th Cir.1977).

innocent pretrial detainees who are not classified as security risks and who have not been shown to have violated the disciplinary rules of the jail have a fourteenth amendment and 1983 right to regular access to the outdoors,"[138] ignores the Supreme Court's later opinion on this point in *Bell*, where it held that "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates," and that "it may be that in certain circumstances they present a greater risk to jail security and order."[139]

For pretrial detainees like Plaintiffs, challenging the conditions of confinement, their claim must be assessed under the due process clause of the Fourteenth Amendment. "In *Bell v. Wolfish*, the Supreme Court determined that as to pretrial detainees, the proper inquiry under the due process clause is whether conditions accompanying pretrial detention are imposed upon detainees for the purpose of punishment, as the due process clause does not permit punishment prior to an adjudication of guilt."[140] As confirmed by *Mayfield v. Ellet*, "*Bell* recognized that ensuring security and order at detention facilities is a permissible nonpunitive objective."[141]

### D. The Court erred in allowing claims not asserted by plaintiffs to continue to trial.

Sheriff Smith notes that Court's Order potentially allows Mr. Baqer, Mr. Guillot and Mr. Williams to move forward with *Monell* claims as to lack of exercise/recreation, despite all three (3) of these Plaintiffs failing to assert such a causes of action in their Complaints.[142] Indeed, a review of the allegations contained within the Complaints clearly indicates that Mr. Baqer,[143] Mr. Guillot[144] and Mr. Williams[145] **never** asserted a cause of action for lack of

---

[138] See R. Doc. 457, pg. 15.
[139] *Bell*, 441 U.S. 520 at fn 28; See also *Block*, 468 U.S. 576 at 587.
[140] *Cupit*, 835 F.2d 82.
[141] *Mayfield v. Ellett*, 102 F.3d 549 (5th Cir.1996)
[142] See R. Doc. 457.
[143] See R. Doc. 1, ¶¶ 84 – 93.
[144] See R. Doc. 1, ¶¶ 108 – 116.
[145] See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶¶ 129 – 152.

exercise/recreation. Indeed, the only Plaintiffs who have specifically asserted claims for lack of exercise/recreation are Mr. Hall[146] and Mr. Louviere.[147] Therefore, because Mr. Baqer, Mr. Guillot and Mr. Williams have never asserted conditions of confinement claims and/or *Monell* claims as to lack of exercise/recreation, those claims have never been before this Court and can therefore not be allowed to proceed to trial in this matter.[148]

### E.  It is an undisputed fact that Klabert Joseph Guillot, Sr., failed to exhaust his administrative remedies, thereby mandating dismissal

Throughout this litigation, and from its very inception, Defendant has consistently noted that Mr. Guillot **never** initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") with regard to the conditions of confinement he allegedly suffered during his time in the holding cell, as required prior to the filing of suit pursuant to 42 USCS § 1997e.[149]

Indeed, Mr. Guillot's own testimony further confirms that at the time suit was filed in this matter on March 22, 2020, he had been held in the St. Tammany Parish Jail as a pretrial detainee since his December 22, 2019 arrest.[150] It is an undisputed fact that he was ultimately released from the STPJ on March 27, 2020, five (5) days after suit had been filed in this matter.[151] It is an undisputed fact that he never initiated or filed a grievance through the ARP.[152] Mr. Guillot, therefore, has failed to exhaust his administrative remedies, and in accordance with the Supreme Court's holding in *Woodford v. Ngo*, his claims must be dismissed, as ***"[e]xhaustion is no longer***

---

[146] See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 126.
[147] See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 110.
[148] See R. Doc. 451, pg. 3, fn 4, citing *Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.")
[149] See R. Doc. 46, pg. 4, Affirmative Defense Fifteen; See also R. Doc. 422, pgs. 1-6, citing R. Doc. 391-2, pg. 5, ¶ 37; See R. Doc. 37-1, ¶ 25; See R. Doc. 235-2, pg. 5, ¶ 37.
[150] See R. Doc. 391-13, pg. 34, lines 8 – 13.
[151] See R. Doc. 391-2, pg. 2, ¶ 10; See also R. Doc. 410-1, pg. 3, ¶ 10; See R. Doc. 37-1, pg. 2, ¶ 10.
[152] See R. Doc. 410-1, pg. 7, ¶ 37.

*left to the discretion of the district court, but is mandatory."*[153]

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully suggests that the instant motion for reconsideration should be granted, and Plaintiffs' remaining claims should be dismissed with prejudice.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Andrew R. Capitelli*
_____

| | |
|---|---|
| **ANDREW R. CAPITELLI** | **# 31649** |
| **BRUCE A. CRANNER** | **# 1796** |
| **KENNETH R. WHITTLE** | **# 38640** |
| **SARAH A. FISHER** | **# 39881** |

**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone:    (985) 292-2000**
**Facsimile:    (985) 292-2001**
acapitelli@millinglaw.com
bcranner@millinglaw.com
kwhittle@millinglaw.com
sfisher@millinglaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Wednesday, April 09, 2025, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Andrew R. Capitelli*
**Andrew R. Capitelli**

---

[153] *Woodford v. Ngo*, 548 U.S. 81 (2006).