### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AHMED BAQER, KLABERT JOSEPH | * | NO. 2020-CV-00980 |
| GUILLOT, JR., and KLABERT JOSEPH | * | |
| GUILLOT, SR. | * | |
| **Plaintiffs** | * | **JUDGE PAPILLION** |
| VERSUS | * | |
| | * | |
| ST. TAMMANY PARISH GOVERNMENT, | * | **MAGISTRATE CURRAULT** |
| a/k/a ST. TAMMANY PARISH COUNCIL, | * | |
| ST. TAMMANY PARISH SHERIFF'S | * | |
| OFFICE, RANDY SMITH, in his official | * | **JURY DEMAND** |
| and individual capacity, RODNEY J. | * | |
| STRAIN, in his official and individual | * | |
| capacity, GREG LONGINO, in his official | * | **COMBINED WITH** *Louviere v.* |
| and individual capacity, and LACEY | * | *St. Tammany Parish Government* |
| KELLY, in her official and individual | * | *No. 2:20-cv-01840-WBV-DPC* |
| and individual capacity, and LACEY | * | |
| KELLY, in her official and individual | * | |
| capacity | * | **ALL CASES** |
| **Defendants** | * | |

*********************************************************************************

---

### REPLY MEMORANDUM IN SUPPORT OF
### DEFENDANT'S MOTION FOR RECONSIDERATION

---

**MAY IT PLEASE THE COURT:**

NOW COMES, through undersigned counsel, Defendant, Sheriff Randy Smith, in his

official capacity, who respectfully submits the following Reply Memorandum in Support of his

Motion for Reconsideration.[1]

    1. **Defendant's Rule 54(b) request for reconsideration.**

        A. **Plaintiffs' reliance on Rule 59 is inapplicable, as Defendant has requested
            reconsideration pursuant to Rule 54(b).**

Plaintiffs' characterization of a motion for reconsideration as an extraordinary remedy with

---

[1] R. Doc. 464.

a narrow purpose is misplaced, as Defendant does not move to alter a final judgment under Rule 59(e). Rather, the Sheriff respectfully seeks reconsideration of the Court's interlocutory Order of March 28, 2025, pursuant to Rule 54(b).

"Since the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, such motions are treated as either a motion to challenge a judgment or order under Rule 54(b), 59(e), or 60(b)."[2] "While Rules 59 and 60 apply to final judgments only, 'if a party seeks reconsideration of an order that adjudicates fewer than all the claims among all the parties prior to entry of final judgment, then Rule 54(b) controls.'"[3]

"Rule 54 provides that district courts 'possess[ ] **the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient**.'"[4] "Under such a standard, district courts can be 'more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"[5] "Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered. ... In contrast, **Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible**, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."[6] **Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient**, even in the absence of [...] an intervening change in or clarification of the substantive law."[7] "[A]pplying Rule 59(e)'s 'strict prohibition'

---

[2] *Gulf Island Shipyards, LLC v. LaShip, LLC*, CV 22-154, 2024 WL 1794361, at *3 (E.D. La. 2024), citing *Holmes v. Reddoch*, 19-12749, 2022 WL 16712872 at *2 (E.D. La. 2022).
[3] *Id*.
[4] *Gulf Island Shipyards, LLC*, 2024 WL 1794361, at *3, citing *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981). (emphasis added.)
[5] *Gulf Island Shipyards*, at *3, citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017).
[6] *Austin v. Kroger Texas, L.P.*, 864 F.3d at. 336–37. (emphasis added.)
[7] *Austin*, 864 F.3d at. 336.

against considering new arguments that could have been raised before the district court's ruling [is] 'unwarranted' and 'of legal consequence' when erroneously applied to interlocutory orders."[8]

Here, because the denial of Defendant's Motion for Summary Judgment is an interlocutory order, the Court has the inherent authority to reconsider, modify, or rescind it for any cause it deems sufficient. Notably, the Court is not constrained by "the heightened standards"[9] that govern reconsideration of final judgments. Moreover, applying such a heightened standard to the Sheriff's Motion for Reconsideration would be in error.[10]

### B. Refusal to correct a manifest error of law and fact under Rule 54(b) will constitute an abuse of discretion.

As established above, under Rule 54(b), a trial court "is free to reconsider and reverse its decision for any reason it deems sufficient."[11] The Court's considerations include a manifest error in law or fact,[12] and even legal issues raised for the first time in the motion for reconsideration.[13] Granting a motion for reconsideration provides the trial court an opportunity to correct errors of law or fact and to avoid committing an abuse of discretion. Indeed, under the law, "[a] trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous

---

[8] *Austin*, 864 F.3d at 337, citing *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015). (emphasis added).

[9] *Austin*, 864 F.3d at 337.

[10] Defendants respectfully submit that none of the cases Plaintiffs rely on addresses a motion for reconsideration under Rule 54(b). Instead, *Rackley v. Louisiana*, 2007 WL 3407418, at 1 (E.D. La. 2007), *Templet v. HydroChem Inc*., 367 F.3d 473, 478–79 (5th Cir. 2004), *Voisin v. Tetra Techs., Inc*., 2010 WL 3943522, at 3 (E.D. La. 2010), *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 567 (5th Cir. 2003), and *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005), all address motions to alter or amend final judgments under Rule 59(e).

[11] *Austin*, 864 F.3d at 336–37.

[12] "Though [Rule 54] standard is lower than the threshold used for reconsideration of judgments under Rule 59, courts still 'look to similar considerations as those it considers when evaluating Rule 59(e) motions.' These considerations include […] a manifest error in law or fact." *Gulf Island Shipyard*, 2024 WL 1794361, at *3.

[13] *Austin*, 864 F.3d at 337, citing *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015) ("[A]pplying Rule 59(e)'s 'strict prohibition' against considering new arguments that could have been raised before the district court's ruling [is] 'unwarranted' and 'of legal consequence' when erroneously applied to interlocutory orders.") Also, see *Glass v. Paxton*, 900 F.3d 233, 243 (5th Cir. 2018), holding that even courts of appeal have "option to consider purely legal issues for the first time on appeal."

assessment of the evidence."[14]

Here, as noted in the Motion and further explained below, the Court committed errors of law and fact by ruling that the STPJ's "foundational purpose"[15] is to house only pretrial detainees, and that the STPJ "voluntarily"[16] entered into contracts with the federal government and the DOC to house federal and state prisoners it otherwise had no obligation to keep. These rulings[17] — made without citation to any legal authority — are clearly erroneous. Indeed, they are contrary to Louisiana law, which obligates the STPJ to house not only pretrial detainees but also convicted state[18] and federal inmates.[19]

**2. The "foundational purpose" of the STPJ is to house pretrial and sentenced (DOC) inmates.**

In deciding summary judgment, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."[20]

In this case, the Court's Order denying, in part, Defendant's summary judgment, is based on the Court's own unsupported and mistaken assumption with regard to the "foundational purpose" of the St. Tammany Parish Jail, which the Court unilaterally stated was to house pretrial detainees.[21] The Court's reliance on this unsupported and mistaken assumption forms the basis for the partial denial of summary judgment, as the Court held that the STPJ shirked this foundation purpose by "voluntarily" holding state and federal inmates, which the Court found "uses up considerable bed space."[22] Indeed, Plaintiffs opposition to reconsideration argues that regardless

---

[14] *In re Taxotere (Docetaxel) Products Liab. Litig.*, 837 Fed. Appx. 267, 274 (5th Cir.2020).
[15] R. Doc., pg. 19.
[16] *Id*.
[17] As well as others discussed more fully in Defendant's *Motion for Reconsideration*.
[18] See La. R.S. 15:824, La. R.S. 15:566, *Ware v. La. Dep't of Corr.*, 866 F.3d 263 (5th Cir. 2017), and argument below.
[19] See La. R.S. 15:707 and the argument made in Memorandum in Support of Defendant's Motion for Reconsideration, R. Doc. 464-1, pgs. 5-9
[20] *Johnson v. Advocate Health and Hospitals Corporation*, 892 F.3d 887 (7th Cir. 2018).
[21] See R. Doc. 457, pg. 19.
[22] *Id*.

of whether the STPJ was obligated to house federal inmates, that the STPJ voluntarily decided to hold DOC inmates.

The Court's statement, and Plaintiffs' arguments, however, are unsupported by any of the facts or evidence presented before the Court, and, in fact, is directly contradicted by the evidence provided to the Court by Plaintiffs. Indeed, the 2012 letter from the United States Department of Justice, presented by Plaintiffs in opposition to Defendants' Motions for Summary Judgment, specifically provides that the St. Tammany Parish Jail is "designed to house more than 1200 **pre-trial and sentenced prisoners** in four facilities."[23] As noted in Defendants' Reply Memorandum in Support of the Motions for Summary Judgment,[24] DOC prisoners have already been convicted and sentenced, while pretrial detainees have not been convicted or sentenced.[25] Therefore, the **only evidence** before the Court on the Motions for Summary Judgment clearly provided that the STPJ was designed, in part, for the purpose of holding sentenced DOC prisoners. Accordingly, the STPJ's "foundational purpose" is to house both pretrial detainees and sentenced DOC prisoners, while the STPJ is additionally obligated under LA. R.S. 15:707 to house federal inmates. This purpose is further supported by the fact that, as a result of Mr. Guillot's December 26, 2019 arrest, Mr. Guillot pled guilty and was sentenced to two (2) years, (thereby becoming a DOC prisoner), and served those two (2) years at the STPJ until he was released early on parole.[26]

Defendant further notes that the Fifth Circuit, in *Ware v. La. Dep't of Corr.*, specifically addressed the fact that, in an effort to reduce overcrowding and pursuant to a 1996 settlement agreement approved by the Middle District of Louisiana between DOC and the Louisiana Sheriffs'

---

[23] See R. Doc. 411-5. (emphasis added).
[24] See R. Doc. 426, pgs. 2-4.
[25] See *Babineaux v. Garber*, 2020 U.S. Dist. LEXIS 83562 (W.D. La. 2020)("Offenders who are in parish custody awaiting trial on new charges are called pretrial detainees…DPSC has no connection to an offender until he is sentenced regarding a felony conviction and committed to DPSC's custody.")
[26] See R. Doc. 391-13, pg. 36, lines 4 – 21; Accordingly, one of the Plaintiffs in this matter is now currently a DOC prisoner being held at the STPJ.

Association (LSA), inmates the parish jail holds, which include inmates in DOC's legal custody, and who **remain in the parish jail** and are only transferred to a DOC prison if their sentence is greater than 20 years:

> Parish inmates are those inmates in DOC's legal custody who, following conviction, remain in the parish jail where the inmate was held pending trial. Generally, an inmate is transferred from a parish jail to a DOC prison upon conviction only if the inmate's sentence is greater than 20 years or the inmate has "particularized medical or other special needs." DOC keeps these inmates in parish jails due to overcrowding at DOC prisons and pursuant to an agreement with the Louisiana Sheriffs' Association (LSA), which runs the parish jails. Parish inmates "remain committed to the custody of DOC (despite physically being held in [parish jails])," and accordingly, DOC takes every reasonable step to ensure their health, safety, and security."[27]

As clearly provided above, the Fifth Circuit has recognized that, pursuant to a 1996 settlement agreement between the DOC and LSA,[28] parish jails, like the STPJ, house DOC inmates who are in the custody of DOC but whose sentence is not greater than 20 years.[29] Defendant avers that this Court's current Order would penalize the STPJ for abiding by the terms of the settlement agreement entered into by the DOC and LSA before the Middle District of Louisiana for housing parish inmates, despite the fact that the STPJ facility, built in 2001, was specifically designed for the purpose of housing "pre-trial and sentenced prisoners."[30] Accordingly, the Court's holding that the STPJ's "foundational purpose" is to house only pretrial detainees, and that the holding of state and federal inmates by the STPJ are simply "voluntary obligation(s)," is a clear error of law and fact which mandates reconsideration of the Court's partial denial of summary judgment.[31]

---

[27] *Ware v. La. Dep't of Corr.*, 866 F.3d 263 (5th Cir. 2017).

[28] See *Ware*, 866 F.3d 263; See also, R. Doc. 411-2, pg. 34, no. 232.

[29] Defendant notes that Plaintiffs previously discussed this 1996 settlement agreement in their oppositions to summary judgment, (See R. Doc. 411, pgs. 3-4), but suddenly act as though this settlement agreement does not exist, and that the terms of this settlement agreement were instead a voluntary obligation created pursuant to a separate contract with the STPJ and DOC. (See R. Doc. 481).

[30] See R. Doc. 411-5.

[31] Plaintiffs' baseless and unsupported assertions, that contradict both the law and their own exhibit, do not justify denial of reconsideration.

### 3. Municipal/*Monell* liability cannot be imposed on Sheriff Smith for following state/federal law

The Fifth Circuit has long recognized that simply following the ***mandatory dictates of state law*** cannot form a predicate for *Monell* liability.[32] Indeed, a plaintiff who seeks a judgment against a municipality under *Monell* must be able to attribute the alleged injuries to an improper policy, or other improper, voluntary action of the municipality itself.[33] When the municipality is acting under compulsion of state or federal law, however, the allegedly "improper" action results from the law itself <u>and not</u> from a voluntary policy or action by a municipality.[34]

In this case, the STPJ is obligated under La. R.S. 15:707 to house federal inmates and is further obligated to house sentenced prisoners in accordance with the foundational purpose and design of the STPJ, as well as in accordance with the 1996 federal settlement agreement entered into by the DOC an LSA. Municipal/*Monell* liability cannot attach to Sheriff Smith for housing state and/or federal inmates in accordance with the law as he has no choice in the matter.[35] Accordingly, Defendant cannot be held to violate the constitutional rights of pretrial detainees by simply adhering to legal responsibilities under both state and federal law.

Further, Plaintiffs reference to the housing of federal inmates as a "rental contract" completely ignores the fact that under La. R.S. 15:707,[36] if the Sheriff were to refuse to house federal detainees at the STPJ, he would be subject to suit by the state of Louisiana for violating

---

[32] *West v. Congemi*, 28 F.2d 385 (E.D. La. 1998), citing *Bigford v. Taylor*, 834 F.2d 1213 (5th Cir.1988); *West*, citing *Bethesda Lutheran Homes and Svcs. Inc. v. Leean*, 154 F.3d 716, 718–719 (7th Cir. 1998) ("'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives.'") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

[33] *Bethesda Lutheran Homes and Services, Inc.*, 154 F.3d 716.

[34] *Id*.

[35] See *Pembaur*, 475 U.S. 469, 483 (1986) ("municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives")

[36] Plaintiffs' assertion that La. R.S. 15:707 is an affirmative defense is completely unsupported by law. The purpose of La. R.S. 15:707 is not to shield a party from liability. Instead, the statute merely details ***mandatory*** Louisiana state law as it relates to the housing of federal prisoners at parish jails such as the STPJ. Indeed, La. R.S. 15:707 is ***not*** an affirmative defense, and is ***not*** included within Rule 8(c)'s list of affirmative defenses. (See FRCP 8(c)).

the dictates of mandatory state law. Indeed, even if the STPJ had not entered into a contract to house federal detainees, the STPJ would still be obligated to house such detainees, but would be forced to do so *without receiving any compensation*.

Additionally, with regard to Plaintiffs' reference to the housing of state inmates as a "rental contract," Defendant notes that under La. R.S. 15:824 (B)(1)(a) and 15:566(A) and (B), the STPJ is statutorily obligated to hold the following categories of state prisoners:

(1) Any individual [who] has been committed to the [DOC] for confinement which is or has been delayed or prevented after final sentence by court order restricting the [DOC] from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the [DOC], or the [DOC] otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, or when he is a participant in a Blue Walters Substance Abuse Program by order of a court in lieu of revocation of probation or by the committee on parole in lieu of revocation of parole;

(2) Prisoners who [have] been convicted of a crime and sentenced to imprisonment at a state penitentiary, who [are] held in the parish jail without bail, pending an appeal;"

(3) Prisoners who were sentenced to imprisonment at hard labor but cannot be delivered to the state correctional institution within thirty days of the date of the sentence, because "[t]he court, for good cause, stays for a specified period a transfer to the Department of Corrections pursuant to [La. R.S. 15:566 (B)(4)]" that is when an order of appeal is obtained or the prisoner has filed a timely application for rehearing.[37]

The above statutes, which impose on parish jails the duty to house state prisoners, also provide that the Department of Corrections "shall pay to each parish sheriff" for "keeping and feeding the individual in the parish jail."[38] Accordingly, the STPJ's contract with the DOC to receive funds for performing this statutory duty is clearly not a "rental contract," but, as in the case

---

[37] La. R.S. 15:566 (B)(4).
[38] La. R.S. 15:824(B)(1)(a).

with the contract between the STPJ and the federal government, is simply in place so that the STPJ receives the funding that it is warranted for the mandatory housing of state inmates.

Defendant further notes that in the aftermath of the May 16, 2025 jail break involving ten inmates from the Orleans Parish Prison ("OPP"), the topic of parish jails holding state prisoners has become a subject of discussion after it was discovered that four of the inmates, (Leo Tate, Jermaine Donald, Antoine Massey and Lenton Vanburen), were state prisoners who were either awaiting transfer to a state prison, or had pending charges in Orleans Parish, while another inmate, Derrick Groves, was convicted of murder in October but was awaiting sentencing.[39] As the article notes, "typically around half – oftentimes, more – of the state's prisoners aren't housed in state prisons, but rather local jails."[40] Indeed, Orleans Parish Sheriff's Office ("OPSO") spokesperson, Gary Scheets, noted that at the time of the escape, eighty-one (81) of the jail's detainees, about 1 in 20, were state inmates, with jail records showing that the number has been as high as one in ten in recent years, and upwards of more than 100 as of 2023.[41] Further, in the aftermath of the jailbreak, sixty-three (63) state inmates were moved to state prisons, however, the OPP is still in custody of state inmates.[42]

As to whose responsibility it is to transfer the inmates to state jails, Orleans District Attorney, Jason Williams stated "[t]hat's the state's responsibility, by law…If it was up to me, [they] wouldn't be here a single day after [their] conviction."[43] The article further notes that there are several reasons as to why state inmates end up in the custody of parish jails, including, but not limited to: (1) local charges that haven't been resolved, (2) parole violations, (3) inmates nearing

---

[39] Joseph Cranney, *Why did New Orleans jail house state inmates? One inmate escaped while waiting for transfer*, Nola.com, May 21, 2025, https://www.nola.com/news/new-orleans-jail-escape-louisiana-prison/article_24663c4a-4be4-4460-bc32-9cad2a59e9ad.html (Archived Link: https://archive.is/sDGj8).
[40] *Id*.
[41] *Id*.
[42] *Id*.
[43] *Id*.

the end of prison terms who are eligible for work release, or (4) who don't pose significant security risks.[44] Similarly, the holding of state prisoner's at parish jails, is a common occurrence for jails across Louisiana.

### 4. Plaintiffs' *Monell* claim for sleep/mattresses must be dismissed due to the Court's finding of a legitimate governmental interest

As the Court noted in its Order and Reasons, a plaintiff bringing a conditions of confinement claim must show the following elements: (1) a rule or restriction, or a sufficiently pervasive practice, or an intended condition or practice; (2) which is not reasonably related to a legitimate government objective; and (3) which constitutes a violation of the plaintiff's constitutional rights.[45] Under the reasonable relationship test of *Bell v. Wolfish*, "a constitutional violation exists only [if the court] find[s] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective."[46]

As previously noted in Defendant's *Motion for Reconsideration*, the Court, in dismissing the Plaintiffs' individual capacity claims as it relates to the lack of mattresses/bedding in the holding cells, held that "a reasonable jury could yet conclude that Defendants' proffered explanations for denying Plaintiffs mattresses ***are related to a legitimate governmental objective***."[47] As previously noted above, Plaintiffs' *Monell* claims for lack of mattresses/bedding can only continue if the Court specifically holds that the policy is not reasonably related to a legitimate, non-punitive governmental objective. Because the Court held that a reasonable jury could conclude that the policy was related to a legitimate governmental objective, and because the Court has not held that any conditions were the result of any punitive intent, the Court was

---

[44] *Id.*
[45] See R. Doc. 457, citing *Henson*, 795 F.3d at 468 (citing *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011)).
[46] *Richard v. Gautreaux*, 2025 U.S. Dist. LEXIS 46825 (M.D. La. 2025).
[47] See R. Doc. 457, pg. 23. (emphasis added).

compelled to dismiss the Plaintiffs' official capacity claims as ***no constitutional violation*** can exist if a jury could conclude that the policy is related to a ***legitimate governmental objective***.

### 5. Plaintiffs' *Monell* claims lack constitutional violations.

As consistently noted by the Fifth Circuit, "without a predicate constitutional violation, there can be no *Monell* liability."[48] Indeed, the Fifth Circuit has consistently held that *Monell* claims must be dismissed for failure to identify a clearly established constitutional violation.[49]

In this case, the Fifth Circuit has consistently held that claims by pretrial detainees for lack of recreation/exercise, even if true, are *de minimis* under the U.S. Supreme Court's holding in *Bell*[50] and do not rise to the level of a constitutional claim,[51] and has further held that claims brought by pretrial detainees regarding jail policies of exercise/recreation do not rise to the level of constitutional violations.[52] Indeed, the Fifth Circuit, in *Lewis v. Smith*, dismissed a plaintiff's claim for lack of exercise/recreation, specifically holding that "***[t]his claim is meritless because it is premised on the erroneous assumption that Lewis had an absolute right to exercise or recreation***."[53] Additionally, both the Fifth Circuit[54] and this Court have consistently held that

---

[48] *Christopher Rusanowsky*, 2025 WL 855317; *Loftin v. City of Prentiss, Mississippi*, 33F. 4th 774 (5th Cir. 2022), citing *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (citing *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

[49] *Rusanowsky v. The City of Dallas*, 2025 WL 855317 (5th Cir. 2025); *Sanchez v. Edwards*, 433 Fed. Appx. 272 (5th Cir. 2011); *Fortune v. McGee*, 606 F. App'x 741 (5th Cir. 2015).

[50] *Bell v. Wolfish*, 441 U.S. 520.

[51] *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir.1996).

[52] *Mahmoud v. Bowie*, 234 F.3d 29 (5th Cir. 2000); *Jane Doe 5 v. City of Haltom City*, 106 Fed. Appx. 906 (5th Cir. 2004); *Soto v. City of Haltom City*, 106 Fed. Appx. 903 (5th Cir. 2004); *Garcia Guevara v. City of Haltom City*, 106 Fed. Appx. 900 (5th Cir. 2004); *Howard-Barrows v. City of Haltom City*, 106 Fed. Appx. 912 (5th Cir. 2004).

[53] *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001). *Lewis* further provides that all that is required is that the individual not be confined for long periods without the opportunity for regular physical exercise. As thoroughly provided in Defendant's *Motions for Summary Judgment*, being detained in a holding cell for over 18 days, (2 days longer than the longest stay by a Plaintiff in this matter), is such a short period of time that it was insufficient to rise to the level of a constitutional violation; *Hill*, 2020 WL 2226316 (18 days in STPJ 's holding cells too brief a period to support a constitutional claim); *Terry*, 2020 WL 13788378 (17 days insufficient to rise to the level of a constitutional violation), adopted, 2021 WL 242870; *Robertson*, 2020 WL 9065860, (16 days too brief to support a constitutional claim); *Allen*, 2018 WL 558503 (15 days too brief a period to support a constitutional claim), adopted, 2018 WL 537495.

[54] *Hamilton v. Lyons*, 74 F.3d 99 (5th Cir. 1996), citing *Mann v. Smith*, 796 F.2d 79, 85–86 (5th Cir.1986) (finding that pretrial detainee had no right to an elevated bed).

pretrial detainees have no right to bedding and/or an elevated bed, and that failure to provide a mattress/bedding in a holding cell is not a constitutional violation.[55]

Based on these numerous rulings from the Fifth Circuit and this Court, there can be no **_constitutional violation_** for a non-punitive, temporary restriction of exercise/recreation **and** bedding to pretrial detainees while they are being held in the holding cells. As Defendant has continued to reiterate, these so-called "conditions" were only temporary, until space opened up in the pretrial detainee housing unit of the jail. It is therefore impossible for the Sheriff to have implemented an unconstitutional policy when both the Fifth Circuit and this Court have both consistently held that these actions are **_not constitutional violations_**.

Defendant further notes that this Court's own Order further highlights the trouble that the Court, itself, faces in even determining what a constitutional policy would look like, as the Court is not able to even determine the "constitutional boundaries of those rights."[56] Indeed, if the Court cannot determine what the constitutional boundaries are for the rights, then how can the Court determine that the Sheriff's policy/actions are outside of those boundaries? Further, without such guidance, how would the Sheriff even be able to craft a policy that is not ultimately a violation of these perceived, yet undefined, rights? Indeed, if the right at issue and its boundaries are not clearly established, then there are no clear constitutional guideposts for the Sheriff to follow in the developing policy.[57] It is for reasons such as these, where the Court's own Order recognizes that it cannot determine the constitutional boundaries of the rights that it perceives to have been violated, that the Fifth Circuit, just three (3) months ago, reiterated that courts are "cautioned

---

[55] _McAllister_, 2009 WL 500560; _Desroche_, 507 F. Supp. 2d 571; _Walton_, 2012 WL 3947629; _Hill_, 2020 WL 2226316; _Beckendorf_ , 2025 WL 842970; _Terry_, 2020 WL 13788378, adopted, 2021 WL 242870; _Allen_, 2018 WL 558503, adopted, 2018 WL 537495; _McClay_, 2012 WL 3438367, adopted, 2012 WL 3481899; _Sykes_, 2011 WL 3425616, adopted, 2011 WL 3420854.
[56] See R. Doc. 457, pg. 23.
[57] _Obina Onyiah v. City of Philadelphia_, 660 F. Supp. 3d 407 (E.D. Pa. 2023), citing _Dennis v. City of Philadelphia_, 379 F. Supp. 3d 420, 435 (E.D. Pa. 2019).

against assum[ing] the superintendence of jail administration under the guise of enforcing constitutional standards."[58]

*Finally, and most importantly, neither the Court, nor Plaintiffs, have provided a single case wherein a pretrial detainee's Monell claim was allowed to proceed as to lack of recreation/exercise and/or lack of mattress/sleep policy*. Indeed, despite an exhaustive search, Defendant is unable to find a single case within the Fifth Circuit wherein such *Monell* claims were allowed to proceed, which mandates dismissal as there can be no **clearly defined** constitutional right that was violated.

### 6. The conditions at the STPJ met the constitutional minimum for exercise/recreation

This Court has consistently held that under § 1983 the opportunity to exercise in or simply move about an inmate's cell meets any minimum constitutional standards of decency for an inmate who is denied or has limited access to outdoor exercise.[59] In this case, Mr. Hall specifically testified that detainees in the cell were able to walk about in the cell.[60] Accordingly, the minimum constitutional standards of decency were provided to Mr. Hall, and therefore his *Monell* claim for lack of exercise/recreation must be dismissed. Additionally, Mr. Baqer,[61] Mr. Guillot[62] and Mr. Williams[63] all testified that detainees in the cell were able to walk/move about the cells. Therefore, regardless of the fact that neither Mr. Baqer, Mr. Guillot nor Mr. Williams have asserted *Monell* claims for lack of recreation/exercise, each was provided with the minimum constitutional standards of decency, thereby further mandating dismissal. Defendant further notes that in

---

[58] *U.S. v. Hinds County Board of Supervisors*, 128 F.4th 616 (5th Cir. 2025), citing *Alberti v. Klevenhagen*, 790 F.2d 1220 (5th Cir. 1986)

[59] *Beckendorf*, 2025 WL 842970 [involving pretrial detainee], citing *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983); *Hawkins v. Ledet*, 2024 WL 5410420 (E.D. La. 2024) [involving pretrial detainee].

[60] See R. Doc. 392-5, pg. 33, lines 2 – 10.

[61] See R. Doc. 387-14, pg. 66, lines 11 – 13, pg. 71, lines 1 – 2.

[62] See R. Doc. 391-13, pg. 56, lines 6 – 11.

[63] See R. Doc. 388-13, pgs. 72 – 74.

accordance with the Fifth Circuit and Eastern District's consistent legal holdings, *Monell* claims for lack of exercise/recreation for all Plaintiffs must be dismissed, as the detainees' own sworn testimony provides that detainees in the holding cells were able to move about the holding cells during their confinement.[64]

### 7. Plaintiffs' dismissed class allegations are separate from their individual allegations

As noted in Defendant's *Motion for Reconsideration*,[65] as well as Defendant's *Supplemental Memorandum in Support of Motion for Summary Judgment*,[66] numerous Plaintiffs, including Mr. Baqer, Mr. Guillot and Mr. Williams, have failed to assert a *Monell* claim for lack of exercise/recreation within their Complaints.[67] Plaintiffs', citing to general class allegations, assert that they have sufficiently pled individual *Monell* claims for lack of exercise/recreation for each individual Plaintiff. For numerous reasons, Plaintiffs' assertion has no basis in law or fact.

Defendant first notes that the class allegations are **separate and apart** from each individual Plaintiffs' allegations, which is why Plaintiffs' suit as to their individual allegations was allowed to move forward despite their class allegations being denied. A review of Plaintiffs' Complaints clearly indicates that these allegations are listed under the "Class Allegations" heading, and not under the allegations for each individual Plaintiff.[68] Defendant notes that Plaintiffs fail to explain why they specifically included allegations regarding lack of exercise/recreation for Mr. Louviere[69] and Mr. Hall,[70] in their Complaints, but failed to include the same allegations for Mr. Baqer,[71] Mr.

---

[64] *Beckendorf*, 2025 WL 842970, citing *Wilkerson*, 703 F.2d 909, 911-12; *Hawkins*, 2024 WL 5410420.
[65] See R. Docs. 464, 464-1.
[66] See R. Doc. 451, pg. 3, footnote 4.
[67] See Baqer: R. Doc. 1, ¶¶ 84 – 93; See Guillot: R. Doc. 1, ¶¶ 108 – 116; See Williams: 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶¶ 129 – 152.
[68] See R. Doc. 1, ¶ 79; See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 82.
[69] See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 110.
[70] See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 126.
[71] See R. Doc. 1, ¶¶ 84 – 93.

Guillot[72] or Mr. Williams.[73] If Plaintiffs actually intended to assert a *Monell* claim for lack of exercise/recreation for all Plaintiffs by simply relying on their vague class allegations, then why would Plaintiffs include such individual allegations for Mr. Louviere and Mr. Hall, but not for Mr. Baqer, Mr. Guillot or Mr. Williams? Indeed, it is evident that Plaintiffs are now attempting to improperly rely on ***dismissed*** class allegations, which were denied over three (3) years ago on January 25, 2022,[74] to make up for the fact that they ***failed to assert*** any claims as to lack of exercise/recreation for Plaintiffs, Baqer, Guillot, Sr. and Williams.

Second, as previously noted above, Plaintiffs' class allegations, which they now rely on, were denied and dismissed on January 25, 2022, and are therefore **not** at issue in this action, and cannot be relied on by Plaintiffs.[75] Third, as this Court is well-aware, Plaintiffs in this matter have asserted claims against Sheriff Smith for the time in which they were held in the holding cells as **pretrial detainees**. However, Plaintiffs' class allegations as it relates to exercise/recreation assert that Sheriff Smith denied **new inmates**, (which are individuals whom have been convicted of a crime and are a separate status from pretrial detainees), the ability to participate in any recreational activity.[76] Therefore, Plaintiffs class allegations as to the treatment of new inmates has no relation whatsoever to the treatment of pretrial detainees, who have not been convicted of any crime.

As provided above, Plaintiffs, Baqer, Guillot, Sr. and Williams have ***failed*** to assert *Monell* claims for lack of recreation/exercise, and this Court should not allow Plaintiffs to improperly proceed with such claims at trial when they were ***never*** asserted such claims.

---

[72] See R. Doc. 1, ¶¶ 108 – 116.
[73] See 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶¶ 129 - 152.
[74] See R. Doc. 171.
[75] See R. Doc. 171.
[76] See R. Doc. 1, ¶ 79; See also 2:20-cv-01840-LMA-MBN, R. Doc. 1, ¶ 82.

**8. The Court's Order and Plaintiffs' opposition attempt to improperly micromanage the operations of the jail by asserting various ways the Plaintiffs believe the jail could be run**

As the Court's Order denying the Motions for Summary Judgment in part and Plaintiffs' opposition to reconsideration make clear, both the Court and Plaintiffs seek to improperly micromanage the minute, day-to-day operations of the jail, despite both the Supreme Court and the Fifth Circuit's clear caution against doing so.

It is clear in that jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences.[77] Further, such judicial restraint is appropriate because the Constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.[78] As recently noted by the Fifth Circuit in February, "[c]ourts are thus cautioned against "assum[ing] the superintendence of jail administration" "under the guise of enforcing constitutional standards."[79] Indeed, the relevant inquiries "spring from constitutional requirements...rather than a court's idea of how best to operate a detention facility."[80]

Indeed, the Fifth Circuit has held that the federal courts have generally heard Congress's message, and that courts generally recognize that structural injunctions raise "sensitive federalism concerns" by usurping state sovereignty.[81] And after the PLRA, the Supreme Court emphasized that federalism concerns are particularly acute in the context of prison management. (*Valentine*, 993 F.3d 270, citing *Shaw v. Murphy*, 532 U.S. 223, 228–30 (2001); *Lewis*, 518 U.S. at 386, 116 S.Ct. 2174; See also *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) (emphasizing

---

[77] *Collins*, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).
[78] *Bell*, 441 U.S. at 539; *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, 2015 U.S. Dist. LEXIS 34318 (E.D. La. 2015).
[79] *Hinds County Board of Supervisors*, 128 F.4th 616, citing *Alberti*, 790 F.2d 1220.
[80] *Bell*, 441 U.S. 520, 539.
[81] *Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021), citing *Horne v. Flores*, 557 U.S. 433, 448 (2009).

that federal judges are ill-equipped "to deal with the increasingly urgent problems of prison administration"), overruled on other grounds; *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons").

In this case, the Court's Order embodies the micro-management of daily STPJ jail operations the Supreme Court and Fifth Circuit cautioned against. Indeed, the Court's Order improperly advises the STPJ ***not*** to contract with the federal government to hold federal inmates/detainees, despite the STPJ's statutory obligation to house federal inmates/detainees.[82] It further redefines the STPJ's foundational purpose, without any supporting evidence.[83]

Additionally, despite the Court holding that there is no clear authority from the Supreme Court or Fifth Circuit with regard to Plaintiffs' claims of sleep and exercise, and that there is not sufficient guidance from the Fifth Circuit for a jail official to be able to recognize the constitutional boundaries as to Plaintiffs' claims of sleep and exercise, the Order directs a mattress policy for pretrial detainees in holding cells, despite Courts having consistently held that the provision of bedding is within the sound discretion of prison administrators.[84]

Indeed, the Court's Order goes as far as mandating that the STPJ, place mattresses that are used for beds in housing units on the floor in holding cells for detainees,[85] despite the holding cells being only 12 x 22,[86] and despite the STPJ specifically testifying that it would be ***physically impossible*** to place mattresses on the ground in the holding cells for each pretrial detainee due to

---

[82] See R. Doc. 457, pg. 19.
[83] See R. Doc. 457, pg. 19.
[84] *McAllister*, 2009 WL 500560; *Desroche*, 507 F. Supp. 2d 571; *Walton*, 2012 WL 3947629; *Hill*, 2020 WL 2226316.
[85] See R. Doc. 457, pg. 19. ("Moreover, it appears that STPJ does not procure mattresses for pretrial detainees in the holding cells regardless of the number of detainees in the cell.")
[86] See R. Doc. 392-7, pg. 17, lines 18 – 20.

lack of **physical space** within the holding cells.[87] This Court's Order seems to indicate that the STPSO now has to place mattresses directly on the ground of the holding cells for the pretrial detainees, something that the mattresses are not intended for, and which will lead to the mattresses being damaged, resulting in further replacement and security costs.

The Court's Order additionally seeks to manage the STPJ's exercise policy as it relates to pretrial detainees held in holding cells, despite the fact that: (1) detainees are only held in the holding cells on a temporary basis and once they are moved to a dorm they are allowed the opportunity for recreation/exercise, thereby making the restriction **temporary** and (2) the STPJ keeps the detainees separate from convicted DOC and federal inmates/detainees for safety reasons.

Finally, Plaintiffs' opposition contains numerous ways in which the Plaintiffs believe the jail could handle things, none of which have any factual or legal support, and none of which are based on any of the Plaintiffs' experience in running a jail. Indeed, Plaintiffs' lack of understanding of the jail has led to Plaintiffs' making the completely false claim that the STPSO "could have chosen to build out the STPJ to properly house both the federal prisoners and its own population, rather than confining its own detainees to the holding cells for extended periods."[88] As previously noted by this Court, the "Plaintiffs agree in their Opposition brief that [the St. Tammany Government's ("STPG')'s] obligation was to 'finance and physically maintain the jail.'"[89] Additionally, as noted by Sheriff Smith, the St. Tammany Parish Jail and the property it sits on is owned by the St. Tammany Parish Government,[90] and the Sheriff **is not responsible for designing or constructing the building**.[91] Accordingly, Plaintiffs' assertion that the STPSO could have just

---

[87] See R. Doc. 392-3, pg. 24, citing R. Doc. 387-10 at pg. 41, lines 10 – 14 and pg. 105, lines 12 – 23.
[88] See R. Doc. 481, pg. 8.
[89] See R. Doc. 150, pg. 18, citing R. Doc. 73 at p. 4 (citing La. R.S. 15:304, 15:702, and 33:4715).
[90] See R. Doc. 392-8, pg. 9, lines 12 – 22.
[91] *Id*. at pgs. 9 – 10, 23 – 1.

"chosen to build out" the STPJ is false and has no basis in law or fact, as the construction of the jail was the obligation of the STPG, ***not*** the STPSO.[92] Plaintiffs, however, allowed STPG to be dismissed with prejudice in this case.

Defendant again notes that Plaintiffs' assertion that the STPJ could have allowed the Plaintiffs to stay in beds in the DOC wing of the STPJ continues to ignore the fact that by law, the STPJ ***cannot*** house pretrial detainees and DOC inmates together.[93] If the STPJ did as the Plaintiffs suggest, then the Plaintiffs would soon file suit against the Sheriff for violating their constitutional rights by providing them beds in the DOC wing of the STPJ. Indeed, Plaintiffs' illogical argument can be summed up as telling the STPJ to violate the law by housing them in the DOC wing, so that they can sue the Sheriff for violating the law by housing them in the DOC wing.

As clearly indicated both above and in Defendant's *Motion for Reconsideration*, Defendant respectfully avers that this Court's Order, which clearly establishes that there was no punitive intent and that no constitutional rights have been clearly defined, much less violated, represents the level of management of the STPJ's day-to-day administration that both the Supreme Court and the Fifth Circuit cautioned against.

9. ***Scott v. Moore* is neither binding nor persuasive authority in this case, as it does not address or apply 42 U.S.C. § 1997e(e).**

As explained in the Sheriff's Motion, *Scott v. Moore* is readily distinguishable and cannot serve as controlling authority.[94] Plaintiffs argue that *Scott* remains persuasive, but their argument fails for a fundamental reason: the statement from *Scott* on which both the Court and Plaintiffs rely

---

[92] This fact is even noted on the Sheriff's website, specifically providing that the STPJ is owned by the St. Tammany Parish Government. (See St. Tammany Parish Sheriff's website: https://www.stpso.com/divisions/corrections.php#:~:text=Tammany%20Parish%20Jail%20facility%20is,staffing%20for%20the%20daily%20operations ("The St. Tammany Parish Jail facility is owned by the St. Tammany Parish Government. However, the St. Tammany Parish Sheriff's Office provides staffing for the daily operations."))

[93] *Jones v. Dallas Cnty.*, 2022 WL 3334493 (5th Cir. 2022), citing *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981); *Alderson*, 848 F.3d 415 (5th Cir. 2017); *Murray v. LeBlanc*, 2023 WL 6544932 (M.D. La. 2023).

[94] R. Doc. 464-1, pgs. 24-26.

— namely, that "[i]n many jail condition cases, the conditions themselves constitute harm"[95] — is inconsistent with the requirements of 42 U.S.C. § 1997e(e).

Under this statute, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."[96] Accordingly, as noted in the Motion,[97] to prevail on a § 1983 conditions-of-confinement claim based on denial of exercise or movement, a plaintiff "must have suffered an adverse physical health injury as a result of the denial of movement."[98] For this reason, as recently as last December, a division of this Court in *Hawkins v. Ledet*, dismissed a pretrial detainee's claims as to the exercise policy of the Terrebonne Parish Criminal Justice Complex, holding that the plaintiff's claims against the warden failed to allege an injury or adverse health condition arising from the exercise policies.[99]

Crucially, *Scott* offers no persuasive value here because it never addressed the requirements of 42 U.S.C. § 1997e(e). The plaintiff in *Scott* alleged a sexual assault by a correctional officer —an allegation that, by itself, satisfies § 1997e(e)'s exception for the "commission of a sexual act." As a result, the Fifth Circuit had no need to consider whether the plaintiff suffered a physical injury, nor did the court engage with the statutory limits imposed by § 1997e(e). Accordingly, reliance on *Scott* by Plaintiffs — and by this Court — is misplaced.

Plaintiffs further contend that other courts have relied on *Scott* to **analyze** conditions-of-confinement claims. However, they fail to cite any case that relies on *Scott* to analyze all legal

---

[95] R. Doc. 457, pg. 13.
[96] 42 U.S.C. § 1997e(e).
[97] R. Doc. 464-1, pg. 11, including note 53.
[98] *Beckendorf*, 2025 WL 842970, at *3, citing *Callicutt v. Panola Cnty. Jail*, 200 F.3d 816 (5th Cir. 1999).
[99] *Hawkins v. Ledet*, 2024 WL 5410420 (E.D. La. 2024).

elements of such claims. None of the cases Plaintiffs cite — *Cope*,[100] *Jones*,[101] *Nichols*,[102] or *Tuttle*[103] — references *Scott* for that purpose. To the contrary, each of those cases cites *Scott* only to distinguish conditions-of-confinement claims from episodic acts-or-omissions claims.[104,105,106,107]

Accordingly, *Scott* is not a persuasive authority and a mere assertion that "conditions themselves constitute harm" is insufficient to meet the pleading standard of 42 U.S.C. § 1997e(e).

### 10.    Failure to Exhaust

As noted in Defendant's *Motion for Reconsideration*, it is undisputed that Mr. Guillot never initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") and therefore failed to exhaust his administrative remedies prior to filing suit in this matter. It is further undisputed that Defendant raised this issue, including as an affirmative defense in his Answer,[108] in the 2020 Affidavit of Major Lacey Kelly,[109] in his Statement of Facts supporting summary

---

[100] *Cope v. Coleman Cnty.*, 2024 WL 3177781 (5th Cir. 2024), *cert. denied sub nom.*, 145 S.Ct. 1061 (2025).

[101] *Jones v. St. Tammany Par. Jail*, 4 F.Supp.2d 606 (E.D. La.1998).

[102] *Nichols v. Brazos Cnty.*, 2020 WL 956239 (S.D. Tx. 2020).

[103] *Tuttle v. USA*, 2022 WL 1819512 (W.D. La. 2022), report and rec. adopted, 2022 WL 1815718 (W.D. La. 2022).

[104] *Cope*, 2024 WL 3177781 ("[w]hen a plaintiff brings a jail suicide claim under alternative theories of episodic acts and omissions or unconstitutional conditions of confinement, courts determine which theory applies based on an assessment of the facts alleged." *Cope*, 2024 WL 3177781, at *8. The court also remanded the case for further proceedings regarding whether Plaintiffs have raised a genuine dispute of material fact as to their conditions-of-confinement claim. *Id.* at *1.

[105] In *Jones*, the court used *Scott* to distinguish a conditions case from an episodic case. *Jones*, 4 F.Supp.2d at 611. Also, the element of physical injury was not contested, and therefore not analyzed, because it was undisputed that, while at the jail, the plaintiff "fell from the top bunk and sustained several serious injuries, including a fractured leg in three places, tendon and ligament damage to his forearm, a partially severed finger, a fractured thumb, broken ribs, and a concussion." *Id.* at 609.

[106] In *Nichols*, again, *Scott* was cited to distinguish between conditions-of-confinement and episodic acts-and-omissions cases. *Nichols*, 2020 WL 956239, at *7. Moreover, the element of serious physical injury was clearly present, as the detainee in that case died shortly after being released from custody. In the complaint, his mother alleged that his death was caused by the denial of necessary medical care. *Id.* at *2.

[107] In *Tuttle*, the court resorted to *Scott* to state that "[a] 'condition of confinement' case is a '[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement.'" *Tuttle*, 2022 WL 1819512, at *1. However, because the case was dismissed for lack of subject matter jurisdiction, the court did not reach the merits of the plaintiff's claim, specifically the issue of physical injury. *Id.* at *2.

[108] See R. Doc. 46, pg. 4, Affirmative Defense Fifteen.

[109] See R. Doc. 37-1, ¶ 25.

judgment,[110] and in his Motion for Summary Judgment.[111] It is therefore clear that Defendant has **_not_** waived his right to exhaustion, as it has been raised as an affirmative defense, supported by an affidavit, and raised in Defendant's Motion for Summary Judgment. Accordingly, Mr. Guillot's claims must be dismissed, as exhaustion is not left to the discretion of the district court but is instead mandatory.[112]

## CONCLUSION

For the foregoing reasons, Defendant respectfully suggests that his Motion for Reconsideration be granted.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

_s/ Andrew R. Capitelli_

| | |
|---|---|
| **ANDREW R. CAPITELLI** | **# 31649** |
| **BRUCE A. CRANNER** | **# 1796** |
| **KENNETH R. WHITTLE** | **# 38640** |
| **SARAH A. FISHER** | **# 39881** |

**68031 Capital Trace Row**
**Mandeville, LA 70471**
**Telephone:    (985) 292-2000**
**Facsimile:    (985) 292-2001**
acapitelli@millinglaw.com
bcranner@millinglaw.com
kwhittle@millinglaw.com
sfisher@millinglaw.com
_**Counsel for Defendant**_

---

[110] See R. Doc. 391-2, pg. 5, ¶ 37. ("Mr. Guillot never initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") during his time in the STPJ").

[111] See R. Doc. 391-3, pg. 37 ("The record is further clear in that Mr. Guillot never initiated or filed a grievance through the Administrative Remedy Procedure ("ARP") during his time in the STPJ."

[112] _Woodford v. Ngo_, 548 U.S. 81 (2006).

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on Thursday, May 22, 2025, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

_s/ Andrew R. Capitelli_
**Andrew R. Capitelli**