# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Ahmed Baqer, *et al.*, | *  |
| Plaintiffs, | *  CASE NO. 20-00980-DJP-DPC |
| | *  |
| | *  *Consolidated with* |
| v. | *  CASE NO. 20-01840-WBV-DPC |
| | *  |
| St. Tammany Parish Government, *et al.*, | *  JUDGE PAPILLION |
| | *  |
| Defendants. | *  MAGISTRATE JUDGE PHILLIPS |
| | *  CURRAULT |
| | *  |
| | *  JURY TRIAL DEMANDED |
| | *  |
| | *  *This filing applies to ALL CASES* |

## PLAINTIFF'S PROPOSED SURREPLY IN OPPOSITION TO DEFENDANT STPSO'S MOTION FOR RECONSIDERATION

For the third time since the beginning of summary judgment briefing, defendants have sought an unfair advantage by untimely raising new arguments or evidence. *See* ECF 331 (Pl's Mot. to Strike Undisclosed Exhibit); ECF 394 (Pl's Mot. to Strike Defs' Mot. for Summary Judgment). This time, defendant St. Tammany Parish Sheriff's Office (STPSO) has layered untimely argument on untimely argument—specifically, STPSO raises at least three entirely new arguments in its reply brief in support of their motion to reconsider the Court's summary judgment ruling, ECF 493. STPSO's new arguments would have been improper if they were made in its initial motion for reconsideration, as they are not based on intervening new law, did not appear in STPSO's summary judgment briefing, nor do they identify any manifest errors of law or fact, and were not preserved during the case at all. But they are doubly untimely in a reply brief, when Plaintiffs have no meaningful opportunity to respond. Plaintiffs file this surreply to address the three discrete, new arguments that they had no prior occasion to address.

2

# ARGUMENT

As Plaintiffs explained in their response to defendants' motion for reconsideration, ECF 481, STPSO's arguments on reconsideration are both substantively incorrect and procedurally improper. On reply, STPSO compounds its procedural improprieties by introducing entirely new arguments that appear nowhere earlier in this case—not in defendants' affirmative defenses, not in defendants' summary judgment briefing, and not in STPSO's opening reconsideration brief. The Court should strike each of these arguments as untimely. And even if the Court entertains STPSO's new arguments, the Court should reject them as meritless.

### A.  The STPSO's new invocation of Louisiana Revised Statute § 15:824 is procedurally improper and meritless

In its motion for reconsideration, STPSO argued—for the first time—that Louisiana Revised Statute § 15:707 compelled it to house federal inmates, thus absolving STPSO of its obligation to house pretrial detainees in constitutionally-compliant conditions. ECF 464-3 at 6. In response, Plaintiff pointed out that (1) STPSO waived any reliance on Section 15:707 by failing to raise it in its affirmative defenses or anywhere in its summary judgment briefing; (2) Section 15:707 says nothing about how federal inmates must be housed, meaning STPSO's decision to profit by renting a large portion of the jail to the federal government was entirely voluntary; and (3) STPSO failed to explain how Section 15:707 could affect plaintiffs' claims at all, given that STPSO also rented out a large portion of the jail that could have been used to humanely house pretrial detainees to the State of Louisiana to house state inmates. ECF 481 at 5-10.

On reply, STPSO makes yet another entirely new argument, raised neither in its affirmative defenses, nor anywhere in its summary judgment briefing, nor in its motion for reconsideration: STPSO now says that a separate, never previously invoked state law, Louisiana

3

Revised Statute § 15:824, requires it to house state inmates. STPSO's invocation of Section 15:824 would have been improper had it been raised in STPSO's summary judgment briefing, as the STPSO never identified it as an affirmative defense. It would also have been improper had it been raised in the STPSO's motion for reconsideration as the STPSO never raised during summary judgment briefing. It is extraordinary—to say nothing of improper—for the STPSO to raise it now, for the very first time, in a *reply* in support of a motion for reconsideration.

The STPSO's invocation of Section 15:824 was long ago foreclosed. But even if the Court were to consider the argument, it would fail on the merits because—like Section 15:707—Section 15:824 says nothing material about how STPSO must house state inmates. Put differently, nothing in Section 15:824 undermines the Court's sound analysis on summary judgment that STPSO's unconstitutional housing of pretrial detainees in holding cells for weeks at a time was a result of STPSO entering and profiting from voluntary contractual obligations to the state and federal governments.

> **1. The Court should strike STPSO's new invocation of Section 15:824 on reply, which STPSO has in any event waived**

As explained in Plaintiffs' response brief, STPSO's invocation of Section 15:707 on reconsideration fails because STPSO could have raised Section 15:707 in its summary judgment briefing, but never did. The same is true of STPSO's untimely invocation of Section 15:824. STPSO functionally argues that both Sections 15:707 and 15:824 require STPSO to house federal and state inmates, respectively, absolving STPSO of its obligation to humanely house pretrial detainees. Nothing precluded STPSO from raising that argument or invoking those statutes on summary judgment—or identifying it as an affirmative defense in its pleadings—but STPSO never did so. STPSO may not do so now.

4

STPSO's first-time invocation of Section 15:824 on reply is doubly improper, as new arguments raised on reply are waived. *Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002). "Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. CV MDL 2047, 2018 WL 6335781, at *5 (E.D. La. Dec. 5, 2018). The Court should not permit STPSO to rely on a statute that it cited for the first time in a reply brief to a motion for reconsideration. The Court should accordingly strike STPSO's argument with respect to Section 15:824.

STPSO's argument concerning Section 15:824 cannot be characterized as a response to the arguments in plaintiffs' response brief. STPSO's argument on reconsideration was that its obligations *to the federal government* were involuntary under Section 15:707. STPSO never cited any statutory obligations to the state. ECF 464-3 at 5-9. Plaintiffs responded that even if STPSO's federal obligations were involuntary (and they are not), it would be immaterial to the Court's analysis on summary judgment because STPSO *also* leased out a substantial portion of the jail to the state of Louisiana—space which *on its own* could have been used to humanely house pretrial detainees. Recognizing the deficiency of proof in the argument it made on reconsideration, STPSO argues for the first time on reply that it was *also* obligated to house state inmates. STPSO may not tack on an entirely new legal argument on reply—citing entirely new law—to save the facially deficient argument it actually made in its opening brief.

2. **Section 15:824 did not obligate STPSO to house pretrial detainees in unconstitutional conditions**

In addition to being procedurally improper, Defendants' argument with respect to Section 15:824 is substantively incorrect. Like Section 15:707, Section 15:824 says nothing about the

way STPSO must house state inmates, nor does it require STPSO to set aside a specific space or a specific number of beds for state inmates. As STPSO presents Section 15:824, the law obligates STPSO to hold certain categories of state prisoners. ECF 493 at 8 (citing La. Rev. Stat. § 15:707). Like Section 15:707, Section 15:824 says nothing about where these prisoners should be housed, what conditions they should be housed under, whether they may be housed with the STPSO's regular detainees (or federal ones) or must be kept apart, or any other provisos about the conditions or place of their confinement. So assuming that Section 15:824 may require the STPSO to take in state detainees, where the detainees are housed, under what conditions, and with whom, are left to the STPSO alone. Just as STPSO chose to contract with the federal government to set aside 180 beds for the purposes of housing individuals in federal custody, STPSO likewise voluntarily agreed to rent out an entire wing of the jail to the state and to render that wing unavailable to house pretrial detainees. Nothing in Section 15:824 compelled that choice; it was STPSO's voluntary agreement to rent out the wing for state's *exclusive* use in exchange for money that rendered the wing unavailable to pretrial detainees.

      Section 15:824 left open numerous choices that STPSO could have made instead of agreeing to rent an entire, segregated jail wing to the state. STPSO could have acceded to taking in state prisoners pursuant to Section 15:824 and declined to segregate them from the remaining jail population or from the federal population. STPSO could also have agreed to take in state prisoners and treated them like it treated putative class members—keeping the state inmates in holding cells and housing its own detainees in the wing rented to the state. In either scenario, the state may have chosen not to house any prisoners at the jail, and STPSO may not have received the money for which it voluntarily contracted. But both of those are choices STPSO could have made that would have both complied with Section 15:824 and would not have resulted in the

6

extended unconstitutional confinement of pretrial detained in holding cells. In addition, Section 15:824 has been law for decades, and STPSO had ample opportunity to build capacity or shift its structure so that it could meet both its constitutional obligations to pretrial detainees and whatever obligations it owed the state. Nothing in either statute STPSO relies upon mandates the inhumane treatment to which STPSO subjected plaintiffs and the putative class. Without any of this and similar information, the STPSO' invocation of Section 15:824 amounts to nothing more than speculation that it had any real bearing the policies that Plaintiffs have challenged in this case. Yet by waiting to raise this defense until after summary judgment—to say nothing of its opening motion for reconsideration—the Defendants prevented inquiry into the merit of this defense at all, gutting the truth-seeking function of discovery that is intended to avoid surprises like this one. They cannot be heard to raise this defense now.

    **B.    The Court Should Strike and/or Reject STPSO's Reply Arguments Regarding the Adequacy of Plaintiffs' Recreation and Exercise Pleadings**

STPSO's opening reconsideration brief contains one five-sentence argument asserting that plaintiffs Baqer, Guillot, and Williams never asserted a cause of action for a lack of exercise and recreation. ECF 464-3 at 28-29. That is the extent of the argument—a hollow assertion that those three plaintiffs did not include *Monell* claims as to a lack of exercise/recreation in their complaints. Plaintiffs pointed out in response that they did in fact plead continued confinement and a lack of recreation. ECF 481 at 23 (citing Case No. 2:20-cv-980, ECF 1 ¶ 79, Case No. 2:20-cv-1840, ECF 1 ¶ 82). That response directly addressed the argument that the STPSO had made in its opening brief, and resolved it.

The STPSO waited until its reply brief to explain what it was really arguing. Over two full pages of its reply brief—approximately five times as much ink as it spilled in its opening brief—the STPSO sets out an entirely new argument: that plaintiffs Baqer, Guillot, and Williams

did not adequately plead claims related to recreation and exercise because the allegations were made in sections common to all plaintiffs, rather than sections specific to each plaintiff. ECF 493 at 14-15.

This argument appears nowhere in STPSO's opening brief. The Court should not permit STPSO to explain what it actually means for the first time on reply, after the argument that it initially made has been debunked. The Court should accordingly strike STPSO's argument on reply regarding the adequacy of plaintiff Baqer, Guillot, and Williams's pleadings.

But even if the Court entertains STPSO's argument, it is meritless and, frankly, borders on frivolous. First, there is no requirement that a complaint involving multiple plaintiffs replead allegations common to each plaintiff under a distinct subheading for each plaintiff. Here, both operative complaints plead that all defendants, which include STPSO, denied new inmates the ability to participate in any recreational activity. Case No. 2:20-cv-980, ECF 1 ¶ 79, Case No. 2:20-cv-1840, ECF 1 ¶ 82. STPSO cites no rule requiring each individual plaintiff to repeat that allegation in a section devoted only to that plaintiff, and any such rule would both pointlessly elevate form over substance and ensure that complaints are needlessly repetitive.

Second, even accepting STPSO's faulty premise, STPSO misreads the operative complaints. STPSO says that the Court should ignore plaintiffs' allegations as to recreation and exercise because (1) "these allegations are listed under the 'Class Allegations' heading, and not under the allegations for each individual plaintiff"; and (2) Plaintiff's class allegations were "dismissed" on January 25, 2022. ECF 493 at 14-15. STPSO is wrong on both accounts. In both complaints, the allegations related to recreation and exercise appear under the "Factual Background" heading, and not under the "Class Allegations" heading. *See* Case No. 2:20-cv-980, ECF 1 ¶ 79 ("Class Allegations" section terminates at ¶ 35), Case No. 2:20-cv-1840, ECF 1 ¶ 82

("Class Allegations" section terminates at ¶ 38). And the Court did not dismiss any allegations on January 25, 2022; the Court merely denied plaintiffs' initial motion for class certification. ECF 171. Even if Plaintiffs' allegations were in the "Class Allegations" section—and they are not—denial of a class certification motion does not constructively delete allegations from a complaint; indeed, class certification orders can be altered or amended at any time before final judgment. See Fed. R. Civ. P. 23(c)(1)(C).

Third, STPSO asserts that plaintiffs' pleadings regarding exercise and recreation should be ignored because they refer to "new inmates" and not "pretrial detainees." According to STPSO, "new inmates" are "individuals whom have been convicted of a crime and are a separate status from pretrial detainees." ECF 493 at 15. STPSO's argument is a willful misreading of the operative complaints, which repeatedly refer to pretrial detainees as "inmates" or "new inmates." *See, e.g.*, ECF 1 at ¶¶ 36-41, 45-46, 48-50, 67, 73, 77-79, 82-83. STPSO's specious distinction between "pretrial detainees" and "new inmates" immediately collapses when the allegations are viewed in context.

**C.    The Court Should Strike and/or Reject STPSO's Reply Arguments Regarding *Scott v. Moore***

In its opening reconsideration brief, STPSO argued that the Court erred in relying on *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997), because, according to STPSO, *Scott*'s proclamation that "in many jail condition cases, the conditions themselves constitute the harm" was dicta that the Court was required to ignore. ECF 464-3 at 24-25. In response, Plaintiffs explained that Scott's analysis of conditions of confinement claims was not *dicta*, and that even if it were, it would still be persuasive authority that the Court appropriately cited. On reply, STPSO concocts an entirely different argument about *Scott*: that *Scott* is bad law because it does not comply with 42 U.S.C. § 1997e(e), part of the Prison Litigation Reform Act.

Once more, STPSO never raised or even hinted at the PLRA in its discussion of *Scott* in its opening brief. STPSO does not make a cognizable argument that its new invocation of the PLRA is in response to an argument Plaintiffs made in their briefing; instead, STPSO simply argues, for the first time on reply, that the language STPSO doesn't like in *Scott* is at odds with the PLRA. ECF 493 at 19-20. STPSO's efforts to sandbag Plaintiffs with a new statutory argument on reply is a canonical improper argument on reply. The Court should strike it.

And like the other arguments made on reply, this improper new argument is entirely meritless. STPSO says that *Scott* can't be good law because the PLRA requires a physical injury before inmates can pursue conditions of confinement claims. But *Scott*'s assessment of the showing of harm needed to pursue a conditions of confinement case need not track the PLRA because the PLRA only applies to individuals who are confined at the time of filing. Indeed, the very provision that STPSO cites only speaks to civil actions that can be brought by prisoners "confined in a jail, prison, or other correctional facility." 42 U.S.C. § 1997e(e). STPSO's argument that *Scott* must be wrong because it is inconsistent with the PLRA ignores that the PLRA only establishes a rule governing when a subset of potential litigants may file suit—the PLRA does not bear at all on the *merits* of a conditions of confinement claim. Nor could it—while the PLRA can limit who may file suit for certain unconstitutional conduct, a statute cannot alter constitutional standards, including the constitutional standards for conditions of confinement analyzed in *Scott*. Although the PLRA could not possibly bear on *Scott*'s validity, in this instance, STPSO's invocation of the PLRA is particularly inapposite: several Plaintiffs filed suit when they were no longer confined, meaning the PLRA has no application to their claims whatsoever. *See, e.g., Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019), *as revised* (July 2, 2019) ("By its plain language, however, the PLRA's restrictions do not apply to actions

filed by former inmates following their release."); *see, e.g.*, ECF 409-2 ¶¶ 152, 214 (Baqer was released from custody on December 18, 2019), ECF 411-2 ¶¶ 176-180 (Hall was released from custody), ECF 413-2 ¶ 201 (Williams was released from STPJ custody).

## CONCLUSION

STPSO's reply brief contains at least three entirely new arguments that are both procedurally improper and substantively meritless. The Court should strike each of them, and to the extent it entertains STPSO's new arguments, it should squarely reject them.

Date: June 24, 2025                                                                 Respectfully submitted,


*/s/ Sam Harton*

Antonio M. Romanucci*
Sam Harton*
Josh Levin*
Stephen H. Weil*
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
aromanucci@rblaw.net
sharton@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net

Devon M. Jacob* (PA89182)
JACOB LITIGATION, INC.
P.O. Box 837
Mechanicsburg, PA 17055-0837
Tel: (717) 796-7733
djacob@jacoblitigation.com

Maria B. Glorioso (#24435)
T.A. Vincent J. Glorioso, Jr. (#6064) THE

11

GLORIOSO LAW FIRM
2716 Athania Parkway
Metairie, LA 70002
Tel: (504) 569-9999
Fax: (504) 569-9022
maria@gtorts.com

*Admitted pro hac vice*

*Attorneys for Plaintiff*